No. 24-60040

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

INTUIT INC.,

*Petitioner*,

*v.*

FEDERAL TRADE COMMISSION,

*Respondent*.

On Petition for Review of a Final Order of the Federal Trade Commission Dated January 19, 2024, FTC Docket No. 9408

## PETITIONER'S MOTION FOR STAY
## PENDING FINAL DECISION ON PETITION FOR REVIEW

HOWARD M. SHAPIRO
JONATHAN E. PAIKIN
DANIEL S. VOLCHOK
DEREK A. WOODMAN
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6000

DAVID Z. GRINGER
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, N.Y. 10007
(212) 230-8800

March 1, 2024

## CERTIFICATE OF INTERESTED PERSONS

No. 24-60040, *Intuit Inc. v. Federal Trade Commission.*

The following listed persons and entities as described in the fourth sentence of Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that members of the Court may evaluate possible recusal.

Intuit Inc. has no parent corporation, and no publicly held corporation is known to own 10% or more of Intuit's stock.

| Petitioner | Counsel |
|------------|---------|
| Intuit Inc. | Howard M. Shapiro |
| | Jonathan E. Paikin |
| | Daniel S. Volchok |
| | David Z. Gringer |
| | Derek A. Woodman |
| | WILMER CUTLER PICKERING |
| | HALE AND DORR LLP |

| Defendants-Appellees | Counsel |
|----------------------|---------|
| Federal Trade Commission | Mariel Goetz |
| | Bradley Grossman |
| | FEDERAL TRADE COMMISSION |

/s/ Daniel S. Volchok
DANIEL S. VOLCHOK

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS ..........................................................i

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ................................................................................1

STATEMENT ...................................................................................5

    **A.**    Free TurboTax Products...................................................5

    **B.**    Free-Product Advertising .................................................6

    **C.**    Multi-State Consent Order ................................................11

    **D.**    Procedural History.........................................................11

LEGAL STANDARD ...........................................................................13

ARGUMENT ....................................................................................13

**I.**    Intuit's Appeal Will Likely Succeed ......................................13

    **A.**    Binding Precedent Establishes The FTC Proceeding's
        Unconstitutionality .................................................13

    **B.**    Additional Constitutional Defects Infected The
        Proceeding ............................................................15

    **C.**    The FTC's Deception Holding Is Infirm.............................19

    **D.**    The Cease-And-Desist Order Cannot Stand .......................24

**II.**    Intuit Faces Irreparable Harm Without A Stay...............................28

**III.**    The Remaining Factors Favor A Stay .........................................30

CONCLUSION .................................................................................31

CERTIFICATE OF CONFERRAL

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996) ...................................18

*American Home Products Corp. v. FTC*, 695 F.2d 681 (3d Cir. 1982) ............22, 27

*Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023) ..............................14, 15, 18, 28

*Boumediene v. Bush*, 553 U.S. 723 (2008) .................................................................1

*Burgess v. FDIC*, 871 F.3d 297 (5th Cir. 2017) .................................................29, 30

*Castillo-Gutierrez v. Garland*, 43 F.4th 477 (5th Cir. 2022) ..................................14

*Cinderella Career & Finishing Schools, Inc. v. FTC*, 425 F.2d 583
(D.C. Cir. 1970) ....................................................................................................17

*Clarke v. CFTC*, 74 F.4th 627 (5th Cir. 2023)........................................................21

*Cochran v. SEC*, 20 F.4th 194 (5th Cir. 2021) (en banc) .....................................1, 2

*Coit Independence Joint Venture v. Federal Savings & Loan
Insurance Corp.*, 489 U.S. 561 (1989) ..............................................................18

*Collins v. Yellen*, 141 S.Ct. 1761 (2021) .................................................................14

*Davis v. HSBC Bank Nevada, NA*, 691 F.3d 1152 (9th Cir. 2012) .........................24

*Dinan v. Sandisk LLC*, 2019 WL 2327923 (N.D. Cal. May 31, 2019) ..................22

*Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016) .................................................23

*Environmental Conservation Organization v. City of Dallas*, 529 F.3d
519 (5th Cir. 2008) ..............................................................................................25

*Fast Food Workers Committee v. NLRB*, 31 F.4th 807 (D.C. Cir.
2022) .....................................................................................................................16

*FCC v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012) ....................................21

*Fedders Corp. v. FTC*, 529 F.2d 1398 (2d Cir. 1976)............................................27

*Franciscan Alliance, Inc. v. Becerra*, 47 F.4th 368 (5th Cir. 2022)......................29

*FTC v. Mary Carter Paint Co.*, 382 U.S. 46 (1965)................................................21

*FTC v. Ruberoid Co.*, 343 U.S. 470 (1952) ......................................................1, 24

*Harris v. Las Vegas Sands LLC*, 2013 WL 5291142 (C.D. Cal.
   Aug. 16, 2013) .................................................................................................24

*Illumina, Inc. v. FTC*, 88 F.4th 1036 (5th Cir. 2023) .......................................15, 19

*Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022) ...............................................4, 13, 19

*Lucia v. SEC*, 585 U.S. 237 (2018) ........................................................................14

*Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021) ........................................24

*National Institute of Family & Life Advocates v. Becerra*, 138 S.Ct.
   2361 (2018).......................................................................................................27

