# EXHIBIT C

UNITED STATES OF AMERICA
BEFORE THE FEDERAL TRADE COMMISSION

COMMISSIONERS:    Lina M. Khan, Chair
Rebecca Kelly Slaughter
Alvaro M. Bedoya

| | |
|---|---|
| **In the Matter of:** <br><br> **Intuit Inc.,** a corporation. | **Docket No. 9408** |

**DECLARATION OF NICK SOUKAS IN SUPPORT OF RESPONDENT INTUIT INC.'S APPLICATION FOR A STAY PENDING REVIEW BY THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT**

I, Nick Soukas, declare as follows:

1. I submit this declaration in support of Intuit's application for a stay, pending judicial review, of the Federal Trade Commission's cease-and-desist order in this case (the "Order").

2. Since June 2023, I have served as Senior Vice President of Marketing at Intuit. From 2020 to 2023, I served as Vice President and Growth Leader for Business Management and Strategy at Intuit.

3. In my role as Senior Vice President of Marketing at Intuit, I have both deep familiarity and substantial experience with Intuit's advertising for its TurboTax-branded tax-preparation software.

4. Based on this experience and familiarity, and on my review of Intuit's relevant documents and data, I have personal knowledge of the facts set forth below.

1

## I.   ACTIONS REQUIRED TO COMPLY WITH THE FTC'S ORDER

5.   If the Order (which I have reviewed) were to take effect, Intuit would be required to include certain information in its advertisements. Intuit would also need to satisfy numerous compliance and reporting requirements. The provisions of the Order discussed below impose just some of the requirements Intuit would face if the Order takes effect.

### A.   Provision I.B

6.   Provision I.B.1 of the Order requires that Intuit disclose "the percentage of U.S. taxpayers (or other U.S. consumers, where the good or service is not offered exclusively to taxpayers), expressed in Arabic numerals, that qualify for the product." Alternatively, if a free product is not available for a majority of U.S. taxpayers (or consumers), Intuit must disclose that "a majority of U.S. taxpayers (or other U.S. consumers) do not qualify." Intuit believes that its free tax-preparation products *are* free for a majority of the relevant population—those who file their taxes online. This Provision requires Intuit to say something it would not say but for the Order, because Intuit does not believe the compelled language to be helpful or relevant for consumers to understand the qualifications for its free products.

7.   Based on Provision I.B of the Order, in tandem with the definition of "Clearly and Conspicuously," the Order is expected to make it difficult for Intuit to advertise its free online tax-preparation products using certain formats, including the increasingly popular short-video format (i.e., video ads lasting eight seconds or shorter). Short-video ads lasting eight seconds or less are primarily displayed on media and social-media platforms (like YouTube, Instagram, X/Twitter, Snapchat, and TikTok) and target younger audiences, who are more likely to qualify for the free products being advertised compared to the overall U.S. population and the target audience for much of the free advertising. The Order's mandate that all advertisements with visual and audio components include both visual and audible disclosures (even where a free

claim is presented in only one form) is expected to impede Intuit's ability to run ads on these media and social-media platforms where verbal disclosures are difficult to provide or make it harder for Intuit's ads to be effective in those spaces.

8. For years, Intuit has described its Free Edition product as being for "simple tax returns only." Intuit believes that this is the clearest way to describe the qualifications for Free Edition. Intuit's competitors still advertise their free offerings as being for simple returns (even though the Order prohibiting Intuit from doing so is now public), and not being able to do so would thus place Intuit at a competitive disadvantage. To comply with Provision I.B.2, Intuit would seemingly have to include different language describing the qualifications for free TurboTax offers, such as language identifying the specific tax form or forms covered by the offer.

9. If instead the Order never takes effect, Intuit would be able to use the phrase "simple tax returns only" (or similar phrases) that it believes reasonable consumers are familiar with to describe the qualifications for free TurboTax offers.

### B. Provisions III-VI

10. Provisions III-VI of the Order impose various compliance and monitoring requirements on Intuit. If the Order is not stayed pending appeal, Intuit will need to undertake the substantial effort required to ensure compliance with those provisions by the Order's effective date and for 20 years thereafter.

## II. THE ORDER WILL HARM CONSUMERS

11. The ads the FTC challenged in this case communicated that free TurboTax offers were free for consumers who qualified, by identifying the specific offering being advertised, stating that the offer was for "simple tax returns only," and inviting consumers to "see if you qualify" or "see details" at TurboTax.com.

12. Based on my experience, I believe the disclosures the Order appears to mandate would harm consumers by confusing them about who qualifies for free TurboTax offers. That confusion would result in more consumers believing incorrectly that they do not qualify for free TurboTax offers and, thus, fewer consumers filing their taxes for free.

13. In my professional judgment, the disclosures the Order appears to require would likely cause information overload and confusion on the part of consumers. As a result, it is likely that fewer consumers who in fact qualify to use Free Edition would use that free product to file their taxes.

14. The Order's mandate that Intuit replace for 20 years the phrase "simple tax returns only" with qualification language identifying particular IRS forms would also likely harm consumers by causing confusion. Most consumers are not familiar with IRS tax forms and thus are less likely to understand based on references to such forms whether they qualify for a free TurboTax offer.

15. By contrast, I believe based on my experience in the tax-preparation industry that consumers understand the phrase "simple tax returns."

