# EXHIBIT D

# ATTACHMENT 6

Electronically Received 06/16/2022 02:50 PM

1
2
3
4
5
6
7
8
9
10
11

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| TURBOTAX FREE FILING CASES | JCCP No. 5067 |
| Included Actions: | Included Action Case No. 19STCV15644 |
| THE PEOPLE OF THE STATE OF CALIFORNIA, | |
| Plaintiff, | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**06/25/2022**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ M. Mata _____ Deputy |
| v. | |
| INTUIT INC., a Delaware Corporation; and DOES 1-50, inclusive, | |
| Defendants. | |
| PEOPLE OF THE STATE OF CALIFORNIA, acting by and through Santa Clara County Counsel James R. Williams, | Included Action Case No. 19CV354178 |
| Plaintiff, | [~~PROPOSED~~] **FINAL JUDGMENT AND PERMANENT INJUNCTION** |
| v. | Assigned for All Purposes to<br>The Hon. Maren Nelson<br>Dept.: 17 |
| INTUIT INC., and DOES 1-50, inclusive, | |
| Defendants. | Complaints filed: May 6, 2019; Sept. 5, 2019<br>Trial Date: None Set |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit RX 261**

1

1  The People of the State of California ("People"), acting by and through, Rob Bonta,

2  Attorney General of the State of California; Michael N. Feuer, the Los Angeles City Attorney;

3  and James R. Williams, the County of Santa Clara County Counsel; and Intuit Inc. ("Intuit" or

4  "Defendant"), appearing through its attorney, David Z. Gringer of Wilmer Cutler Pickering Hale

5  and Dorr LLP, having stipulated to the entry of this Judgment by the Court without the taking of

6  proof and without trial or adjudication of any fact or law, without this Judgment constituting

7  evidence of or an admission by Defendant regarding any issue of law or fact alleged in the

8  People's Complaints, without Defendant admitting any liability regarding allegations of

9  violations that occurred prior to entry of this Judgment, and with all parties having waived their

10  right to appeal, and the Court having considered the matter and good cause appearing:

11  **IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

12  1.      This Court has jurisdiction over the allegations and subject matter of the People's

13  Complaints filed in these coordinated cases and the parties to these cases; venue is proper in this

14  County; and this Court has jurisdiction to enter this Judgment.

15  2.      Nothing in this Judgment alters the requirements of federal or state law to the

16  extent they offer greater protection to consumers.

17  **DEFINITIONS**

18  3.      For the purpose of this Judgment, the following definitions apply:

19  A.      "**Advertisement**" or "**Advertising**" means any written or verbal statement,

20  illustration, or depiction that promotes the sale or use of a consumer good or service, or is

21  designed to increase consumer interest in a brand, good, or service. Advertising media includes,

22  but is not limited to promotional materials; print; television; radio; and Internet, Paid Display

23  Advertisements, Paid Search Advertisements, display, social media, and other digital content.

24  B.      "**Clearly and Conspicuously**" means that a required disclosure is difficult

25  to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all

26  of the following ways.

27  1)      In any communication that is solely visual or solely audible, the disclosure

28  must be made through the same means through which the communication

is presented. In any communication made through both visual and audible means, such as a television Advertisement, the disclosure must be presented in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means (the disclosures in the visual and audible portions of the communication in Space-Constrained Video Advertisements are not required to be identical).

2) A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3) An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

4) In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5) The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires disclosure appears.

6) The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7) The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8) When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

C. "**Close Proximity**" means that the disclosure is very near the triggering

3

representation and that the disclosure is made simultaneously with the triggering representation and remains or is repeated throughout the duration of the Advertisement. For example, a disclosure made through a hyperlink, pop-up, interstitial, or other similar technique is not in Close Proximity to the triggering representation.

D.      "**Effective Date**" means the date on which the Court enters this Judgment.

E.      "**Intuit IRS Free File Product**" means Intuit's TurboTax Free File Program, TurboTax Freedom Edition, IRS Free File Program delivered by TurboTax or any other Intuit product or service that was or in the future may be provided pursuant to a memorandum of understanding or an agreement between Free File, Inc. (or any successor entity) and the IRS for the provision of free online tax preparation and e-filing services.

F.      "**Oversight Committee**" shall mean the following Attorneys General: Florida, Illinois, New Jersey, New York, North Carolina, Pennsylvania, Tennessee, Texas, and Washington.

