# EXHIBIT K

**UNITED STATES OF AMERICA**
**BEFORE THE FEDERAL TRADE COMMISSION**

**COMMISSIONERS:**     **Lina M. Khan, Chair**
                       **Rebecca Kelly Slaughter**
                       **Christine S. Wilson**
                       **Alvaro M. Bedoya**

| | |
|---|---|
| **In the Matter of** | |
| **Intuit Inc.,**<br>    **a corporation.** | **DOCKET NO. 9408**<br>**REDACTED PUBLIC VERSION** |

**OPINION AND ORDER DENYING SUMMARY DECISION**

By Commissioner Alvaro M. Bedoya, for the Commission.

The Complaint in this proceeding asserts that Respondent Intuit Inc. deceptively marketed TurboTax, its online tax preparation service, in violation of Section 5 of the FTC Act, as amended, 15 U.S.C. § 45 (prohibiting "unfair or deceptive act[s] or practice[s]").  Compl. ¶¶ 5-6, 119-22.[1]  Specifically, Complaint Counsel allege that Respondent repeatedly claimed

---

[1] We use the following abbreviations for documents in this Opinion:

| | |
|---|---|
| Compl. | Complaint (Mar. 28, 2022) |
| Answer | Answer and Affirmative Defenses of Respondent Intuit Inc. (Apr. 14, 2022) |
| Mot. | Complaint Counsel's Motion for Summary Decision (Aug. 22, 2022) |
| Opp. | Respondent Intuit Inc.'s Opposition to Complaint Counsel's Motion for Summary Decision (Aug. 30, 2022) |
| Reply | Reply in Support of Complaint Counsel's Motion for Summary Decision (Sept. 8, 2022) |
| CCSF | Complaint Counsel's Statement of Material Facts as to Which There Is No Genuine Issue for Trial, appended to Mot. (Aug. 22, 2022) |
| GX | Complaint Counsel's exhibit |
| RCCSF | Respondent Intuit Inc.'s Statement of Material Facts as to Which There Exists a Genuine Issue for Trial, Part I:  Respondent's Response to Complaint Counsel's Statement of Material Facts as to Which There is No Genuine Issue for Trial (Aug. 30, 2022) |
| RSF | Respondent Intuit Inc.'s Statement of Material Facts as to Which There Exists a Genuine Issue for Trial, Part II:  Statement of Material Facts as to Which There Exists a Genuine Issue for Trial (Aug. 30, 2022) |

through various advertising channels that consumers could file their taxes for free using TurboTax. Compl. ¶ 5. In fact, however, Complaint Counsel allege, TurboTax is free for only some consumers, based on the tax forms they need. *Id.* ¶ 6. For many others, the Complaint states, Intuit tells them after they have inputted sensitive personal and financial information into TurboTax that they cannot continue for free and will need to upgrade to a paid TurboTax service to complete and file their taxes. *Id.* ¶¶ 6, 58. Thus, Complaint Counsel contend that Intuit's "door-opener" ads are deceptive. *Id.* ¶¶ 57, 122.

On August 22, 2022, Complaint Counsel moved for summary decision pursuant to Commission Rule 3.24, 16 C.F.R. § 3.24. Respondent timely opposed the motion. On October 31, 2022, on Respondent's request, the Commission heard oral argument on the motion. As explained below, we have determined that summary decision should be denied and that a decision on the merits would be best made after fuller factual development at trial. [2]

## I.     BACKGROUND

Respondent Intuit Inc. is a Delaware corporation with its principal place of business in Mountain View, California. Compl. ¶ 1; Answer ¶ 1. Respondent advertises, markets, promotes, distributes, and sells TurboTax, a commonly-used online tax preparation service that enables users to prepare and file their income tax returns. Compl. ¶ 4; Answer ¶ 4.

---

| | |
|---|---|
| RX | Respondent's exhibit |
| CCRSF | Complaint Counsel's Responses and Objections to Intuit Inc.'s Statement of Material Facts as to Which There Exists a Genuine Issue for Trial |

[2] Respondent's Supplemental Filings: On November 4, 2022, Respondent submitted a Supplemental Filing Concerning Oral Argument. Complaint Counsel have objected to the filing of much of this submission as containing "unsolicited and unauthorized substantive argument that exceeds the bounds" of Commission rules. Objection to Respondent Intuit's "Supplemental Filing Concerning Oral Argument" at 1-2 (Nov. 4, 2022). While the first page of the filing (and Exhibits 200-05 referenced therein) respond directly to a question directed to Intuit at oral argument, the remainder of the filing does not. We agree that under Commission Rules 3.22(d) and 3.24, 16 C.F.R. §§ 3.22(d) & 3.24, Respondent needed to request leave to file a sur-reply to present the second and third pages of its filing and failed to do so, which rendered those pages inappropriate for consideration on summary decision. Two months later, Intuit did move for leave to file a sur-reply in which it sought to present additional evidence in opposition to summary decision. Intuit Inc.'s Motion for Leave to File Sur-Reply in Support of Denying Complaint Counsel's Motion for Summary Decision (Jan. 6, 2023) ("Sur-Reply Motion"). Intuit predicated its filing on an assertion that the Commission had not timely extended its deadline to rule on the summary decision motion; indeed, the proposed order attached to Intuit's Sur-Reply Motion sought to deny summary decision on that basis alone. But the Commission in fact extended its deadline to January 31 by an order issued on December 8, 2022. Intuit cites no relevant authority for its assertion that the Commission's order should be ignored because it was not served until after the deadline. The Commission's order was effective when issued, and the predicate for Intuit's Sur-Reply Motion fails. Although Commission Rule 3.24(a)(4) establishes procedures for a respondent to bolster the summary decision record after its initial filings when it cannot "present facts essential to justify its opposition," the Commission has determined to deny summary decision without need for the supplementation sought by the Sur-Reply Motion. Supplementation therefore is not "essential," and there is no need to invoke special procedures to address Respondent's latest round of evidence. Consequently, leave to file a sur-reply is denied. Respondent will be entitled to submit all relevant, admissible evidence at the upcoming administrative trial.



Compl. ¶ 9; Answer ¶ 9.

RCCSF ¶¶ 4-5.

Compl. ¶ 10; Answer ¶ 10; *cf.* RCCSF ¶4.

The free version of TurboTax was called "Federal Free Edition" for tax year ("TY") 2016 and "TurboTax Free Edition" thereafter.  CCSF ¶ 6; RCCSF at 9 (Intuit does not dispute CCSF ¶ 6); Answer ¶ 13.[3]  Free Edition is available to taxpayers with "simple tax returns."  Answer ¶ 14; RSF ¶¶ 2-3; CCRSF ¶¶ 2-3.  According to Complaint Counsel, Intuit has changed the definition of "simple tax returns" over time, such that which consumers could file for free with TurboTax has varied depending on the tax year.  CCSF ¶¶ 8-12.[4]  Respondent asserts, however, that it has always defined "simple tax return" as the ability to file on the simplest individual tax forms the IRS has available (i.e., IRS Form 1040 with no attached schedules or, prior to 2019, IRS Form 1040EZ) but that in some years eligibility for Free Edition has extended beyond this definition.  RCCSF ¶¶ 7-8; RSF ¶ 3.

