# EXHIBIT L

PUBLIC

UNITED STATES OF AMERICA
BEFORE THE FEDERAL TRADE COMMISSION

COMMISSIONERS:    Lina M. Khan, Chair
                  Rebecca Kelly Slaughter
                  Alvaro M. Bedoya

| | |
|---|---|
| In the Matter of<br><br>Intuit Inc., a corporation. | DOCKET NO. 9408 |

ORDER DENYING MOTION TO DISQUALIFY

      On August 7, 2023, Intuit Inc. ("Intuit" or "Respondent") filed a motion to disqualify Chair Lina M. Khan from participating as an adjudicator in this matter based on a claim of prejudgment. *See* Respondent Intuit Inc.'s Motion to Disqualify Chair Lina M. Khan ("Motion") at 1. Respondent's Motion cites three statements in support of its claim: (1) Chair Khan's March 2022 retweet of an FTC press release announcing the unanimous, bipartisan issuance of the administrative complaint; (2) an April 2022 Q&A session during an antitrust conference in which Chair Khan referred to this proceeding in the context of discussing the importance of timely intervention; and (3) Chair Khan's description of this proceeding and the FTC's complaint during a July 13, 2023 House Judiciary Committee hearing. Motion at 1, 3-4*; see also* RX 102; RX 103 at 6. The Motion focuses primarily on the July 2023 hearing, where, in response to Rep. Pramila Jayapal's question about the FTC's action against Intuit, Chair Khan explained that the FTC had brought a suit against the company for deceptive practices as laid out in the complaint, that the case was still pending, and that she agreed that claims of something being free but ultimately not being free really hurt people. Motion at 3-4. According to Intuit, these statements show that Chair Khan has made up her mind about the ultimate issue in this case and must be disqualified. *Id.*at 8.

      Complaint Counsel opposed the Motion, and Respondent sought leave to file a short reply brief. Complaint Counsel's Response to Respondent Intuit's Motion to Disqualify Chair Lina M. Khan (Aug. 9, 2023); Respondent Intuit's Motion for Leave to File Reply in Support of

Motion to Disqualify Chair Lina M. Khan (Aug. 10, 2023).[1] For the reasons discussed below, the Commission, without participation of Chair Khan, finds that none of Chair Khan's statements, alone or in combination, demonstrates prejudgment or warrants disqualification, and therefore denies the Motion.[2]

## I.    Rule 4.17 Procedure

Requests for disqualification are governed by Commission Rule 4.17, 16 C.F.R. § 4.17, which provides that a party may seek to disqualify a Commissioner by motion setting forth with particularity the alleged grounds for disqualification, filed at the earliest practicable time after the participant learns, or could reasonably have learned, of the alleged grounds for disqualification. *See* 16 C.F.R. § 4.17(b)(1), (2). The motion must be addressed in the first instance by the Commissioner whose disqualification is sought. *See id.* § 4.17(b)(3)(i). If the Commissioner declines to recuse himself or herself from further participation in the proceeding, the Commission must determine the motion without the participation of such Commissioner. *See id.* § 4.17(b)(3)(ii). Pursuant to this procedure, Chair Khan declined to recuse herself from participation in the matter. The Commission, without the participation of Chair Khan, now assesses the Motion.

## II.   Legal and Evidentiary Standards for Disqualification

The disqualification of an administrative official acting in a judicial or quasi-judicial capacity is governed by the requirements of due process. *Schweiker v. McClure*, 456 U.S. 188, 195 (1982). An administrative adjudicator must be disqualified if "a disinterested observer may conclude that [the adjudicator] has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it." *Cinderella Career & Finishing Schs., Inc. v. FTC* (*Cinderella II*), 425 F.2d 583, 591 (D.C. Cir. 1970) (quotation omitted); *Texaco, Inc. v. FTC*, 336 F.2d 754 (D.C. Cir. 1964), *vacated on other grounds*, 381 U.S. 739 (1965); *see also Fast Food*

---

[1] Respondent's request for leave to file a reply is hereby granted. Respondent has also requested oral argument regarding its Motion. Motion at 1. The Commission finds that oral argument is not needed for appropriate consideration of the Motion.

