# EXHIBIT P

**UNITED STATES OF AMERICA
BEFORE THE FEDERAL TRADE COMMISSION**

| | |
|---|---|
| **COMMISSIONERS:** | **Lina M. Khan, Chair**<br>**Rebecca Kelly Slaughter**<br>**Alvaro M. Bedoya** |

**In the Matter of**

**Intuit Inc.,**
    **a corporation.**

**Docket No. 9408**

**DECISION AND ORDER DENYING RESPONDENT'S APPLICATION FOR
STAY OF ORDER PENDING REVIEW BY U.S. COURT OF APPEALS**

      On January 30, 2024, Respondent Intuit Inc. ("Respondent") applied for a stay of the Commission's Final Order in this matter, pending review by the United States Court of Appeals for the Fifth Circuit. Respondent Intuit Inc.'s Appl. for a Stay Pending Review by the U.S. Ct. of Appeals for the Fifth Circuit ("App."). Absent a stay, the Commission's Final Order will become final on the sixtieth day after its service, resulting in a March 25, 2024 effective date. 15 U.S.C. § 45(g)(2).[1] Complaint Counsel oppose the stay. For the reasons explained below, we find that Respondent has failed to demonstrate that a stay is warranted. Specifically, Respondent has failed to demonstrate a likelihood of success on appeal or that Respondent will suffer irreparable harm absent a stay of the Final Order. Further, we find that the balance of harms favors denial of a stay and that Respondent has failed to show that a stay would be in the public interest. Accordingly, we deny Respondent's Application.

      The Commission issued its Opinion ("Op.") and Final Order on January 19, 2024, finding that Respondent had deceptively advertised its "free" online tax preparation products and services in violation of Section 5 of the FTC Act, 15 U.S.C. § 45. As the Commission found, Respondent promoted its TurboTax products through aggressive, yearslong, nationwide ad campaigns that stated or implied that the products allowed the viewers to file their taxes for free, though Respondent knew that approximately two-thirds of U.S. taxpayers did not qualify for the free offers. *E.g.*, Op. 37–38, 46, 47, 80–81. The Commission further found that Respondent's disclaimers or other limitations on the free offer were not clearly communicated or understood by consumers. *Id.* at 39–52.

---

[1] Because the sixtieth day after service falls on a Saturday, the Final Order will become effective on Monday, March 25, 2024, absent a stay. 16 C.F.R. § 4.3(a).

## I.　　THE FINAL ORDER

The Commission issued a Final Order designed to prevent Respondent from making misleading "free" claims about its products and services. When Respondent makes "free" claims and fewer than all consumers are eligible for the free product or service, the Final Order requires Respondent to alert consumers in specified ways that some or most are not eligible. Final Order I.B.1. The Final Order requires that, when Respondent's ads assert that a product is free, they must clearly and conspicuously disclose the percentage of U.S. taxpayers (or other consumers) who qualify for the product (or, alternatively, that a majority of U.S. taxpayers do not qualify, if that is the case). *Id.* The ads must also disclose all terms, conditions, and obligations on which receipt and retention of the free good or service are contingent. *Id.* at I.B.2. If the ad is space-constrained, however, it may direct consumers to view eligibility requirements on a landing page or webpage on a TurboTax website instead of disclosing all terms, conditions, and obligations on which the "free" offer is contingent; if the space-constrained ad is online, the consumer must be able to reach the landing page or webpage by clicking on a hyperlink or on the ad itself. *Id.* at I.C. The Final Order also prohibits Respondent from misrepresenting the cost of any of Respondent's goods or services or any other material fact concerning a good or service such as its total cost or material restrictions, limitations, or conditions. *Id.* at II.

