No. 24-60040

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

INTUIT, INCORPORATED,
*Petitioner*,

v.

FEDERAL TRADE COMMISSION,
*Respondent.*

Petition for Review on an Order of the
Federal Trade Commission
(FTC Docket No. 9408)

## Opposition of the Federal Trade Commission to Petitioner's Motion for Stay Pending Appeal

Of Counsel:
LOIS C. GREISMAN
   *Associate Director*

WILLIAM MAXSON
   *Assistant Director*

ROBERTO ANGUIZOLA
REBECCA PLETT
JAMES EVANS
SARA TONNESEN
   *Attorneys*

FEDERAL TRADE COMMISSION
   Washington, D.C. 20580

ANISHA S. DASGUPTA
   *General Counsel*

MARIEL GOETZ
   *Acting Deputy General Counsel*

BRADLEY DAX GROSSMAN
   *Attorney*

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
  Washington, D.C. 20580
  bgrossman@ftc.gov
  202-326-2994

## TABLE OF CONTENTS

Table of Authorities ................................................................................ ii

Introduction ............................................................................................... 1

Background ................................................................................................ 3

    A.   FTC Adjudication of Deceptive Advertising Claims ................... 3

    B.   Intuit's Deceptive "Free" TurboTax Claims ................................. 4

    C.   Proceedings Below ........................................................................ 9

Argument ................................................................................................. 10

I.    Intuit Is Unlikely To Succeed On Appeal ...................................... 11

    A.   Intuit's Constitutional Arguments Contravene Precedent and
         Misstate the Record .................................................................... 11

    B.   Intuit Has No Likelihood of Success in Challenging the
         Deception Ruling ........................................................................ 17

         1.   The Commission's Findings Rest on Substantial
              Evidence ........................................................................... 17
         2.   The Commission Committed No Legal Errors ................... 18

    C.   The Commission's Remedy Was Proper ...................................... 21

II.   Intuit Fails To Show Irreparable Harm .......................................... 25

III.  Staying The Order Would Irreparably Harm Consumers And The
      Public Interest ................................................................................. 27

Conclusion .............................................................................................. 28

# TABLE OF AUTHORITIES

## CASES

*Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18
(D.C. Cir. 2014) ..................................................................24

*AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. 67 (2021)................................11

*Atlas Roofing Co. v. OSHRC*, 430 U.S. 442 (1977) ................................17

*Carter Prods., Inc. v. FTC*, 323 F.2d 523 (5th Cir. 1963)........................4

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*,
447 U.S. 557 (1980)..........................................................23

*Chamber of Com. v. SEC*, 85 F.4th 760 (5th Cir. 2023)........................23

*Cmty. Fin. Servs. Ass'n of Am. v. CFPB*, 51 F.4th 616
(5th Cir. 2022)................................................................12

*Collins v. Dep't of Treasury*, 83 F.4th 970 (5th Cir. 2023) ......................2

*Collins v. Yellen*, 141 S. Ct. 1761 (2021) ........................................ 11, 12

*Fanning v. FTC*, 821 F.3d 164 (1st Cir. 2016) ................................ 4, 14

*FDIC v. Burgess*, 871 F.3d 297 (5th Cir. 2017) ................................26

*Fedders Corp. v. FTC*, 529 F.2d 1398 (2d Cir. 1976)........................25

*FTC v. Algoma Lumber Co.*, 291 U.S. 67 (1934)................................17

*FTC v. Cement Inst.*, 333 U.S. 683 (1948). ..................................16

*FTC v. Cinderella Career & Finishing Sch., Inc.*, 404
F.2d 1308 (D.C. Cir. 1968) ..................................................16

*FTC v. Colgate-Palmolive Co.*, 380 U.S. 374 (1965)............................ 3, 21, 25, 28

*FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611
(6th Cir. 2014)................................................................ 18, 21

*FTC v. Intuit Inc.*, 2022 WL 1601403
(N.D. Cal. Apr. 22, 2022) ..................................................13

*FTC v. R.F. Keppel & Bro.*, 291 U.S. 304 (1934) ............................ 16, 24

*FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233 (1972)........................16

*Illumina, Inc. v. FTC*, 88 F.4th 1036 (5th Cir. 2023) .................. 1, 12, 13

*Impax Lab'ys, Inc. v. FTC*, 994 F.3d 484 (5th Cir. 2021) ......................18

*Jarkesy v.* SEC, 34 F.4th 446 (5th Cir. 2022) .................................... 12, 17

*Keele Hair & Scalp Specialists, Inc. v. FTC*, 275 F.2d 18
    (5th Cir. 1960). ........................................................................ 4

*Kraft, Inc. v. FTC*, 970 F.2d 311 (7th Cir. 1992) ........................... 18, 23

*Lucia v. SEC*, 585 U.S. 237 (2018) ................................................ 12

*Meta Platforms, Inc. v. FTC*, 2024 WL 1121424
    (D.D.C. Mar. 14, 2024) ........................................................... 16

*Metro. Council of NAACP Branches v. FCC*, 46 F.3d
    1154 (D.C. Cir. 1995) ............................................................. 16

*Nken v. Holder*, 556 U.S. 418 (2009) ...................... 10, 17, 25, 27

*Nuclear Info. & Res. Serv. v. NRC*, 509 F.3d 562
    (D.C. Cir. 2007) ..................................................................... 16

