No. 24-60040

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

INTUIT, INC.,

*Petitioners*,

v.

FEDERAL TRADE COMMISSION,

*Respondent.*

_____

ON PETITION FOR REVIEW OF A FINAL ORDER OF THE FEDERAL TRADE
COMMISSION DATED
JANUARY 19, 2024, FTC DOCKET NO. 9408

_____

## BRIEF OF AMICUS CURIAE
## AMERICANS FOR PROSPERITY FOUNDATION
## IN SUPPORT OF PETITIONER AND REVERSAL

_____

Michael Pepson
AMERICANS FOR PROSPERITY FOUNDATION
4201 Wilson Blvd., Ste. 1000
Arlington, VA 22203
571.329.4529
mpepson@afphq.org

April 19, 2024              *Attorney for Amicus Curiae*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record for *amicus curiae* Americans for Prosperity Foundation certifies that the following listed persons and entities as described in Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case.

| Intuit, Incorporated<br>**Petitioner** | Howard M. Shapiro; Jonathan E. Paikin; Daniel S. Volchok; Derek A. Woodman; David Z. Gringer; Wilmer Cutler Pickering Hale and Dorr, L.L.P.<br>**Counsel for Petitioner** |
|---|---|
| Federal Trade Commission<br>**Respondent** | Anisha Sasheen Dasgupta; Mariel Goetz; Bradley Grossman; Lois C. Greisman; William Maxson; Roberto Anguizola; Rebecca Plett; James Evans; Sara Tonnesen; Federal Trade Commission<br>**Counsel for Respondent** |
| Americans for Prosperity Foundation<br>*Amicus Curiae* | Michael Pepson<br>**Counsel for *Amicus Curiae*** |

Undersigned counsel further certifies that *amicus curiae* Americans for Prosperity Foundation is a nonprofit corporation. It has no parent companies, subsidiaries, or affiliates that have issued shares or debt securities to the public.

These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

/s/ Michael Pepson

Michael Pepson

Dated: April 19, 2024

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................i

TABLE OF CONTENTS .......................................................................ii

TABLE OF AUTHORITIES ..................................................................iv

INTEREST OF *AMICUS CURIAE* ......................................................1

SUMMARY OF ARGUMENT .............................................................2

ARGUMENT ........................................................................................3

I. The FTC's Administrative Prosecution Violates Article III and Is Therefore Void Ab Initio. .....................................................................3

   A. The FTC's Administrative Prosecution Implicates Private Rights ............3

   B. The Constitution Exclusively Vests the Judicial Power To Find Facts and Independently Interpret the Law in Article III Courts ..............................6

   C. The FTC Cannot Possess or Exercise Article III Judicial Power...............8

   D. The Commissioners Are Usurpers In An Unlawful Office Whose Inhouse Enforcement Actions Are Void Ab Initio .................................................12

II. The FTC's Administrative Prosecution of Intuit Violates Due Process ........13

   A. The FTC's Administrative Process Is Rigged Against Respondents.........13

   B. The FTC's Combination of Investigative, Prosecutorial, and Judicial Functions Violates Due Process Under the Circumstances of this Case ...14

   C. *Illumina v. FTC* Does Not Excuse FTC's Due Process Violations Here...16

III. The FTC's Structure Violates Article II and the Separation of Powers.........18

   A. The President's Constitutional Removal Power Protects Liberty and Ensures Agency Accountability ................................................................18

B.  The ALJ's Multi-Tier Removal Protections Are Unconstitutional ............21

IV. The Sky Will Not Fall If This Court Enforces the Constitution's Demands .22

CONCLUSION ....................................................................................24

CERTIFICATE OF COMPLIANCE ....................................................25

CERTIFICATE OF SERVICE ............................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMG Capital Mgmt., LLC v. FTC,*
   141 S. Ct. 1341 (2021) .......................................................................22

*Austin v. Shalala,*
   994 F.2d 1170 (5th Cir. 1993) ...........................................................23

*Axon Enter. v. FTC,*
   598 U.S. 175 (2023)................................ 3, 4, 6, 9, 10, 11, 13, 14, 16, 22

*Axon Enter. v. FTC,*
   986 F.3d 1173 (9th Cir. 2021) ...........................................................14

*B&B Hardware, Inc. v. Hargis Indus.,*
   575 U.S. 138 (2015)....................................................................7, 8, 9

*Bowsher v. Synar,*
   478 U.S. 714 (1986).......................................................................8, 9

*Burgess v. FDIC,*
   871 F.3d 297 (5th Cir. 2017) .............................................................21

*Calcutt v. FDIC,*
   37 F.4th 293 (6th Cir. 2022) ........................... 5, 6, 11, 12, 13, 21, 22

*Career Colls. & Sch. of Tex. v. United States Dep't of Educ.,*
   No. 23-50491, 2024 WL 1461737 (5th Cir. Apr. 4, 2024)...................5

*Cinderella Career & Finishing Schools, Inc. v. FTC,*
   425 F.2d 583 (D.C. Cir. 1970)...........................................................13

*CFTC v. Schor,*
   478 U.S. 833 (1986)............................................................................7

*City of Arlington v. FCC,*
   569 U.S. 290 (2013)......................................................................8, 21

*Collins v. Yellen,*
   141 S. Ct. 1761 (2021).........................................................12, 19, 20

*Consumer Fin. Prot. Bureau v. Seila Law LLC*,
    997 F.3d 837 (9th Cir. 2021) ................................................................. 19

*Dep't of Transp. v. Ass'n of Am. R.R.*,
    575 U.S. 43 (2015) .............................................................................. 7

*Donziger v. United States*,
    143 S. Ct. 868 (2023) ......................................................................... 15

*Edmo v. Corizon, Inc.*,
    949 F.3d 489 (9th Cir. 2020) ............................................................ 17

*Exela Enter. Sols., Inc. v. NLRB*,
    32 F.4th 436 (5th Cir. 2022) ............................................................. 18

*Feds for Med. Freedom v. Biden*,
    63 F.4th 366 (5th Cir. 2023) ............................................................. 19

*Fleming v. U.S. Dep't of Agric.*,
    987 F.3d 1093 (D.C. Cir. 2021) .................................................. 19, 22

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*,
    561 U.S. 477 (2010) .................................................................18, 21, 22

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*,
    537 F.3d 667 (D.C. Cir. 2008) ......................................................... 19