*Nken v. Holder*, 556 U.S. 418 (2009) .....................................................................30

*North Texas Specialty Physicians v. FTC*, 528 F.3d 346 (5th Cir.
   2008) .................................................................................................................13

*Paulsson Geophysical Services, Inc. v. Sigmar*, 529 F.3d 303 (5th Cir.
   2008) .................................................................................................................29

*Resort Car Rental System, Inc. v. FTC*, 518 F.2d 962 (9th Cir. 1975)..................23

*S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232 (2d Cir. 2001) ..................22

*Schokbeton Industries, Inc. v. Schokbeton Products Corp.*, 466 F.2d
   171 (5th Cir. 1972) ...........................................................................................29

*Sierra Club v. Espy*, 822 F.Supp. 356 (E.D. Tex. 1993) ..........................................2

*Stern v. Marshall*, 564 U.S. 462 (2011)..................................................................18

*United States v. H&R Block, Inc.*, 833 F.Supp.2d 36 (D.D.C. 2011)......................22

*United States v. W.T. Grant Co.*, 345 U.S. 629 (1953)............................................24

*Valley v. Rapides Parish School Board*, 118 F.3d 1047 (5th Cir. 1997)................28

*Wages & White Lion Investments, LLC v. FDA*, 16 F.4th 1130
    (5th Cir. 2021) ............................................................13

*Washington v. Hyatt Hotels Corp.*, 2020 WL 3058118 (N.D. Ill. June
    9, 2020) ...................................................................24

*Weaver v. Massachusetts*, 582 U.S. 286 (2017) .............................14

*Williams v. Pennsylvania*, 579 U.S. 1 (2016) ...........................15

## ADMINISTRATIVE PROCEEDINGS

*Book-of-the-Month Club*, 48 F.T.C. 1297 (1952)..........................21

*Encyclopaedia Britannica, Inc.*, 87 F.T.C. 421 (1976) .........................23

*Grolier, Inc.*, 99 F.T.C. 379 (1982) ...........................................24

## DOCKETED CASES

*Illumina, Inc. v. FTC*, No. 23-60167 (5th Cir.).........................18

## STATUTES, RULES, AND REGULATIONS

5 U.S.C.
    §706 .....................................................................13
    §1202 ...................................................................14
    §7521 ...................................................................14

15 U.S.C. §45 .................................................................12, 13, 21

16 C.F.R.
    §3.26 ....................................................................11
    §251.1 ..................................................................22

17 C.F.R. §201.411 ...........................................................14

60 Fed. Reg. 39,640 (Aug. 3, 1995).........................................16

## OTHER AUTHORITIES

FTC, *.com Disclosures* (Mar. 2013), https://www.ftc.gov/system/files/
    documents/plain-language/bus41-dot-com-disclosures-informa
    tion-about-online-advertising.pdf....................................21

*FTC Policy Statement on Deception*, 103 F.T.C. 174 (1983).................................22

## INTRODUCTION

The Federal Trade Commission's proceeding against Intuit Inc. exemplifies the dangers of unchecked agency adjudication. After acting as both accuser and adjudicator of the claim they themselves chose to bring, FTC administrators misapplied the law to conclude that Intuit's ads were deceptive. The agency was also biased: The FTC Chair (i.e., the lead adjudicator) repeatedly made negative remarks about Intuit (including agreeing that it was an "evil actor") during the matter's pendency (showing her pre-judgment), and then refused to recuse herself. And the commissioners, in denying FTC counsel's motion for summary decision, effectively instructed their administrative law judge (ALJ) to rule against Intuit. This slanted process is why FTC counsel—Complaint Counsel—have not lost before the commissioners in almost *thirty years*.

None of this is the regime the Constitution's Framers envisioned. "[D]istrust[ing] of governmental power," they enacted a "constitutional plan that allocated powers among three independent branches." *Boumediene v. Bush*, 553 U.S. 723, 742 (2008). But over time, "administrative bodies"—of which the Federal Trade Commission is a "perfect example"—emerged to form "a veritable fourth branch." *FTC v. Ruberoid Co.*, 343 U.S. 470, 487 (1952) (Jackson, J., dissenting). These bodies were designed "to operate in a separate, anti-constitutional, and anti-democratic space." *Cochran v. SEC*, 20 F.4th 194, 214

(5th Cir. 2021) (en banc) (Oldham, J., concurring) (subsequent history omitted). But "[t]hat is obviously not how our government is supposed to work." *Id.* And it is courts that must ensure it does *not* work that way. As a district judge in this circuit explained:

> [F]ederal courts have an obligation to insure that [administrative] agencies obey valid congressional prescriptions. When a federal court fails to prevent and correct statutory violations by excessively self-aggrandized, run-amok executive agencies, Congress' (and the people's) purposes are frustrated, and, more generally, the rule of law itself is subverted.

*Sierra Club v. Espy*, 822 F.Supp. 356, 370 (E.D. Tex. 1993) (subsequent history omitted).

As noted, the commissioners' decision here demonstrates that these concerns are well founded. The cease-and-desist order the commissioners imposed on Intuit should be stayed while Intuit finally has a chance to present its arguments to impartial arbiters outside the FTC.

I.    Intuit offers online tax-preparation products under the brand TurboTax. Several TurboTax products are free to anyone who qualifies to use them—and over ten *million* consumers file their taxes annually for free using TurboTax.