16. That phrase originated with the IRS and has long been used throughout the tax-preparation industry. Thus, consumers are familiar with the phrase and have come to understand what it means.

17. Intuit's research confirms that consumers understand "simple tax returns." *See* RX304.

18. Provision I.B.1 of the Order likewise would harm consumers. The mandated disclosure provides no information about who *does* qualify. Thus, many consumers may read the language and conclude they do not qualify when, in fact, they do.

19. Consumer confusion would be worsened further if the Order were to take effect but then be vacated after judicial review. In that scenario, consumers would receive mixed messages, in short succession, about the qualifications for free TurboTax offers. That would likely result in fewer consumers who qualify to use a free TurboTax offer understanding that they qualify for that offer, resulting in fewer consumers filing their taxes for free.

### III. THE ORDER THREATENS INTUIT WITH REPUTATIONAL HARM AND A LOSS OF CONSUMER GOODWILL

20. Building a long-term relationship with consumers founded on trust is a critical component of Intuit's business strategy. TurboTax relies on a long-term, retention-based growth strategy to attract and retain consumers year over year. Accordingly, Intuit has worked for years to build a positive reputation and long-term relationship with consumers, based on the high-quality nature of its products, the clarity and simplicity with which Intuit advertises those products, and the company's commitment to its core value, "integrity without compromise."

21. The Order would undermine that reputation and associated consumer goodwill by (as discussed) requiring that Intuit use disclosures in its advertisements that are less clear than those it used previously. In the near term, those mandated disclosures are more likely to leave consumers with an unfavorable view of Intuit. In the long term, TurboTax could be harmed by consumers believing they likely do not qualify for a free offer when they do, and otherwise providing consumers with mixed messages about free TurboTax offers. That reputational harm would have a lasting impact on Intuit's ability to effectively advertise Free Edition and other free TurboTax offers.

22. Finally, the Order would injure Intuit's reputation, along with the consumer goodwill that reputation brings, by labeling Intuit a company that misled consumers about whether they are likely to qualify for a free offer. While it has taken Intuit years to develop its

reputation as a trustworthy and values-driven company, and to build lasting relationships with consumers founded on trust, the Order could undo much of that trust in a short period. That is particularly the case in light of the untrue and misleading language the Commission used in its decision. Intuit never knowingly acted to deceive anyone here. If the Commission's decision and order is not stayed, it will be difficult to regain consumer trust, and even if it could be regained, doing so would likely take years.

### IV. HARM TO INTUIT FROM COMPLIANCE WITH THE ORDER

23. If the Order were to take effect, it would cause serious harm to Intuit's competitive standing in the marketplace for online tax-preparation services.

24. For example, Intuit would be competitively disadvantaged by the fact that its competitors would not be subject to the same restrictions, meaning that only Intuit (but none of its competitors) would be unable to use the phrase "simple tax returns" in its free advertising. Intuit is also required to include more information in its disclosures than its competitors, undermining the effectiveness of that advertising and potentially leading many consumers to believe incorrectly that they are unlikely to qualify for TurboTax's free products.

25. As another example, the Order would require lengthier disclosures in paid-search advertising where the available space is limited by the online-search platforms (e.g., Google and Bing). The mandated disclosures will leave less space for Intuit to communicate information about TurboTax products compared to competitors' paid-search ads. The additional disclosure language also could potentially negatively impact the score that the TurboTax ads receive from the online-search platforms, which could result in the ads being shown less prominently compared to competitors' ads.

26. Moreover, should the FTC determine that Intuit's Tax Year 2023 ads do not comply with the Order, Intuit might be unable to modify or replace its advertisements this tax

year, given that the Order was issued so late in the tax season and would become effective just a few weeks before the April 15 tax-filing deadline. Intuit significantly scales back its advertising for its online-tax-preparation products one to two weeks before that deadline, and it would be exceedingly difficult to modify or replace the prohibited ads during the one- to two-week period between the Order's March 23 effective date and when Intuit stops advertising between April 1 and April 8.

27.     Lastly (and relatedly), the harms to Intuit from complying with the Order are more damaging and disruptive to Intuit's business given the Order's timing. The core of tax season runs from the beginning of the calendar year through the tax-filing deadline on April 15. The Order is scheduled to take effect March 23, approximately twelve weeks into the busy tax season and less than a month before the tax-filing deadline. Given that Intuit has been working to develop its marketing and business strategy for Tax Year 2023 since at least June 2023, it would be very difficult and costly to fundamentally alter that advertising and strategy so late in the season if the FTC took the position that Intuit were violating the Order. And the Order's various requirements would be extra burdensome at this time because the end of tax season is the busiest time of the year for Intuit and its employees. Limited company resources would have to be reallocated from serving the taxpayers filing their returns near the end of the tax season—including by providing technical support for TurboTax products, staffing TurboTax's support and customer-service channels, and otherwise ensuring that millions of consumers can file their tax returns (millions of which will be filed for free) before the IRS deadline while providing the best experience possible—to complying with the Order. At the same time, the changes the Order imposes would have relatively little impact on consumers because Intuit typically stops

advertising one to two weeks before the tax-filing deadline. Thus, any changes to Intuit's advertising would be observed for only about two weeks.

I declare under penalty of perjury that the foregoing is true.

Executed on this 30th day of January, 2024 in San Diego.

By: *Nick Soukas*
Nick Soukas (Jan 30, 2024 06:42 PST)
Nick Soukas