G.      "**Paid Display Advertisement**" means an online Advertisement in which Intuit pays, or causes another to pay, to have an Advertisement displayed on a website and pays for the Advertisement, regardless of whether consumers click on the Advertisement.

H.      "**Paid Search Advertisement**" means an online Advertisement in which Intuit pays, or causes another to pay, to have an Advertisement displayed with search engine results for a particular search term and pays for the Advertisement only when consumers click on the Advertisement.

I.      "**Covered Consumer**" means any individual, or individuals if a joint return was filed, who in Tax Years 2016, 2017, or 2018 was (1) eligible to use an Intuit IRS Free File Product; (2) began his or her tax returns using a TurboTax Free Edition Product; (3) was informed that he or she was ineligible to use a TurboTax Free Edition Product; (4) subsequently paid to use a TurboTax Paid Product, and (5) had not used the Intuit IRS Free File Product in a previous tax year.

J.      "**Space-Constrained Advertisement**" means any online Advertisement (including but not limited to Paid Display Advertisements and Paid Search Advertisements) or

4

any Video Advertisement that has space, time, format, size, or technological restrictions that limit Intuit from being able to make the disclosures required by this Judgment. Intuit bears the burden of showing that there is a constraint or insufficient space and time to make a required disclosure that is Clear and Conspicuous and in Close Proximity to the triggering term. Space-Constrained Advertisements do not include Advertisements on a TurboTax Website.

K.    "**TurboTax Free Edition Product**" means any online software product offered by Intuit that allows consumers, without paying a fee, to prepare and file federal tax returns, state tax returns, or both, including but not limited to "TurboTax Free Edition" and "Federal Free Edition." "TurboTax Free Edition Product" does not include any Intuit IRS Free File Product, any TurboTax Paid Product, TurboTax Live, or any products sold or offered within the TurboTax Free Edition Product, such as Audit Defense.

L.    "**TurboTax Paid Product**" means the online tax preparation software products offered by Intuit that allow consumers, for a fee, to prepare and file federal tax returns, state tax returns, or both, for themselves. "TurboTax Paid Product" does not include products sold or offered in addition to a TurboTax Paid Product.

M.    "**TurboTax Website**" means turbotax.intuit.com, any subdomain of turbotax.intuit.com, and any other website owned, operated, or controlled partially or wholly by Intuit that provides or offers TurboTax Paid Products or TurboTax Free Edition Products.

N.    "**Upgrade Screen**" means any display within the product flow of the TurboTax Free Edition Product that appears when consumers using that product indicate they have income, credits, deductions, or other tax situations not covered by the TurboTax Free Edition Product, and offers consumers the option of using a TurboTax Paid Product to prepare and file their federal and/or state tax returns.

O.    "**Video Advertisement**" means any Advertisement made via television or made online using video.

## INJUNCTION

4.    The injunctive provisions of this Judgment are imposed under Business and Professions Code section 17203 and shall apply to Defendant as well as its subsidiaries,

1   successors, and the assigns of all or substantially all of the assets of its business, and, their
2   directors, officers, employees, agents, independent contractors, partners, associates, and
3   representatives of each of them.

4   **I.    GENERAL COMPLIANCE**

5       5.    Intuit shall comply with California's consumer-protection laws, including the
6   Unfair Competition Law, Business and Professions Code section 17200 et seq., and the False
7   Advertising Law, Business and Professions Code section 17500.

8   **II.    PROHIBITION AGAINST MISREPRESENTATIONS**

9       6.    Intuit, Intuit's officers, agents, employees, and attorneys, and all other persons in
10  active concert or participation with any of them, who receive actual notice of this Judgment,
11  whether acting directly or indirectly, in connection with promoting or offering any online tax
12  preparation products, must not misrepresent, expressly or by implication:

13          A.    That consumers can only file their taxes online accurately if they use a
14  TurboTax Paid Product or TurboTax Free Edition Product.

15          B.    That consumers can only claim a tax credit or tax deduction if they use a
16  TurboTax Paid Product or TurboTax Free Edition Product.

17          C.    That consumers must upgrade to a TurboTax Paid Product to file their
18  taxes online if they are eligible to use the TurboTax Free Edition Product.