Many taxpayers do not have "simple tax returns" and so do not qualify for Free Edition.  Compl. ¶ 6; Answer ¶ 6; RSF ¶¶ 2, 13; CCRSF ¶¶ 2, 13.  This includes taxpayers with mortgage and property deductions, itemized deductions, unemployment income, education expenses, charitable donations of over $300, investment or rental property income, and expenses from self-owned businesses.  RSF ¶ 4; CCRSF ¶ 4.[5]  Taxpayers not eligible for Free Edition may upgrade to one of Intuit's paid offerings, such as TurboTax Deluxe, TurboTax Premium, or TurboTax Self-Employed.  RSF ¶ 4; CCRSF ¶ 4; Compl. ¶47; Answer ¶ 47.  Customers who are not

---

[3] Consumers file their taxes for a particular tax year during the following year, so products and ads related to a tax year may be sold or aired, respectively, in the next calendar year.  *See* CCSF ¶ 9 (explaining that consumers file taxes in 2017 for income earned in 2016); ¶ 16 (explaining that Intuit's tax preparation products and services, including TurboTax, have a seasonal pattern, with sales and revenue typically concentrated in the period from November through April); RCCSF at 9 (not disputing CCSF ¶¶ 9 and 16); RSF ¶13 (indicating that tax filings made "in Tax Year 2019" were actually in calendar year 2020).

[4] For TY 2016 and 2017, Intuit defined simple tax returns as returns that could be filed using a 1040A or 1040EZ tax form.  Compl ¶ 15; Answer ¶ 15.  For TY 2018 and 2019, Intuit defined simple tax returns as returns that could be filed on Form 1040, with no attached schedules.  Compl. ¶ 16; Answer ¶ 16.  For TY 2020, Intuit defined simple tax returns as returns that could be filed on a Form 1040 with no attached schedules, except to claim unemployment income.  Compl. ¶ 17; Answer ¶ 17.  As of April 2022, Intuit's definition of simple tax returns included returns that could be filed on Form 1040 and certain attached schedules.  Answer ¶ 18.

[5] In some years, however, consumers with unemployment income could file their taxes with Free Edition.  *See* Compl. ¶ 17; Answer ¶ 17; *see also supra* n. 4.  In addition, according to Respondent, it sometimes runs promotions that allow consumers who do not have simple tax returns to use Intuit's tax preparation software for free or at a reduced price, and since TY 2019, enlisted members of the U.S. military have been eligible to use any TurboTax product for free.  RCCSF ¶¶ 7, 15; Ryan Decl. ¶ 14.

eligible for Free Edition may begin preparing their taxes in that product.  Upon entering disqualifying information, they are presented with a screen that informs them that they will need to upgrade to a paid product capable of supporting their tax needs in order to continue using TurboTax.  RSF ¶ 64; CCRSF ¶ 64; Golder Decl. ¶¶ 128, 130, 133; Compl. ¶ 45; Answer ¶ 45.

Intuit has promoted its free offering through multiple advertising channels, including television, the TurboTax website, social media, and paid search advertising.  Ryan Decl. ¶¶ 18, 20, 23-26; RSF ¶ 36; Answer ¶ 21; *see also* CCSF ¶¶ 18-24; RCCSF at 9 (Intuit does not dispute CCSF ¶¶ 18-24).  According to Complaint Counsel, much of this advertising has been misleading because it conveyed that consumers could file their taxes for free using TurboTax when, in fact, most consumers could not.  Compl. ¶¶ 5, 29, 119; Reply at 3.  Complaint Counsel submit a variety of Intuit ads that they claim make this misleading representation.  For instance, in one television ad, a voiceover states, "you can file on TurboTax for absolutely nothing."  GX 321; RX 200.  In another set of commercials—part of Intuit's so-called "Free, Free, Free" campaign—"free" is essentially the only word spoken by the actors, until the voiceover at the end states, "That's right.  TurboTax Free is free.  Free, free free free."  Compl. ¶ 26; GX 299; GX 328; GX 329; GX 331; GX 332; GX 348; GX 350; GX 356; RCCSF ¶ 17 n. 66 ████████ ████████████████████████.[6]  Respondent's online ads and website echoed its television commercials.  For example, according to Complaint Counsel, in TY 2018, Intuit's homepage stated, "That's right. TurboTax Free is free.  Free, free free free.  $0 Fed. $0 State. $0 To File." CCSF ¶ 45; *cf.* RX 22; Ryan Decl. ¶ 59.  Other ads, discussed below, contained similar messaging.  *See infra* Section III.C.2-4.

Complaint Counsel acknowledge that many of Intuit's ads contain a fine-print disclaimer stating that the offer is limited to consumers with "simple tax returns" or "simple U.S. returns only" or similar verbiage.  Compl. ¶ 28; Mot. at 26-27, 31.  However, Complaint Counsel assert that these disclaimers are inadequate to cure the misrepresentation; the disclaimers are too small, too faint, too silent, too hidden, and too inscrutable, relying on the vague phrase "simple tax returns," the definition of which Intuit has changed over time.  Mot. at 25-29, 31-32.  Although Intuit explains the term "simple tax returns" on its website, that explanation is hidden behind a hyperlink, which Complaint Counsel assert is insufficient.  *Id*. at 31-32.  Thus, Complaint Counsel allege, the ads are false and misleading and violate Section 5.  Compl. ¶¶ 121-22.

Respondent defends its ads on a variety of grounds.  First, it argues that it did not represent that everyone could file for free with TurboTax but conveyed only that its Free Edition product was free, which Respondent asserts is a true statement.  Opp. at 1, 5-6, 10.  Respondent also claims that its various "simple tax returns only" disclosures (and permutations thereof), appearing on the cited television ads and in other types of advertising, were sufficient to inform consumers about Free Edition's eligibility limitations or at the very least create a factual question

---

[6] Although some of the cited exhibits containing Intuit's advertisements have been marked confidential, disclosure of the advertisements at issue in the case is "necessary for the proper disposition of the proceeding."  16 C.F.R. § 3.45(a); *cf. Bristol-Myers Co.,* 90 F.T.C. 455, 455-57 (1977) (discussing the high standard for *in camera* treatment and noting that, where granted, such treatment remains "subject to a later determination by the law judge or the Commission that public disclosure is required in the interests of facilitating public understanding of their subsequent decisions").

sufficient to defeat summary decision regarding the representations conveyed by the ads. Opp. at 11-13. Respondent further asserts that the phrase "simple tax returns" is an industry-standard term, used by the IRS itself among others, and that in any case, users must visit the TurboTax website or app to use Free Edition, where they encounter numerous clear and conspicuous disclosures of Free Edition's qualifications. RSF ¶¶ 80-84; Opp. at 16. Respondent also points to its asserted high customer retention and satisfaction rates as undermining the claim that it deceived its customers. Opp. at 20, 24-25. In addition, Respondent challenges the constitutionality of the administrative proceeding and asserts a variety of evidentiary and other objections and defenses. Opp. at 28-32. Finally, Respondent argues that recent changes in its ads and its settlement with the attorneys general of 50 states and the District of Columbia obviate the need for prospective relief in this case. Opp. at 25-28.

## II.     STANDARD AND AUTHORITY FOR SUMMARY DECISION

We review Complaint Counsel's motion for summary decision pursuant to Rule 3.24 of our Rules of Practice, 16 C.F.R. § 3.24. Our analysis is analogous to that applied to motions for summary judgment under Federal Rule of Civil Procedure 56. *See In re McWane, Inc. & Star Pipe Prods., Ltd.,* No. 9351, 2012 WL 4101793, at *5 (F.T.C. Sept. 14, 2012); *In re Polygram Holding, Inc.,* No. 8287, 2002 WL 31433923, at *1 (F.T.C. Feb. 26, 2002). A party moving for summary decision must show that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); 16 C.F.R. § 3.24(a)(2).