[2] Although this is the first time Respondent has moved to disqualify Chair Khan, it twice previously argued that the 2022 retweet and Q&A statements demonstrate Chair Khan's prejudgment. First, Respondent sought discovery regarding the retweet and Q&A statements on the grounds that such discovery would allow Intuit to develop its prejudgment affirmative defense. *See* Order Denying Respondent's Motion for Discovery Pursuant to Rule 3.36 at 5 (Nov. 7, 2022). The Chief Administrative Law Judge ("ALJ") denied Respondent's discovery motion, finding that the statements did not evince prejudgment. *See id.* at 6. Later, in opposing summary decision before the Commission, Respondent argued that its due process rights were violated based on these same two statements. In denying summary decision, the Commission noted that Respondent had not sought to disqualify Chair Khan from the case pursuant to Commission Rule 4.17 and further that the Commission agreed with the ALJ that the prejudgment arguments as presented were without merit: Issuing a press release regarding a Commission action or highlighting the existence or importance of such an action does not amount to prejudgment. *See* Opinion and Order Denying Summary Decision at 19 (Jan. 31, 2023) (citing *FTC v. Cinderella Career & Finishing Schs., Inc.* (*Cinderella I*), 404 F.2d 1308, 1314-15 (D.C. Cir. 1968)). Now that Respondent has moved to disqualify Chair Khan, we have new occasion to consider Respondent's arguments and any additional briefing. Upon this fresh review, we find, as the ALJ and the Commission previously found, that these statements do not demonstrate prejudgment, as discussed *infra*. It bears noting that Chair Khan voted to deny Complaint Counsel's motion for summary judgement, which is not what one would expect if she had already prejudged Respondent's liability.

*Workers Comm. v. NLRB*, 31 F.4th 807, 815 (D.C. Cir. 2022) (dictum). Both unfairness and the appearance of unfairness must be avoided. *See Cinderella II,* 425 F.2d at 591.

Administrative adjudicators are presumed to be unbiased. *See Schweiker*, 456 U.S. at 195. A party seeking disqualification of an agency adjudicator based on a public statement has the burden of overcoming that presumption by showing that the adjudicator "is not capable of judging a particular controversy fairly on the basis of its own circumstances." *Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 493 (1976) (quotation omitted); *see also Withrow v. Larkin*, 421 U.S. 35, 47 (1975) (The contention of bias or prejudgment in an administrative adjudication "must overcome a presumption of honesty and integrity in those serving as adjudicators."). The test may be stated in terms of whether the adjudicator's mind is "'irrevocably closed' on the issues as they arise in the context of the specific case." *S. Pac. Commc'ns Co. v. Am. Tel. & Tel. Co.*, 740 F.2d 980, 991 (D.C. Cir. 1984) (quoting *FTC v. Cement Inst.*, 333 U.S. 683, 701 (1948)); *see also Metro. Council of NAACP Branches v. FCC*, 46 F.3d 1154, 1165 (D.C. Cir. 1995) (A Commissioner's decision not to recuse himself is set aside "only where he has demonstrably made up his mind about important and specific factual questions and is impervious to contrary evidence." (cleaned up)). A "comment is disqualifying only if it connotes a fixed opinion—'a closed mind on the merits of the case.'" *United States v. Haldeman*, 559 F.2d 31, 136 (D.C. Cir. 1976) (en banc) (per curiam) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)).[3]

### III.   Analysis

As explained below, we find that Respondent has failed to satisfy its burden to adduce evidence of prejudgment, and we therefore deny its Motion.