## II.　　ANALYSIS

Pursuant to Commission Rule 3.56(c), an application for a stay must address the likelihood of the applicant's success on appeal, whether the applicant will suffer irreparable harm if a stay is not granted, the degree of injury to other parties if a stay is granted, and whether the stay is in the public interest. 16 C.F.R. § 3.56(c); Order Granting in Part and Den. in Part Respondent's Appl. for Stay Pending Judicial Review, *1-800 Contacts, Inc.*, 167 F.T.C. 922, 923 (Feb. 12, 2019); Commission Order Den. Respondents' Mot. to Stay Final Order Pending Judicial Review, *Jerk, LLC*, 159 F.T.C. 2132, 2135 (May 28, 2015). Applying these factors, we find that a stay is not warranted.

### A.　　Likelihood of Success on Appeal

Respondent argues that, even if we do not "harbor doubt about" the soundness of our decision and order, Respondent nonetheless presents "difficult legal question[s]" that "establish a substantial showing of a likelihood of success on the merits." App. 3 (quoting Order on Respondent's Appl. For Stay of Order Pending Review by U.S. Ct. of Appeals, *N.C. Bd. of Dental Exam'rs*, 153 F.T.C. 1749, 1750–51 (Feb. 10, 2012)). Respondent's arguments, however, often amount to mere disagreement with our decision, *see* Order Den. Respondent's Mot. for Partial Stay of Final Order Pending Appeal, *In re Realcomp II, Ltd.*, No. 9320, 2010 WL 5576189, at *2 (F.T.C. Jan. 7, 2010), and, as shown below and in the Commission's opinion, they have already been rejected by the courts or are contrary to long-held legal principles. They do not establish serious and substantial questions going to the merits.

Respondent offers three primary arguments to support its claim of likely success on appeal: the purported unconstitutionality of these proceedings, the Commission's asserted use of an erroneous standard for deceptive advertising, and the claimed impropriety of the Final Order.

App. 3–7. We find that Respondent's arguments lack merit and fail to demonstrate a likelihood of success on appeal.

1. **Constitutionality of the Proceeding**

For the reasons we explained in the Opinion, case law does not support Respondent's constitutional claims and we have accordingly rejected them. Op. Section VI.E.2. "[R]epeating arguments the Commission rejected before does not provide the Commission with sufficient reason to question its prior decision or any of the bases for it, and Respondents' renewal of [their] legal arguments, without more, is insufficient to justify granting a stay." Order Den. Respondents' Appl. for Stay of Modified Final Order Pending Pet. for Review, *Daniel Chapter One*, 149 F.T.C. 1589, 1593 (Mar. 22, 2010) (citation and quotation omitted).

Respondent gives particular emphasis to a claim that the ALJ is improperly insulated from removal by the President. App. 3 (citing *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), *cert. granted in relevant part*, 143 S. Ct. 2688 (2023), *and cert. denied*, 143 S. Ct. 2690 (2023)). We do not agree that the provisions governing removal of the ALJ are unconstitutional, but a removal infirmity would not in any case invalidate the Final Order. Even focusing just on the actions of the ALJ,[2] there is no basis to deem them invalid. Intuit does not allege that the ALJ was improperly appointed, and the Supreme Court has held that, assuming *arguendo* that a removal restraint is unconstitutional, the actions of a validly appointed officer are nonetheless presumed valid. *See Collins v. Yellen*, 141 S. Ct. 1761, 1787 & 1788 n.23 (2021). In accord with *Collins*, the Fifth Circuit does not presume harm from improper restraints on removal. *See Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 978 (2023) *and cert. denied in relevant part*, 143 S. Ct. 981 (2023). Rather, to demonstrate harm, a plaintiff must show a connection between the President's frustrated desire to remove the actor and the agency action with which plaintiff takes issue. *Id.*; *see also Calcutt v. FDIC*, 37 F.4th 293, 315 (6th Cir. 2022), *rev'd per curiam on other grounds*, 598 U.S. 623 (2023) (citing *Collins* for the proposition that "a petitioner would have to establish that an unconstitutional removal protection specifically caused an agency action in order to be entitled to judicial invalidation of that action"); *Kaufmann v. Kijakazi*, 32 F.4th 843, 849 (9th Cir. 2022) (explaining that "[a] party challenging an agency's past actions must . . . show how the unconstitutional removal provision *actually harmed* the party"). Here, Respondent has not even alleged, let alone demonstrated, a presidential desire to remove the ALJ that could not be carried out due to the restraints of which Respondent complains.