*Plaquemines Par. v. Chevron USA, Inc.*, 84 F.4th 362
    (5th Cir. 2023) ....................................................................... 10

*POM Wonderful, LLC v. FTC*, 777 F.3d 478
    (D.C. Cir. 2015) ....................................................................... 3

*Recht v. Morrisey*, 32 F.4th 398 (4th Cir. 2022) .......................... 24

*Removatron Int'l Corp. v. FTC*, 884 F.2d 1489
    (1st Cir. 1989) ................................................................. 19, 21

*Royal Baking Powder Co. v. FTC*, 281 F. 744
    (2d Cir. 1922) ........................................................................ 16

*SEC v. Blatt*, 583 F.2d 1325 (5th Cir. 1978) ................................ 22

*Stern v. Marshall*, 564 U.S. 462 (2011) ....................................... 17

*United States v. Benitez-Villafuerte*, 186 F.3d 651
    (5th Cir. 1999) ....................................................................... 13

*United States v. W.T. Grant Co.*, 345 U.S. 629 (1953) ................. 21

*Weaver v. Massachusetts*, 582 U.S. 286 (2017) .......................... 12

*Zauderer v. Off. of Disciplinary Couns.*, 471 U.S. 626
    (1985) .................................................................................... 24

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.

§45 ................................................................................. 3, 9, 17

16 C.F.R.

§251.1 ............................................................................. 19, 28

§3.24 ............................................................................... 13, 14

§3.26 ...................................................................................13

§3.54 .....................................................................................9

**OTHER AUTHORITIES**

FTC, *.com Disclosures* (Mar. 2013),
https://www.ftc.gov/system/files/documents/plain-
language/bus41-dot-com-disclosures-information-
about-online-advertising.pdf ..............................................19

Intuit Blog, Intuit Responds to U.S. Federal Trade
Commission's Flawed Decision (Jan. 22, 2024),
https://www.intuit.com/blog/news-social/intuit-
responds-to-u-s-federal-trade-commissions-flawed-
decision/ ...........................................................................26

IRS, With tax-filing deadline nearing, IRS says about 50
million still need to file (Apr. 12, 2019),
https://www.irs.gov/newsroom/with-tax-filing-
deadline-nearing-irs-says-about-50-million-still-need-
to-file ..............................................................................27

# INTRODUCTION

For years, Intuit blanketed the airwaves and internet with ads proclaiming that "TurboTax Free is free.  Free, free free free"—even though TurboTax was *not* free for two-thirds of taxpayers.  Consumers gave Intuit their time and sensitive data, only to discover later that they needed to pay to complete their tax returns using TurboTax.  Although Intuit's ads sometimes qualified the offer as applying to "simple returns only," that text was often barely perceptible—and did not clearly inform consumers that their returns may not qualify.

After a trial, an administrative law judge found that Intuit had engaged in deceptive advertising in violation of the FTC Act.  The Federal Trade Commission affirmed that ruling on *de novo* review.  The Commission ordered that, if Intuit makes a "free" offer that is not free for everyone, it must disclose the percentage of taxpayers who qualify (or that most do not qualify) and, where space permits, provide clear and conspicuous information about which taxpayers qualify.

Intuit seeks to stay the order pending appeal, but does not meet the heavy burden required for such extraordinary relief.  First, precedent forecloses Intuit's constitutional attacks.  This Court has rejected Intuit's "argument that the FTC's structure, which combines prosecutorial and adjudicative functions, deprives parties of due process."  *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1047 (5th Cir. 2023).  Intuit's challenge to the ALJ's removal restrictions likewise fails because Intuit

does not suggest that the President would have removed the ALJ and the Commission would have acted differently.  *See Collins v. Dep't of Treasury*, 83 F.4th 970, 982 (5th Cir. 2023).  And while Intuit claims the Commission violated Article III by adjudicating "private rights," the Supreme Court has repeatedly held that the FTC Act creates new public rights not found at common law.  Intuit also accuses FTC Chair Khan of bias, but falsely attributes remarks by a congresswoman to Khan while omitting Khan's testimony stressing that the FTC's complaint allegations were unproven.

As for the Commission's determination that Intuit's ads were deceptive, that rested on the bedrock principle that disclaimers must be sufficiently clear and prominent to eliminate confusion and leave an accurate impression.  The Commission found extensive evidence that Intuit *knew* its "simple returns only" disclosure failed to dispel consumers' misimpression that their taxes would be free. This Court is unlikely to overturn those findings on substantial-evidence review.

The Commission's remedy likewise is sound.  The order requires material disclosures necessary to cure Intuit's misleading "free" claims, and it comports with the First Amendment.  The Commission properly found a separate state settlement inadequate to prevent Intuit's deceptive advertising, which still continues.

Finally, Intuit has not shown that complying with the order would cause irreparable harm, or that the public interest favors a stay. Intuit publicly announced it did not expect the order to have any significant impact on its business. And the public interest in protecting consumers weighs firmly against a stay: tens of millions of Americans choose a tax-preparation service in the final weeks of tax season, making it especially critical that the order go into effect promptly.