*FTC v. D-Link Sys., Inc.*,
    No. 17-CV-00039, 2017 WL 4150873 (N.D. Cal. Sept. 19, 2017) .................... 4

*FTC v. Facebook, Inc.*,
    581 F. Supp. 3d 34 (D.D.C. 2022) .................................................... 15

*FTC v. Lights of Am., Inc.*,
    760 F. Supp. 2d 848 (C.D. Cal. 2010) ............................................... 4

*FTC v. Ruberoid Co.*,
    343 U.S. 470 (1952) .....................................................................2, 8, 20

*Garcia v. Garland*,
    64 F.4th 62 (2d Cir. 2023) ................................................................. 8

*Hildreth's Heirs v. M'Intire's Devisee*,
  24 Ky. 206 (Ky. 1829) ....................................................................12

*Humphrey's Executor v. United States*,
  295 U.S. 602 (1935)........................................................................18

*Illumina, Inc. v. FTC*,
  88 F.4th 1036 (5th Cir. 2023) ...............................................3, 16, 18

*Impax Labs., Inc. v. FTC*,
  994 F.3d 484 (5th Cir. 2021) ........................................................10

*In re Murchison*,
  349 U.S. 133 (1955)........................................................................15

*Jarkesy v. SEC*,
  34 F.4th 446 (5th Cir. 2022) ........................................5, 11, 21, 22

*Kisor v. Wilkie*,
  139 S. Ct. 2400 (2019)....................................................................20

*Lorenzo v. SEC*,
  872 F.3d 578 (D.C. Cir. 2017).................................................10, 11

*Lucia v. Securities & Exchange Commission,*
  585 U.S. 237 (2018)..................................................................21, 22

*Murray's Lessee v. Hoboken Land & Improvement Co.*,
  59 U.S. 272, 18 How. 272 (1856)...................................................5, 7

*Myers v. United States*,
  272 U.S. 52 (1926)...................................................................18, 19

*Newland v. Marsh*,
  19 Ill. 376 (Ill. 1857).......................................................................6

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*,
  458 U.S. 50 (1982)............................................................................5

*Norton v. Shelby Cnty.*,
  118 U.S. 425 (1886)........................................................................12

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
    138 S. Ct. 1365 (2018) ...................................................................................7

*Seila Law LLC v. Consumer Fin. Prot. Bureau,*
    140 S. Ct. 2183 (2020) ...........................................................8, 18, 21

*Stern v. Marshall*,
    564 U.S. 462 (2011) ...........................................................5, 7, 8, 9

*Texas v. Rettig*,
    993 F.3d 408 (5th Cir. 2021) ...................................................16, 17

*Tull v. United States*,
    481 U. S. 412 (1987) ...................................................................11

*United States v. Arthrex, Inc.*,
    141 S. Ct. 1970 (2021) .............................................16, 18, 19, 20

*United States v. Ferreira*,
    54 U.S. 40 (1851) .........................................................................12

*United States v. Rife*,
    33 F.4th 838 (6th Cir. 2022) .........................................................16

*Wellness Int'l Network, Ltd. v. Sharif*,
    575 U.S. 665 (2015) .......................................................................6

*Williams v. Pennsylvania*,
    579 U.S. 1 (2016) .........................................................................15

*Withrow v. Larkin*,
    421 U.S. 35 (1975) .......................................................................14

**Constitution**

U.S. Const. Art. II, § 1 .......................................................................18, 21

U.S. Const. Art. III, § 1 .................................................................6, 7, 9, 21

U.S. Const. Art. III, § 2, cl. 1 ...................................................................7

U.S. Const. Art. III, § 2, cl. 2 ...................................................................9

**Statutes**

5 U.S.C. § 1202(d) ........................................................................18, 21

5 U.S.C. § 7521(a) ........................................................................18, 21

15 U.S.C. § 41 ..............................................................................18, 21

15 U.S.C. § 45(c) ...............................................................................10

15 U.S.C. § 57b(a)(2) ...........................................................................3

15 U.S.C. § 57b(b) ...............................................................................3

**Regulations**

16 C.F.R. § 3.22(a) .............................................................................10

16 C.F.R. § 3.54 .................................................................................10

**Federal Register**

74 Fed. Reg. 1,804 (Jan. 13, 2009) ......................................................10

88 Fed. Reg. 42,872 (July 5, 2023) ......................................................10

**Other Authorities**

*Amrep Corp.*,
    102 F.T.C. 1362 (1983) .................................................................14

Daniel Crane,
    *Debunking Humphrey's Executor*,
    83 Geo. Wash. L. Rev. 1835 (2015) .................................................9

Evan D. Bernick,
    *Is Judicial Deference to Agency Fact-Finding Unlawful?*,
    16 Geo. J.L. & Pub. Pol'y 27 (2018) ....................................6, 7, 9, 11

FTC Press Release, "FTC Issues Opinion Finding that TurboTax Maker
    Intuit Inc. Engaged in Deceptive Practices" (Jan. 22, 2024),
    https://www.ftc.gov/news-events/news/press-releases/2024/01/ftc-
    issues-opinion-finding-turbotax-maker-intuit-inc-engaged-deceptive-
    practices ................................................................................4, 5

FTC Press Release, "FTC Sues Intuit for Its Deceptive TurboTax 'free' Filing Campaign" (Mar. 29, 2022), https://www.ftc.gov/news-events/news/press-releases/2022/03/ftc-sues-intuit-its-deceptive-turbotax-free-filing-campaign ..............................................................................5

Gary Lawson,
*The Rise and Rise of the Administrative State*,
107 Harv. L. Rev. 1231 (1994) ..................................................11, 12

Jennifer Mascott,
*Constitutionally Conforming Agency Adjudication*,
2 Loyola U. Chi. J. Reg. Compliance 22 (2017) ...............................11

Joshua D. Wright, Comm'r, FTC, Section 5 Revisited (Feb. 26, 2015),
http://bit.ly/2c3FSYZJ .......................................................................14

*McWane, Inc.*,
F.T.C. No. 9351, 2014 FTC LEXIS 28 (Jan. 30, 2014) ...................10

Mila Sohoni,
*Agency Adjudication and Judicial Nondelegation: An Article III Canon*,
107 Nw. U.L. Rev. 1569 (2013) ..................................................22, 23

1 Montesquieu, Spirit of Laws ...................................................................8

Nathan S. Chapman & Michael W. McConnell,
*Due Process as Separation of Powers*,
121 Yale L.J. 1672 (2012) ...........................................................15, 16

OPM, ALJs By Agency, https://www.opm.gov/services-for-agencies/administrative-law-judges/#url=ALJs-by-Agency .............................23

Philip Hamburger,
Is Administrative Law Unlawful? (2014)......................................10, 16

The Federalist No. 78 (Hamilton)..............................................................8

3 William Blackstone, Commentaries on the Laws of England................5

# INTEREST OF *AMICUS CURIAE*[1]

*Amicus curiae* Americans for Prosperity Foundation ("AFPF") is a 501(c)(3) nonprofit organization committed to educating and training Americans to be courageous advocates for the ideas, principles, and policies of a free and open society. Some of those key ideas include the separation of powers and constitutionally limited government. As part of this mission, AFPF appears as *amicus curiae* before state and federal courts.