The TurboTax free-product advertisements challenged here told consumers both that the products are available to qualifying consumers (usually described as

those with "simple tax returns") and where to find more information about qualifications.

The FTC deemed it deceptive to truthfully tell consumers the price of a free product. That conclusion is the product of agency proceedings guided not by the law, but by the commissioners' dogged determination to reach the result they wanted. The commissioners' decision confirms their result-driven approach: It applies an unprecedented heightened legal standard, one seemingly adopted specifically to support the commissioners' desired deception holding here. It also neglects core tenets of deceptive-advertising law (including the requirement to consider advertisements in their entirety) in favor of subjective and piecemeal analysis that ignores evidence inconsistent with deception—including the challenged ads' disclosures and evidence of what reasonable consumers actually believe.

The cease-and-desist order that flowed from the commissioners' unprecedented ruling imposes burdensome mandates regarding Intuit's advertising—including unconstitutionally compelling speech that will harm not only Intuit (vis-à-vis competitors), but also consumers. It imposes these mandates even though a 2022 agreement Intuit reached with the attorneys general of all 50 states and Washington, D.C., already ensures that Intuit's ads will not (as they did not) deceive anyone.

II.    A stay of the FTC's cease-and-desist order pending this Court's review is warranted.

*First*, Intuit will likely succeed on appeal.  Binding precedent—*Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022) (subsequent history omitted)—establishes that the FTC's proceeding against Intuit was (like the analogous proceeding challenged in *Jarkesy*) unconstitutional.  That conclusion is reinforced by Intuit's other constitutional challenges, including its due-process claim that the FTC was biased, and a related due-process claim based on the FTC chairwoman's congressional testimony, while sitting as an appellate jurist here, that Intuit was an "evil actor" and that she "couldn't agree more" that the alleged deception "really hurt[] people."  Intuit's likely success is further reinforced by the legal errors in the commissioners' deception holding and cease-and-desist order.

*Second*, Intuit faces irreparable constitutional, reputational, and competitive harms absent a stay.

*Third*, the public interest supports a stay.  Unlawful agency action is not in the public interest and the commissioners' order, as noted, will likely harm, not help, consumers.

## STATEMENT

### A.   Free TurboTax Products

Intuit's online tax-preparation products offer different levels of assistance for tax situations of varying complexity.  Respondent's Proposed Findings (RPF) ¶¶60-66.[1]

Several TurboTax products are free, including a product called Free Edition. RPF¶67.  The free products in the challenged advertising are available to consumers with "simple tax returns." *Id.*  That is a government-originated and industry-standard term meaning returns filed on the most basic form the IRS offers. RPF¶¶119, 141-142.  Consumers with more complex returns cannot pay to use those free TurboTax products; the products are simply unavailable to those consumers.  RPF¶¶69-72.

Each year, over 60 million taxpayers have simple tax returns and thus qualify to use Free Edition.  RPF¶¶127-128.  Over 10 million do so annually. RPF¶¶113-117.  Intuit offers free products to help taxpayers file their taxes for free and to establish relationships with customers, who Intuit hopes will have a good experience and thus use its paid products if their tax situations later become more complex.  RPF¶83.

---

[1] This motion cites the administrative record, which is due to be filed with this Court March 4.

### B.    Free-Product Advertising

Intuit advertises its free TurboTax products.  The ads the FTC challenged here—ads no longer running—stated that the advertised product was available to consumers with "simple tax returns" (or similar language).  RPF¶126.  They also invited consumers to visit (or linked directly to) TurboTax.com to "see if [they] qualify" or "see details."  RPF¶469.

The challenged ads ran on television, online, paid-search, email, radio, and elsewhere.  RPF¶¶178-182.  Exemplary screenshots follow:



Ex.D-1 (television); *see also* RPF¶294 (radio ads).



Ex.D-2 (online display).



Ex.D-3 (paid search).



Ex.D-4 (email).

TurboTax.com has at all relevant times provided detailed disclosures regarding eligibility for free TurboTax offers.  These disclosures included statements that the relevant free offers were for simple tax returns only, and color-contrasted hyperlinks inviting consumers to "see if you qualify."  RPF¶¶372-441. When consumers clicked on any such hyperlink, a pop-up provided details about tax situations covered by the free products, as shown below.  RPF¶379.



Ex.D-5.

### C.     Multi-State Consent Order

In 2022, Intuit and 51 attorneys general executed a consent order regarding Intuit's advertising for free-tax-preparation products ("consent order").  Ex.D-6. This order prohibits Intuit from running the advertisements central to the FTC's proceeding (those repeating "free").  *Id.* at 8.  It also requires that TurboTax free-tax-prep advertising prominently disclose the existence and nature of eligibility requirements for the free offer.  *Id.* at 7-8.  And it bars Intuit from misrepresenting any material fact about its tax-preparation products.  *Id.* at 6-7.

### D.     Procedural History

After a nearly three-year investigation, a divided FTC issued an administrative complaint alleging that Intuit's free-tax-prep ads deceived consumers into believing that "TurboTax is free."  Ex.D ¶4.  The commissioners simultaneously filed a complaint and preliminary-injunction motion in district court.  Op.34 (Ex.A).  That motion was denied.  *Id.*

The commissioners subsequently withdrew their administrative complaint pursuant to a regulation (16 C.F.R. §3.26(c)) requiring withdrawal after the FTC unsuccessfully seeks a preliminary injunction.  Ex.E.  But they then reinstated the matter without explanation.  Ex.F.  Complaint Counsel then moved for summary decision—before Intuit could take discovery.  Ex.D ¶5.