19          D.    That consumers can continue using and file their taxes for free with the
20  TurboTax Free Edition Product when that is not the case, including by stating expressly or
21  impliedly to consumers on an Upgrade Screen that they can continue using the TurboTax Free
22  Edition Product through a "keep free" button or another button using similar language. Intuit may
23  give consumers the option of continuing to use the TurboTax Free Edition Product on an Upgrade
24  Screen, so long as a disclosure is made, Clearly and Conspicuously on the Upgrade Screen and in
25  Close Proximity to any button, link, or option on the Upgrade Screen that permits the consumer to
26  exercise the option of continuing to use the TurboTax Free Edition Product, that the current tax
27  information entered by the consumer indicates that the consumer will need to upgrade to a
28  TurboTax Paid Product to file his or her taxes.

E.      Any other fact material to consumers concerning any tax preparation product or service, such as the price; total cost; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

**III.   REQUIRED DISCLOSURES AND BUSINESS PRACTICES FOR ADVERTISING AND MARKETING OF FREE PRODUCTS**

7.      As soon as reasonably practicable, but no later than August 1, 2022, in connection with advertising, marketing, promoting, offering, naming, or describing, or assisting in the advertising, marketing, promotion, offering, naming, or describing of any tax preparation products as free, whether directly or indirectly, Intuit must make the following disclosures about taxpayer eligibility for such free products and comply with the following terms:

A.      In any non-Space-Constrained Advertisement of free tax preparation products other than on a TurboTax Website, Intuit must disclose, Clearly and Conspicuously, and in Close Proximity to the representation that the product is free: (1) the existence and category of material limitations on a consumer's ability to use that free product; and (2) that not all taxpayers qualify for the free product.

B.      In any Space-Constrained Advertisement of free tax preparation products other than Space-Constrained Video Advertisements, Intuit must disclose that eligibility requirements apply. If made online, Intuit must also (1) Clearly and Conspicuously include a hyperlink to a landing page or webpage on a TurboTax Website that Clearly and Conspicuously contains full disclosure of all material eligibility restrictions or (2) link by clicking on the Advertisement itself to a landing page or webpage on a TurboTax Website that Clearly and Conspicuously sets forth full disclosure of all material eligibility restrictions.

C.      For a period of ten (10) years, in any Space-Constrained Video Advertisements of free tax preparation products, Intuit must visually disclose, Clearly and Conspicuously, and in Close Proximity to the representation that the product is free: (1) the existence and category of material limitations on a consumer's ability to use that free product; and (2) that not all taxpayers qualify for the free product. In addition, for a period of ten (10) years, in any Space-Constrained Video Advertisements of free tax preparation products except for such

FINAL JUDGMENT AND PERMANENT INJUNCTION

Advertisements that are 8 seconds or shorter, Intuit must verbally disclose, Clearly and Conspicuously and in Close Proximity to the representation that the product is free, that not all taxpayers qualify.

D.    In any Advertisement of free tax preparation products on a TurboTax Website, and any space on a TurboTax Website listing, describing, offering, or promoting such free products, Intuit must disclose (1) Clearly and Conspicuously and very near to the representation all material limitations on a consumer's ability to use that free product, including, but not limited to, eligibility criteria for that free product, or (2) through a hyperlink (i) that is very near to the representation, (ii) that indicates that there are material limitations on a consumer's ability to use that free product, and (iii) that links to a landing page or webpage that Clearly and Conspicuously sets forth all material limitations on a consumer's ability to use that free product, including, but not limited to, eligibility criteria for that free product.

E.    Intuit must disclose Clearly and Conspicuously to consumers, at the earliest point at which it is reasonably possible to determine, that they do not qualify to file a tax return for free with the TurboTax Free Edition Product.

F.    Intuit must take reasonable steps to design all TurboTax products to inform, at the earliest point it is reasonably possible, consumers using the TurboTax Free Edition Product whether they will or will not be able to file for free using that product.

G.    Intuit must not publish, or cause to be published, in any medium (1) its "free, free, free" Video Advertisements (see Appendix A for a list of such advertisements) and (2) Video Advertisements that are substantially similar in their repetition of the word free. Intuit must comply with this Subparagraph immediately upon the Effective Date, notwithstanding any contradictory language in the introduction to Section III above.

## IV.    PROHIBITION AGAINST DATA-CLEARING PRACTICES

8.    Effective December 1, 2022, Intuit must permit consumers who enter a TurboTax Paid Product through an Upgrade Screen to return to the TurboTax Free Edition Product without being required to re-enter the data they provided when using the TurboTax Free Edition Product.