As with a summary judgment motion, the party seeking summary decision "bears the initial responsibility of . . . identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quotation omitted). Provided the movant meets this burden, the "party opposing the motion may not rest upon the mere allegations or denials of his or her pleading" but must instead "set forth specific facts showing that there is a genuine issue of material fact for trial." 16 C.F.R. §3.24(a)(3); *Celotex*, 477 U.S. at 323. In evaluating the existence of a dispute for trial, we are required to resolve all factual ambiguities and draw all justifiable inferences in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *McWane, Inc.,* 2012 WL 4101793, at *5. Where the "evidence [favoring the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50. However, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Impossible Elecs. Techs., Inc. v. Wackenhut Protective Sys., Inc.,* 669 F.2d 1026, 1031 (5th Cir. 1982).

Although Commission Rule 3.24 has long provided summary decision procedures, Respondent argues that summary decision in this case would violate Section 556(d) of the Administrative Procedure Act, 5 U.S.C. § 556(d). Respondent cites portions of Section 556(d) which state that "[a] party is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts" and which require "consideration of the whole record or those parts thereof cited by a party." *See* Opp. at 31-32. Thus, claims Respondent, it has an "absolute right" to present oral testimony at a hearing, to cross examine witnesses, and to obtain

a decision based on the whole record. *Id.* at 32. Contrary to Respondent's contention, however, the rights of Section 556(d) are not absolute. The requirement of a full hearing applies where there are material questions of fact for trial.[7] But the Commission grants summary decision only where it has determined that there are no genuine issues of material fact. Therefore, Section 556(d) does not bar summary decision.

## III.   ANALYSIS

### A.  Jurisdiction

Under the FTC Act, the Commission has jurisdiction over persons, partnerships, and corporations using unfair or deceptive acts or practices "in or affecting commerce." 15 U.S.C. § 45(a) (enumerating certain exceptions, not relevant here, to the persons, partnerships, and corporations covered). Respondent is a Delaware corporation that has its principal office or place of business in Mountain View, California. Compl. ¶ 1; Answer ¶ 1. Respondent has marketed TurboTax and the Free Edition product to consumers in the United States online and through television ads and various other advertising channels, and millions of Americans use the TurboTax Free Edition product. *See* Answer ¶¶ 2, 21; CCSF ¶¶ 18-24, 30; RCCSF at 9 (Intuit does not dispute CCSF ¶¶ 18-24, 30); RSF ¶¶ 6-11. Accordingly, the Commission has jurisdiction over Respondent with respect to its alleged deceptive acts and practices.

### B.  Legal Standard for Deception

"An advertisement is deceptive if it contains a representation or omission of fact that is likely to mislead a consumer acting reasonably under the circumstances, and that representation or omission is material to a consumer's purchasing decision." *POM Wonderful, LLC,* 155 F.T.C. 1, 10 (2013), *aff'd sub nom. POM Wonderful, LLC v. FTC,* 777 F.3d 478 (D.C. Cir. 2015); *see also California Naturel, Inc.,* 162 F.T.C. 1066, 1078 (2016); *FTC Policy Statement on Deception,* 103 F.T.C. 174, 175 (1984), appended to *Cliffdale Assocs., Inc.,*103 F.T.C. 110 (1984) ("Deception Statement"). Thus, in determining whether an advertisement is deceptive, the Commission considers (1) what claims are conveyed in the ad; (2) whether those claims are false or misleading; and (3) whether the claims are material. *In re Health Rsch. Labs., LLC*, No. 9397, 2021 WL 5711355, at *5 (F.T.C. Nov. 19, 2021); *In re Traffic Jam Events*, No. 9395, 2021 WL 5124183, at *12 (F.T.C. Oct. 25, 2021), *pet. for review filed*, No. 21-60947 (5th Cir. Dec. 21, 2021); *California Naturel,* 162 F.T.C. at 1078.

---

[7] *See Sierra Ass'n for Env't v. FERC*, 744 F.2d 661, 663 (9th Cir. 1984) ("SAFE is entitled to cross-examination only as required for a full and true disclosure of the facts . . . SAFE had the burden of tendering evidence suggesting the need for an adjudicatory hearing on particular material questions of fact."); *Cent. Freight Lines, Inc. v. U.S.,* 669 F.2d 1063, 1068 (5th Cir. 1982) (noting that cross-examination is not an absolute right in administrative cases but is limited to that which is "required for a full and true disclosure of the facts" (quoting 5 U.S.C. § 556(d))); *Persian Gulf Outward Freight Conf. v. Fed. Maritime Comm'n,* 375 F.2d 335, 340-41 (D.C. Cir. 1967) ("While it is true that Section 7(c) of the Administrative Procedure Act speaks in terms of a requirement of a trial-type evidentiary hearing, such an evidentiary hearing has not necessarily been required where the question involved has been essentially one of law.").

REDACTED PUBLIC VERSION

Claims may be express or implied: express claims are those that directly state the representation at issue, while implied claims are any that are not express. *Kraft, Inc.,* 114 F.T.C. 40, 120 (1991), *aff'd sub nom. Kraft, Inc. v. FTC,* 970 F.2d 311 (7th Cir. 1992). Both express and implied claims may be deceptive. *Fedders Corp. v. FTC,* 529 F.2d 1398, 1402-03 (2d Cir. 1976). "Deception may be accomplished by innuendo rather than by outright false statements." *FTC v. Wilcox,* 926 F. Supp. 1091, 1098 (S.D. Fla. 1995) (quoting *Regina Corp. v. FTC,* 322 F.2d 765, 768 (3d Cir. 1963)); *FTC v. Cap. Choice Consumer Credit, Inc.,* No. 02-21050 CIV, 2003 WL 25429612, at *4 (S.D. Fla. Jun. 2, 2003) (same), *aff'd,* 157 F. App'x 248 (11th Cir. 2005). Absent an explicit representation, the question of whether the advertisement at issue makes a particular representation is determined by considering the "net impression" of such an advertisement for the reasonable consumer-viewer. *Traffic Jam Events,* 2021 WL 5124183, at *12; *Jerk LLC,* 159 F.T.C. 885, 891 (2015); *FTC v. Direct Mktg. Concepts, Inc.*, 569 F. Supp. 2d 285, 298 (D. Mass. 2008); *Removatron Int'l Corp. v. FTC*, 884 F.2d 1489, 1497 (1st Cir. 1989) (looking to "common-sense net impression" of an advertisement). In certain instances, the Commission may make that determination without extrinsic evidence. Extrinsic evidence is unnecessary if the claim is reasonably clear from the face of the advertisement. *Kraft,* 970 F.2d at 319; *POM Wonderful*, 155 F.T.C. at 13.

Turning to the second element, the determination of whether a representation or omission is deceptive turns on whether it is likely to mislead, not whether it has caused actual deception. Deception Statement at 176; *Thompson Med. Co. v. FTC,* 791 F.2d 189, 197 (D.C. Cir. 1986); *Trans World Accts., Inc. v. FTC,* 594 F.2d 212, 214 (9th Cir. 1979) ("[p]roof of actual deception is unnecessary to establish a violation of Section 5"). The question is whether the claim is likely to mislead a consumer acting reasonably under the circumstances. *Southwest Sunsites, Inc. v. FTC,* 785 F.2d 1431, 1436 (9th Cir. 1986); *FTC v. Wilcox,* 926 F. Supp. at 1098.