### A.   2022 Statements

Part of Respondent's Motion rests on Chair Khan's statements from March and April of 2022, over a year before the Motion was filed. Rule 4.17 requires any disqualification motion to be filed at the earliest practicable time after a party learns, or could reasonably have learned, of the alleged grounds for disqualification. *See* 16 C.F.R. § 4.17(b)(2). Respondent has known

---

[3] Although *Haldeman* discusses the disqualification standard for federal judges, the due process standard applicable to disqualification of administrative adjudicators is more flexible than the statutory standards that apply to the federal judiciary, such that a comment that would not disqualify a federal judge would necessarily also not disqualify an administrative adjudicator. *See S. Pac. Commc'ns*, 740 F.2d at 990 n.9 (explaining that, because the statutory requirements for disqualification of federal judges "establish a more stringent standard for disqualification than is required by the right to a fair trial guaranteed by the due process clause," a determination that a judge is not disqualified for bias "necessarily includes a determination that the right to a fair trial is not violated by the judge's presiding over the case"); *see also N.Y. State Inspection, Sec. & L. Enf't Emps., Dist. Council 82 v. N.Y. State Pub. Emp. Rels. Bd.*, 629 F. Supp. 33, 48 (N.D.N.Y. 1984) ("Instead of transplanting standards from the judicial to the administrative context, the court finds that it must evaluate the procedures allegedly employed by the defendants against a more flexible touchstone derived from *Withrow* and its progeny. . . ."). *See generally Intel Corp.*, 149 F.T.C. 1548, 1552 & n.9 (2010) (noting that, although administrative adjudicators are generally held to the recusal standards applicable to the federal judiciary, federal judges may not participate in a decision to initiate a case they may later decide, whereas administrative adjudicators are permitted to do so).

about the March and April 2022 statements since at least October 2022,[4] so, to the extent that the Motion is based on these statements, it is untimely. *See N.C. Bd. of Dental Exam'rs*, 151 F.T.C. 644, 649 (2011). Regardless, neither statement indicates prejudgment.

First, Respondent has not demonstrated any prejudgment evident in Chair Khan's March 2022 retweet, with no commentary, of an FTC post sharing the Commission's press release regarding the filing of the complaint in this proceeding. *See* RX 102. Courts have long held that factual press releases alerting the public to suspected violations of law and to the initiation of Commission action are Congressionally authorized, in the public interest, and do not indicate prejudgment or violate respondents' due process rights. *See Cinderella I*, 404 F.2d at 1314-15. In the same vein, retweeting or otherwise publicizing a press release does not indicate prejudgment.

Similarly, Respondent has not demonstrated any prejudgment evident in Chair Khan's statements in an April 2022 Q&A session, describing the allegations in the FTC's complaint and noting the importance of timely lawsuits.[5] Neither summarizing a complaint nor expressing a policy view regarding the timing of government enforcement shows an irrevocably closed mind on the specific issues in this case. *See Ass'n of Nat'l Advertisers, Inc. v. FTC*, 627 F.2d 1151, 1171 n.51 (D.C. Cir. 1979) (Adjudicators "are free to decide cases involving policy questions on which they previously have expressed a view."); *Nuclear Info. & Res. Serv. v. NRC*, 509 F.3d 562, 571 (D.C. Cir. 2007) (A party cannot overcome the presumption that administrative officers are fair and objective with "a mere showing that an official has taken a public position, or has expressed strong views, or holds an underlying philosophy with respect to an issue in dispute." (cleaned up)).

### B. Statements at the House Judiciary Committee Hearing

The primary focus of Respondent's Motion is the exchange between Chair Khan and Rep. Pramila Jayapal during a July 13, 2023 House Judiciary Committee hearing, excerpted below:

> REP JAYAPAL: I just want to go to evil actors because there's one more I really want to talk about, and that is tax-preparation companies. For years, Intuit, the maker of TurboTax, flooded consumers with ads promising 'free free free' tax-filing services only to trick and trap them into paying, which is why taxpayers pay $250 on average each year just for the privilege of filing their taxes. So, state

---

[4] *See* Respondent's Motion for Discovery Pursuant to Rule 3.36 at 5 (Oct. 14, 2022).
[5] Specifically, she stated:

> On . . . stopping the law-breaking—I think we need to act in a more timely manner. We need to be going into court more quickly; we need to be seeking preliminary injunctions. On the consumer protection side, the FTC, a few weeks ago, filed a lawsuit against TurboTax on the consumer protection side, alleging that TurboTax had been showing all these ads that are allegedly deceptive, and that it was really important to get that relief ahead of Tax Day. I think that type of timely intervention and timely filing of lawsuits is incredibly important.

RX 103 at 6.

attorney generals have won taxpayers money from Intuit and the FTC has also taken action. Can you just speak about that?