In Reply, Respondent cites *Weaver v. Massachusetts*, 582 U.S. 286 (2017) in support of a claim that it need not show prejudice from non-removability of the ALJ. Respondent Intuit Inc.'s Reply in Support of Appl. for a Stay Pending Review by the U.S. Ct. of Appeals for the Fifth Circuit ("Reply") 1. However, *Weaver* is a criminal case that examines intertwined principles of criminal law. It is inapplicable in this civil case and does not undercut the approach taken in *Community Financial Services Association* and in *Collins*. Respondent also points to *Lucia v. SEC*, 138 S. Ct. 2044 (2018), which it says held that unconstitutional appointment of an ALJ

---

[2] Of course, the Court of Appeals will review the decision of the Commission, not that of the ALJ. *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1046 (5th Cir. 2023). The Opinion and Final Order are *de novo* decisions of the Commission. 16 C.F.R. § 3.54(a).

3

required vacatur despite the SEC's *de novo* review. Reply 1. However, *Lucia* illustrates the very point that the Supreme Court made in *Collins*: the actions of an unconstitutionally *appointed* officer, as in *Lucia*, require a different remedy from the actions of a validly appointed officer who is instead improperly insulated from removal. *Collins*, 141 S. Ct. at 1788 (distinguishing improper-appointment cases like *Lucia* which "involve[] a Government actor's exercise of power that the actor did not lawfully possess"). The *Lucia* Court ordered a new hearing before a properly-appointed officer, while *Collins* and its progeny require litigants to prove a connection between the President's putative inability to remove an officer and some tangible harm to the litigant. *See Collins*, 141 S. Ct. at 1788–89; *Cmty. Fin. Servs. Ass'n*, 51 F.4th at 632.

Respondent's Due Process arguments fare no better. Citing *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016), Respondent claims that the Commission's structure is inherently biased, with Commissioners "serv[ing] as both accuser and adjudicator." App. 4. But, as discussed in Section VI.E.2.a of our Opinion, Respondent again ignores controlling, recent authority from the Fifth Circuit. The court in *Illumina* held that the Commission's structure does not create a presumption of bias and explained that "the Supreme Court has held that administrative agencies can, and often do, investigate, prosecute, and adjudicate rights without violating due process." 88 F.4th at 1047 (citing, *inter alia*, *Withrow v. Larkin*, 421 U.S. 35, 47, 56 (1975), and *Gibson v. FTC*, 682 F.2d 554, 559–60 (5th Cir. 1982)).[3] As we explained at greater length in Section VI.E.2.a of our Opinion, we find that Respondent's structural bias arguments lack merit; they do not warrant a stay. To the limited extent that Respondent claims evidence of "actual bias" not already addressed, this evidence is wholly unpersuasive;[4] at most it reflects Respondent's

---

[3] Respondent quotes a partial sentence from the *Illumina* opinion in a manner that could suggest that the FTC's combination of functions showed "evidence of 'actual bias'" in that case. App. 4 (quoting *Illumina*, 88 F.4th at 1047). However, the *Illumina* court held the opposite. *See Illumina*, 88 F.4th at 1047 ("[T]his court has already rejected the argument that the FTC's structure, which combines prosecutorial and judicial functions, deprives parties of due process. (citation omitted). Illumina points to no evidence of actual bias . . . .").