## BACKGROUND

### A.     FTC Adjudication of Deceptive Advertising Claims

Section 5 of the FTC Act prohibits "unfair or deceptive acts or practices" and authorizes the Commission to resolve those claims through administrative adjudication. 15 U.S.C. §45(a)-(b). Courts must give "great weight" to the Commission's appraisal of deceptive advertising because the task "rests so heavily on inference and pragmatic judgment." *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 385 (1965).

To determine whether an ad is deceptive, the Commission asks "(i) what claims are conveyed in the ad, (ii) whether those claims are false, misleading, or unsubstantiated, and (iii) whether the claims are material to prospective consumers." *POM Wonderful, LLC v. FTC*, 777 F.3d 478, 490 (D.C. Cir. 2015). The "Commission need not confine itself to the literal meaning of the words used

but may look to the overall impact of the entire [ad]." *Carter Prods., Inc. v. FTC*, 323 F.2d 523, 528 (5th Cir. 1963). "Liability may be imposed if at least a significant minority of reasonable consumers would be likely to take away the misleading claim." *Fanning v. FTC*, 821 F.3d 164, 171 (1st Cir. 2016) (cleaned up). The Commission may order advertisers to make "affirmative disclosure" of facts "necessary to prevent deception." *Keele Hair & Scalp Specialists, Inc. v. FTC*, 275 F.2d 18, 23 (5th Cir. 1960).

**B.    Intuit's Deceptive "Free" TurboTax Claims**

Since at least 2016, Intuit has promoted TurboTax as "free" in ads generating billions of impressions across TV, radio, and the internet. FTC Op. (Intuit.Exh.A) 4-30.[1] One representative ad—which ran on over 600 TV channels and received millions of internet views in 2021 and 2022—featured a dance instructor chanting, "Free! And free! And free! And free! Free. And free, and free. Free free. And free, and free, and free, and free, and free." ALJ Initial Decision, Findings of Fact ("IDF") (FTC.Exh.B) ¶¶ 182-187, 306-14. A voice-over then declared, "That's right, TurboTax Free Edition is free. See details at TurboTax.com." IDF¶183. For two seconds, a screen would appear with a fine-print disclosure at the bottom:

---

[1] The nonpublic version is under seal with the Court.



IDF ¶184.  The last three seconds showed this screen:



IDF ¶185.

Miniscule white text at the bottom stated, "TurboTax Free Edition is for simple U.S. returns only."  Even if a consumer noticed this, determining who

qualifies is hardly self-evident.  Two-thirds of taxpayers are ineligible, including anyone with unemployment income, mortgage deductions, or charitable donations over $300.  Op.3-4.

Intuit knew its disclosures were ineffective.  As one executive explained, "when you start talking about free, that's what people hear. … You can say a lot of other things, but what they hear is free."  Op.45.  Intuit's copy testing revealed that the "free" ads increased consumers' belief that TurboTax was free; consumers associated "free" with the entire TurboTax brand; and the "simple tax returns" disclosure had no meaningful effect on these perceptions.  Op.39-41.

Sometimes, Intuit advertised TurboTax as free without *any* "simple returns" disclosure (Op.18-22, 40):



Op.21.

When consumers reached the TurboTax homepage, they saw "FREE Guaranteed":



Op.50.  Even when Intuit disclosed the eligibility criteria, the text was in small, hard-to-read monochrome dwarfed by large, colorful "FREE" claims:



IDF¶375.

Many consumers attempted to use TurboTax Free Edition, but after spending time entering their data, encountered an "upgrade" screen demanding payment. Op.51-52.  Intuit's own database tracked thousands of complaints from consumers baited by the "Free" ads who experienced an upsell.  Op.57-58.

## C.    Proceedings Below

In 2022, the Commission issued an administrative complaint charging that Intuit's "free" ads violated Section 5 of the FTC Act, 15 U.S.C. §45.  FTC.Exh.A. After a trial, the ALJ found the ads deceptive.  FTC.Exh.B.

The Commission affirmed the ALJ on *de novo* review.  16 C.F.R. §3.54(a). The Commission found that the ads represented that consumers could use TurboTax to file for free and that Intuit's disclosures did not counteract this message.  Op.37-46.  The ads were likely to mislead at least a significant minority of reasonable consumers, as confirmed by an expert survey and other evidence. Op.46-69.

The Commission's order protects consumers by requiring Intuit to make discrete material disclosures needed to cure the deceptive free claims.  If Intuit markets a product as "free" that is not free to all, it must clearly and conspicuously disclose the percentage of taxpayers who qualify or that a majority do not qualify. Order (Intuit.Exh.B) §I.B.  If an advertisement is not "Space-Constrained," Intuit must clearly and conspicuously disclose "all the terms, conditions, and obligations" underlying the offer "so as to leave no reasonable probability that the terms of the offer might be misunderstood."  Order.§I.B.2.  "Space-Constrained" ads must clearly and conspicuously "direct[] consumers to view eligibility requirements on a landing page or webpage on a TurboTax website."  Order.§I.C.

The Commission rejected Intuit's argument that the order was unnecessary because Intuit terminated some ads in response to a 50-state settlement. Intuit.Exh.D-6. The Commission found that the settlement allows Intuit to continue making prominent "Free" claims with a "simple returns only" disclaimer, does not require clear disclosure of eligibility requirements, and permits commercials lacking audio disclosures. Op.80-86. Intuit's misleading ads thus "continue[] to the present day." Op.81.