AFPF has a particular interest in this case because it believes the FTC's structure and existence offend the Constitution on many levels. The for-cause removal protections the FTC's Commissioners and ALJs enjoy violate Article II, unconstitutionally shielding these officials from accountability to the President and thus to the people. Worse, the FTC's administrative process—in which the FTC acts as investigator, prosecutor, and judge of its own cause—offends due process and Article III. AFPF believes this unconstitutional arrangement cannot be allowed to stand and that the FTC's extralegal administrative prosecution is void ab initio.

---

[1] All parties have consented to the filing of this brief. Pursuant to FRAP 29(a)(4)(E), *amicus curiae* states that no counsel for a party other than AFPF authored this brief in whole or in part, and no counsel or party other than AFPF made a monetary contribution intended to fund the preparation or submission of this brief. No person other than *amicus curiae* or its counsel made a monetary contribution to its preparation or submission.

## SUMMARY OF ARGUMENT

As Justice Jackson explained long ago, "[t]he rise of administrative bodies probably has been the most significant legal trend of the last century[.]" *FTC v. Ruberoid Co.*, 343 U.S. 470, 487 (1952) (dissenting). He continued: "They have become a veritable fourth branch of the Government, which has deranged our three-branch legal theories much as the concept of a fourth dimension unsettles our three-dimensional thinking." *Id*. The problem is worse today, as Congress has devised more novel and powerful administrative bodies unmoored from the Constitution.

The FTC is an exemplar of the administrative state's unconstitutionality. This administrative body wields vast legislative, executive, and judicial power, posing a grave threat to core private rights and individual liberty. As relevant here, it brings inhouse prosecutions where it acts as investigator, prosecutor, and judge of its own cause. The FTC also gets to make the rules for this slanted administrative process, further rigging the game in its own favor. Unsurprisingly, the Commission invariably finds in favor of itself, imposing liability in 100 percent of its inhouse cases for the past quarter century. The Commission is also unconstitutionally insulated from accountability to the political branches and, by extension, to the American People. Even the President cannot meaningfully restrain the agency. This unconstitutional arrangement cannot be allowed to stand.

Petitioner is entitled to a meaningful remedy for the government's separation-of-powers violations that will afford it complete redress. Because the Commissioners purported to wield Article III judicial power here to deprive Petitioner of its private rights, they were mere usurpers in an unlawful office and therefore this enforcement action against Petitioner is necessarily void ab initio and the FTC's Order must be vacated without remand.

## ARGUMENT

### I. The FTC's Administrative Prosecution Violates Article III and Is Therefore Void Ab Initio.

#### A. The FTC's Administrative Prosecution Implicates Private Rights.

In analyzing whether the FTC's inhouse administrative prosecution complies with the Constitution, a threshold inquiry is whether it implicates Petitioner's private (as opposed to public) rights. It does. "Private rights encompass the three absolute rights, life, liberty, and property[.]" *Axon Enter. v. FTC*, 598 U.S. 175, 198 (2023) (Thomas, J., concurring). Here, the FTC's Final Order infringes Petitioner's economic liberty and freedom of speech.[2]

---

[2] Under certain circumstances, FTC cease-and-desist orders allow FTC to obtain "monetary damages." *See Illumina, Inc. v. FTC*, 88 F.4th 1036, 1046 (5th Cir. 2023) ("[T]o obtain other forms of relief, such as monetary damages, the FTC must resort to administrative proceedings under Section 5(b)." (citing *AMG Cap. Mgmt., LLC v. FTC*, 141 S. Ct. 1341, 1348–49 (2021)); 15 U.S.C. §§ 57b(a)(2), (b).

The FTC's Final Order constrains Petitioner's ability to advertise its products, not only prohibiting but also compelling speech. *See* Order Pt. I. It also imposes monetary harms in the form of compliance costs. *See, e.g.*, Order Pts. III–VI (imposing record-keeping, notification, and reporting requirements). That well describes core private rights. *Cf. Axon*, 598 U.S. at 204 (Thomas, J., concurring) (FTC's attempt to force business "to transfer intellectual property" implicates "the core private right to property").

Underscoring that the FTC's inhouse prosecution implicates Intuit's private rights, the FTC's administrative complaint sounds in fraud, accusing the company of making "false or misleading" "representation[s]."[3] Compl. ¶ 119, *In re Intuit Inc.,* FTC Dkt. No. 9408 (Mar. 7, 2022). The Commission Opinion confirms that the Complaint accuses Intuit of using "fraudulent" business practices, Op. 32 n.12, also alleging Intuit ran a "sufficiently broad, enduring, and willful" "deceptive ad campaign" to justify its draconian Order,[4] *see* Op. 82. The FTC's press releases echo this theme. *See, e.g.*, FTC Press Release, "FTC Issues Opinion Finding that

_____

[3] Courts have found that Section 5 "deception" claims sound in fraud and thus must meet Federal Rule of Civil Procedure 9(b)'s requirements when FTC brings a civil enforcement action in federal court. *See, e.g.*, *FTC v. D-Link Sys., Inc.,* No. 3:17-CV-00039-JD, 2017 WL 4150873, at *2 (N.D. Cal. Sept. 19, 2017) (unpublished); *FTC v. Lights of Am., Inc.*, 760 F. Supp. 2d 848, 852–55 (C.D. Cal. 2010).

[4] As Intuit explains, *see* Intuit Br. 34–43, the FTC's administrative charges are unsupported by substantial evidence.