The commissioners denied summary decision, but in doing so directed the ALJ to their preferred outcome. For example, they pre-decided a core disputed issue by opining that "[m]any of Intuit's television ads … convey that consumers viewing the ads can file their taxes for free with TurboTax." Ex.K at 11. They also emphasized that Complaint Counsel did not need to produce more evidence at trial to prevail. *Id.* at 16.

At trial, Intuit introduced testimony from its leaders (and supporting documentation) regarding its business strategy and reasonable consumers' understanding of the challenged ads. Intuit also presented four experts' testimony on topics including the perception of reasonable consumers in the tax-preparation industry, why Intuit's economic incentives militate against deception, and the results of a study measuring the efficacy of the challenged ads' disclosures. Complaint Counsel offered two FTC employees (who testified that the ads were distributed) and two experts. The ALJ ruled for Complaint Counsel and issued the cease-and-desist order they had written.

Intuit appealed to the commissioners, who affirmed—largely adopting the cease-and-desist order—and denied a stay pending appeal. Exs.A-B, Ex.P. The order is scheduled to take effect March 25. 15 U.S.C. §45(g)(2).

## LEGAL STANDARD

Four factors govern whether to grant a stay pending appeal: (1) likelihood of success on the merits; (2) irreparable injury to the movant absent a stay; (3) whether other parties will be irreparably injured by a stay; and (4) the public interest. *Wages & White Lion Investments, LLC v. FDA*, 16 F.4th 1130, 1135 (5th Cir. 2021).

This Court must "set aside" a cease-and-desist order that is "not in accordance with law" or otherwise "arbitrary, capricious, [or] an abuse of discretion." 15 U.S.C. §45(c); 5 U.S.C. §706(2). The Court reviews the Commission's "legal … conclusions *de novo*." *North Texas Specialty Physicians v. FTC*, 528 F.3d 346, 354 (5th Cir. 2008).

## ARGUMENT

### I.    INTUIT'S APPEAL WILL LIKELY SUCCEED

#### A.    Binding Precedent Establishes The FTC Proceeding's Unconstitutionality

*Jarkesy* held that the tenure protections enjoyed by Securities and Exchange Commission ALJs were unconstitutional because the ALJs "serve[d] sufficiently important executive functions," and "the restrictions on their removal are sufficiently onerous[] that the President has lost the ability to take care that the laws are faithfully executed." 34 F.4th at 463-464. Because FTC ALJs have

- 13 -

materially indistinguishable removal protections, *see* 5 U.S.C. §§7521(a), 1202(d), the proceedings here were likewise unconstitutional.

The commissioners' principal retort was that *Jarkesy* was wrongly decided. Op.78. A panel of this Court cannot accept that argument. *Castillo-Gutierrez v. Garland*, 43 F.4th 477, 480 (5th Cir. 2022).

The commissioners also responded that under *Collins v. Yellen*, 141 S.Ct. 1761 (2021), proof of prejudice is necessary to vacate action taken by officials with unconstitutional tenure protection. Op.78-79. But prejudice need not be shown with errors that "affect[] the framework within which the trial proceeds," or where "the effects of [an] error are simply too hard to measure." *Weaver v. Massachusetts*, 582 U.S. 286, 295 (2017). Both circumstances are present here: The adjudicatory framework was directly affected—in that the trial should not have happened at all—because it was "an illegitimate proceeding[] led by an illegitimate decisionmaker," *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175, 191 (2023), and it is exceedingly difficult to assess the harms flowing from that error.

*Lucia v. SEC*, 585 U.S. 237 (2018), confirms that prejudice need not be shown here. *Lucia* vacated an SEC adjudication order because the ALJ who issued the initial decision was unconstitutionally appointed. *Id.* at 251. Vacatur was appropriate, the Supreme Court concluded, even though the SEC commissioners issued the challenged order de novo, 17 C.F.R. §201.411(a).

In any event, the injury to Intuit from its participation in the unconstitutional proceeding and the continuing harm from being subjected to the cease-and-desist order, *see infra* pp.28-30, constitute the necessary prejudice.

### B.    Additional Constitutional Defects Infected The Proceeding

In violation of due process, the Commission's proceeding presented "an unconstitutional potential for bias" against Intuit, *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016).

1.    The commissioners "serve[d] as both accuser and adjudicator," *id.*, overseeing the investigation into the challenged conduct, issuing the complaint against Intuit, and then (after the ALJ's decision) deciding the merits of the complaint's accusations.  That combination of functions posed a risk of unconstitutional unfairness, *id.* at 4, 8, which manifested itself in "evidence of actual bias," *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1047 (5th Cir. 2023).

*First*, the commissioners preserved the agency's stellar winning record before them.  The commissioners' "tendency to overwhelmingly agree with their … agency's decisions," *Axon*, 598 U.S. at 197 n.1 (Thomas, J., concurring), has rightly been characterized by a then-commissioner as "a strong sign of an unhealthy and biased institutional process," Ex.D-7 at 6.