## V. VOLUNTARY WITHDRAWAL FROM AND INJUNCTION AGAINST REJOINING THE IRS FREE FILE PROGRAM

9.      In recognition of Intuit's voluntary withdrawal from the IRS Free File Program effective October 2021 and Intuit's representation and commitment that it will not rejoin the IRS Free File Program, and in lieu of this Judgment containing specific injunctive provisions concerning Intuit's potential future participation in the IRS Free File Program and conduct related thereto:

   A.      Intuit must not seek to rejoin or participate in the IRS Free File Program.

   B.      This term may only be modified by amending this Judgment.

## VI. PAYMENT TO THE SETTLEMENT FUND AND ADMINISTRATION FUND

10.      Within thirty (30) days of the Effective Date, Intuit shall pay the total sum of One Hundred Forty-One Million Dollars ($141,000,000)[1] (the "Required Payment") as described herein. The Required Payment shall be made in two installments: (1) the first payment, in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000) (the "Administration Fund"), shall be made by Intuit to an account for the payment of costs and expenses incurred or charged by the Fund Administrator in administering the Settlement Fund; (2) the second payment, in the amount of One Hundred Thirty-Eight Million Two Hundred and Fifty Thousand Dollars ($138,250,000) (the "Settlement Fund"), shall be made by Intuit to an account for the use of the fund administrator selected by the Oversight Committee (the "Fund Administrator"), for the purpose of providing restitution to Covered Consumers as described hereunder, who shall be responsible for the administration of the Settlement Fund. The Required Payment installments shall be made by wire transfer in accordance with instructions provided by the Oversight Committee. After transfer of the Required Payment, Intuit shall have no right, title, interest, or other legal claim in the transferred funds.

11.      This Judgment does not provide this Court with jurisdiction or authority over the Oversight Committee, the Fund Administrator, or the administration or distribution of the

---

[1] From this amount, a total of Two Hundred and Fifty Thousand Dollars ($250,000) will be allocated for fees and costs to a certain previously designated State. This Two Hundred and Fifty Thousand Dollars ($250,000) will be paid into the Settlement Fund by Intuit and will be distributed by the Oversight Committee.

Settlement Fund. The Oversight Committee shall have sole discretion concerning the administration and distribution of the Settlement Fund, which may include determining the Covered Consumers who are entitled to payments from the Settlement Fund; the nature, timing, and amount of such payment; directing the Fund Administrator to make payments to these consumers; the timing and content of communications from the Fund Administrator to Covered Consumers concerning the Settlement Fund; directing the Fund Administrator to make payments of fees or costs from the Settlement Fund to one or more Attorneys General; and transferring funds from the Settlement Fund to the Administration Fund. Attached for informational purposes only as Appendix C is a preliminary calculation of each States' percentage of the total population of Covered Consumers; the Oversight Committee is not required to distribute the Settlement Fund according to these preliminary percentages. If the Oversight Committee directs the Fund Administrator to make a payment of fees or costs to a State, that payment shall be deducted from the share of the Settlement Fund that is allocated to that State. Any payment of fees or costs to California shall be deposited in the Attorney General's Litigation Deposit Fund and used at the sole discretion of the Attorney General.

12.     All costs and expenses incurred or charged by the Fund Administrator in administering the Settlement Fund shall be paid out of the Administration Fund. The Oversight Committee shall have sole discretion concerning the administration and distribution of any money that remains in the Administration Fund after payment of all costs and expenses incurred or charged by the Fund Administrator in administering the Settlement Fund. In no event shall the Attorneys General be liable for any costs associated with administering the Settlement Fund. The administration of the Settlement Fund shall, include, but not be limited to, the following:

A.     Identifying the current mailing address of each Covered Consumer, which shall be provided by Intuit and/or through the use of publicly-available databases, commercially-available databases, and public records;

B.     Preparing and sending, by mail and email, communications to Covered Consumers relating to the settlement, including notice of the settlement and reminder notices to all Covered Consumers who had been sent a check but not yet cashed it;

C.     Distributing restitution to each Covered Consumer by check, and reissuing checks as necessary, including for checks that have been returned;

D.     Establishing a process by which Covered Consumers may elect to receive their payments through an electronic payment processor such as Venmo, PayPal, or Zelle instead of by check;

E.     Maintaining a website that contain the terms and conditions of the settlement;

F.     Providing and hosting a toll free number to provide information to Covered Consumers relating to the settlement during distribution of the restitution;