The third element is materiality. A representation is considered "material" if it "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *FTC v. Cyberspace.com, LLC,* 453 F.3d 1196, 1201 (9th Cir. 2006) (quotation omitted); *see also Kraft,* 970 F.2d at 322; *Jerk,* 159 F.T.C. at 891. Express claims are presumed material, *see FTC v. Pantron I Corp.,* 33 F.3d 1088, 1095-96 (9th Cir. 1994), and consumer action based on express statements is presumptively reasonable. *See FTC v. Five-Star Auto Club, Inc.,* 97 F. Supp. 2d 502, 528 (S.D.N.Y. 2000) (citations omitted). Where evidence exists that a seller intended to make an implied claim, the Commission will infer materiality. Deception Statement at 182. The Commission also presumes materiality where claims relate to central characteristics of the product or service such as its purpose, safety, efficacy, or cost. *Id.*; *Thompson Med. Co.,* 104 F.T.C. 648, 816-17 (1984).

## C. Assessment of the Ads

Having examined the ads and the parties' arguments, we have decided to deny summary decision. Respondent's ads vary by media and have evolved over time. Although at least some of the ads may be susceptible to summary decision, "[e]ven if summary judgment is technically proper, sound judicial policy and the proper exercise of judicial discretion permit denial of such a motion for the case to be developed fully at trial." *In re Telebrands Corp.*, No. 9313, 2004 WL 1720011, at *2 (F.T.C. Apr. 13, 2004). In this case, sound policy supports a denial of summary

decision.  Because an assessment of the entire course of conduct presented here could affect determination of the appropriate remedy, summary decision on only some of the ads would not resolve the case.  At the same time, denying summary decision and remanding for trial will provide a fuller factual record and facilitate a more complete and cohesive opinion that addresses all of the relevant legal and factual issues, and advertising claims at once.  Therefore, summary decision is denied.  Below, we provide a further explanation of our reasoning with respect to the claims and ads in question, which may guide their assessment at trial.  We note that although the briefing and oral argument focused heavily on Respondent's video ads, a focus also reflected in the discussion that follows, the allegations of Complaint Counsel concern many different ads across different media; the analysis of those other, equally important ads, will be further developed during the course of trial.

### 1.  Television/Video Ads

#### a.  The Ads

Complaint Counsel allege that various television and/or video ads contain misleading representations.  We summarize those ads below.

The "Boston Tea Party" ad, a 60-second commercial that, per Complaint Counsel, aired during the 2015 Super Bowl,[8] shows a fictionalized re-creation of the Boston Tea Party where, in the midst of the American revolt, the following exchange takes place:

FIRST REVOLUTIONARY: No taxation without represent ...

FIRST BRITISH SOLDIER: Yes, yes, we hear you on the tax thing.

SECOND BRITISH SOLDIER: But what if it were free to file your taxes?

SECOND REVOLUTIONARY: Like, free free?

SECOND BRITISH SOLDIER: Yes, yes.  You'd pay nothing.  Not a thing.  No thing.

THIRD REVOLUTIONARY: Well alright then!
[additional scenes between British soldiers and American revolutionaries saying "alright then" omitted]

VOICEOVER: Okay, so maybe that's not exactly how it went down, but you can file on TurboTax for absolutely nothing.  Intuit TurboTax.  It's amazing what you're capable of.

---

[8] According to Respondent, the ad aired on television during TY 2014.  Respondent Intuit's Supplemental Filing Concerning Oral Argument at 1.

RX 200; *see also* GX 321.  During the voiceover in the concluding seconds of the ad, a disclaimer in small white print against a moving background at the bottom of the screen reads: "TurboTax Federal Free Edition is for simple U.S. returns only.  Offer may end without notice.  See offer details at TurboTax.com.  Screen image simulated."  RX 200.

The "Never a Sellout" ad, which aired during the 2016 Super Bowl (CCSF ¶ 30; RCCSF at 9), depicts an interview with Anthony Hopkins with the following exchange:

INTERVIEWER:  Sir Anthony Hopkins, every actor at some point considers selling out.

SIR ANTHONY HOPKINS:  I would never tarnish my name by selling you something.  Now if I were to tell you to go to turbotax.com, it's because TurboTax Absolute Zero lets you file your taxes for free.

INTERVIEWER:  You're. . . you're not selling anything.

HOPKINS:  It's free.  There's nothing to sell.  Come here, TurboTax.com [dog jumps on his lap.]  Such a good girl, TurboTax.com

GX 323.  During the exchange, at 0:18, a small print disclaimer is shown for several seconds in white against a moving background.  The disclaimer reads: "Screen simulated.  TurboTax Federal Free Edition is for simple US returns only.  Offer may end without notice.  See offer details at TurboTax.com."  *Id.*

Ads for TY 2017 featured characters telling other characters in various situations, "At least your taxes are free" (GX 325; GX 346), or "With TurboTax AbsoluteZero, at least your taxes are free" (GX 324; GX 345; GX 347).  *See also* GX 344 ("At least my taxes are free.").  For instance, in one ad, after a man on a fishing boat is impaled by a swordfish, another man tells him, "At least your taxes are free."  GX 324.  In another ad, a man falls off the side of a cruise ship.  His companions, still on the ship, yell to him, "At least your taxes are free" and "With TurboTax AbsoluteZero, at least your taxes are free."  GX 345.  These ads, too, include for several seconds a small print disclaimer in white against a moving background, while the characters are talking.  The disclaimer includes, among other language, the phrase "For simple U.S. returns."

For TY 2018 through TY 2021, Intuit ran a so-called "Free, Free, Free" campaign, in which the word "free" was essentially the only word spoken in various situations – a lawyer presenting his case in court (RX 201), game show contestants competing on the show (GX 59; GX 356), a kid spelling "free" in a spelling bee (GX 332; GX 350), an auctioneer running an auction (GX 200; RX 202), an instructor leading the class in a dance workout (GX 206), and numerous other examples.  The TY 2018 and 2019 ads concluded with a voiceover stating, "That's right.  TurboTax Free is free.  Free, free free free."  *See* GX 329; RX 201; GX 59; GX 356; GX 332; GX 350.  A disclaimer in small white print shown at the bottom of the screen during the voiceover at the end of the ad read, "Free Edition product only.  For simple U.S. returns.  Offer subject to change.  See details at turbotax.com."  For the TY 2020 and 2021 ads,

the voiceover stated, "That's right. TurboTax Free Edition is free. See details at TurboTax.com." GX 200; RX 202; GX 206. The disclaimer for those ads read, "TurboTax Free Edition is for simple U.S. returns only. See if you qualify at turbotax.com. Offer subject to change."

Complaint Counsel also submit "Steven/Spit Take" ads, which they allege Intuit ran for TY 2021. CCSF ¶ 118. The ads promoted TurboTax Live and free tax filing with the help of an expert. The "simple tax returns" limitation was included in the small print disclaimer at the bottom of the screen at the end and also mentioned by the voiceover narrator. *See, e.g.*, GX 307 ("For a limited time TurboTax is free for simple returns even when an expert files for you."); GX 309 ("For a limited time TurboTax is free for simple returns no matter how you file.").[9]

### b. Claim Conveyed

Where claims are reasonably clear from the face of the advertisement, "the Commission may rely on its own reasoned analysis to determine what claims, including implied ones, are conveyed." *Kraft*, 970 F.2d at 319; *see also Stouffer Foods Corp.*, 118 F.T.C. 746, 798 (1994) ("If, after examining the interaction of all the different elements in the ad, the Commission can conclude with confidence that an ad can reasonably be read to contain a particular claim, a facial analysis is sufficient basis to conclude that the ad conveys the claim."). Thus, where the ad claim is (1) express or (2) implied but conspicuous and reasonably clear, extrinsic evidence is unnecessary. *POM Wonderful*, 155 F.T.C. at 13-14; *FTC v. Fleetcor Techs., Inc.*, No. 1:19-cv-5727-AT, 2022 WL 3273286, at *9 (N.D. Ga. Aug. 9, 2022); *FTC v. QT, Inc.*, 448 F. Supp. 2d