CHAIR KHAN: Yeah, absolutely. So, last year the FTC brought a lawsuit against Intuit for those very types of deceptive practices that are laid out in our complaint. That is still pending, but I couldn't agree more that, you know, claims of something being free but then ultimately not being so really hurts people.[6]

To support its claim of prejudgment, Respondent points to the fact that, when Chair Khan stated that the FTC had brought a lawsuit against Intuit for the "deceptive practices that are laid out in our complaint," she (1) failed to qualify this with the word "alleged" and (2) used the phrase "our complaint." Motion at 5. With respect to the first point, a disinterested observer would plainly understand that Chair Khan was describing the lawsuit bought by the Commission and the complaint issued in this case, not her personal views about whether Intuit engaged in deception. As discussed above, merely restating what the agency's lawsuit asserts does not constitute prejudgment. As to the second point, a disinterested observer would readily apprehend that Chair Khan's reference to "our complaint" restates the undeniable fact that the Commission—Chair Khan included—voted to issue the complaint after having found reason to believe that Intuit engaged in deceptive practices, consistent with the requirements and process laid out in Section 5 of the FTC Act, 15 U.S.C. § 45(b). The fact that the Commission both issues and adjudicates the Complaint is a function of the administrative scheme created by Congress, and the Supreme Court has squarely held that combining such tasks does not establish prejudgment or violate due process. *See Withrow*, 421 U.S. at 56 (explaining that it is "very typical for the members of administrative agencies to receive the results of investigations, to approve the filing of charges or formal complaints instituting enforcement proceedings, and then to participate in the ensuing hearings" and that "[t]his mode of procedure . . . does not violate due process of law").

Respondent argues that Chair Khan "adopted" statements made by Rep. Jayapal, including that Intuit was an "evil actor." Motion at 1-2, 5. An examination of the exchange, however, reveals no such adoption or agreement. Respondent takes issue with the fact that "Chair Khan did not voice any disagreement" with those statements. *Id.* at 6. But failing to express disagreement is not the standard for finding a due process violation and disqualifying a Commissioner. Indeed, contrary to Respondent's assertion that Chair Khan signaled that she had already deemed Intuit liable for the allegations and "entrench[ed]" herself in that position, Motion at 5, 6 (quoting *Cinderella II*, 425 F.2d at 590), Chair Khan specifically noted that the case was still pending. Nothing in Chair Khan's response indicates that she has a closed mind on the merits of the case.

Finally, Respondent argues that prejudgment can be gleaned from Chair Khan's statement that consumers are hurt by claims that something is free when it is not free. Motion at 8. This statement does not suggest that Chair Khan has irrevocably made up her mind that Intuit actually made such claims. It merely reflects the unremarkable policy view that deceptive advertising harms consumers. "It is well established that the mere fact that [an adjudicator] holds views on law or policy relevant to the decision of a case does not disqualify him from hearing the

---

[6] *See* https://www.youtube.com/live/nLGku6ueO-8?feature=shared&t=7630

case." *S. Pac. Commc'ns*, 740 F.2d at 990; *see also Cement Inst.*, 333 U.S. at 702-03 (holding that it is not a violation of due process for a Commissioner "to sit in a case after he had expressed an opinion as to whether certain types of conduct were prohibited by law").

The cases Respondent cites as analogous, *Cinderella II* and *In re Boston's Children First*, 244 F.3d 164 (1st Cir. 2001), are factually distinguishable, as they concerned statements that could be construed as an assessment of the merits. Chair Khan's statements at issue in this Motion, on the other hand, did no more than summarize the Commission's complaint and express general views on consumer harm from deceptive advertising and the importance of timely enforcement.

In short, Respondent has adduced no evidence—standing alone or in aggregate—of prejudgment or appearance of prejudgment on the record, and we therefore deny the Motion. Accordingly,

**IT IS HEREBY ORDERED THAT** the Respondent Intuit Inc.'s Motion to Disqualify Chair Khan is **DENIED**.

By the Commission, Chair Khan not participating.

April J. Tabor
Secretary

SEAL:
ISSUED: 10/19/2023