[4] As evidence, Respondent points to the Commission's decision to return this matter to adjudication without "addressing the factors it previously enumerated as relevant to such a decision"; the Commission's summary decision order, which *denied* Complaint Counsel's motion for summary decision but allegedly pre-decided critical aspects of the case against Respondent "based on a one-sided record"; and so-called (but unidentified) "extreme language" in the Commission's ultimate opinion that was assertedly contradicted by the record. App. 4. None of these arguments changes our view. The Commission's decision to return the matter to adjudication requires consideration of whether the public interest warrants further litigation, 16 C.F.R. § 3.26(c). Here, the Commission expressly found that it did. Order Returning the Matter to Adjudication and Setting a New Evidentiary Hearing Date 1 (Aug. 19, 2022). A 1995 Policy Statement identifies more specific factors that the Commission may consider when contemplating further pursuit of administrative litigation, 60 Fed. Reg. 39,741, 39,743 (Aug. 3, 1995), but nowhere does the Policy Statement require the Commission to articulate a position on each; rather, the more specific factors are part of an overall assessment of what will serve the public interest. Making that assessment in this proceeding was well within the Commission's broad discretion, *see Porter & Dietsch, Inc. v. FTC*, 605 F.2d 294, 308 (7th Cir. 1979), and in no sense showed bias. Respondent fails to identify any aspect of the summary decision, in which the Commission in fact ruled as Respondent sought, that improperly "pre-decided" issues and fails to give recognition to the Commission's determination to remand for the benefit of a "full factual record" and "fuller factual development at trial." Op. and Order

disappointment that it did not end up on the winning side of the adjudication, which is not a basis to stay the Final Order.

Finally, Respondent argues that the enforcement action here involves "private rights" and should therefore have been adjudicated in an Article III court rather than an administrative forum. App. 5. As we explained in our Opinion, this case involves public rights and Respondent's Article III argument does not apply. Op. 79–80. Since Respondent does not offer any fresh arguments, we will not revisit the Opinion's analysis here.

### 2.    The Commission's Deception Holding

Respondent argues that the Commission erred in several ways in holding that Respondent's ads were deceptive. App. 5. For example, Respondent argues that its disclaimers would have been understood by reasonable consumers and that our decision to apply the "deceptive door-opener" or first-contact rule was error. App. 6–7. These challenges reiterate arguments that we have already rejected, and they do not persuade us of the need for a stay. Op. VI.B; *Daniel Chapter One*, 149 F.T.C. at 1591–92.

Respondent mis-cites material from our Opinion in support of its argument. For example, Respondent points to a footnote in our Opinion to suggest that we engaged in forbidden "disputatious dissection" of its ads, analyzing them in "piecemeal" fashion. App. 6 (citing Op. 38 n.17; quoting *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001)). But our footnote clearly states that our conclusions regarding the net impressions of ads were "based on a review of each ad in its entirety, taking into account all disclaimers and other visual and audio cues provided." Op. 38 n.17. This is not the sole instance in which Respondent's Application misleadingly cites or quotes material from the Opinion or from Commission guidance.[5]

---

Den. Summ. Decision, No. 9408, 2023 WL 1861211, at *14, *18 (F.T.C. Jan. 31, 2023). Thus, this claim also fails. Finally, Respondent's claim of unspecified "extreme language" in the Commission's ultimate opinion does not merit a stay. For example, though Respondent may disagree with the Commission's assessment that the conduct here was "egregious," Op. 81, the Commission stands by its finding that an approximately seven-year, nationwide course of deceptive advertising with billions of ad impressions merits that adjective.

[5] For example, Respondent relies on the Commission's "Free" Guide to argue that the Commission's prior guidance recognized that "the 'public understands' that free offers are typically qualified." App. 6 (quoting 16 C.F.R. § 251.1(b)(1)). Respondent's selective quotation of the provision omits relevant context. The cited guidance addressed the situation where consumers received a "free" product when they purchased another product. The guidance stated that, in this "buy one, get one free" setting, the "public understands" that the paid-for product will be offered at its regular price, not at an artificially inflated price designed to recover the cost of the supposedly "free" product. 16 C.F.R. § 251.1(b)(1). The quoted language in the Free Guide thus addressed a factual situation very different from that presented here, and in fact served to enhance, not limit, protection for consumers. The language offers no support for Respondent.