The order provides a 60-day compliance period, becoming effective March 25. Order.§VII. Intuit filed a petition for review; the Commission declined to issue a stay. Intuit.Exh.P.

## ARGUMENT

A "stay pending appeal is extraordinary relief" for which Intuit "bear[s] a heavy burden." *Plaquemines Par. v. Chevron USA, Inc.*, 84 F.4th 362, 373 (5th Cir. 2023) (cleaned up). The court must assess (1) whether Intuit has made a "strong showing" that it is "likely to succeed on the merits"; (2) whether Intuit will suffer irreparable injury absent a stay; (3) whether a stay will "substantially injure" other interested parties; and (4) "where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434-35 (2009).

Intuit fails to show any likelihood of success: its constitutional arguments ignore precedent and misstate the facts; the Commission's finding of deceptive

advertising rests on substantial evidence; and the remedial order is tailored to stop ongoing deception. Intuit's irreparable-harm arguments are speculative, not cognizable, and outweighed by the public interest in protecting taxpayers from false advertising. The order should become effective now to protect consumers in the crucial last weeks of tax season—and beyond.

## I. INTUIT IS UNLIKELY TO SUCCEED ON APPEAL

### A. Intuit's Constitutional Arguments Contravene Precedent and Misstate the Record

"Ever since the Commission's creation in 1914, it has been authorized to enforce the [FTC] Act through its own administrative proceedings." *AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. 67, 72 (2021). Precedent forecloses Intuit's attack on this 110-year-old authority. Intuit's bias allegations are also unfounded and misrepresent Chair Khan's remarks.

*1. Constitutionality of ALJ.* Even though the Commission sustained the ALJ's findings *de novo*, Intuit claims the ALJ's involvement contaminated the proceedings because the President cannot remove him at will. Mot.13-15. But Intuit does not deny that the ALJ was "properly *appointed*," which means "there is no reason to regard any of [his] actions … as void." *Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021). Intuit must therefore show that (1) the President had a "substantiated desire" to remove the ALJ; (2) the President was unable to remove the ALJ due to the removal restrictions; and (3) a "nexus" exists between the

11

President's inability to remove the ALJ and the case's outcome. *Cmty. Fin. Servs. Ass'n of Am. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022) (subsequent history omitted).

Intuit attempts no such showing, relying instead on readily distinguishable cases (Mot.13-14). *Jarkesy v. SEC* "d[id] not address whether vacating [an administrative ruling] would be appropriate" based on an unconstitutional-insulation-from-removal claim. 34 F.4th 446, 466 & n.17 (5th Cir. 2022) (subsequent history omitted). *Lucia v. SEC* is inapposite because the ALJ there had been improperly *appointed*. 585 U.S. 237, 251 (2018). *Weaver v. Massachusetts* involved structural constitutional errors—such as deprivation of the right to counsel—in a criminal case. 582 U.S. 286, 295 (2017). *Weaver* has no bearing on an administrative case before a duly appointed ALJ who "lawfully possess[ed]" the power to act. *Collins*, 141 S. Ct. at 1788.

**2. Due Process.** Intuit attacks the FTC's structure (Mot.15), but this Court recently confirmed that the FTC can "investigate, prosecute, and adjudicate rights without violating due process." *Illumina*, 88 F.4th at 1047. Intuit therefore must show "actual bias" by the Commission in this case, *id*., by demonstrating that the

Commission's mind was "irrevocably closed," *United States v. Benitez-Villafuerte*, 186 F.3d 651, 660 (5th Cir. 1999) (cleaned up).[2]  Intuit comes nowhere close.

The Commission did not exhibit bias by reinstating the case after a district court denied a preliminary injunction.  Mot.15-16.  The court did not reach the merits, but reasoned that preliminary relief was not warranted because tax day had just passed and the ALJ would soon hear the case.  *FTC v. Intuit Inc.*, No. 22-cv-01973-CRB, 2022 WL 1601403, at *1 (N.D. Cal. Apr. 22, 2022).  FTC rules impose an automatic stay after denial of preliminary relief for the Commission to determine whether "the public interest warrants further litigation."  16 C.F.R. §3.26(c).  Lifting the stay was entirely appropriate here (Intuit.Exh.F); indeed, the district court assumed the proceedings would continue.

Nor did the Commission show bias by *denying* FTC prosecutorial staff's motion for summary decision and thoroughly analyzing the issues raised.  Mot.15-16; *see* 16 C.F.R. §3.24(a)(2).  The Commission's authority to grant summary decision for deceptive advertising is well-established, *see Fanning*, 821 F.3d at

---

[2] Intuit cites the agency's "stellar winning record" in administrative adjudication (Mot.15), but the *Illumina* petitioners raised this argument (No. 23-60167, Pet's Opening Br.24 & n.9), which this Court did not credit.  88 F.4th at 1047.  As the Commission explained, Intuit's claim rests on incomplete data, omitting many rulings that undercut the claim.  Op.73-74.

170, and the Commission did not even grant summary decision here.  *See* Intuit.Exh.K.[3]

Intuit also faults the Commission and ALJ for denying motions to compel (Mot.16; Intuit.Exhs.H-J), but identifies no error in those decisions.