TurboTax Maker Intuit Inc. Engaged in Deceptive Practices" (Jan. 22, 2024)[5]; FTC Press Release, "FTC Sues Intuit for Its Deceptive TurboTax 'free' Filing Campaign" (Mar. 29, 2022).[6] The gravamen of the FTC's administrative charges is thus "'the stuff of the traditional actions at common law tried by the courts at Westminster in 1789[.]'" *Stern v. Marshall*, 564 U.S. 462, 484 (2011) (quoting *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 90 (1982) (Rehnquist, J., concurring in judgment)); *see also Jarkesy v. SEC,* 34 F.4th 446, 453 (5th Cir. 2022) ("Fraud prosecutions were regularly brought in English courts at common law." (citing 3 William Blackstone, Commentaries on the Laws of England *42)), *reh'g en banc denied*, 51 F.4th 644 (5th Cir. 2023), *cert. granted*, 143 S. Ct. 2688 (2023).

"The Supreme Court . . . has made clear that Congress may not withdraw adjudication of 'private rights' cases from Article III courts." *Career Colls. & Sch. of Tex. v. U.S. Dep't of Educ.*, No. 23-50491, 2024 WL 1461737, at *20 (5th Cir. Apr. 4, 2024) (citing *Stern*, 564 U.S. at 482–95; *Murray's Lessee v. Hoboken Land & Improvement Co*., 59 U.S. 272 (1855)). "There must be *some* limit to the government's ability to dissolve the Constitution's usual separation-of-powers and due-process protections by waving a nebulous 'public rights' flag at a court." *Calcutt*

---

[5] https://www.ftc.gov/news-events/news/press-releases/2024/01/ftc-issues-opinion-finding-turbotax-maker-intuit-inc-engaged-deceptive-practices

[6] https://www.ftc.gov/news-events/news/press-releases/2022/03/ftc-sues-intuit-its-deceptive-turbotax-free-filing-campaign

*v. FDIC*, 37 F.4th 293, 349 (6th Cir. 2022) (Murphy, J., dissenting), *rev'd*, 598 U.S. 623 (2023). The FTC's administrative prosecution exceeds that limit. *Cf. Axon*, 598 U.S. at 203 (Thomas, J., concurring) ("The rights at issue in these cases appear to be core private rights that must be adjudicated by Article III courts."). Petitioner is therefore entitled to the process the Constitution requires when private rights are at issue.

### B. The Constitution Exclusively Vests the Judicial Power To Find Facts and Independently Interpret the Law in Article III Courts.

"[A]n exercise of the judicial power is required when the government wants to act authoritatively upon core private rights that had vested in a particular individual." *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 713 (2015) (Thomas, J., dissenting) (cleaned up); *see Axon*, 598 U.S. at 198 (Thomas, J., concurring) ("[W]hen private rights are at stake, full Article III adjudication is likely required."). *Cf. Newland v. Marsh*, 19 Ill. 376, 382 (Ill. 1857) ("The citizen cannot be deprived of his property by involuntary divestiture of his right to it, or by such transfer of it to another, except by judgment of law[.]"). "Article III of the Constitution begins with a clause that vests [this] particular kind of power in a specialized branch of the federal government." Evan D. Bernick, *Is Judicial Deference to Agency Fact-Finding Unlawful?*, 16 Geo. J.L. & Pub. Pol'y 27, 43 (2018). The Judicial Vesting Clause exclusively vests the "judicial Power of the

United States" in Article III courts.[7] U.S. Const. Art. III, § 1; *see Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1381 (2018) (Gorsuch, J., dissenting) ("the federal 'judicial Power' is vested in independent judges"); *CFTC v. Schor*, 478 U.S. 833, 867 (1986) (Brennan, J., dissenting) ("Our Constitution unambiguously enunciates a fundamental principle—that the 'judicial Power of the United States' be reposed in an independent Judiciary.").

This sovereign function cannot be subdelegated. *See* Bernick, 16 Geo. J.L. & Pub. Pol'y at 43–46. "The allocation of powers in the Constitution is absolute[.]" *Dep't of Transp. v. Ass'n of Am. R.R.*, 575 U.S. 43, 69 (2015) (Thomas, J., concurring in judgment). And "[u]nder our Constitution, the 'judicial power' belongs to Article III courts and cannot be shared with the Legislature or the Executive." *B&B Hardware, Inc. v. Hargis Indus.*, 575 U.S. 138, 171 (2015) (Thomas, J., dissenting) (citing *Stern*, 564 U.S. at 482–83). It "can no more be shared with another branch than the Chief Executive, for example, can share with the Judiciary the veto power, or the Congress share with the Judiciary the power to override a Presidential veto." *Stern*, 564 U.S. at 483 (cleaned up). "Article III could neither serve its purpose in the system of checks and balances nor preserve the integrity of judicial

---

[7] "As originally understood, the judicial power extended to 'suit[s] at the common law, or in equity, or admiralty.'" *Oil States*, 138 S. Ct. at 1381 (Gorsuch, J., dissenting) (quoting *Murray's Lessee*, 59 U.S. at 284); *see also* U.S. Const. Art. III, § 2, cl. 1 ("The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, [and] the Laws of the United States[.]").

decisionmaking if the other branches of the Federal Government could confer the Government's 'judicial Power' on entities outside Article III."[8] *Id.* at 484.

## C. The FTC Cannot Possess or Exercise Article III Judicial Power.

"Administrative agencies" like the FTC "have been called quasi-legislative, quasi-executive or quasi-judicial, as the occasion required, in order to validate their functions within the separation-of-powers scheme of the Constitution." *FTC v. Ruberoid Co.*, 343 U.S. at 487 (Jackson, J., dissenting). But merely labeling their function as "adjudicative" cannot change that *all* "federal administrative agencies are part of the Executive Branch[.]" *B&B Hardware*, 575 U.S. at 171 (Thomas, J., dissenting). And "[e]ven when an executive agency acts like a legislative or judicial actor, it still exercises executive power." *Garcia v. Garland*, 64 F.4th 62, 70 n.7 (2d Cir. 2023). Indeed, "under our constitutional structure," *all* of the FTC's activities, including bringing inhouse administrative prosecutions, "*must be* exercises of" Article II executive power. *City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013); *see also Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2198 n.2 (2020) ("The Court's conclusion [in *Humphrey's Executor*] that the FTC did not exercise executive power has not withstood the test of time."); *Bowsher v. Synar,*

---

[8] The Framers understood that keeping the judiciary "truly distinct from both the legislature and the Executive" was important to protecting the "general liberty of the people." The Federalist No. 78 (Hamilton). As the Framers recognized, "'there is no liberty, if the power of judging be not separated from the legislative and executive powers.'" *Id.* (quoting 1 Montesquieu, Spirit of Laws 181).