*Second*, the proceeding's history shows that the commissioners were determined to reach a pre-ordained result.  After an independent decisionmaker (a

federal judge) denied Complaint Counsel's preliminary-injunction motion, this matter was withdrawn from adjudication. Ex.E. But the commissioners then reinstated the proceeding without addressing the factors previously enumerated as bearing on a decision to do so, 60 Fed. Reg. 39,640, 39,741 (Aug. 3, 1995)— offering only the vague assertion that "the public interest warrants further litigation," Ex.F. Later, the ALJ and commissioners denied Intuit's motions to compel document discovery, inhibiting Intuit's ability to defend itself in the already one-sided proceeding. Exs.H-J. And the commissioners' summary-decision ruling made clear how the ALJ should decide the case, *supra* p.12, i.e., that the commissioners had prejudged the matter.

2.     Prejudgment was confirmed by the conduct of the FTC chairwoman, who, while acting as adjudicator repeatedly made statements outside the administrative process that would lead "a disinterested observer [to] conclude that the agency has in some measure" prejudged the case, *Fast Food Workers Committee v. NLRB*, 31 F.4th 807, 815 (D.C. Cir. 2022). Two such statements occurred shortly after this action was filed, when the chairwoman commented that Intuit's alleged conduct epitomized the "law-breaking" that it was "incredibly important" for the Commission to combat. Ex.D-8 at 6. Then, while the case was before the ALJ, she told Congress that she agreed Intuit was an "evil actor" that was "trick[ing] and trap[ping consumers] into paying," and noted that this matter

- 16 -

concerns "deceptive practices" that she "couldn't agree more … really hurt[]

people." Ex.D-9 at 73-74. Despite these repeated statements, Chair Khan refused

to recuse herself, and her colleagues refused to disqualify her.

Courts have invalidated FTC actions for far milder statements. For example,

the D.C. Circuit held that a commissioner's public insinuation that an industry

engaged in deceptive practices required recusal from a proceeding against a

company in that industry, because such statements can "entrench[] a Commissioner

in a position which he has publicly stated, making it difficult, if not impossible, for

him to reach a different conclusion … after consideration of the record."

*Cinderella Career & Finishing Schools, Inc. v. FTC*, 425 F.2d 583, 584-585, 590

(D.C. Cir. 1970). The chairwoman's statements here were much worse. Yet her

colleagues blessed her statements after positing that "a disinterested observer

would plainly understand that Chair Khan was [not] describing … her personal

views." Ex.L at 5. That conclusion is untenable given her assertion that "*I*

couldn't agree more" that Intuit's conduct "really hurt[] people." Ex.D-9 at 74

(emphasis added). The commissioners rejected this bias challenge with no further

explanation than it had previously offered, Op.74, compounding their erroneous

denial of Intuit's motion to disqualify the chairwoman, whose participation tainted

the entire administrative proceeding.

3.    The FTC proceeding also violated Article III, under which "Congress may not 'withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty,'" *Stern v. Marshall*, 564 U.S. 462, 484 (2011).  The Constitution thus "reserve[s] to Article III courts" claims that "involve 'private rights,'" *Coit Independence Joint Venture v. Federal Savings & Loan Insurance Corp.*, 489 U.S. 561, 578-579 (1989), i.e., *all* rights except those that "'historically could have been determined exclusively by' [other] branches," *Stern*, 564 U.S. at 493.  Advertising is not a right historically within the exclusive control of the legislature or executive; Intuit's ability to advertise is instead "integral" to "liberty," *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 522 (1996) (Thomas, J., concurring), and hence a "core private right[,]" *Axon*, 598 U.S. at 197 (Thomas, J., concurring).  As such, "responsibility for deciding [deceptive-advertising claims] rests with Article III judges." *Stern*, 564 U.S. at 484.

The commissioners asserted that Intuit "waived this defense by failing to raise it until after trial."  Op.79.  But Intuit raised the argument to both the ALJ and the commissioners, *e.g.*, *id.*; no FTC rule or other authority requires more.  Indeed, this Court rejected an analogous waiver argument in *Illumina*, *see* FTC Brief, *Illumina, Inc. v. FTC*, 2023 WL 5097165, at *60 (5th Cir. July 26, 2023),

addressing the merits of a supposedly waived non-delegation argument, *see* 88 F.4th at 1046.

The commissioners' substantive rationale for rejecting this argument conflicts with circuit precedent. *Jarkesy* held that the SEC's claims involved private rights even though "the government [wa]s a party" and the statutes involved "are designed to protect the public at large." 34 F.4th at 456-457. By focusing here on the fact that this case is "between the government and a party subject to its authority, [regarding a] matter … connected to the FTC's regulation of … business practices that harm consumers," Op.79, the commissioners committed the same "question-begging" rejected by *Jarkesy*, 34 F.4th at 457.

## C.    The FTC's Deception Holding Is Infirm

Intuit's appeal is independently likely to succeed because the Commission's deception holding is contrary to law. No prior case deems it deceptive to tell consumers a product's true price. That is what the challenged ads did: truthfully stated that a free product was free while disclosing the offer's qualifications. *See supra* pp.6-8. That fact suffices to vacate the FTC's decision.