G.     Contacting, by mail, email, or phone, Covered Consumers regarding uncashed checks;

H.     Reporting to the Oversight Committee on the status of the administration of the Settlement Fund and responding to requests by the Oversight Committee for documentation and information necessary to confirm the proper administration of the Settlement Fund; and

I.     Providing all other services necessary for the proper administration of the Settlement Fund.

13.     Within sixty (60) days of the Effective Date, Intuit must submit to the Oversight Committee for review and non-objection its proposed contract with the Fund Administrator that includes a comprehensive Statement of Work consistent with Section VI.12 and all other terms of this Judgment. The Oversight Committee will have the discretion to make a determination of non-objection to the Statement of Work or direct Intuit to revise it. If the Oversight Committee directs Intuit to revise the Statement of Work, Intuit must revise and resubmit the contract to the Oversight Committee within thirty (30) days. After receiving notification that the Oversight Committee has made a determination of non-objection to the Statement of Work, Intuit and the Settlement Administrator must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Statement of Work.

14.     Intuit shall promptly provide the Fund Administrator (and the Oversight Committee, if requested by the Oversight Committee) with all information the Oversight

1   Committee deems necessary to permit the Fund Administrator to distribute funds to Covered

2   Consumers as directed by the Oversight Committee, including, but not limited to, the following

3   for each consumer: full name; last known and prior mailing addresses, email addresses, and

4   telephone numbers; and for each of Tax Years 2016, 2017, and 2018, the TurboTax Paid Product

5   used by the consumer, if any, the amount the consumer paid to Intuit for said TurboTax Paid

6   Product, and the amount of any credits, chargebacks, or settlement amounts already paid by Intuit

7   or received by such consumer for the TurboTax Paid Product. In carrying out the foregoing, Intuit

8   agrees to provide such information as soon as possible but in no event more than thirty (30)

9   calendar days of the Oversight Committee's request.

10       15.    Intuit shall warrant to the Oversight Committee at the time of supplying

11   information to the Fund Administrator that the information is complete and accurate to the best of

12   its knowledge and capability. Intuit's duty to provide complete and accurate information

13   regarding Covered Consumers shall continue throughout the administration process.

14       16.    After the Fund Administrator has completed the administration of the Settlement

15   Fund (including making reasonable attempts to contact payees of uncashed checks and waiting a

16   reasonable period of time not less than ninety (90) calendar days), all uncashed checks may be

17   voided. Once such uncashed checks have been voided, these funds shall be distributed to state

18   unclaimed property funds, to any other fund or agency if so required by law, or to any other fund

19   or agency as lawfully directed by the Attorney General of the respective state, based on the last

20   known state residence of the payee. The Fund Administrator must distribute uncashed funds, or

21   any other remaining funds in the Settlement Fund, pursuant to instructions provided by the

22   Oversight Committee.

23       17.    Covered Consumers who receive a payment from the Settlement Fund shall not be

24   required to return or discontinue the use of any Intuit goods or services, and receipt of any such

25   payment shall not be tied to any other commitment.

26       18.    To the extent not already provided elsewhere, Intuit shall, upon request by the

27   Oversight Committee, provide all documentation and information necessary for the Oversight

28   Committee to confirm compliance with the Judgment. To the extent not already provided

elsewhere, Intuit shall ensure that all communications with the Fund Administrator regarding the administration of the Settlement Fund shall include at least one representative of the Oversight Committee.

19.    The Attorneys General shall have no liability whatsoever to Intuit, the Fund Administrator, or any Covered Consumer in connection with the administration of the Settlement Fund or for any action by Intuit or the Claims Administrator with respect to the monies deposited.

**VII.  ACKNOWLEDGMENTS**

20.    Intuit, within seven (7) days of the Effective Date, (1) must submit to the Oversight Committee an acknowledgment of receipt of this Judgment sworn under penalty of perjury; and (2) must identify to the Oversight Committee the primary physical, postal, and email address and telephone number, as designated points of contact, that the Oversight Committee may use to communicate with Intuit.

21.    For five (5) years after the Effective Date, Intuit must deliver a copy of this Judgment to (1) all principals, officers, and directors; (2) all employees having managerial responsibilities for Advertisements for any TurboTax Free Edition Product; the online search and search engine optimization strategies and practices for any TurboTax Free Edition Product and any TurboTax Paid Product; the representations made on the TurboTax Website regarding any TurboTax Free Edition Product; and customer service inquiries regarding any TurboTax Free Edition Product; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within seven (7) days of the Effective Date for current personnel. For all others, delivery must occur before they assume their responsibilities.