---

[9] Respondent challenges a number of the video ads that Complaint Counsel obtained from third-party internet sites, including Intuit's own YouTube channel. Although Respondent does not assert that the ads are in any way inaccurate or erroneous, it claims that we should not rely on them because the FTC investigator who submitted a declaration authenticating the exhibits, Diana Shiller, cannot establish that the videos are accurate reproductions of the ads that aired and because Respondent has not had a chance to depose Ms. Shiller. *See* RCCSF General Objections 3 & 7; *see also, e.g.,* RCCSF ¶¶ 25, 28, 61, 66. Respondent does not explain what information it could obtain from deposing Ms. Shiller, since information about which TurboTax ads were aired when is in Intuit's own possession. When pressed about three specific ads used in Complaint Counsel's oral argument presentation, Respondent's counsel conceded that some versions of these ads were aired but Respondent has not done a comparison to determine if the ads submitted by Complaint Counsel correspond in every respect with the ads that actually aired. *See* Oral Argument Tr. 35:1 - 37:17. Respondent subsequently submitted its versions of the three ads, *see supra* n. 6; those versions were identical to the ads submitted by Complaint Counsel except perhaps for video resolution. *Compare* RX 200 *with* GX 321, RX 201 *with* GX 329, and RX 202 *with* GX 200. Respondent cannot manufacture a factual dispute regarding the accuracy of the evidence by avoiding reviewing it for accuracy. We find that Respondent has failed to put forward a genuine dispute as to the accuracy of the ads submitted by Complaint Counsel. *See First Specialty Ins. Corp. v. GRS Mgmt. Assocs.*, No. 08-81356-CIV, 2009 WL 2524613, at *5 (S.D. Fla. Aug. 17, 2009) (litigants cannot rely on lack of discovery to oppose summary judgment when the evidence necessary to respond is within their possession, custody or control); *Goodley v. Wal-Mart Louisiana LLC*, No. CV 2:16-01087, 2017 WL 3528873, at *9 (W.D. La. Aug. 15, 2017) (denying plaintiff's request for a continuance to depose declarant and granting summary decision, when declarant submitted declaration for the sole purpose of authenticating records for which she was the custodian and plaintiff "failed to identify a genuine issue of material fact that could be created by conducting the discovery").

908, 958 (N.D. Ill. 2006). However, if relevant extrinsic evidence regarding the meaning of the ad has been introduced, the Commission will consider it. *POM Wonderful*, 155 F.T.C. at 14; *Bristol-Myers Co.*, 102 F.T.C. 21, 319 (1983).

Many of Intuit's television ads, on their face, expressly or by strong implication convey that consumers viewing the ads can file their taxes for free with TurboTax. The "Boston Tea Party" ad expressly tells consumers, "[Y]ou can file on TurboTax for absolutely nothing." GX 321; RX 200. In other ads, the same representation is clearly implied. For instance, ads that merely repeat the word "free" over and over and conclude with "That's right. TurboTax Free is free. Free, free free free," clearly and conspicuously imply that consumers can file with TurboTax for free. *See, e.g.*, RX 201; GX 299; GX 326; GX 332; GX 348; GX 349; GX 350; GX 356.

Respondent asserts that Intuit's ads conveyed only that the Free Edition product is free. Opp. at 5. But most of the ads at issue, including the ones described in the previous paragraph, never even mention Free Edition.[10] Moreover, to the extent the ads could be susceptible to multiple interpretations, that would not immunize Respondent from liability but would be a relevant consideration at the summary decision stage. "If a claim conveys more than one meaning, only one of which is misleading, a seller is liable for the misleading interpretation even if nonmisleading interpretations are possible. Liability may be imposed if at least a significant minority of reasonable consumers would be likely to take away the misleading claim." *Fanning v. FTC*, 821 F.3d 164, 170-71 (1st Cir. 2016) (quoting *Telebrands Corp.*, 140 F.T.C. 278, 291 (2005), *aff'd*, 457 F.3d 354 (4th Cir.2006)) (quotation marks and brackets omitted); *see also Resort Car Rental Sys., Inc. v. FTC,* 518 F.2d 962, 964 (9th Cir. 1975) ("Advertising capable of being interpreted in a misleading way should be construed against the advertiser.").

Respondent points to the small print disclosures in the video ads that refer to Free Edition and note a "simple U.S. returns" limitation. Respondent argues that these disclosures make clear that (1) there is a Free Edition, which itself indicates there are paid and free versions of TurboTax; (2) there are qualifications to use Free Edition, such that not everyone will qualify; (3) the qualifications are tied to the complexity of a consumer's tax returns; and (4) further information about those requirements is available online. Opp. at 13. Disclosures cannot change the net impression of an ad if they are not clear and readily visible. "Disclaimers or qualifications in any particular ad are not adequate to avoid liability unless they are sufficiently prominent and unambiguous to change the apparent meaning of the claims and to leave an accurate impression." *Removatron*, 884 F.2d at 1497. Even assuming the disclaimers were sufficiently unambiguous—a point Complaint Counsel strongly contest— we question whether the visual disclaimers were sufficiently prominent. Some of these disclaimers appeared for only 3-4 seconds in small white font, often against a moving background, with a voiceover or other audible speech while the disclaimers were on the screen.[11] The Commission Enforcement Policy Statement in Regard to Clear and Conspicuous Disclosure in Television Advertising (Oct.

---

[10] Intuit "admits that it has never offered a product called 'TurboTax Free.'" Answer ¶ 32.

[11] The Steven/Spit Take ads, however, included an audible reference to simple returns in addition to the small print disclaimer. *See* GX 307; GX 309.

21, 1970) lays out the Commission's requirements for clear and conspicuous television disclosures. Those requirements generally were not met here: most disclosures were not presented simultaneously in audio or video, the lettering was small and often not of a contrasting color with the background, the background was frequently not one color or shade, and the disclaimers appeared for only a few seconds. Indeed, even when looking for the disclaimers, multiple viewings are required to notice and read them. These disclaimers are plainly insufficient to affect the net impression of the ads. *See FTC v. US Sales Corp.*, 785 F. Supp. 737, 751 (N.D. Ill. 1992) (holding that fine print disclaimers at the bottom of the screen in TV ads were "simply not readable and [have] no effect on the overall impression of the advertisement").

Respondent argues that sufficiency and prominence of disclaimers is an issue of fact that cannot be resolved on summary decision. Opp. at 11-12. Courts have not shied away from granting summary judgment despite the ads having disclaimers when those disclaimers were in fine print or otherwise not prominent enough. *See, e.g.*, *US Sales Corp.*, 785 F. Supp. at 751 (granting summary judgment despite fine print disclaimers in TV ads); *Fleetcor*, 2022 WL 3273286, at *10 (granting summary judgment and "conclud[ing] as a matter of law that the tiny, inscrutable print of the disclaimers does not cure the net impression of the representations in the ads cited"); *Cyberspace.com*, 453 F.3d at 1200 (upholding summary judgment and rejecting defendant's argument that truthful fine print notices on reverse side of checks, invoices, and marketing inserts cured deception); *FTC v. Alcoholism Cure Corp.*, No. 3:10-cv-266-J-34JBT, 2011 WL 13137951, at *51 (M.D. Fla. Sept. 16, 2011) (on summary judgment, finding that fine-print "not MD" disclaimers were inadequate to dispel net impression regarding professional qualifications of defendant and other employees as advertised), *aff'd sub nom. FTC v. Krotzer*, No. 12-14039-AA, 2013 WL 7860383 (11th Cir. May 3, 2013). Although the Commission agrees that the sufficiency and prominence of disclaimers can be resolved on summary decision, here we believe an assessment of the entire course of conduct would facilitate a more complete and cohesive opinion that addresses all of the relevant advertising claims at once.