5

### 3. The Cease-and-Desist Order

Respondent claims that the Final Order is "unjustified" and that this establishes a likelihood that the Fifth Circuit will, at a minimum, vacate it. App. 7. The Commission considered and rejected each of Respondent's arguments on appeal, Op. 81–84, 86, 89–90, and we find that they do not establish a likelihood of success for Respondent.[6]

We note that our Final Order offers certain flexibilities to Respondent that the ALJ's original order did not. For example, the Final Order allows space-constrained advertisements to use a landing page or webpage to substitute for disclosing all terms, conditions, and obligations, so long as the ad clearly and conspicuously directs consumers there and, if online, permits consumers to reach the landing page or webpage by clicking on a hyperlink or on the ad itself. Final Order I.C. Respondent asserts that, by requiring it to disclose the percentage of U.S. taxpayers that qualify for the free product (or, if Intuit prefers, that a majority of U.S. taxpayers do not qualify, if such is the case), the Final Order "requires Intuit to say something it would not say but for the Order, because Intuit does not believe the compelled language to be helpful or relevant for consumers to understand the qualifications for its free products." Soukas Decl. ¶ 6. But, Respondent contends in its Reply that its current website and its current ads already display upfront that "~37% of filers qualify." Reply 3. While Respondent's last-minute adoption of partial, voluntary compliance, following years of deliberate, deceptive conduct, Opp. VI.B, does not obviate the need for our Order, it does undermine Respondent's claims that the information is not relevant and that the Order imposes an undue burden upon it by requiring such disclosure.

### B.    Irreparable Harm

We have already rejected Respondent's claims that the Commission is unconstitutionally structured, is imposing a biased process on Respondent, and has unlawfully compelled speech in the Final Order. Op. VI.E.2.a, VI.E.2.c, VII.B; App. 8. Thus, we find no likelihood of irreparable harm stemming from those claims.

Respondent further argues that the Final Order will inflict irreparable reputational and competitive harms on it, because it has built its business on long-term, positive relationships with customers. App. 8. Although a cease-and-desist order by definition entails a finding that the respondent has violated the law, Respondent cites no case that holds that such an order inflicts by definition irreparable harm upon the adjudicated wrongdoer—even when the order is eventually

---

[6] To address one particular argument, Respondent states that the ALJ credited "the sincerity of [Respondent's] witnesses testifying to Intuit's commitment not to deceive its consumers—including because of Intuit's own business incentives." App. 7 (quoting Initial Decision (Revised *In Camera*) ("ID") 221). But the Initial Decision's full passage continues by observing that, despite the ALJ's unwillingness to impugn those witnesses, "Intuit's own copy testing and market research put Intuit on notice that a significant percentage of consumers believed that TurboTax was free for them, yet Intuit continued the advertising despite knowing that only approximately one-third of taxpayers actually qualified for the free tax filing offer." ID 221 (citations omitted). The ALJ found that this and other evidence supported his conclusion that there was enough danger of recurrent violation to support a cease-and-desist order. *Id.* Respondent's selective quotations from the Initial Decision do not persuade us that Respondent has a likelihood of success on appeal.

reversed. Indeed, if that were the law, every commercial entity would automatically meet the standard for irreparable harm in every case based on its belief that its reputation is valuable. This is not the law. Respondent's argument for reputational harm amounts to a claim that (1) it would like consumers to view it as acting with integrity across its entire business, including its advertising, and (2) it believes the Final Order's disclosures will be less clear than "simple tax returns" and will give consumers an unfavorable view of Intuit and cause some taxpayers to believe erroneously that they are not eligible for the free product. Soukas Decl. ¶¶ 15–18, 20–22. As our Opinion made clear, Intuit's conduct was deliberate, Op. VII, undermining its professed reputational concerns, and its contentions regarding disclosures are unpersuasive. Op. VI & VII.

Respondent's claim that it will suffer competitive harm due to the Final Order's terms similarly lacks merit. As we explain in the Opinion, the Final Order is designed to prevent Respondent from making misleading "free" claims. Op. 86. It thereby removes Intuit's unlawful advantage over rivals who do not advertise deceptively.