*3. Chair Khan's Statements.*  Intuit's prejudgment allegations (Mot.16-17) misrepresent Chair Khan's public statements.

During a conference Q&A session, Khan remarked generally that the FTC "need[ed] to act in a more timely manner" to prevent "law-breaking" by "seeking preliminary injunctions."  Intuit.Exh.D-8 at 6.  Turning to the Intuit preliminary-injunction suit, Khan said, "the FTC, a few weeks ago, filed a lawsuit against TurboTax … *alleging* that TurboTax had been showing all these ads that are *allegedly* deceptive, and that it was really important to get that relief ahead of Tax Day.  I think that type of timely intervention and timely filing of lawsuits is incredibly important."  *Id.* (emphasis added).  Khan was plainly addressing the timing of the preliminary-injunction action, *i.e.*, the "lawsuit against TurboTax"; and her repeated reference to "alleg[ations]" (which Intuit ignores) left no doubt the facts were unproven.

---

[3] Intuit complains that FTC counsel moved for summary decision before Intuit could take discovery (Mot.11), but FTC rules allowed Intuit to seek a continuance to obtain discovery, 16 C.F.R. §3.24(a)(4), which Intuit declined to do.

14

Intuit also falsely attributes to Khan words she did not say.  During a

hearing, Khan had the following exchange with Representative Jayapal:

> Ms. JAYAPAL. I just want to go to evil actors because there is one more I
> really want to talk about, and that is tax preparation companies.  For years
> Intuit, the maker of TurboTax, flooded consumers with ads promising free,
> free, free tax filing services only to trick and trap them into paying, which is
> why taxpayers pay $250 on average each year just for the privilege of filing
> their taxes.
>
> So, State Attorney Generals have won taxpayer's money from Intuit and the
> FTC has also taken action. Can you just speak about that?
>
> Ms. KHAN. Yes, absolutely. So, last year the FTC brought a lawsuit against
> Intuit for those very types of deceptive practices that are ***laid out in our
> complaint. That is still pending***, but I couldn't agree more that claims of
> something being free but then ultimately not being so really hurts people.

Intuit.Exh.D-9 at 73-74 (emphasis added).

When Khan said, "[y]es, absolutely," she was responding to Jayapal's

request to speak about the case, not agreeing that Intuit was an "evil actor" that

"trick[ed]" consumers (Mot.1, 16-17).  Intuit omits Khan's clear testimony that the

"complaint" "is still pending."  Khan then offered a general observation that people

are hurt when something advertised as free is not free.  Nowhere did Khan declare

that Intuit's conduct violated the law or caused harm.  Khan herself explained these

remarks in declining to recuse.  FTC.Exh.C.

The other Commissioners (Intuit.Exh.L) and ALJ (Intuit.Exh.I at 6-8)

rejected Intuit's bias allegations, explaining Intuit did not show that Khan

"demonstrably made up [her] mind about important and specific factual questions

and is impervious to contrary evidence." *Metro. Council of NAACP Branches v. FCC*, 46 F.3d 1154, 1165 (D.C. Cir. 1995) (cleaned up). Prejudgment does not occur simply because a regulator has described a complaint, *FTC v. Cinderella Career & Finishing Sch., Inc.*, 404 F.2d 1308, 1314-15 (D.C. Cir. 1968), taken a policy position relevant to an adjudication, *Nuclear Info. & Res. Serv. v. NRC*, 509 F.3d 562, 571 (D.C. Cir. 2007), or opined that certain types of conduct are unlawful, *FTC v. Cement Inst.*, 333 U.S. 683, 702-03 (1948).

*4. Public rights.* Intuit's claim that the FTC violates Article III by adjudicating private rights (Mot.18-19) is meritless. Just yesterday, a district court rejected that precise contention. *See Meta Platforms, Inc. v. FTC*, No. 23-3562(RDM), 2024 WL 1121424, at *17-19 (D.D.C. Mar. 14, 2024).

Before 1914, courts could enjoin deceptive advertising "only when a property right of the complainant had been invaded." *Royal Baking Powder Co. v. FTC*, 281 F. 744, 751-52 (2d Cir. 1922). Congress filled the gap by authorizing the FTC to restrain practices that "exploit consumers … who are unable to protect themselves," even if *not* "forbidden at common law." *FTC v. R.F. Keppel & Bro.*, 291 U.S. 304, 310-13 (1934). In 1938, Congress amended the Act to confirm the Commission may "protect[] consumers" from deception under a "congressionally mandated standard." *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 (1972).

The FTC Act is thus the quintessential public-rights statute. The Commission acts "in its sovereign capacity to enforce public rights created by statutes within the power of Congress to enact." *Atlas Roofing Co. v. OSHRC*, 430 U.S. 442, 450 (1977). The Act does not "withdraw from judicial cognizance" matters that were the subject of a common-law suit, *Stern v. Marshall*, 564 U.S. 462, 484 (2011) (cleaned up), but it also forbids practices that "were *not* actionable wrongs," *FTC v. Algoma Lumber Co.*, 291 U.S. 67, 79 (1934) (emphasis added).