478 U.S. 714, 761 n.3 (1986) (White, J., dissenting); Daniel Crane, *Debunking Humphrey's Executor,* 83 Geo. Wash. L. Rev. 1835, 1839, 1870–71 (2015).

The FTC Commissioners and ALJ are executive officials housed within an Article II agency, who therefore cannot possess or exercise Article III judicial power, or for that matter Article I legislative power. U.S. Const. Art. III, § 1; *see Stern*, 564 U.S. at 482–84; *see also B&B Hardware*, 575 U.S. at 171 (Thomas, J., dissenting) ("Because federal administrative agencies are part of the Executive Branch, it is not clear that they have power to adjudicate claims involving core private rights."). "[F]actfinding" and "deciding questions of law" "are at the core of judicial power, as Article III itself acknowledges." *Axon,* 598 U.S. at 203 (Thomas, J., concurring) (citing U.S. Const. Art. III, § 2, cl. 2)); *see also* Bernick, 16 Geo. J.L. & Pub. Pol'y at 46 ("The determination of facts, no less than the interpretation of law, is part and parcel of the exercise of judicial power."). Accordingly, the Constitution bars the FTC from making factual findings and deciding questions of law in disputes implicating core private rights. But that is exactly what the FTC's administrative prosecution scheme allows it to do.

The FTC "houses (and by design) both prosecutorial and adjudicative activities," *Axon*, 598 U.S. at 189, "combin[ing] the functions of investigator, prosecutor, and judge under one roof," *id.* at 215 (Gorsuch, J., concurring in judgment). "The agency effectively fills in for the district court, with the court of

appeals providing judicial review." *Id.* at 185 (majority opinion). Further still, the Commission's factual findings are subject to great deference: "The findings of the Commission as to the facts, if supported by evidence, shall be conclusive."[9] 15 U.S.C. § 45(c). This Circuit has said "[t]his deferential review should be no more searching than if [an appellate court] were evaluating a jury's verdict." *Impax Labs., Inc. v. FTC*, 994 F.3d 484, 492 (5th Cir. 2021).

This arrangement violates the separation of powers and Article III. *See* Philip Hamburger, Is Administrative Law Unlawful?, 319 (2014). As Justice Thomas recently suggested, the FTC's administrative process "may violate the separation of powers by placing adjudicatory authority over core private rights—a judicial rather than executive power—within the authority of Article II agencies" and "violate Article III by compelling the Judiciary to defer to administrative agencies regarding matters within the core of the Judicial Vesting Clause." *Axon*, 598 U.S. at 202 (Thomas, J., concurring). *Cf. Lorenzo v. SEC*, 872 F.3d 578, 602 (D.C. Cir. 2017)

---

[9] The Commission reviews the ALJ's factual findings and "inferences drawn from those facts" *de novo*. *See McWane, Inc.*, F.T.C. No. 9351, 2014 FTC LEXIS 28, at *30 (Jan. 30, 2014); 16 C.F.R. § 3.54. In 2009, the FTC amended its Rules of Practice to grab powers that had been previously exercised by the ALJ. 74 Fed. Reg. 1,804, 1,808–11 (Jan. 13, 2009). Under these changes, the same Commission that votes out the Complaint (not the ALJ) decides dispositive motions, *see* 16 C.F.R. § 3.22(a), and has greater case-management authority. In July 2023, the Commission again amended its Rules of Practice to transfer even more ALJ powers to itself. *See* 88 Fed. Reg. 42,872, 42,873–74 (July 5, 2023). "The Commission maintains control over the case from the investigation to the very end, and it is responsible for all final agency decisions." Op. 78.

(Kavanaugh, J., dissenting) ("[A]gency-centric process is in some tension with Article III of the Constitution[.]"). *Cf. Calcutt*, 37 F.4th at 336 (Murphy, J., dissenting) ("[O]ne might wonder whether the agency exercises judicial power by adjudicating cases that deprive individuals of private rights."). Exactly so.

"Requiring judges in core-private-rights cases to defer to facts found by administrative agencies effectively divests the courts of a key component of judicial power—and therefore violates Article III."[10] Bernick, 16 Geo. J.L. & Pub. Pol'y at 46. "It is no answer that an Article III court may eventually review the agency order and its factual findings under a deferential standard of review." *Axon*, 598 U.S. at 202–03 (Thomas, J., concurring). As Professor Jennifer Mascott has explained: "[W]hen agency adjudicators stray outside the proper limits of executive adjudication, such as by depriving individuals of vested property rights, they must not serve even as fact-finders subject to judicial deference. All cases and controversies subject to the federal judicial power—or parts of those cases and controversies—must be evaluated and determined by Article III judges[.]" *Constitutionally Conforming Agency Adjudication*, 2 Loyola U. Chi. J. Reg. Compliance 22, 25 (2017) (footnotes omitted). "Article III requires de novo review, of both fact and law, of all agency adjudication that is properly classified as 'judicial'

---

[10] This practice also violates the Seventh Amendment jury-trial right. *See Jarkesy,* 34 F.4th at 453–59; *Axon*, 598 U.S. at 202 (Thomas, J., concurring) (citing *Tull v. United States*, 481 U. S. 412, 417 (1987)).

activity." Gary Lawson, *The Rise and Rise of the Administrative State*, 107 Harv. L. Rev. 1231, 1248 (1994).

### D. The Commissioners Are Usurpers In An Unlawful Office Whose Inhouse Enforcement Actions Are Void Ab Initio.

Because Congress has assigned the FTC "judicial Power"—a sovereign function it cannot possess—the FTC's administrative tribunal cannot constitutionally exist, and its Commissioners are mere usurpers, whose inhouse enforcement actions are void ab initio. *Cf. Hildreth's Heirs v. M'Intire's Devisee*, 24 Ky. 206, 208 (Ky. 1829) ("The offices attempted to be created, never had a constitutional existence; and those who claimed to hold them, had no rightful or legal power."). *See generally Calcutt*, 37 F.4th at 344–45 (Murphy, J., dissenting) (surveying case law). As the Supreme Court explained long ago: "Where no office legally exists, the pretended officer is merely a usurper, to whose acts no validity can be attached[.]"[11] *Norton v. Shelby Cnty.*, 118 U.S. 425, 449 (1886). "The Supreme Court's modern cases also treat an officer's actions as void if the generic office could 'not lawfully possess' the power to take them." *Calcutt*, 37 F.4th at 344 (Murphy, J., dissenting) (citing *Collins v. Yellen*, 141 S. Ct. 1761, 1788 (2021)).