Were more needed, the commissioners concluded there was deception here despite the absence of traditional indicia of deception. For example, although over 85 *million* consumers used TurboTax between 2016 and 2022, RPF¶631, the FTC offered only 228 potentially relevant consumer complaints from that period, Ex.G

at 3—a miniscule 0.0003%. That translates to about 0.0025 complaints per 1,000 consumers, drastically lower than the range of 0.35 to 143.8 complaints per 1,000 consumers that FTC economist Devesh Raval found underlay prior FTC deception holdings. Ex.D-10 at 171. The commissioners asserted that the 0.0025 figure "ignores" certain complaints, Op.57 n.40, but the figure is based on the same complaint sources as Dr. Ravel's analysis, *see* Ex.D-10 at 171. Nor is there merit to the commissioners' claim that "complaint rates tend to fall as the number of affected consumers rises," Op.57 n.40; Dr. Ravel found that even companies with many millions of consumers (like Intuit) had complaint rates nearly 150 times Intuit's, Ex.D-10 at 170-171 & Table 1.

Customer reviews at TurboTax.com likewise show miniscule rates of feedback suggesting deception on this (or any) issue: Negative reviews, for example, accounted for less than 0.01% of customers in Tax Years 2020 and 2021. Respondent's Reply Findings (RRF) ¶¶641-642. Meanwhile, Intuit maintained an industry-leading customer-retention figure of over 80% for its paid products, and earned industry-leading customer-experience scores. RPF¶¶649-658.

The commissioners reached their outlier deception holding in the face of this evidence by making four legal errors.

*First*, the commissioners ruled that because the challenged ads contained "a 'free' message," they triggered a "particularly strong" legal standard, requiring

disclosure in the ad itself of the precise terms associated with the free offer. Op.45; *see also* Op.45-46.  But the FTC Act does not distinguish between free claims and others.  15 U.S.C. §45(a)(4).  Nor is a heightened standard supported by the cases the commissioners cited, Op.45, which concerned products that were advertised as "free" to everyone but were not free for *anyone*—meaning the price claim was false.  *See FTC v. Mary Carter Paint Co.*, 382 U.S. 46, 49 (1965); *Book-of-the-Month Club*, 48 F.T.C. 1297, 1299 (1952).  A heightened standard also conflicts with FTC guidance, which contains no free-product exception to the principle that ads need only disclose the "nature and relevance" of limitations, and that if "price" details "are too complex to describe adjacent to the [relevant] claim, they may be provided by using a hyperlink."  FTC, *.com Disclosures* at 10, A-8 (Mar. 2013).[2]  The commissioners provided no justification for disregarding their guidance and applying a new standard, rendering their decision both arbitrary and capricious, *Clarke v. CFTC*, 74 F.4th 627, 641 (5th Cir. 2023), and inconsistent with due process, *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 254 (2012).

*Second*, the commissioners analyzed the challenged ads piecemeal.  In fact, the commissioners *admit* that they "excerpted selected portions" of the ads (specifically their "most problematic components") and considered "other elements

---

[2] https://www.ftc.gov/system/files/documents/plain-language/bus41-dot-com-disclosures-information-about-online-advertising.pdf.

of the ad[s]" only "after" assessing those "most problematic components." Op.38 n.17. This violates the requirement "that the Commission look[] to the impression made by the advertisements as a whole," *American Home Products Corp. v. FTC*, 695 F.2d 681, 688 (3d Cir. 1982); *accord FTC Policy Statement on Deception*, 103 F.T.C. 174, 176 (1983). While the commissioners *claimed* that their conclusions were "based on a review of each ad in its entirety," Op.38 n.17, what matters is not what they said but what they did. As to the latter, there is no doubt: Again, the commissioners *admit* to engaging in precisely the type of "disputatious dissection" that the law forbids, *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001).

*Third*, the commissioners failed to analyze the challenged ads "from the perspective of a consumer acting reasonably in the circumstances," *FTC Policy Statement*, 103 F.T.C. at 175. The proper analysis in a deceptive-advertising case "starts with the background knowledge of the reasonable consumer." *Dinan v. Sandisk LLC*, 2019 WL 2327923, at *6 (N.D. Cal. May 31, 2019). Instead, the commissioners disregarded (1) their own guidance stating that the "public understands" that free offers are typically qualified, 16 C.F.R. §251.1(b)(1); (2) the fact that qualified free offers like Intuit's have been "an entrenched part of the [online tax-prep] market" for more than two decades, *United States v. H&R Block, Inc.*, 833 F.Supp.2d 36, 46-48 (D.D.C. 2011); and (3) that "reasonable

consumer[s]" are deemed as a matter of law to understand terms or concepts that are "commonplace in the [relevant] market," *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)—which in this context includes "simple tax returns." Indeed, Complaint Counsel offered no evidence about what reasonable consumers in the online-tax-preparation market understood. By contrast, Intuit offered ample evidence that reasonable consumers were unlikely to be deceived because (a) they understood both that free offers (including free tax-prep offers) were qualified and that free tax-prep offers were available for consumers with simple tax returns, and (b) "simple tax returns" was widely used in the online-tax-preparation field—by both companies and the IRS—and understood by consumers. Ex.D-11 at 729-730, 744-745, 750, 759-760; Ex.D-12 at 1063-1065, 1088-1096, 1105-1108, 1121-1126; Ex.D-13 ¶¶108-113, 163-167; RPF¶¶119, 141-142. This evidence established that reasonable consumers were unlikely to incorrectly conclude that TurboTax was necessarily free for them, as the FTC's ruling assumes.