22.    From each individual or entity to which Intuit delivered a copy of this Judgment, Intuit must obtain, within thirty (30) days, a signed and dated acknowledgment of receipt of this Judgment.

**VIII. COMPLIANCE REPORTING**

23.    One (1) year after the Effective Date, Intuit must submit to the Oversight Committee a compliance report, sworn under penalty of perjury, in which Intuit must identify all

of Intuit's tax preparation businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses and describe in detail whether and how Intuit is in compliance with each Section of this Judgment.

24.    For five (5) years after the Effective Date, Intuit must submit to the Oversight Committee a compliance notice, sworn under penalty of perjury, within fourteen (14) days of any change in the following: (a) any designated point of contact; or (b) the structure of Intuit that may affect compliance obligations arising under this Judgment, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Judgment.

25.    Intuit must submit to the Oversight Committee notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against Intuit within fourteen (14) days of its filing.

26.    Any submission to the Oversight Committee required by this Judgment to be sworn under penalty of perjury must be true and accurate, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

27.    Unless otherwise directed by a representative of the Oversight Committee in writing, all submissions to the Oversight Committee pursuant to this Judgment must be made in accordance with the terms in Section XII. All submissions shall have a subject line that must begin: Attorneys General v. Intuit Inc.

**IX.    RECORDKEEPING**

28.    Intuit must create certain records for ten (10) years after the Effective Date, and retain each such record for five (5) years. Specifically, Intuit must create and retain the following records:

A.    Accounting records showing: (1) the revenues from all TurboTax Paid Products and any add-on products such as Audit Defense; and (2) the revenues from all TurboTax Paid Products and any add-on products such as Audit Defense that were received from consumers

who began the process of preparing their returns in any TurboTax Free Edition Product;

B. Records of all consumer complaints and refund requests concerning the subject matter of this Judgment, whether received directly or indirectly, such as through a third party, and any response;

C. All records necessary to demonstrate full compliance with each provision of this Judgment, including all submissions to the Oversight Committee; and

D. To the fullest extent possible, a copy of each unique Advertisement or other marketing material relating to any TurboTax Free Edition Product.

## X. COMPLIANCE MONITORING

29. For a period of five (5) years, and for the purpose of monitoring Intuit's compliance with this Judgment: Within thirty (30) days of receipt of a written request from the Oversight Committee, Intuit must submit additional compliance reports or other requested information, which must be sworn under penalty of perjury.

30. Nothing in this Judgment limits any State's lawful use of compulsory process, pursuant to applicable state law.

## XI. RELEASE

31. By entry of this Judgment, and upon Intuit's compliance with its terms including the payments required in Section VI, the People release and forever discharge Intuit and its past and present officers, directors, employees, agents, affiliates, parents, subsidiaries, operating companies, predecessors, assigns, and successors from all civil consumer-protection or unfair-trade-practices claims that the People are authorized by law to bring that arise from or relate to the allegations in the Complaints.

32. Nothing contained in this Judgment shall be construed to limit the ability of the People to enforce the obligations that Intuit has under this Judgment. Further, nothing in this Judgment shall be construed to waive or limit any private rights of action.

33. Notwithstanding Paragraph 31, or any other term of this Judgment, the following claims are specifically reserved: (1) claims based on violations of securities laws, including claims based on the offer, sale, or purchase of securities; (2) claims of regulatory agencies having

specific regulatory jurisdiction that are separate and independent from the regulatory enforcement of the Attorneys General; and (3) claims that arise from Intuit's actions that take place after the Effective Date.

**XII. GENERAL PROVISIONS**

34.    This Judgment shall not be construed as an approval or sanction by the People of Intuit's business practices, nor shall Intuit represent that this Judgment constitutes an approval or sanction of its business practices. Any failure by the People to take any action in response to information submitted pursuant to this Judgment shall not be construed as an approval or sanction of any representations, acts, or practices indicated by such information, nor shall it preclude action thereon at a later date.

35.    Nothing in this Judgment shall be construed as relieving Intuit of the obligation to comply with all applicable state and federal laws, regulations, and rules, nor shall any of the provisions of this Judgment be deemed to be permission to engage in any acts or practices prohibited by such laws, regulations, and rules.