Respondent further asserts that the Commission "*must* consider extrinsic evidence about an ad's meaning when such evidence is introduced by a party." Opp. at 10 (citing *POM Wonderful*, 155 F.T.C. at 14). But most of the extrinsic evidence proffered by Respondent does not focus on the meaning of the ads. Respondent has not put forward, for example, consumer surveys regarding the claims conveyed or evidence regarding common usage of language. *See POM Wonderful*, 155 F.T.C. at 24. Rather, much of Respondent's extrinsic evidence concerns peripheral issues—for example, whether its disclaimer font is similar to that used by other companies, whether consumers are comfortable switching between tax-preparation providers, whether TurboTax has high consumer satisfaction and retention rates, and whether most consumers who start in Free Edition eventually file with that product. *See* Opp. at 10, 12-13, 19-20. This type of evidence does not address what message the ads conveyed to reasonable consumers and would not override findings based on a facial analysis. Conclusory statements by experts that consumers were not deceived based on that same peripheral evidence are similarly inadequate. Nevertheless, some of Respondent's evidence arguably might provide insights concerning consumers' knowledge and expectations regarding "free" claims in Intuit's ads. *See, e.g.*, Opp. at 20-21 (claiming that consumers' familiarity with businesses models employed by Intuit and other major players in the industry shapes their expectations). Though the Commission expresses skepticism regarding the import of such possible evidence for some of the

advertising, Respondent will have an opportunity to present any relevant, admissible extrinsic evidence at the hearing and the Commission will consider any such evidence in any later review of this matter.

Respondent argues that, even if the ads did not adequately disclose the limitations on its free offerings, consumers would have been sufficiently appraised of those limitations through the TurboTax website or app, which consumers must visit in order to use the product. Opp. at 16. Although Respondent will have an opportunity at trial to make its arguments about the adequacy of its website/app disclosures, as a general rule, "[t]he Federal Trade [Commission] Act is violated if [Respondent] induces the first contact through deception, even if the buyer later becomes fully informed before entering the contract." *Resort Car Rental Sys.*, 518 F.2d at 964; *see also Carter Prods., Inc. v. FTC*, 186 F.2d 821, 824 (7th Cir. 1951) (accord); *FTC v. OMICS Grp. Inc.*, 374 F. Supp. 3d 994, 1010 (D. Nev. 2019) (accord), *aff'd* 827 F. App'x 653 (9th Cir. 2020); *Fleetcor*, 2022 WL 3273286, at *12 (accord); *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 632 (6th Cir. 2014) (granting summary decision on telemarketing misrepresentations despite more accurate representations in written documents and contracts; "A court need not look past the first contact with a consumer to determine the net impression from that contact[.]" (citation omitted)). Moreover, Respondent's suggestion that a deceptive door-opening first contact is illegal only for physical, in-person sales (Opp. at 23) is unsupported and unjustified. *See E.M.A. Nationwide*, 767 F.3d at 632 (applying principle to telemarketing sales). No case has so held, and were we to do so, we would be leaving a huge enforcement gap with respect to misleading representations in modern commerce.

### c. Falsity

Complaint Counsel argue that, despite the claims in Intuit's ads, two thirds of U.S. taxpayers cannot file for free with TurboTax. Therefore, Complaint Counsel maintain, for the vast majority of people, the representation that they can file their taxes for free is false. Mot. at 1, 20.

Respondent quibbles with Complaint Counsel's number, suggesting that the assessment should be based not on all taxpayers but only those who file their taxes through an on-line tax-preparation product. RCCSF ¶ 15. Respondent points out that some people file their taxes on paper and a large percentage file through a tax professional, and it argues that people with more complex situations are more likely to file using a paid tax professional. *Id.* We are not convinced that the relevant consumers for purposes of this analysis should be limited only to those who have filed online. A taxpayer who filed on paper or through a professional tax preparer one year might switch to an online service the next year, enticed by the promise of "free, free, free" online filing. Indeed, that is the very purpose of advertising – to attract new customers. And although Respondent's argument on summary decision is that the entire taxpayer base is not the right metric, its own course-of-business documents support Complaint Counsel's position that only one third of relevant consumers can file with TurboTax for free. GX 115 at '9484 ███████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

But even if we accept Respondent's position that the two-thirds figure is not properly calculated, Respondent does not and cannot seriously dispute that a significant percentage of taxpayers who file online do not have "simple tax returns." This category includes taxpayers with common financial scenarios, such as those who have mortgage or property deductions, education expenses, itemized deductions, investment or rental property income, and taxpayers who are small business owners. *See* RSF ¶ 4. For all those people, the promise that "you can file on TurboTax for absolutely nothing" is false.

Respondent asserts that the ads are not false because they convey only that Free Edition is free, which is a true statement. Opp. at 10. But Respondent has not pointed to evidence that the reasonable consumer would know that Free Edition is a different product from TurboTax[12] and, as discussed above, most of the ads at issue do not mention Free Edition. In any case, even ads that are technically true may be deceptive. The key question is not the literal truth of the advertisement but the net impression it creates. *See Thompson Med.*, 791 F.2d at 197 ("[L]iterally true statements may . . . be found deceptive[.]"); *FTC v. Nat'l Urological Grp., Inc.*, 645 F. Supp.2d 1167, 1189 (N.D. Ga. 2008), *aff'd*, 456 F. App'x 358 (11th Cir. 2009) ("When assessing the meaning and representations conveyed by an advertisement, the court must look to the advertisement's overall, net impression rather than the literal truth or falsity of the words in the advertisement."); *Cap. Choice Consumer Credit*, 2004 WL 5149998, at *32 ("[A] claim may be deceptive even though it is literally true."). If an ad that literally states that TurboTax Free Edition is free is written in a way that falsely conveys to at least a significant minority of reasonable consumers that they can file their taxes for free with TurboTax, the ad is deceptive. Moreover, a true statement may be deceptive by omission. "The failure to disclose material information may cause an advertisement to be deceptive, even if it does not state false facts." *Sterling Drug, Inc. v. FTC*, 741 F.2d 1146, 1154 (9th Cir. 1984); *see also Cap. Choice Consumer Credit*, 2004 WL 5149998, at *33.

Respondent argues that its industry-leading customer satisfaction scores indicate that customers were not deceived by its ads. Opp. at 20. However, the fact that most customers who chose to use a TurboTax product were generally happy with that product does not render non-deceptive a particular ad that drove people to the TurboTax website. *See In re Daniel Chapter One*, No. 9329, 2009 FTC LEXIS 86, at *7 (F.T.C. April 20, 2009) ("Evidence of consumer satisfaction is not relevant to determining whether the claims made are deceptive." (citing cases)); *Cap. Choice Consumer Credit*, 2004 WL 5149998, at *34 ("[E]vidence that some consumers were not injured or were satisfied with Defendants' services is no defense[.]").[13]

---

[12] On the other hand, Complaint Counsel have submitted evidence that Intuit's own consumer research showed that its ads, ████████████████████████████████████████████████████████████████ GX 340 at '9652.