In any case, the Final Order's disclosure requirements have been tailored in the context of space-constrained ads to allow suitable hyperlinks and landing pages and should cause Respondent no hardship.[7] As noted above, post-record information suggests that Intuit's ads have already begun disclosing the percentage of U.S. taxpayers who are eligible for the free offer — though Intuit's voluntary disclosure does not fulfill all of the Order's requirements[8] and, without the Order, Intuit can pull down the disclosure any time. In any event, there is no reason to believe that taxpayers find this information confusing or that Intuit will find it unduly burdensome. The broadest category of disclosures is required only when space permits.[9] Overall, as Complaint Counsel point out and Respondent does not deny, Intuit informed the public that it "expects no significant impact to its business" from the Final Order. Complaint Counsel's Answer to Respondent Intuit Inc.'s Appl. for a Stay Pending Review 8; Reply 5. Intuit's overall assessment, along with our reasoning above, foreclose a finding of irreparable harm.

### C.    Harm to Consumers and the Public Interest

The final two factors are the degree of injury to other parties if the stay is not granted and the public interest. 16 C.F.R. § 3.56(c). Because, in enforcing the law, Complaint Counsel are acting in the public interest, we consider those factors together. Decision and Order Den. Respondent's Appl. for Stay of Order Pending Review by U.S. Ct. of Appeals, *McWane, Inc.*,

---

[7] Respondent's claimed harms fall far short of those alleged in *Burgess v. FDIC*, 871 F.3d 297 (5th Cir. 2017), on which Respondent relies. App. 8–9. There, the respondent had been banned entirely from his chosen industry and had demonstrated a likelihood of success on an Appointments Clause challenge. *Burgess*, 871 F.3d at 304. Neither situation applies here.

[8] The Final Order also requires Respondent to disclose, in specified manners that depend on whether an ad is space-constrained, the terms, conditions, and obligations on which receipt and retention of the "free" good or service is contingent. Final Order I.B, I.C.

[9] In fact, Respondent asserts that Intuit's current ads comply with the Final Order. Reply 3. The record does not contain evidence regarding Intuit's current ads, so we are unable to verify Respondent's assertion, but, if true, that would cut against claims that the Final Order imposes irreparable injury.

157 F.T.C. 1845, 1850 (Apr. 11, 2014).

We find that the public interest favors allowing the Final Order to go into effect as scheduled. For several years Respondent has flooded every major communication platform with its deceptive messages. *See, e.g.*, Op. II.C, VII.A, VII.B. A "free" message that turns out to be false can deprive a consumer of time, privacy, and money. Inadequate disclosures leave consumers exposed to Intuit's misleading messages. Indeed, our Opinion provides several examples of Respondent's TY 2022 ads, the most recent in the record, that remained deceptive despite the pendency of this and other enforcement actions and a nationwide settlement with the attorneys general of the fifty states. Op. 82–84. Furthermore, as we mentioned in our Opinion, allowing dishonest practices to persist can result in a "race to the bottom" that harms honest businesses and consumers alike. Op. 91 & n.81.

A stay pending judicial review could extend consumers' exposure to harm through the current tax season and well into or through the next tax year. The Final Order will protect potentially tens of millions of individual U.S. taxpayers from the consequences of further deception.

In balancing "the hardships of the public interest against private interest, the public interest should receive greater weight." *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1236 (9th Cir. 1999) (citation and quotation omitted). Here the balance plainly favors consumers. This circumstance, and the breadth and scope of the violations at issue, calls for the protection of the public who will view Intuit's advertisements and counsels against any stay of the Final Order's effective date.

## III. CONCLUSION

For the reasons stated, we conclude that Respondent has failed to meet the required showing for a stay. We find that Respondent has not demonstrated a likelihood of success on appeal or that it will be irreparably harmed by the Final Order. In fact, we find that the balance of harms tilts decidedly in favor of consumers, who will be protected from further deception when the Final Order goes into effect. Accordingly,

**IT IS HEREBY ORDERED THAT** Respondent's Application for a Stay Pending Review by the United States Court of Appeals for the Fifth Circuit is **DENIED**.

By the Commission.

April J. Tabor
Secretary

SEAL:
ISSUED: February 29, 2024