Intuit invokes *Jarkesy*, which held that an SEC administrative civil-penalties action improperly "sought to vindicate" rights that "arise at 'common law' under the Seventh Amendment." 34 F.4th at 453. *Jarkesy* is inapposite, as the FTC Act's standards do not arise at common law, and this case involves neither civil penalties nor jury-trial rights. The Commission could impose only injunctive relief in this administrative proceeding, so the Seventh Amendment does not apply.

## B. Intuit Has No Likelihood of Success in Challenging the Deception Ruling

Intuit makes no "strong showing" that the Commission erred in finding Intuit's ads deceptive. *Nken*, 556 U.S. at 427.

### 1. The Commission's Findings Rest on Substantial Evidence

On appeal, the Commission's findings of fact, "if supported by evidence, shall be conclusive." 15 U.S.C. §45(c). The Court must accept such findings "even

if suggested alternative conclusions may be equally or even more reasonable and persuasive." *Impax Lab'ys, Inc. v. FTC*, 994 F.3d 484, 492 (5th Cir. 2021) (cleaned up).  Intuit is highly unlikely to succeed under this standard.

Intuit claims that TurboTax garnered relatively few complaints, suggesting a lack of deception.  Mot.19-20.  But in addition to over 200 complaints to the government, Intuit itself tracked *thousands* of complaints—in 2021 alone—about Intuit's misleading "free" claims.  Op.57-59.  The Commission also found deception from ample other evidence, including Intuit's own copy testing, consumer testimony, expert analysis, and a survey.  Op.39-69.  This evidence showed that Intuit's ads widely gave consumers the false impression that TurboTax's "true price" (Mot.19) was free when it was not free for them.

In any event, the FTC Act forbids claims that are *likely* to deceive; proof of "actual consumer deception is not necessary."  *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 633 (6th Cir. 2014).  The Commission may find deception "reasonably clear from the face of the advertisement" without "extrinsic evidence." *Kraft, Inc. v. FTC*, 970 F.2d 311, 319-20 (7th Cir. 1992).  The Commission found the ads here facially deceptive even apart from the extrinsic evidence.  Op.37-45.

## 2.    The Commission Committed No Legal Errors

Intuit has no likelihood of success in showing legal error.

*First,* the Commission did not apply a new, heightened standard to Intuit's ads (Mot.20-21); it found that "Intuit's disclosures are particularly inadequate when considered in the context of the prominent, repeated 'free' claims." Op.45. That finding flowed directly from precedent requiring that advertising disclosures be "sufficiently prominent and unambiguous to change the [claim's] apparent meaning" and "leave an accurate impression." *Removatron Int'l Corp. v. FTC*, 884 F.2d 1489, 1497 (1st Cir. 1989). Intuit knew consumers considered "free" a powerful and compelling claim, so "the disclosure of any limitation on the offer must be similarly clear and strong to make a difference." Op.45-46. Intuit's "simple returns" disclosure was "barely visible" and "insufficient to change the ads' message." *Id.*

Contrary to Intuit's argument (Mot.21-22), the Commission has long advised that "Free" offers should provide "all the terms, conditions and obligations … clearly and conspicuously at the outset of the offer so as to leave no reasonable probability that the terms … might be misunderstood." 16 C.F.R. §251.1(c). "Disclosures that are an integral part of a claim or inseparable from it should not be communicated through a hyperlink…. This is particularly true for cost information." FTC, *.com Disclosures* at 10 (Mar. 2013).[4]

---

[4] https://www.ftc.gov/system/files/documents/plain-language/bus41-dot-com-disclosures-information-about-online-advertising.pdf.

*Second*, the Commission did not review the ads "piecemeal" (Mot.21), but stressed that its "conclusions regarding the [ads'] net impression are based on a review of each ad in its entirety, taking into account all disclaimers and other visual and audio cues provided." Op.38 n.17. Intuit identifies nothing relevant the Commission missed.

*Third*, Intuit errs in arguing that the Commission should have ruled "as a matter of law" that reasonable consumers understood the "simple tax returns" disclosure because the phrase was supposedly used by "the IRS" (it was not, *see* Op.43) and "the online-tax-preparation-field." Mot.22-23. Determining what reasonable consumers understood is a question of fact, and substantial evidence supported the Commission's finding that consumers did not understand the meaning of "simple returns." Op.43-45. Indeed, Intuit's *own* definition of "simple" was constantly changing. Op.3. And when an expert surveyed consumers who were ineligible for the "free" offer and had not recently used TurboTax, he found that *more than half* falsely believed they had "simple" returns and qualified for Intuit's offer. Op.44, 62-63. Consumers are thus "likely to take away the message" that they can use TurboTax for free. Op.45.

*Fourth*, Intuit claims the "detailed disclosures" on its website offset any deception in its ads (Mot.23-24), but the Commission found that the site *itself* contained misrepresentations. Op.23-32, 50-52. Moreover, "each advertisement

must stand on its own merits[,] even if other advertisements contain accurate, non-deceptive claims." *Removatron*, 884 F.2d at 1496-97. A "court need not look past the first contact with a consumer" in evaluating deception, even if the seller later reveals the "true facts." *E.M.A. Nationwide*, 767 F.3d at 632. Intuit claims these principles should not apply to e-commerce (Mot.23-24), but they are *especially* vital in that setting, given "the proliferation of misleading click-bait ads that drive traffic to advertisers' websites under false pretenses." Op.48. The cases Intuit cites neither interpret the FTC Act nor dispute this analysis. *See* Op.47-50.