---

[11] "This rule extended to constitutional defects. The Supreme Court may have followed it as early as *United States v. Yale Todd* (U.S. 1794)." *Calcutt*, 37 F.4th at 344 (Murphy, J., dissenting) (citing *United States v. Ferreira*, 54 U.S. 40, 52–53 (1851) (note by Taney, C.J.)).

Here, the Commission cannot, under the Constitution, lawfully possess the "judicial Power" the Commissioners exercised in this case. Therefore, the Commission's actions are void ab initio. Put another way, because the FTC's administrative prosecution was brought and decided by "a 'mere usurper' in an unlawful [office] (whose actions were void)," *Calcutt*, 37 F.4th at 342 (Murphy, J., dissenting), the FTC's Order is a nullity that must be vacated without remand.[12]

## II.    The FTC's Administrative Prosecution of Intuit Violates Due Process.

The FTC's Order cannot stand for a second reason: The FTC's administrative prosecution violated Petitioner's due process rights. Indeed, standing alone, the Chair's statements giving the appearance of prejudgment of the facts, *see* Intuit Br. 17, 23–26, require vacatur of the Commission's Order even though the Chair's vote was not necessary for a majority. *See Cinderella Career & Finishing Schools, Inc. v. FTC,* 425 F.2d 583, 589–92 (D.C. Cir. 1970).

### A. The FTC's Administrative Process Is Rigged Against Respondents.

To put Petitioner's due process claims into context, it is important to understand the degree to which the FTC's administrative process stacks the deck against respondents. After all, the FTC "combines the functions of investigator, prosecutor, and judge under one roof." *Axon*, 598 U.S. at 215 (Gorsuch, J., concurring in judgment). It "employ[s] relaxed rules of procedure and evidence—

---

[12] Intuit's Article III claim is an issue of first impression in this Circuit.

rules they make for themselves."[13] *Id.* (Gorsuch, J., concurring in judgment). And, unsurprisingly, the FTC invariably finds in favor of itself.

"The numbers reveal just how tilted this game is. . . . [S]ome say the FTC has not lost an in-house proceeding in 25 years." *Axon*, 598 U.S. at 215 (Gorsuch, J., concurring in judgment); *see Axon Enter. v. FTC*, 986 F.3d 1173, 1187 (9th Cir. 2021), *rev'd*, 598 U.S. 175 (2023) ("FTC does not appear to dispute[] that [it] has not lost a single case in the past quarter-century."); *see also* Joshua D. Wright, Comm'r, FTC, *Section 5 Revisited* 6–7 (Feb. 26, 2015), http://bit.ly/2c3FSYZ. "Even the 1972 Miami Dolphins would envy that type of record." *Axon,* 986 F.3d at 1187. This "raises legitimate questions about whether the FTC has stacked the deck in its favor in its administrative proceedings." *Id.* It has.[14]

## B. The FTC's Combination of Investigative, Prosecutorial, and Judicial Functions Violates Due Process Under the Circumstances of this Case.

This arrangement is unconstitutional. "[A] 'fair trial in a fair tribunal is a basic requirement of due process.' This applies to administrative agencies which adjudicate as well as to courts." *Withrow v. Larkin*, 421 U.S. 35, 46 (1975) (quoting

---

[13] Nor do FTC's Rules even obligate Complaint Counsel to provide exculpatory evidence to Respondents. This is because FTC, unlike other agencies, has resisted incorporating the *Brady* rule into its administrative adjudication scheme. *See, e.g., Amrep Corp.*, 102 F.T.C. 1362, 1371 (1983).

[14] Respondents are aware of this, which allows the FTC to leverage its home turf advantage to coerce companies into entering into draconian and unfair settlements. *See generally Axon*, 598 U.S. at 216 & n.4 (Gorsuch, J., concurring in judgment).

*In re Murchison*, 349 U.S. 133, 136 (1955)). Due process demands that the FTC may not act as investigator, prosecutor, and judge of its own cause. *See Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016) ("[A]n unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case."). *Cf. FTC v. Facebook, Inc.*, 581 F. Supp. 3d 34, 63 (D.D.C. 2022) ("So what role does provide the best analogy for analyzing Chair Khan's actions in voting to file this case? The Court concludes it is that of a prosecutor."). "In this country, judges have no more power to initiate a prosecution of those who come before them than prosecutors have to sit in judgment of those they charge." *Donziger v. United States*, 143 S. Ct. 868, 870 (2023) (Gorsuch, J., dissenting from denial of certiorari).

More broadly, as Professors Nathan Chapman and Michael McConnell have explained:

> The basic idea of due process, both at the Founding and at the time of adoption of the Fourteenth Amendment, was that the law of the land required each branch of government to operate in a distinctive manner, at least when the effect was to deprive a person of liberty or property. . . . The judiciary was required to adjudicate cases in accordance with longstanding procedures, unless the legislature substituted alternative procedures of equivalent fairness.

*Due Process as Separation of Powers*, 121 Yale L.J. 1672, 1781–82 (2012). Due process "was about securing the rule of law. It ensured that the executive would not be able unilaterally to deprive persons within the nation of their rights of life, liberty,

or property except as provided by common law or statute and as adjudicated by independent judicial bodies[.]"[15] *Id.* at 1808. That did not happen here.

This should not be allowed to stand. If the FTC wants to prosecute Intuit to deprive it of private rights, Article III and due process require the FTC to do so in an Article III court. *See Axon*, 598 U.S. at 202 (Thomas, J., concurring) (FTC review scheme "may violate due process by empowering entities that are not courts of competent jurisdiction to deprive citizens of core private rights."); *see also United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1993 (2021) (Gorsuch, J., concurring in part, dissenting in part) ("Any suggestion that the neutrality and independence the framers guaranteed for courts could be replicated within the Executive Branch was never more than wishful thinking.").