*Fourth*, the commissioners—to justify ignoring the detailed disclosures provided on TurboTax.com, *supra* pp.9-10—relied on the "deceptive door-opener" theory. Op.47. That theory derives from cases where ads either lured consumers to a physical facility under false pretenses, *Resort Car Rental System, Inc. v. FTC*, 518 F.2d 962, 964 (9th Cir. 1975) (per curiam), or induced consumers to literally open doors so that salespeople could enter their homes, *Encyclopaedia Britannica,*

*Inc.*, 87 F.T.C. 421, 496 (1976); *see also Grolier, Inc.*, 99 F.T.C. 379, 383 (1982).

By applying that theory to *online* transactions, the commissioners violated the

established principle that deceptive-advertising claims must account for

"information readily available to the consumer," *Moore v. Trader Joe's Co.*, 4

F.4th 874, 882 (9th Cir. 2021).  Other courts—honoring this principle—have

rejected deception claims in the online context, even where information was

revealed later than in the challenged ads and on TurboTax.com.  *See Davis v.*

*HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1170 (9th Cir. 2012); *Washington v.*

*Hyatt Hotels Corp.*, 2020 WL 3058118, at *5 (N.D. Ill. June 9, 2020); *Harris v.*

*Las Vegas Sands LLC*, 2013 WL 5291142, at *2, *5-6 (C.D. Cal. Aug. 16, 2013).

## D.    The Cease-And-Desist Order Cannot Stand

Even if any challenged ad were deceptive, the cease-and-desist order would

be unlawful.  Such orders are permitted only where there is "some cognizable

danger of recurrent violation," *United States v. W.T. Grant Co.*, 345 U.S. 629, 633

(1953), i.e., danger of "illegal practices *in the future*," *Ruberoid*, 343 U.S. at 473.

No such danger exists here.

*First*, the consent order guarantees that future TurboTax ads will not be

deceptive.  That order—which overlaps significantly with the commissioners'—

prohibits Intuit from running any of the (already discontinued) challenged ads, and

requires Intuit's free-tax-prep ads to prominently disclose qualifications.  *Supra*

p.11.  The commissioners' conclusion that a risk of future deception exists thus

disregards the views of the top law-enforcement officer in every state (and D.C.).

The commissioners' response—that the consent order constitutes "voluntary

cessation" and thus "does not render a cease-and-desist order inappropriate,"

Op.84—fails.  The "voluntary cessation" doctrine does not apply where, as here,

conduct is constrained by a "court-approved consent decree."  *Environmental

Conservation Organization v. City of Dallas*, 529 F.3d 519, 528 (5th Cir. 2008).

*Second*, free TurboTax ads since the consent order (illustrated below) are not

deceptive.  RPF¶¶335-352.  Indeed, the only evidence concerning them (consumer

testing) *refutes* any deception.  RPF¶804.



Ex.D-14.



Ex.D-15.

  *Third*, the cease-and-desist order unconstitutionally compels speech,

requiring Intuit's ads to state either the percentage of *all U.S. taxpayers* who

qualify for the free offer or that free TurboTax products are "not Free for a

majority of U.S. taxpayers."  That requirement must withstand heightened First

Amendment scrutiny because it is misleading—because most consumers *in the*

*online-tax-preparation market* qualify for free TurboTax products, RPF¶129—and not "noncontroversial," *National Institute of Family & Life Advocates v. Becerra*, 138 S.Ct. 2361, 2372 (2018). Compelling such statements is "presumptively unconstitutional," and the FTC has not overcome that presumption by "prov[ing] that [the requirement is] narrowly tailored to serve compelling [governmental] interests," *id.* at 2371.

Even if the compelled speech were uncontroversial, the compulsion would fail constitutional scrutiny because it is "unjustified" and "unduly burdensome," *id.* at 2372. Intuit's ads already disclose the products' qualifications, and the commissioners offered no evidence that the compelled speech is necessary to avoid (or would avoid) confusion. And including the misleading disclaimer at the outset of ads that already include disclosures would be unduly burdensome given that ad space is limited. Ex.C ¶¶6-7. The burden is especially weighty given that Intuit's competitors, each of whom advertises a free tax-prep product for consumers with "simple returns," would not similarly be compelled.

*Finally*, provisions of the cease-and-desist order inappropriately encompass products not at issue in the FTC administrative proceeding. Such an order must be reasonably tethered to the challenged practice, *American Home*, 695 F.2d at 710-711, a requirement that often "require[s] the narrowing of deceptive advertising orders" to "more closely relate to the offending conduct," *Fedders Corp. v. FTC*,

529 F.2d 1398, 1402 (2d Cir. 1976).  Here, there were no allegations or evidence about non-TurboTax products that supports the order's application to those products.  The commissioners' speculation that Intuit's conduct *could* "be easily transferred to other products," Op.89, does not justify the order's multi-product scope.

## II.    INTUIT FACES IRREPARABLE HARM WITHOUT A STAY

Without a stay, the cease-and-desist order will irreparably harm Intuit.