36.    To the extent that there are any, Intuit shall pay all court costs associated with the filing (if legally required) of this Judgment. No court costs, if any, shall be taxed against the People.

37.    If any clause, provision, or section of this Judgment shall, for any reason, be held illegal, invalid, or unenforceable, such illegality, invalidity, or unenforceability shall not affect any other clause, provision, or section of this Judgment, which shall be construed and enforced as if such illegal, invalid, or unenforceable clause, section, or provision had not been contained herein.

38.    Unless otherwise directed by the People, whenever Intuit shall provide notice to the People under this Judgment, that requirement shall be satisfied by sending notice to the email and postal address of the following individuals:

Nicklas A. Akers
Senior Assistant Attorney General
California Department of Justice
455 Golden Gate Ave, 11th Fl.
San Francisco, CA 94102

Bernard A. Eskandari
Supervising Deputy Attorney General
California Department of Justice
300 South Spring Street, Suite 1702
Los Angeles, CA 90013

16

1        nicklas.akers@doj.ca.gov              bernard.eskandari@doj.ca.gov

2

3        39.    All notices or other documents to be provided under this Judgment shall be sent by

U.S. mail, certified mail return receipt requested, or other nationally recognized courier service

4

that provides for tracking services and identification of the person signing for the notice or

5

document, and shall have been deemed to be sent upon mailing. Additionally, any notices or

6

documents to be provided under this Judgment shall also be sent by electronic mail to the email

7

addresses provided above or as directed by the People.

8

9        40.    If a court of competent jurisdiction determines that Intuit has breached this

Judgment, Intuit shall pay to the People the cost, if any, of obtaining such determination and of

10

enforcing this Judgment, including without limitation legal fees, expenses, and court costs.

11

12        41.    Defendant shall cooperate fully with the People as necessary to achieve the goals

and carry out the requirements of this Judgment.

13

14        42.    This Court retains jurisdiction of this matter for purposes of construction,

modification, and enforcement of this Judgment; provided however, this Judgment shall not

15

provide the Court with continuing jurisdiction over the Oversight Committee, the Fund

16

Administrator, or the administration or distribution of the Settlement Fund.

17

18        43.    The clerk is ordered to enter this Judgment forthwith.

19

ORDERED AND ADJUDGED at Los Angeles, California.

20

21                  06/25/2022

DATED: _____

22

23                                            _____

JUDGE OF THE SUPERIOR COURT

24

25

26

27

28

17

FINAL JUDGMENT AND PERMANENT INJUNCTION

**APPENDIX A – "FREE, FREE, FREE" ADVERTISEMENTS[2]**

- "Big Kick"

    o The "Big Kick" advertisement depicts a high school football placekicker and his supportive father. In the moments before an important kick, the son flashes back to a memory from his youth of his father encouraging him; returning to the present, the son converts the field goal attempt while his father looks on. However, instead of featuring conventional dialogue, the characters in "Big Kick" repeat only the word "free" throughout the ad.



- "Credits"

    o In the "Credits" advertisement, a John McClane-type action hero utters a wisecrack (here, the word "free" several times) as he drops a lighter onto a streak of gasoline, which triggers the explosion of a batter white van. As flames explode into the air, the action hero strides towards the camera in slow motion, prompting the credits to roll on screen, with every actor and role consisting of one or more uses of the word "free."

---

[2] This Appendix addresses all versions of the listed advertisements, *i.e.*, 15-second, 30-second, and 60-second versions of the advertisements, to the extent they exist.



- <u>"Crossword"</u>

  o In "Crossword," a white-haired couple completes a crossword puzzle in which every clue and every answer is one or more uses of the word "free."



- <u>"Game Show"</u>

  o The "Game Show" advertisement depicts a 70s-era game show in which a woman must guess what activity or concept her male partner is miming. Every one of the woman's answers is correct and consists of one or more uses of the word "free."



- "Lawyer"
    - In "Lawyer," an attorney delivers an impassioned closing argument to the jury as dramatic music swells, with every word of the attorney's argument being "free." After he finishes, a member of the jury leads a standing ovation, as various jurors repeat the word "free" several times.



FINAL JUDGMENT AND PERMANENT INJUNCTION

- "Spelling Bee"

  o The "Spelling Bee" advertisement shows a middle school-aged boy correctly spelling the word "free" in a spelling bee. Aside from the boy's spelling out the letters "F-R-E-E," every line dialogue spoken by the boy and by the judge of the spelling bee consists entirely of the word "free."