[13] Respondent cites *FTC v. DirecTV, Inc.*, No. 15-cv-01129-HSG, 2018 WL 3911196 (N.D. Cal. Aug. 16, 2018) to argue that high customer satisfaction scores should be considered in determining whether a company violates the FTC Act. Opp. at 20. In *DirecTV*, however, the court considered consumer satisfaction scores as part of its assessment of evidence proffered by the FTC regarding findings made by DirecTV's Customer Experience Steering Committee. *DirecTV*, 2018 WL 3911196, at *18. The court

### d. Materiality

A representation is considered "material" if it "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Cyberspace.com*, 453 F.3d at 1201 (quotation omitted); *see also Kraft,* 970 F.2d at 322; *Jerk,* 159 F.T.C. at 891. Complaint Counsel allege that Respondent represented to consumers that they could file their taxes for free with TurboTax when in fact many consumers could not do so but had to pay for an upgrade. Claims relating to central characteristics of the product or service, including its cost, are presumptively material. *Thompson Med.,* 104 F.T.C. at 816-17; *Novartis Corp. v. FTC*, 223 F.3d 783, 786 (D.C. Cir. 2000). Accordingly, a representation that consumers can file their taxes for free is presumptively material.[14] The importance of the "free filing" representation is underscored by the fact that, in many of Intuit's ads, the word "free" is essentially the only word spoken; it is *the sole* assertion in the ads.[15]

Despite the singular focus on "free" in Respondent's ads, Respondent asserts that the alleged misrepresentation is not actually about cost but is in fact about eligibility. Opp. at 23-24. It argues that, because Free Edition is actually free, to the extent there is any misrepresentation, it concerns Free Edition's qualifications. *Id.* First, as discussed above, many of Respondent's ads do not even mention Free Edition, so those ads do not concern eligibility for that product. More fundamentally, it is difficult to imagine what evidence could successfully demonstrate that a representation that a product is free conveys nothing about its price. But even if we adopt Respondent's position that the misrepresentation concerned only the qualification or eligibility for Free Edition, it would still appear to be material. The question of whether a consumer is qualified for the advertised product would seem to be "information that is important to [the] consumer[] and, hence, likely to affect [his or her] choice of, or conduct regarding, [the] product." *Cyberspace.com,* 453 F.3d at 1201 (quoting *Cliffdale Assocs.*, 103 F.T.C. at 165). Who can actually use the product seems no less a central characteristic of that product than its purpose, efficacy, performance, or quality, all of which are presumptively material. *See* Deception Statement, 103 F.T.C. at 182; *see also Cap. Choice Consumer Credit*, 2004 WL 5149998, at *33 ("[A]n inference of materiality may reasonably be made when a deceptive omission is found." (quotation omitted)). Indeed, a product has no "efficacy" for a consumer who is ineligible to use it. While we are not awarding partial summary decision in this opinion, we find that Respondent has not identified a basis in the summary decision record for rebutting

---

did not conclude that high consumer satisfaction scores meant the company did not violate the FTC Act; it found only that the FTC's evidence concerning the Committee did not support finding a violation. *Id.*

[14] If the representation is express, that is another basis for a presumption of materiality. *See Pantron I*, 33 F.3d at 1095-96. Moreover, the Commission also infers materiality when "evidence exists that a seller intended to make an implied claim." Deception Statement, 103 F.T.C. at 182.

[15] Respondent's argument that it can rebut the presumption of materiality based on the fact that most users who began in Free Edition also finished in Free Edition and a survey indicating that consumers chose to upgrade at similar rates regardless of how much information the upgrade screen provided about free alternatives (*see* Opp. at 24) appears unavailing. Respondent's own expert presented evidence that price was an important factor to consumers when choosing a tax preparation method or provider. Hauser Decl. Ex 6b, 8a.

the presumption of materiality that is applicable to television ads that expressly or by implication conveyed that consumers viewing the ads could file their taxes for free using TurboTax.

*     *     *

To summarize, although we find that Complaint Counsel have presented a strong case for summary decision with respect to at least some of the video ads, we are denying summary decision at this time. Deferring the ruling until after trial will allow the Commission to have the benefit of a full factual record, including any relevant and admissible extrinsic evidence, and will facilitate a cohesive decision that addresses all of the relevant ads at once. Our denial of summary decision, however, should not be taken as an indication that the evidence presented is necessarily insufficient and that liability cannot attach unless Complaint Counsel produce additional evidence of deception at trial. Evidence that may not be sufficient for liability when the Commission must resolve all ambiguities and draw all justifiable inferences in Respondent's favor may nevertheless be sufficient to support a liability finding when Respondent is not entitled to such deference.

### 2. The TurboTax Website

Complaint Counsel allege that, like the video ads, the TurboTax homepage misled consumers into believing they could file for free using TurboTax. Compl. at 7 & ¶¶ 36-44. The website echoed the "Free" message of the video ads, proclaiming in large lettering, "That's right. TurboTax Free is free. Free, free free free. $0 Fed. $0 State. $0 to File." or "FREE Guaranteed. $0 Fed. $0 State. $0 To File." or other similar language. Mot. at 31; GX 342 ¶¶ 79, 95, 125, 187, 189; RX 19; RX 22. These ads, however, also had disclaimers. For TY 2018, underneath the large blue "free" advertisement language, there was smaller text in black stating, "Easily and accurately file your simple tax returns for FREE." GX 342 ¶ 79; RX 22. This was followed by the phrase "See why it's free" in blue text, which served as a hyperlink to a popup with additional information regarding the tax situations covered by Free Edition. GX 342 ¶¶ 79-80; RCCSF ¶ 47. For TY 2019 and later, the smaller text underneath the headline differed, but the blue font and hyperlink were now on the phrase "simple tax returns" or "For simple tax returns only." *See, e.g.*, GX 342 ¶¶ 95, 125; 187-88, 190; RX 19; Ryan Decl. ¶ 56.

Complaint Counsel claim that the "simple tax returns" disclaimers did not correct the deceptive net impression. Mot. at 18, 30. They point out that the phrase "simple tax returns" was less prominent than the larger "free" text. *Id.* at 32. Moreover, Complaint Counsel assert that consumers do not understand the "simple tax returns" disclaimer and that Intuit's own definition of the term has changed over time. *Id.* at 29, 32; CCSF ¶¶ 8-12. Further, to the extent additional information about the limitations of Free Edition was provided through a hyperlink, Complaint Counsel assert that is insufficient because disclosures that are an integral part of a claim should not be communicated through a hyperlink. Mot. at 31-32.

Respondent defends its website. It argues that the disclosures and hyperlink were clear and prominent and adhered to the FTC's .com Disclosures guidelines for online advertising. Opp. at 16-17. Respondent also defends its use of the "simple tax returns" language generally. It claims the phrase is not ambiguous but is an industry-standard term that the IRS, GAO, and

California's Franchise Tax Board have all used to describe tax returns that require only a single form without additional schedules.  RCCSF ¶ 8; RSF ¶¶ 80-84; Golder Decl. ¶¶ 103-04.  Respondent also disputes that it has changed the definition over time.  RCCSF ¶¶ 7-8.  Further, Respondent argues that, whatever the phrase "for simple tax returns only" means to a reasonable consumer, it clearly conveys that not *all* consumers can use Free Edition, and that is enough to disprove, or at least create a factual question, regarding the alleged net impression.  Opp. at 13; RCCSF ¶ 8.

In light of the disputes regarding the effectiveness of the "simple tax returns" disclaimer as presented on the website and the sufficiency of the hyperlink, the question of the net impression created by representations on Intuit's homepage could benefit from fuller development at trial.  To the extent Intuit's homepage conveyed to consumers that they could file their taxes for free with TurboTax, our analysis of falsity and materiality in Sections III.C.1.c and d above applies.