### C.    The Commission's Remedy Was Proper

Intuit's challenge to the cease-and-desist order (Mot.24-28) is unlikely to succeed. Congress has given the Commission "primary responsibility for fashioning orders" and "wide discretion in determining the type of order that is necessary" to cure deceptive conduct. *Colgate-Palmolive*, 380 U.S. at 392. Here, the order is vital to preventing violations, comports with the First Amendment, and is appropriate in scope.

*1. Recurrent Violations.* The Commission's finding that Intuit's conduct poses a "cognizable danger of recurrent violation," *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953), was well-founded. The Commission determined that a cease-and-desist order was "essential" after weighing (1) the egregiousness of Intuit's conduct; (2) the recurrent and systematic nature of that conduct;

(3) Intuit's scienter; (4) Intuit's failure to recognize the wrongful nature of its acts; and (5) that Intuit is positioned to reoffend—and indeed is currently violating the law.  Op.81-84; *see SEC v. Blatt*, 583 F.2d 1325, 1334 n.29 (5th Cir. 1978).

Intuit claims the state-law settlement "guarantees" it will not reoffend (Mot.24-25), but the Commission found the settlement contains "gaps" and "loopholes" enabling deceptive conduct.  Op.33, 81-84.  For example, the settlement only requires Intuit to disclose "the existence and category" of limitations on eligibility for free TurboTax, without revealing the *nature* of those limitations.  Op.84.  Intuit thus continues to make "FREE" claims with an ineffective "[s]imple tax returns only" disclosure.  *See* Mot.25-26.  In fact, some recent ads omit "Only," boldly promising "Free Simple Tax Filing Online":



Op.22.  The Commission found these ads especially problematic because they suggest that *using* TurboTax is simple, not that the offer is *limited* to simple returns.  Op.42, 82.[5]

**2. First Amendment.**  The First Amendment does not protect misleading commercial speech.  *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 566 (1980).  The FTC did not violate Intuit's First Amendment rights when requiring it to "correct[] [an] inaccurate impression by adding prominent, unambiguous disclosures."  *Kraft*, 970 F.2d at 325-26.

The order provides that if Intuit advertises a product as "Free" that is not free to all, it must disclose either "the percentage of U.S. taxpayers … that qualify," or "that a majority of U.S. taxpayers … do not qualify," if true.  Order.§I. The order passes First Amendment muster because it requires disclosure of "purely factual and uncontroversial information" that is "reasonably related to a legitimate state interest and not unjustified or unduly burdensome." *Chamber of Com. v. SEC*, 85 F.4th 760, 768 (5th Cir. 2023) (cleaned up).

Intuit claims that revealing the percentage of taxpayers who qualify would be "misleading," but Intuit's own website *already* discloses (in small print) that

---

[5] The Commission explained why Intuit's post-settlement consumer-perception testing (Mot.25) was laden with errors and does not "evidenc[e] an absence of deception."  Op.54-55.

"~37% of filers qualify." Op.90. That Intuit prefers to disclose another statistic—the percentage of eligible "consumers *in the online-tax-preparation market*"—does not make the order's requirement "controversial" in the First Amendment sense. *See Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18, 27 (D.C. Cir. 2014).

The disclosure is also "reasonably related" to the FTC's interest in "preventing deception of consumers." *Zauderer v. Off. of Disciplinary Couns.*, 471 U.S. 626, 651 (1985). The order requires Intuit to disclose "information directly connected to the subject of the advertisement" to "dissipat[e] the possibility of … deception." *Recht v. Morrisey*, 32 F.4th 398, 417 (4th Cir. 2022) (cleaned up). Likewise, the order is not unduly burdensome (Mot. 27). Intuit is already disclosing the 37% figure, and now it simply must do so clearly, conspicuously, and consistently—or state that most taxpayers do not qualify. Order.§I; Op.91 (finding Intuit's burden claims "overstated"). Finally, Intuit's claims about competitive disadvantage are immaterial: asserting that "others in a marketplace are similarly engaging in unlawful practices" is "not [a] defense." Op.90-91; *Keppel*, 291 U.S. at 312-13.

**3. Breadth.** The Commission properly applied the order to Intuit products beyond TurboTax. *See* Mot. 27-28. The "Commission is not limited to prohibiting the illegal practice in the precise form in which it … existed in the past," but may bar defendants from similar practices "with respect to the other products they

advertise." *Colgate-Palmolive*, 380 U.S. at 395 (cleaned up).  Here, the

Commission found Intuit's "free" claims "easily transferable to other products,"

based on Intuit's actions and business documents.  Op.86.  The order is plainly

"reasonably related" to Intuit's deceptive conduct.  *Fedders Corp. v. FTC*, 529

F.2d 1398, 1402 (2d Cir. 1976).

## II.    INTUIT FAILS TO SHOW IRREPARABLE HARM

Because Intuit has not established a likelihood of success, it has no right to a

stay "even if irreparable injury might otherwise result."  *Nken*, 556 U.S. at 427

(cleaned up).  Regardless, Intuit faces no irreparable injury.  Intuit claims harm

from "unconstitutional adjudication" and "loss of First Amendment freedoms"

(Mot.28-29), but those arguments fail for the same reasons they fail on the merits.