### C. *Illumina v. FTC* Does Not Excuse FTC's Due Process Violations Here.

Nor can *Illumina*, 88 F.4th 1036, excuse FTC's due process violations in *this* case, as Intuit has shown ample evidence of bias, *see id.* at 1047; Intuit Br. 23–26.

"[T]he Constitution's original meaning  is law, absent binding precedent to the contrary." *United States v. Rife*, 33 F.4th 838, 843–44 (6th Cir. 2022). As Judge Ho has observed: "judges swear an oath to uphold the Constitution, consistent of

---

[15] As Professor Philip Hamburger put it: "The guarantee of due process . . . bars the government from holding subjects to account outside courts and their processes. This was the history of the principle from the very beginnings, and this was how the Fifth Amendment was drafted in 1791." Hamburger, *supra*, 256.

course with a judicial system based on precedent. That should mean that [judges] decide every case faithful to the text and original understanding of the Constitution, to the maximum extent permitted by a faithful reading of binding precedent." *Texas v. Rettig*, 993 F.3d 408, 409 (5th Cir. 2021) (dissenting from denial of rehearing en banc). That resonates here. To be sure, this Court is bound by existing precedent. But here, *Illumina*'s due process holding rested on different facts and thus does not answer the precise constitutional question before this Court, which this Court should answer based on the original public meaning of the Constitution.

As Judge Ho put it: "[I]f [courts] are forced to choose between upholding the Constitution and extending precedent in direct conflict with the Constitution, the choice should be clear: '[O]ur duty [is] to apply the Constitution—not extend precedent.'" *Id.* at 417 (dissenting from denial of rehearing en banc) (citation omitted). So too here.

While courts must "faithfully follow" precedent, courts "should resolve questions about the scope of those precedents in light of and in the direction of the constitutional text and constitutional history." *Edmo v. Corizon, Inc.*, 949 F.3d 489, 506 (9th Cir. 2020) (Bumatay, J., dissenting from denial of rehearing en banc) (cleaned up). Here, that direction shows the FTC's slanted inhouse administrative process violates due process, at least as applied to Intuit.

### III. The FTC's Structure Violates Article II and the Separation of Powers.

The FTC's administrative prosecution scheme suffers from two additional constitutional infirmities: the statutory for-cause removal protections for Commissioners, 15 U.S.C. § 41, and multi-tier ALJ removal protections violate Article II and the separation of powers, *id.*; 5 U.S.C. § 7521(a) (ALJ for-cause removal protection); 5 U.S.C. § 1202(d) (MSPB for-cause removal protection).[16]

### A. The President's Constitutional Removal Power Protects Liberty and Ensures Agency Accountability.

"The President's power to remove derives from Article II of the Constitution, not from Congress." *Exela Enter. Sols., Inc. v. NLRB*, 32 F.4th 436, 442 (5th Cir. 2022) (citing *Myers v. United States*, 272 U.S. 52, 163–64 (1926)). Article II "provides that '[t]he executive Power shall be vested in a President of the United States of America.'" *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 492 (2010). Under our Constitution, "[t]he entire 'executive Power' belongs to the President alone," *Seila Law*, 140 S. Ct. at 2197; *see* U.S. Const. art. II, § 1, "including the power of appointment and removal of executive officers," *Myers*, 272 U.S. at 164. The President "is responsible for the actions of the Executive

---

[16] *Amicus* believes *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), was wrongly decided and should be overruled. *Amicus* recognizes that *Illumina* binds this Court with respect to the *Commissioners'* for-cause removal protections. *See* 88 F.4th at 1046–47. But *Illumina* did not address the constitutionality of the FTC ALJ's multi-tier for-cause removal protections. *See id.* Illumina did not raise that argument and thus the *Illumina* panel had no occasion to address it.

Branch and cannot delegate that ultimate responsibility or the active obligation to supervise that goes with it." *Arthrex,* 141 S. Ct. at 1978–79 (cleaned up).

"[T]he constitutional text and the original understanding, including the Decision of 1789, established that the President possesses the power under Article II to remove officers of the Executive Branch at will." *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 537 F.3d 667, 692 (D.C. Cir. 2008) (Kavanaugh, J., dissenting), *overruled*, 561 U.S. 477 (2010); *see Feds for Med. Freedom v. Biden*, 63 F.4th 366, 389–92 (5th Cir. 2023) (en banc) (Ho, J., concurring); *Fleming v. U.S. Dep't of Agric.*, 987 F.3d 1093, 1114 (D.C. Cir. 2021) (Rao, J., concurring in part, dissenting in part) ("Debates in the First Congress, the so-called Decision of 1789, made clear that the President is vested with plenary removal power."). "Under our constitutional structure, an agency untethered from the President's control may not wield his power." *Consumer Fin. Prot. Bureau v. Seila Law LLC*, 997 F.3d 837, 848 (9th Cir. 2021) (Bumatay, J., dissenting from denial of rehearing en banc). And for good reason. Given that the President's "selection of administrative officers is essential to the execution of the laws by him, so must be his power of removing those for whom he can not continue to be responsible." *Myers*, 272 U.S. at 117.

"[B]ecause the President, unlike agency officials, is elected," the President's removal power "is essential to subject Executive Branch actions to a degree of electoral accountability." *Collins,* 141 S. Ct. at 1784. For "[w]ithout presidential

responsibility there can be no democratic accountability for executive action." *Arthrex*, 141 S. Ct. at 1988 (Gorsuch, J., concurring in part, dissenting in part). After all, the political fiction that attempts to justify an expansive administrative state is that administrative bodies "have political accountability, because they are subject to the supervision of the President, who in turn answers to the public." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2413 (2019). "At-will removal ensures that the lowest officers, the middle grade, and the highest, will depend, as they ought, on the President, and the President on the community." *Collins*, 141 S. Ct. at 1784 (cleaned up).

"If anything, removal restrictions may be a greater constitutional evil than appointment defects." *Id.* at 1796 (Gorsuch, J., concurring in part). "In the case of a removal defect, a wholly unaccountable government agent asserts the power to make decisions affecting individual lives, liberty, and property. . . . Few things could be more perilous to liberty than some 'fourth branch' that does not answer even to the one executive official who is accountable to the body politic." *Id.* at 1797 (Gorsuch, J., concurring in part) (citing *FTC v. Ruberoid Co.*, 343 U.S. at 487 (Jackson, J., dissenting)). So too here. That well describes the FTC.