*First*, the order flows from an unconstitutional adjudication.  *Supra* pp.13-19.  Being subjected to such an order is irreparable harm.  *Valley v. Rapides Parish School Board*, 118 F.3d 1047, 1056 (5th Cir. 1997).

*Second*, the order subjects Intuit to *ongoing* burdensome oversight for twenty years by an unconstitutional agency.  Ex.C ¶10.  Indeed, the order lets the commissioners bypass Intuit's counsel and contact company employees directly to seek information.  Ex.B §VI.B.  "'[B]eing subjected' to 'unconstitutional agency authority' … is 'a here-and-now injury,'" that "is impossible to remedy" later.  *Axon*, 598 U.S. at 191.

*Third*, the cease-and-desist order will inflict reputational and competitive harm.  Intuit has positive long-term relationships with millions of consumers, founded on trust.  RPF¶91; Ex.C ¶20.  The order undermines that reputation and consumer goodwill, baselessly tarring Intuit as a company that misleads

consumers. *Id.* ¶¶21-22. Additionally, only Intuit—i.e., no others offering online tax-prep products—will be subject to the order's mandate to use confusing and burdensome disclosures, a substantial competitive disadvantage. *Id.* ¶¶8, 23-25. These harms are irreparable. *Paulsson Geophysical Services, Inc. v. Sigmar*, 529 F.3d 303, 313 (5th Cir. 2008) (goodwill); *Burgess v. FDIC*, 871 F.3d 297, 304 (5th Cir. 2017) (reputation); *Schokbeton Industries, Inc. v. Schokbeton Products Corp.*, 466 F.2d 171, 177 (5th Cir. 1972) (competitive disadvantage).

*Finally*, the order's compelled-speech provision inflicts another irreparable injury; the loss of First Amendment freedoms "constitute[s] per se irreparable harm," *Franciscan Alliance, Inc. v. Becerra*, 47 F.4th 368, 380 (5th Cir. 2022).

These harms are exacerbated by the order's timing. Absent a stay, the order will take effect March 25, Ex.P at 1, approximately twelve weeks into the tax season and three weeks from the tax-filing deadline. Intuit thus faces the prospect of having to ensure its compliance with the order during the final stretch of tax season, when its resources are (and should be) focused on ensuring that millions of Americans can file their tax returns on time. Ex.C ¶27. Meanwhile, those costly efforts will have little or no impact on consumers, given the short time the changes would be in place. *Id.* These timing harms, moreover, are especially unjust because the FTC's own repeated delays caused them. For example, even setting aside the three years it took to issue a complaint, *supra* p.11, the Commission

waited three months to return the matter to adjudication after a federal court denied its preliminary-injunction motion, Exs.F-G, held oral argument after the regulatory deadline had passed, Op.2; 16 C.F.R. §3.52(a)(1), and gave itself an extra fifteen days to decide Intuit's appeal, Exs.O-P.

## III.  THE REMAINING FACTORS FAVOR A STAY

Because the government is the respondent, the final two stay factors (harm to the opposing party and public interest) merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

The "public interest … does not weigh against a stay" when, like here, "the constitutionality of the structure of the fact-finding procedure on which [the agency] relies lies at the heart of the motion." *Burgess*, 871 F.3d at 304. Consistent with this rule, the record shows that a stay would benefit the public. Absent a stay, the order would compel Intuit to: (1) include confusing disclosures in its ads, likely leading to many consumers mistakenly believing they do not qualify for a free offer and failing to take advantage of that free tax-filing option, Ex.C ¶¶11-19; and (2) potentially restrict Intuit from advertising its free products in certain mediums, reducing awareness of its free offerings, again preventing taxpayers who qualify to file for free from doing so, *id.* ¶7. Such consumer confusion would be worsened if the order were to take effect only to later be vacated after judicial review. *Id.* ¶19. Preventing this harm is in the public

interest.  By contrast, consumers face no risk of deception from a stay because the consent order already prohibits Intuit from running the challenged ads, and Intuit's current ads are not deceptive.  *Supra* pp.24-26.

**CONCLUSION**

The FTC's order should be stayed.

March 1, 2024                              Respectfully submitted,

                                          /s/ Daniel S. Volchok
                                          DANIEL S. VOLCHOK
                                          HOWARD M. SHAPIRO
                                          JONATHAN E. PAIKIN
                                          DEREK A. WOODMAN
                                          WILMER CUTLER PICKERING
                                              HALE AND DORR LLP
                                          2100 Pennsylvania Avenue N.W.
                                          Washington, D.C. 20037
                                          (202) 663-6000

                                          DAVID Z. GRINGER
                                          WILMER CUTLER PICKERING
                                              HALE AND DORR LLP
                                          7 World Trade Center
                                          250 Greenwich Street
                                          New York, N.Y. 10007
                                          (212) 230-8800

## CERTIFICATE OF CONFERRAL

I contacted all other parties.  An opposition will be filed.

/s/ Daniel S. Volchok
DANIEL S. VOLCHOK

## CERTIFICATE OF COMPLIANCE

According to the word-count feature of the word-processing program with

which it was prepared, the foregoing motion contains 5,198 words, excluding the

portions exempted by Federal Rules of Appellate Procedure 27(d)(2) and 32(f).

/s/ Daniel S. Volchok
DANIEL S. VOLCHOK