- "Echo"

  o In "Echo," a hiker shouts "free" from the top of a mountain, with the word "free" reverberating back to her as a result.

FINAL JUDGMENT AND PERMANENT INJUNCTION



- "Auctioneer"
  - In "Auctioneer," a fleet-tongued auctioneer rattles off prices and bids to a collection of ranchers and cowboys. Instead of conventional dialogue, the auctioneer repeatedly utters the word "free."



22

- "Dance Workout"

  o The "Dance Workout" advertisement depicts an instructor leading an enthusiastic dance workout class. Instead of conventional words of encouragement and instruction, the instructor repeats the word "free."



23

1

**APPENDIX B**

2

[INTENTIONALLY LEFT BLANK]

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FINAL JUDGMENT AND PERMANENT INJUNCTION

1    **APPENDIX C – PRELIMINARY STATE PERCENTAGES OF COVERED CONSUMERS**

| State | Number of Covered Consumers | Percentage of Covered Consumers |
|---|---|---|
| AK | 14,135 | 0.32 |
| AL | 53,656 | 1.20 |
| AR | 34,487 | 0.77 |
| AZ | 100,213 | 2.24 |
| CA | 371,403 | 8.30 |
| CO | 82,967 | 1.85 |
| CT | 39,078 | 0.87 |
| DC | 9,356 | 0.21 |
| DE | 13,247 | 0.30 |
| FL | 335,246 | 7.50 |
| GA | 134,480 | 3.01 |
| HI | 14,521 | 0.32 |
| IA | 33,167 | 0.74 |
| ID | 27,237 | 0.61 |
| IL | 133,990 | 3.00 |
| IN | 94,163 | 2.11 |
| KS | 38,075 | 0.85 |
| KY | 54,406 | 1.22 |
| LA | 55,578 | 1.24 |
| MA | 75,091 | 1.68 |
| MD | 66,669 | 1.49 |
| ME | 22,650 | 0.51 |
| MI | 115,565 | 2.58 |
| MN | 60,322 | 1.35 |
| MO | 81,427 | 1.82 |
| MS | 35,053 | 0.78 |
| MT | 16,072 | 0.36 |
| NC | 139,028 | 3.11 |
| ND | 9,270 | 0.21 |
| NE | 25,780 | 0.58 |
| NH | 22,074 | 0.49 |
| NJ | 70,164 | 1.57 |
| NM | 28,535 | 0.64 |
| NV | 49,883 | 1.12 |
| NY | 176,712 | 3.95 |
| OH | 163,367 | 3.65 |
| OK | 52,399 | 1.17 |
| OR | 68,253 | 1.53 |

| | | |
|---|---|---|
| **PA** | 158,779 | 3.55 |
| **RI** | 13,577 | 0.30 |
| **SC** | 67,238 | 1.50 |
| **SD** | 13,455 | 0.30 |
| **TN** | 111,658 | 2.50 |
| **TX** | 465,793 | 10.41 |
| **UT** | 44,289 | 0.99 |
| **VA** | 111,613 | 2.50 |
| **VT** | 9,361 | 0.21 |
| **WA** | 121,102 | 2.71 |
| **WI** | 76,682 | 1.71 |
| **WV** | 23,533 | 0.53 |
| **WY** | 8,790 | 0.20 |
| **Other\*** | 329,199 | 7.36 |
| **Totals** | **4,472,788** | **100.00** |

\* The "Other" category includes Covered Consumers for whom there currently is no information available on their state affiliation and consumers in U.S. territories and foreign countries, including U.S. military mail codes.

***TURBOTAX FREE FILING CASES***
***Lead Case No. JCCP No. 5067***
***Included Action Case No. 19CV354178***

***ELECTRONIC PROOF OF SERVICE***

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter.

On June 16, 2022, I served a true copy of the foregoing document described as:

1. **Intuit Proposed Final Judgment (FINAL) (REVISED); and**

2. **Intuit Proposed Final Judgment (FINAL) (REVISED) REDLINE**

on the interested parties in this action pursuant to the most recent Omnibus Service List by submitting an electronic version of the document via file transfer protocol (FTP) to CaseAnywhere through the upload feature at www.caseanywhere.com.

I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct.

Executed on June 16, 2022, at Los Angeles, California.

| J.F. Aguins | /s/ J.F. Aguins |
|---|---|
| Declarant | Signature |