### 3.  Search Ads

Respondent also bid on search terms so that its ads would appear when consumers searched for certain keywords in Google and Bing.  *See* RCCSF ¶¶ 83, 93.  The ads varied depending on the terms searched and changed over time.  For example, one ad submitted by Complaint Counsel appeared in response to a Google search for "free file" on July 10, 2020; it had the headline, "TurboTax® Free Tax Filing – E-file Your Taxes For Free."  GX 342 ¶ 101; CCSF ¶ 84.  In another submitted ad, which appeared on the same day after a search for the phrase "free file taxes ONLINE," the headline stated "TurboTax® Official Site – 100% Free Online Tax Filing."  GX 342 ¶ 99; CCSF ¶ 83.  On January 11, 2021, a Google search for the term "IRS taxes for free" produced an ad with the headline: "$0 Fed. $0 State. $0 to File. – TurboTax® Official Site."  GX 342 ¶ 121; CCSF ¶ 95.  As another example, a Bing search on March 31, 2022 for the phrase "file my taxes for free" returned an ad with the headline: "TurboTax® Free Edition | $0 Fed. $0 State. $0 To File."  GX 342 ¶ 163; CCSF ¶ 126.  Underneath each of these headlines was smaller descriptive text and sometimes other sub-headlines.  In some cases, the descriptive text contained the phrase "Free For Simple Tax Returns Only" or "For Simple Tax Returns Only With TurboTax® Free Edition" together with other promotional text, which sometimes contained additional references to "free online tax filing."  *See, e.g.*, GX 342 ¶¶ 121, 163, 166.

As with the video ads and website, Complaint Counsel assert that these and other submitted search ads conveyed that consumers could file their taxes for free with TurboTax.  *See* Mot. at 12-13, 18.  They point out that, to the extent the "simple tax returns" disclaimer was present in the small descriptive text, it was inadequate to alter consumers' interpretation and that, in some of the search ads, no disclaimer regarding "simple tax returns" was present at all.  Mot. at 25.

Respondent claims that its ads conveyed only that TurboTax Free Edition was free.  Opp. at 5.  Moreover, it avers that its disclosures were adequate.  According to Respondent, the term "simple tax returns" is more effective at conveying Free Edition's qualifications than potential alternatives with more detailed disclosures.  RSF ¶¶ 87-89.  With respect to the search ads that

did not specifically mention a "simple tax returns" limitation, Respondent claims that the statement in the small descriptive text that "Over 50 Million Americans Can File With TurboTax Free Edition" would inform consumers that the claim pertains to Free Edition only and that most Americans do not qualify for Free Edition.  Opp. at 15.  Respondent also raises evidentiary objections to the search ads.  RCCSF ¶¶ 83-84, 93-95, 126-30; RCCSF, General Objections 5 & 6.

Because on summary decision the Commission must resolve all factual ambiguities and draw all justifiable inferences in favor of the non-moving party, factual disputes regarding many of the search ads render summary decision unwarranted.  Some of the ads included a reference to Free Edition in the headline, which at least theoretically could support Respondent's position.  Further, most (but not all) of the submitted ads had disclaimers in the smaller descriptive text referring to "simple tax returns" or similar language.  Factual development at trial will help determine whether the ads conveyed to reasonable consumers that they could file taxes for free with TurboTax and, if so, whether the "simple tax returns" disclaimer was sufficiently prominent and unambiguous to change the net impression.  With respect to falsity and materiality, the analysis in Sections III.C.1.c and d provides further guidance.

### 4.  Social Media, Email Marketing, and Other Online Ads

Complaint Counsel identify various email, social media, and other online ads that they allege conveyed that consumers can file their taxes for free with TurboTax.  The evidence includes, for example, ads from Facebook's Ad Library, videos from TikTok, and ads from news sites and Reddit.  *See, e.g.*, GX 342 ¶¶ 114, 117, 161-62, 169-71.  The ads vary in content; some are in video form and others are static images.  Many of the ads mirror the TurboTax website, with references to "FREE" and "$0 Fed. $0 State. $0 To File" and a "simple tax returns" disclaimer, although the "simple tax returns" references in these ads are not color-contrasted hyperlinks.  *See, e.g.*, GX 342 ¶¶ 102-03, 114, 122, 159-60, 172.  The "simple tax returns" language, where included, is much less prominent than the "FREE" language.  However, given the requirement that we draw all justifiable inferences in the light most favorable to Respondent, we find that the net impression conveyed by these ads would be best addressed after full factual development at trial.  With respect to falsity and materiality, again, the discussion in Sections III.C.1.c and d should guide the analysis.

## IV.   AFFIRMATIVE DEFENSES AND OTHER ARGUMENTS

Respondent argues that its various affirmative defenses, including those alleging constitutional violations, excuse its conduct and preclude summary decision.  Opp. at 28-31.  Because we are denying summary decision, we do not need to address Respondent's affirmative defenses.  *See Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445-46 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." (citation omitted)).  We also do not need to, and indeed cannot at this point, resolve Respondent's arguments regarding the appropriate relief.  *See* Opp. at 25-28.  We do, however, wish to address Respondent's arguments that its due process rights are violated based on Chair Khan's alleged prejudgment of

the case and the lack of opportunity to conduct discovery; in both cases, Respondent has asserted constitutional violations while ignoring Commission procedures to address these issues.

On the first point, Respondent argues that (1) Chair Khan's retweet of the FTC press release announcing the filing of this action and (2) a Q&A session in which she referred to this proceeding in the context of discussing the importance of timely intervention[16] indicate that she has prejudged the case and that, therefore, this proceeding violates due process. *See* Opp. at 28-29 (citing RX 102; RX 103 at 6; Answer at 25 (Sixth Defense)). Respondent, however, has not sought to disqualify Chair Khan from the case under the procedures set out in Commission Rule 4.17, 16 C.F.R. § 4.17. Further, the Chief Administrative Law Judge found in denying Respondent's motion for further discovery that the two cited statements do not evidence prejudgment, and, for the reasons laid out in his Order, we agree. *See* Order Denying Respondent's Motion for Discovery Pursuant to Rule 3.36 at 5-6 (Nov. 7, 2022). Issuing a press release regarding a Commission action or highlighting the existence or importance of such an action does not amount to prejudgment. *See FTC v. Cinderella Career & Finishing Schs., Inc.,* 404 F.2d 1308, 1314-15 (D.C. Cir. 1968). Thus, the prejudgment argument asserted is without merit.

With respect to Respondent's argument that summary decision would violate due process because Respondent has not had an opportunity to obtain discovery, that argument is moot since we are denying summary decision. We note, however, that Commission rules allow parties to obtain a continuance to conduct any additional discovery that is necessary to oppose summary decision, but Respondent did not seek such a continuance. *See* 16 C.F.R. § 3.24(a)(4). Respondent cannot allege a proceeding is unconstitutional based on a lack of discovery when it has failed to take advantage of processes that could have allowed it to conduct discovery.

---

[16] Specifically, she stated:

> On . . . stopping the law-breaking—I think we need to act in a more timely manner. We need to be going into court more quickly; we need to be seeking preliminary injunctions. On the consumer protection side, the FTC, a few weeks ago, filed a lawsuit against TurboTax on the consumer protection side, alleging that TurboTax had been showing all these ads that are allegedly deceptive, and that it was really important to get that relief ahead of Tax Day. I think that type of timely intervention and timely filing of lawsuits is incredibly important.

RX 103 at 6.

**REDACTED PUBLIC VERSION**

## V.    CONCLUSION

For the reasons discussed above, we have determined that a decision on the merits of the case would be best made after fuller factual development at trial.  Accordingly,

**IT IS HEREBY ORDERED** that Complaint Counsel's Motion for Summary Decision is **DENIED.**

By the Commission.

April J. Tabor
Secretary


SEAL:
ISSUED:  January 31, 2023