Intuit's remaining claims are speculative and fall short of irreparable harm.

*1. Monitoring.*  Intuit objects to the order's compliance-monitoring

provisions, claiming the order "lets the commissioners bypass Intuit's counsel and

contact company employees directly to seek information."  Mot.28.  That is false:

the order states that any "interviewee may have counsel present."  Order.§VI.B.

Moreover, Intuit forfeited any objections to the monitoring requirements (or their

20-year duration) by failing to contest the order on such grounds below.  *See*

FTC.Exh.D pp. 43-46.

**2. Reputational harm.**  Intuit claims it will suffer "reputational" harm (Mot.28-29), but *any* adjudicated wrongdoer can argue this.  *See* Intuit.Exh.P. (Order Denying Stay) at 6-7.  Regardless, any reputational harm flows from Intuit's own deceptive conduct.  Intuit does not explain how temporarily staying the cease-and-desist requirements would restore its reputation.  Unlike in *FDIC v. Burgess*, 871 F.3d 297 (5th Cir. 2017), this order does not ban Intuit from an industry.  *Id.* at 304.

**3. Competitive harm.**  Although Intuit now claims "competitive disadvantage," it previously stated it "expects no significant impact to its business" from the Commission's ruling.  Intuit Blog, *Intuit Responds to U.S. Federal Trade Commission's Flawed Decision* (Jan. 22, 2024).[6]  The order simply "removes Intuit's unlawful advantage over rivals who do not advertise deceptively." Intuit.Exh.P at 7.  And the order minimizes burden by requiring detailed disclosures "only when space permits," and by allowing "suitable hyperlinks and landing pages" for "space-constrained ads." *Id.*; *see* Order.§I.C.

**4. Timing.**  Intuit objects that the order will become effective on March 25, during tax season (Mot.29), but the timing is all the more reason to give the order immediate effect.  Tens of millions of Americans file their taxes on or shortly

---

[6] https://www.intuit.com/blog/news-social/intuit-responds-to-u-s-federal-trade-commissions-flawed-decision/.

before tax day;[7] one-quarter of taxpayers have historically decided which tax-preparation service to use in the final two weeks of tax season (FTC.Exh.E at 1). The order will thus become effective in time to protect millions of consumers from deception this tax year—and will be in place as Intuit develops and runs future ads.

Intuit had plenty of time to prepare. The ALJ's September 2023 order imposed similar (but more onerous) restrictions (*see* FTC.Exh.B at 232)—giving Intuit ample notice.

## III. STAYING THE ORDER WOULD IRREPARABLY HARM CONSUMERS AND THE PUBLIC INTEREST

The final two *Nken* factors—balance of the equities and the public interest—"merge when the Government is the opposing party," *Nken*, 556 U.S. at 435, and weigh firmly against a stay. Any injury Intuit will suffer is outweighed by the public interest in protecting millions of consumers from deceptive advertising during the critical final weeks of tax season and beyond. *See* Intuit.Exh.P at 8.

Intuit responds that the order will "confus[e]" consumers and "potentially restrict" Intuit from running certain ads. Mot.30. As the Commission explained, far from confusing consumers, the order will give them "accurate information" to help "determine whether they qualify" for Intuit's offers. Op.89. The disclosures

---

[7] IRS, *With tax-filing deadline nearing, IRS says about 50 million still need to file* (Apr. 12, 2019), https://www.irs.gov/newsroom/with-tax-filing-deadline-nearing-irs-says-about-50-million-still-need-to-file.

simply track longstanding FTC guidance for contingent "Free" offers.

Order.§I.B.2; 16 C.F.R. §251.1(c).  Nor will the order prevent Intuit from

truthfully advertising products as free, provided it discloses the percentage of

taxpayers who qualify (and other information, if space permits).  Op.87-88.  The

Commission had "wide discretion" to find that the public interest in curing

deception outweighs Intuit's interest in avoiding disclosure of material

information.  *Colgate-Palmolive*, 380 U.S. at 392.

## CONCLUSION

This Court should deny the motion for a stay.

Respectfully submitted,

ANISHA S. DASGUPTA
   *General Counsel*

MARIEL GOETZ
   *Acting Deputy General
   Counsel*

March 15, 2024

/s/ Bradley Grossman
BRADLEY DAX GROSSMAN
   *Attorney*

FEDERAL TRADE COMMISSION
Office of the General Counsel
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-2994
bgrossman@ftc.gov

Of Counsel:

LOIS C. GREISMAN
   *Associate Director*

WILLIAM MAXSON
   *Assistant Director*

ROBERTO ANGUIZOLA
REBECCA PLETT
JAMES EVANS
SARA TONNESEN
   *Attorneys*

FEDERAL TRADE COMMISSION
   Washington, D.C. 20580

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g), I certify that the foregoing response complies with the volume limitations of Fed. R. App. P. 27(d)(2)(A) because it contains 5,197 words, as created by Microsoft Word, excluding the items that may be excluded under Fed. R. App. P. 32(f).

March 15, 2024

/s/ Bradley Grossman
Bradley Dax Grossman
Attorney
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C.  20580