## B. The ALJ's Multi-Tier Removal Protections Are Unconstitutional.

As discussed above, the FTC Chief ALJ cannot exercise the judicial power.[17] *See also* U.S. Const. Art. III, § 1. Instead, no matter how one chooses to describe the work ALJs are tasked with doing, "under our constitutional structure they *must be* exercises of—the 'executive Power.'" *City of Arlington*, 569 U.S. at 304 n.4 (citing U.S. Const. Art. II, §1, cl. 1); *see Free Enterprise Fund*, 561 U.S. at 514; *id.* at 516 (Breyer, J., dissenting); *Seila Law*, 140 S. Ct. at 2198 n.2. The Supreme Court has held "Congress cannot limit the President's authority" through granting "two levels of protection from removal for those who nonetheless exercise significant executive power." *Free Enter. Fund*, 561 U.S. at 514.

Straightforward application of *Lucia v. SEC*, 585 U.S. 237 (2018), which held that SEC ALJs are Officers of the United States, *see id.* at 247–51, and *Jarkesy*, 34 F.4th at 463–65, requires the conclusion that the FTC Chief ALJ is an Officer who exercises significant executive power. The FTC Chief ALJ enjoys at least two (and likely three) tiers of removal protections. 5 U.S.C. § 7521(a); 15 U.S.C. § 41; 5 U.S.C. § 1202(d). Because the FTC Chief ALJ is an Officer of the United States, *see Lucia*, 585 U.S. at 244–51; *Burgess v. FDIC*, 871 F.3d 297, 303 (5th Cir. 2017); *Calcutt*, 37 F.4th at 320, who presumably "perform[s] substantial executive

---

[17] The only basis on which Intuit's Article II removal claim could fail is if the FTC Chief ALJ does not exercise Article II executive power but rather Article III judicial power. That is plausible—and equally unconstitutional.

functions,"[18] *Jarkesy*, 34 F.4th at 463; *but cf. Calcutt*, 37 F.4th at 348–49 (Murphy, J., dissenting), the multi-tier removal restrictions violate Article II, *see Free Enter. Fund*, 561 U.S. at 514; *Jarkesy*, 34 F.4th at 463–65; *Fleming*, 987 F.3d at 1113–23 (Rao, J., concurring in part, dissenting in part).

## IV. The Sky Will Not Fall If This Court Enforces the Constitution's Demands.

Enforcing the Constitution's demands where, as here, *private* rights are at stake will not cause practical or floodgate problems. Agencies like the FTC and SEC already have authority to bring enforcement actions directly in federal court and have done so for years. *See AMG,* 141 S. Ct. at 1347; *Jarkesy*, 34 F.4th at 455–56. And these executive agencies can continue to enforce the law—in federal court.

Conversely, matters involving garden variety *public* rights, such as claims involving government benefits and federal employment disputes, need not be addressed by Article III courts in the first instance.[19] *See Axon*, 598 U.S. at 199 (Thomas, J., concurring). After all, as Professor Mila Sohoni has explained, "a

---

[18] As an original matter, "the importance or significance of" the FTC Chief ALJ's "statutory duties is irrelevant" to whether he is an Officer under the Appointments Clause. *Lucia*, 138 S. Ct. at 2057 (Thomas, J., concurring). Instead, "[a]ll that matters is that the" he is "continuously responsible for performing" statutory duties. *See id.* (Thomas, J., concurring). That test is easily met.

[19] *Cf. Free Enter. Fund*, 561 U.S. at 542–43 (Breyer, J., dissenting) ("[T]he Federal Government relies on 1,584 ALJs to adjudicate administrative matters in over 25 agencies. These ALJs adjudicate Social Security benefits, employment disputes, and other matters highly important to individuals.").

government denial of Social Security benefits or a termination of a government employee for cause would not" implicate private rights. *Agency Adjudication and Judicial Nondelegation: An Article III Canon*, 107 Nw. U.L. Rev. 1569, 1586 (2013); *see Austin v. Shalala*, 994 F.2d 1170, 1177 (5th Cir. 1993) (noting "public right for the government to recover the overpayment of social security benefits" properly assigned to agency). Accordingly, these matters may be initially assigned to administrative forums.

Indeed, the overwhelming majority of ALJs are tasked with this sort of work, adjudicating public rights. To put this in perspective, as of 2017, there were 1,655 Social Security Administration ALJs and 101 Department of Health and Human Services/Office of Medicare Hearings and Appeals ALJs. *See generally* OPM, ALJs By Agency (as of March 2017).[20] By contrast, at that time, the SEC employed five ALJs, and the FTC employed one of the 1,931 federal ALJs.[21] *See id.*

The sky will not fall if the FTC and other law enforcement agencies are required to bring enforcement actions implicating private rights in federal court, as the Constitution requires them to do and as the DOJ does every day.

---

[20] https://www.opm.gov/services-for-agencies/administrative-law-judges/#url=ALJs-by-Agency.

[21] The FTC recently hired a second ALJ. *See* FTC Press Release, "FTC Announces Appointment of Jay L. Himes as New Administrative Law Judge" (Mar. 12, 2024), https://www.ftc.gov/news-events/news/press-releases/2024/03/ftc-announces-appointment-jay-l-himes-new-administrative-law-judge.

# CONCLUSION

For these reasons, this Court should vacate the Commission's Order without

remand.

Respectfully submitted,

/s/ Michael Pepson
Michael Pepson
AMERICANS FOR PROSPERITY FOUNDATION
4201 Wilson Blvd., Ste. 1000
Arlington, VA 22203
571.329.4529
mpepson@afphq.org

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of FRAP 29(a)(5) and FRAP 32(a)(7)(B) because it contains 5,854 words. This brief also complies with the typeface and type-style requirements of FRAP 32(a)(5)-(6) because it was prepared using Microsoft Word 2013 in Times New Roman 14-point font.


/s/ Michael Pepson
Michael Pepson

Dated: April 19, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on April 19, 2024, I electronically filed the above Brief of Amicus Curiae Americans for Prosperity Foundation in Support of Petitioners with the Clerk of the Court by using the appellate CM/ECF system. I further certify that service will be accomplished by the appellate CM/ECF system.

/s/ Michael Pepson<br>
Michael Pepson

Dated: April 19, 2024