No. 24-60040

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

INTUIT INC.,
*Petitioner*,

vs.

FEDERAL TRADE COMMISSION,
*Respondent*.

On Petition for Review from the Federal Trade Commission

## BRIEF OF *AMICI CURIAE*
## THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA AND THE NATIONAL FEDERATION OF INDEPENDENT BUSINESS SMALL BUSINESS LEGAL CENTER, INC.
## IN SUPPORT OF PETITIONER AND VACATUR

TARA S. MORRISSEY
JORDAN L. VON BOKERN
KEVIN R. PALMER
U.S. CHAMBER LITIGATION
  CENTER
1615 H Street, NW
Washington, DC 20062

*Counsel for the Chamber of Commerce of the United States of America*

ELIZABETH MILITO
ROB SMITH
NFIB SMALL BUSINESS LEGAL
  CENTER, INC.
555 12th Street, NW
Suite 1001
Washington, DC 20004

*Counsel for the NFIB Small Business Legal Center, Inc.*

April 22, 2024

STEVEN A. ENGEL
  *Attorney of Record*
MICHAEL H. MCGINLEY
JUSTIN W. AIMONETTI
DECHERT LLP
1900 K Street, NW
Washington, DC 20006
(202) 261-3369
steven.engel@dechert.com

BRIAN A. KULP
DECHERT LLP
Cira Centre
2929 Arch St
Philadelphia, PA 19104

*Counsel for* Amici Curiae

**CERTIFICATE OF INTERESTED PERSONS**

<u>No. 24-60040</u>

Intuit Inc.,
*Petitioner*,

vs.

Federal Trade Commission,
*Respondent.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

1. **Intuit Inc.**, Petitioner, represented by:

   **Daniel S. Volchok**
   **David Z. Gringer**
   **Johnathan E. Paikin**
   **Howard M. Shapiro**
   **Derek A. Woodman**
   **WILMER CUTLER PICKERING HALE AND DORR, L.L.P.**

2. **Federal Trade Commission**, Respondent, represented by:

   **Bradley Grossman**
   **Anisha Sasheen Dasgupta**
   **Mariel Goetz**
   **Lois C. Greisman**
   **William Maxson**
   **Roberto Anguizola**
   **Rebecca Plett**
   **James Evans**
   **Sara Tonnesen**
   **FEDERAL TRADE COMMISSION**

3. **The Chamber of Commerce of the United States of America**, *Amicus Curiae*, represented by:

> **Steven A. Engel**
> **Michael H. McGinley**
> **Justin W. Aimonetti**
> **Brian A. Kulp**
> **DECHERT LLP**
>
> **Tara S. Morrissey**
> **Jordan L. Von Bokern**
> **Kevin R. Palmer**
> **U.S. CHAMBER LITIGATION CENTER**

The Chamber of Commerce of the United States of America ("Chamber") is a nonprofit, tax-exempt organization incorporated in the District of Columbia. The Chamber has no parent corporation, and no publicly held company has 10% or greater ownership in the Chamber.

4. **The National Federation of Independent Business Small Business Legal Center, Inc.**, *Amicus Curiae*, represented by:

> **Steven A. Engel**
> **Michael H. McGinley**
> **Justin W. Aimonetti**
> **Brian A. Kulp**
> **DECHERT LLP**
>
> **Elizabeth Milito**
> **Rob Smith**
> **NFIB SMALL BUSINESS LEGAL CENTER**

The NFIB Small Business Legal Center ("NFIB Legal Center") is a 501(c)(3) public interest law firm incorporated in Tennessee. The NFIB Legal Center has no

parent corporation, and no publicly held company has 10% or greater ownership in

the NFIB Legal Center.


Dated: April 22, 2024

/s/ Steven A. Engel

Steven A. Engel
DECHERT LLP
1900 K Street, NW
Washington, DC 20006
(202) 261-3369
steven.engel@dechert.com

*Attorney of record for* Amici Curiae

# TABLE OF CONTENTS

**Page**

INTEREST OF *AMICI CURIAE* ...........................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ......................................3

ARGUMENT ........................................................................................................4

I.   The Multi-Layer Tenure Protections for FTC ALJs are
     Unconstitutional..........................................................................................4

     A.   FTC ALJs are Inferior Officers who Exercise Significant
          Executive Power...............................................................................6

     B.   FTC ALJs are Triply Insulated from the President's Removal
          Authority. .........................................................................................8

     C.   The FTC's Counterarguments are Unavailing. ................................11

II.  The Unconstitutional Tenure Protections for ALJs Create a Structural
     Defect in FTC Adjudications.....................................................................13

     A.   Structural Errors Require Automatic Vacatur..................................13

     B.   The Unconstitutional Removal Protections for ALJs Infect the
          Framework of the Adjudication and Thus Create Structural
          Error.................................................................................................14

     C.   The FTC Misconstrued Precedent in Requiring Intuit to Prove
          that it was Prejudiced by a Structural Error. ..................................18

CONCLUSION ...................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arizona v. Fulminante*,
499 U.S. 279 (1991)............................................................................4

*Bandimere v. U.S. Sec. & Exch. Comm'n*,
844 F.3d 1168 (10th Cir. 2016) .........................................................15

*Bond v. United States*,
564 U.S. 211 (2011)..........................................................................17

*Bowsher v. Synar*,
478 U.S. 714 (1986)..........................................................................15

*Burgess v. FDIC*,
871 F.3d 297 (5th Cir. 2017) ...............................................6, 7, 8, 21

*Chapman v. California*,
386 U.S. 18 (1967)............................................................................15

*City of Arlington v. FCC*,
569 U.S. 290 (2013)..........................................................................12

*City of San Antonio v. Hotels.com, L.P.*,
959 F.3d 159 (5th Cir. 2020) .............................................................13

*Cochran v. U.S. Sec. & Exch. Comm'n*,
20 F.4th 194 (5th Cir. 2021) .............................................................16

*Collins v. Yellen*,
141 S. Ct. 1761 (2021)...................................................................18, 19

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
51 F.4th 616 (5th Cir. 2022) .........................................................18, 19

*Exxon Corp. v. Mobil Oil Corp.*,
665 F.2d 1274 (D.C. Cir. 1981)...........................................................8

ii

*Fed. Elec. Comm'n v. NRA Political Victory Fund*,
  6 F.3d 821 (D.C. Cir. 1993) ..........................................................15, 16

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010) ...................................................................*passim*

*Freytag v. Commissioner*,
  501 U.S. 868 (1991) .........................................................................6

*Gideon v. Wainwright*,
  372 U.S. 335 (1963) .......................................................................15

*Humphrey's Executor v. United States*,
  295 U.S. 602 (1935) ..........................................................................6

*In re Intuit Inc.*,
  FTC No. 9408 (Sept. 6, 2023), https://bit.ly/3Q7uznq ......................21

*Jarkesy v. SEC*,
  34 F.4th 446 (5th Cir. 2022) ......................................................*passim*

*Landry v. FDIC*,
  204 F.3d 1125 (D.C. Cir. 2000) ......................................................15

*Lucia v. SEC*,
  585 U.S. 237 (2018).....................................................................*passim*

*McCoy v. Louisiana*,
  584 U.S. 414 (2018)..........................................................13, 14, 18

*Morrison v. Olson*,
  487 U.S. 654 (1988) ..........................................................................6

*Myers v. United States*,
  272 U.S. 52 (1926)............................................................................5

*Neder v. United States*,
  527 U.S. 1 (1999).............................................................4, 14, 16

*Ryder v. United States*,
  515 U.S. 177 (1995).......................................................................17

*Seila Law LLC v. CFPB*,
140 S. Ct. 2183 (2020) ..............................................................*passim*

*Shinseki v. Sanders*,
556 U.S. 396 (2009) ...................................................................14

*Sullivan v. Louisiana*,
508 U.S. 275 (1993) ...................................................................16

*In re Trans Union Corp.*,
129 F.T.C. 471 (2000) .................................................................8

*Tumey v. Ohio*,
273 U.S. 510 (1927) ...................................................................15

*United States v. Arthrex, Inc.*,
594 U.S. 1 (2021) ......................................................................12

*United States v. Gonzalez-Lopez*,
548 U.S. 140 (2006) ..............................................................14, 16

*United States v. Jones*,
935 F.3d 266 (5th Cir. 2019) .......................................................13

*Vasquez v. Hillary*,
474 U.S. 254 (1986) ........................................................18, 20, 21

*Ward v. Vill. of Monroeville*,
409 U.S. 57 (1972) .....................................................................20

*Weaver v. Massachusetts*,
582 U.S. 286 (2017) ...................................................13, 14, 17, 18

*Williams v. Pennsylvania*,
579 U.S. 1 (2016) ..................................................................15, 20

**Constitutional Provisions**

U.S. Const. art. II, § 1, cl. 1 ................................................................3, 4

U.S. Const. art. II, § 2, cl. 2 ..................................................................6

U.S. Const. art. II, § 3 ........................................................................3, 5

**Statutes**

5 U.S.C. § 556(c) ..............................................................................7

5 U.S.C. § 557(b) ..............................................................................7

5 U.S.C. § 706 .................................................................................14

5 U.S.C. § 1202(d) ............................................................................9

5 U.S.C. § 7521(a) ........................................................................9, 10

15 U.S.C. § 41 .................................................................................10

**Regulations**

16 C.F.R. § 3.38(b) (2015) ................................................................7

16 C.F.R. § 3.42(c) (2015) .............................................................6, 7

17 C.F.R. § 201.360(d) ....................................................................12

**Other Authorities**

1 *Annals of Cong.* (Joseph Gales ed., 1834) .....................................5

Dep't of Justice, *Attorney General's Manual on the Administrative Procedure Act* (1947).......................................................................15

The Federalist No. 70 (Alexander Hamilton) (Clinton Rossiter ed., 1961) ............................................................................................11

Maureen K. Ohlhausen, *Administrative Litigation at the FTC: Effective Tool for Developing the Law or Rubber Stamp?*, 12 J. Competition L. & Econ. 623 (2016)....................................................8

Rules of Practice, 88 Fed. Reg. 42872 (July 5, 2023) ..........................7

# INTEREST OF *AMICI CURIAE*[1]

The Chamber of Commerce of the United States of America ("Chamber") is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than 3 million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the Nation's business community.

The National Federation of Independent Business Small Business Legal Center, Inc. ("NFIB Legal Center") is a nonprofit, public interest law firm established to provide legal resources and be the voice for small businesses in the Nation's courts through representation on issues of public interest affecting small businesses. It is an affiliate of the National Federation of Independent Business, Inc. ("NFIB"), which is the Nation's leading small business association. NFIB's mission is to promote and protect the right of its members to own, operate, and grow their

---

[1] No counsel for any party authored this brief in whole or in part, and no entity or person, aside from *amici curiae*, their members, or their counsel, contributed money intended to fund the preparation or submission of this brief. Counsel for all parties have consented to the filing of this brief.

businesses.  To fulfill its role as the voice for small business, NFIB Legal Center frequently files *amicus curiae* briefs in cases that will impact small businesses.

Businesses, and corporate officers and directors, are frequent respondents in administrative enforcement actions brought by the Federal Trade Commission ("FTC") and by other federal agencies.  As advocates for businesses large and small, the Chamber and NFIB Legal Center have a significant interest in ensuring that those proceedings adhere to the Constitution's structural limitations.  Specifically, they submit this brief to ensure that the agency officials who preside over such proceedings remain accountable to the President and the public whom he serves under Article II of the Constitution.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The structure of the FTC's adjudicative process violates the Constitution. Under Article II, "the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2191 (2020) (quoting U.S. Const. art. II, § 1, cl. 1, and U.S. Const. art. II, § 3). That power includes the general "prerogative to remove executive officials" who wield the President's authority. *Id.* at 2197. And there is no question that the FTC's ALJs qualify as "Officers of the United States." *Lucia v. SEC*, 585 U.S. 237, 251 (2018).

Yet Congress has insulated those Officers from presidential supervision by at least three layers of tenure protection. That statutory scheme unconstitutionally "subverts the President's ability to ensure that the laws are faithfully executed—as well as the public's ability to pass judgment on his efforts." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 498 (2010). It is therefore "incompatible with the Constitution's separation of powers" and cannot stand. *Id.*

This Court's precedent confirms as much. In *Jarkesy v. SEC*, this Court held that Congress cannot afford "two layers of for-cause protection" to the SEC's ALJs. 34 F.4th 446, 465 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023). The FTC offers no basis to distinguish *Jarkesy*. Nor could it. If anything, the FTC's statutory scheme layers still more insulation on to that unconstitutional structure.

Perhaps recognizing that it cannot escape that binding precedent, the FTC faulted Intuit for not articulating a specific harm caused by the ALJ removal restrictions. But that was not a valid basis for denying relief either. The Constitution presumes that trials are to be conducted before Article III judges, and if an executive agency chooses to proceed in another manner, then it has an obligation to ensure that the structure of such an adjudication complies with Article II. Failure to do so is no mere "trial error . . . subject to harmless-error analysis." *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991). Rather, the tenure protections afforded to FTC ALJs constitute a "structural defect," because they "affect[] the framework within which the [adjudication] proceeds." *Id.* at 310. The presence of such a structural error "require[s] automatic reversal" and a new trial, "without regard to [the error's] effect on the outcome" of the proceedings before the FTC. *Neder v. United States*, 527 U.S. 1, 7 (1999).

Because Intuit has the right to receive an adjudication before a decisionmaker subject to constitutional limitations, the Order should be vacated.

## ARGUMENT

### I. The Multi-Layer Tenure Protections for FTC ALJs are Unconstitutional.

Article II provides that "[t]he executive Power shall be vested in a President." U.S. Const. art. II, § 1, cl. 1. "The entire 'executive Power' belongs to the President alone." *Seila Law*, 140 S. Ct. at 2197. But because the President "alone and

unaided" cannot perform all the Nation's executive functions, he necessarily must rely on "the assistance of subordinates." *Myers v. United States*, 272 U.S. 52, 117 (1926).

At the same time, "[t]hese lesser officers must remain accountable to the President, whose authority they wield." *Seila Law*, 140 S. Ct. at 2197. After all, it is the President's solemn duty to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. And because "[t]he buck stops with the President," he "must have some 'power of removing those for whom he can not continue to be responsible.'" *Free Enter. Fund*, 561 U.S. at 493 (quoting *Myers*, 272 U.S. at 117). To hold otherwise "would make it impossible for the President" to fulfill his constitutional prerogative, and to "keep [his] officers accountable" to the law and the people whom he serves. *Seila Law*, 140 S. Ct. at 2198 (citations omitted); *see* 1 *Annals of Cong.* 518 (1789) (Joseph Gales ed., 1834) (James Madison) (explaining that the President's removal power is necessary to preserve "the chain of dependence" and ensure that "the lowest officers, the middle grade, and the highest, will depend, as they ought, on the President, and the President on the community").

That said, "not all removal restrictions are constitutionally problematic" under existing caselaw. *Jarkesy*, 34 F.4th at 463. The Supreme Court has carved out "two exceptions to the President's unrestricted removal power"—"one for multimember expert agencies that do not wield substantial executive power, and one for inferior

officers with limited duties and no policymaking or administrative authority." *Seila Law*, 140 S. Ct. at 2198–2200; *see Morrison v. Olson*, 487 U.S. 654, 691 (1988); *Humphrey's Executor v. United States*, 295 U.S. 602, 628–29 (1935).

But this case involves neither exception. The FTC's ALJs are "Officers of the United States" who wield substantial executive power. U.S. Const. art. II, § 2, cl. 2. Yet they are, as explained below, triply insulated from the President's removal authority. That multi-layer protection means that "[t]he President is stripped of the power" that the Supreme Court's "precedents have preserved, and his ability to execute the laws—by holding his subordinates accountable for their conduct—is impaired." *Free Enter. Fund*, 561 U.S. at 496. That violates Article II.

## A. FTC ALJs are Inferior Officers who Exercise Significant Executive Power.

FTC ALJs qualify as "inferior Officers." *See Lucia*, 585 U.S. at 247–51 (SEC ALJs); *Burgess v. FDIC*, 871 F.3d 297, 303 (5th Cir. 2017) (FDIC ALJs). Their positions are "'established by Law,'" and they "'carry out important functions' over which they 'exercise significant discretion.'" *Burgess*, 871 F.3d at 302 (cleaned up) (quoting *Freytag v. Commissioner*, 501 U.S. 868, 881–82 (1991)). In fact, they possess "all powers necessary" to conduct the FTC's enforcement proceedings, 16

C.F.R. § 3.42(c) (2015), where the rights and interests of companies and individuals hang in the balance.[2]

To that end, FTC ALJs wield their "broad authority to preside over agency adjudications," *Burgess*, 871 F.3d at 302, while armed with "nearly all the tools of federal trial judges," *Lucia*, 585 U.S. at 248. For instance, they may "receive evidence" and "rule upon offers of proof." 16 C.F.R. § 3.42(c)(5). They are empowered to "issue subpoenas," "administer oaths and affirmations," "take depositions" or "cause [them] to be taken," impose sanctions on parties, "compel admissions," and "regulate the course of the hearings." *Id.* §§ 3.38(b), 3.42(c)(1)–(4), (6); *see* 5 U.S.C. § 556(c). They can also "consider and rule upon . . . all procedural and other motions appropriate in an adjudicative proceeding" and issue decisions for the FTC. 16 C.F.R. § 3.42(c)(8)–(9); *see* 5 U.S.C. § 557(b).

In these ways, FTC ALJs exercise significant authority to "shape the course and scope" of the adversarial proceedings before them. *Burgess*, 871 F.3d at 303. They possess the "power to control and take all necessary action in the disposition

---

[2] The FTC's rules of practice were recently amended in the summer of 2023. *See* Rules of Practice, 88 Fed. Reg. 42872 (July 5, 2023). Those amendments do not fix the constitutional concern, but in any event, "[t]he Complaint in this case was issued prior to those changes, so the pre-amendment rules govern this matter." ECF No. 34-3 (hereafter, "FTC Op.") at 36 n.16 (citing 88 Fed. Reg. at 42873–74). All citations to the rules of practice are thus to the version in effect prior to the 2023 amendments.

of agency proceedings." *Exxon Corp. v. Mobil Oil Corp.*, 665 F.2d 1274, 1279 (D.C. Cir. 1981) (per curiam). And the prospect of review by the FTC's Commissioners does little to diminish that authority. Many parties bow out and settle before they make their way past the ALJ and to the full Commission. *See* Maureen K. Ohlhausen, *Administrative Litigation at the FTC: Effective Tool for Developing the Law or Rubber Stamp?*, 12 J. Competition L. & Econ. 623, 658 (2016). And even in those cases that proceed, the ALJ's influence lingers. That is because the ALJ has already "critically shape[d] the administrative record" by the time a case reaches the Commission, and the Commission affords a measure of "deference to its ALJs, even if not by regulation." *Lucia*, 585 U.S. at 248, 250; *see, e.g.*, *In re Trans Union Corp.*, 129 F.T.C. 471, 482 (2000) (explaining that the Commission "give[s] some deference to the ALJ's credibility determinations").

All this goes to show that FTC ALJs, like other ALJs, are "Officers of the United States." *See Lucia*, 585 U.S. at 251; *Burgess*, 871 F.3d at 303. They are therefore "sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Jarkesy*, 34 F.4th at 464.

### B. FTC ALJs are Triply Insulated from the President's Removal Authority.

Despite the substantial executive power entrusted to FTC ALJs, they enjoy a constitutionally intolerable level of protection from the President's oversight.

Both this Court and the Supreme Court have held that Congress cannot "commit[] substantial executive authority to officers" who are shielded by even "two layers of for-cause removal" protection. *Free Enter. Fund*, 561 U.S. at 505; *see Jarkesy*, 34 F.4th at 463–64. Such multi-level insulation "not only protects [the Officer] from removal except for good cause, but withdraws from the President any decision on whether that good cause exists" in the first place. *Free Enter. Fund*, 561 U.S. at 495. The decision is instead vested in intermediaries not "subject to the President's direct control." *Id.* And thus, "the President is no longer the judge of the [Officer's] conduct." *Id.* at 496. The result is that the President "can neither ensure that the laws are faithfully executed, nor be held responsible for [the Officer's] breach of faith." *Id.*

The statutory scheme here is akin to those repudiated in *Free Enterprise Fund* and *Jarkesy*. As in those cases, at least "two layers of insulation impede[] the President's power to remove [FTC] ALJs based on their exercise of the discretion granted to them." *Jarkesy*, 34 F.4th at 465. First, FTC ALJs may be removed "only for good cause established and determined by the Merit Systems Protection Board [MSPB]." 5 U.S.C. § 7521(a). And second, the members of that Board are themselves removable "by the President only for inefficiency, neglect of duty, or malfeasance in office." *Id.* § 1202(d). Such "dual for-cause limitations . . . contravene the Constitution's separation of powers." *Free Enter.*

*Fund*, 561 U.S. at 492.  And those provisions alone render the statutory scheme unconstitutional.  *See id.* at 495–98; *Jarkesy*, 34 F.4th at 465.

But the problems do not stop there since Congress has provided yet another layer of insulation to FTC ALJs.  Namely, it has limited the President's ability to remove the FTC Commissioners except "for inefficiency, neglect of duty, or malfeasance in office."  15 U.S.C. § 41.  And those Commissioners are the ones who are ultimately responsible for initiating the MSPB action that may lead to the ALJ's removal.  *See* 5 U.S.C. § 7521(a) (providing that the decision to seek removal before the MSPB is committed to "the agency in which the administrative law judge is employed").

Add it all up, and FTC ALJs are even less accountable than the Public Company Accounting Oversight Board in *Free Enterprise Fund*, or the SEC's ALJs in *Jarkesy*.  The FTC ALJs themselves cannot be removed—by anybody—except for cause.  Strike one.  Those who decide whether cause exists (the MSPB) are shielded from the President by their own for-cause protections.  Strike two.  And those who must decide whether to petition the MSPB for a determination of cause

(the FTC Commissioners) are likewise insulated from presidential supervision. Strike three.[3]

This sort of "diffusion of accountability" is precisely what the Framers sought to prevent when they concentrated the executive Power in a single President of the United States. *Free Enter. Fund*, 561 U.S. at 497; *see Seila Law*, 140 S. Ct. at 2203. The public cannot "determine on whom the blame or the punishment . . . ought really to fall" for matters involving an FTC ALJ. The Federalist No. 70, at 426 (Alexander Hamilton) (Clinton Rossiter ed., 1961). For "safely encased within a Matryoshka doll of tenure protections," those ALJs stand "immune from Presidential oversight, even as they exercise[] power in the people's name." *Free Enter. Fund*, 561 U.S. at 497. The law is settled that "Congress cannot limit the President's authority in this way." *Id.* at 514; *see Jarkesy*, 34 F.4th at 465.

### C. The FTC's Counterarguments are Unavailing.

The FTC offers a trio of counterarguments to save this structure. None avoids the constitutional violation. *First*, the FTC contends that its ALJs have "no enforcement or policy role" and instead act in an "adjudicatory" capacity. FTC Op. at 78. But the SEC made that same argument with respect to its ALJs in *Jarkesy*,

---

[3] The baseball metaphor is admittedly imperfect, because *Free Enterprise Fund* and *Jarkesy* already held that in this game, the umpire calls an out after two strikes, rather than three.

and this Court soundly rejected it.  *See* 34 F.4th at 464.  The activities of ALJs may take a "'judicial form[], but they are exercises of—indeed, under our constitutional structure they *must be* exercises of—the executive Power,' for which the President is ultimately responsible."  *United States v. Arthrex, Inc.*, 594 U.S. 1, 17 (2021) (some quotation marks omitted) (quoting *City of Arlington v. FCC*, 569 U.S. 290, 305 n.4 (2013)).  "So even if ALJs' functions are more adjudicative than PCAOB members, the fact remains that [three] layers of insulation impede[] the President's power to remove ALJs based on their exercise of the discretion granted to them."  *Jarkesy*, 34 F.4th at 465.  Article II prohibits such a structure.

*Second*, the FTC emphasizes that its ALJs' decisions "do not constitute agency action unless the Commission ratifies them, either tacitly or expressly."  FTC Op. at 78.  But that is true for the decisions of the SEC's ALJs as well.  *See Lucia*, 585 U.S. at 242 (citing 17 C.F.R. § 201.360(d)(1)).  And it made no difference to this Court in *Jarkesy*.  While the dissent stressed that an ALJ's decision is "essentially a recommendation," 34 F.4th at 478 (Davis, J., dissenting), that argument did not persuade the majority, *see id.* at 464 (majority op.).  The majority's decision controls.

*Third*, the FTC asserts that *Jarkesy* "gives insufficient weight" to dicta from *Free Enterprise Fund*.  FTC Op. at 78.  But as *Jarkesy* explained, that dicta "merely identified" that the Supreme Court was not necessarily "resolv[ing] the issue

presented here." 34 F.4th at 464; *see Free Enter. Fund*, 561 U.S. at 507 n.10 (noting that the Court's holding "d[id] not address . . . administrative law judges"). *Jarkesy* has now resolved that issue, and that binding precedent forecloses the FTC's position. *See, e.g.*, *City of San Antonio v. Hotels.com, L.P.*, 959 F.3d 159, 167 (5th Cir. 2020). The multi-level tenure protections for FTC ALJs are unconstitutional.

## II. The Unconstitutional Tenure Protections for ALJs Create a Structural Defect in FTC Adjudications.

The FTC also erred in requiring Intuit to affirmatively demonstrate "harm it has suffered from the President's inability to remove" the presiding ALJ. FTC Op. at 79. The FTC subjected Intuit to an administrative adjudication before an unaccountable ALJ, and that lack of constitutional accountability creates a structural error that warrants automatic vacatur of the agency's decision.

### A. Structural Errors Require Automatic Vacatur.

Begin with the basics. "Structural error is constitutional error that 'affects the framework within which the trial proceeds, rather than being simply an error in the trial process itself.'" *United States v. Jones*, 935 F.3d 266, 270 (5th Cir. 2019) (cleaned up) (quoting *Weaver v. Massachusetts*, 582 U.S. 286, 295 (2017)). Such errors are not amenable to traditional harmless-error review, and the "required corrective" where one occurs is a new proceeding free from the constitutional infirmity. *McCoy v. Louisiana*, 584 U.S. 414, 428 (2018). In other words, structural

errors "require automatic reversal . . . without regard to their effect on the outcome." *Neder*, 527 U.S. at 7.

A constitutional error "may be ranked structural" for a variety of reasons. *McCoy*, 584 U.S. at 427. For example, the Supreme Court has deemed errors structural "if the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest." *Weaver*, 582 U.S. at 295. "An error might also count as structural when its effects are too hard to measure" or "where the error will inevitably signal fundamental unfairness." *McCoy*, 584 U.S. at 427. "These categories are not rigid" or exclusive. *Weaver*, 582 U.S. at 296. And sometimes "more than one of these rationales may be part of the explanation for why an error is deemed to be structural." *Id.* The "critical" point, however, is that "[a]n error can count as structural even if the error does not lead to fundamental unfairness in every case." *Id.* (citing *United States v. Gonzalez-Lopez*, 548 U.S. 140, 149 n.4 (2006)).

**B.     The Unconstitutional Removal Protections for ALJs Infect the Framework of the Adjudication and Thus Create Structural Error.**

The doctrine of structural error applies equally to agency adjudications. The Administrative Procedure Act directs reviewing courts to take "due account" of the "rule of prejudicial error." 5 U.S.C. § 706. And this language "su[ms] up in succinct fashion the 'harmless error' rule applied by the courts in the review of lower court decisions." *Shinseki v. Sanders*, 556 U.S. 396, 406 (2009) (emphasis omitted)

(quoting Dep't of Justice, *Attorney General's Manual on the Administrative Procedure Act* 110 (1947)).  For nearly a century, courts applying that rule have recognized that a structural error in the "adjudicatory framework" of a proceeding "cannot be deemed harmless."  *Williams v. Pennsylvania*, 579 U.S. 1, 16 (2016) (biased appellate judge on multi-member panel); *see Chapman v. California*, 386 U.S. 18, 23 n.8 (1967) (citing *Gideon v. Wainwright*, 372 U.S. 335 (1963) (right to counsel), and *Tumey v. Ohio*, 273 U.S. 510 (1927) (biased trial judge)).

In the context of agency adjudication, "[i]ssues of separation of powers" are "most fit to the doctrine" of structural error.  *Landry v. FDIC*, 204 F.3d 1125, 1131 (D.C. Cir. 2000); *see Bandimere v. U.S. Sec. & Exch. Comm'n*, 844 F.3d 1168, 1181 & n.31 (10th Cir. 2016).  After all, it is extremely "difficult or impossible for someone subject to a wrongly designed scheme to show that the design—the structure—played a causal role in his loss."  *Landry*, 204 F.3d at 1131.

This case is no exception.  An Officer's "desire to avoid removal" is supposed to generate "subservience" to the President and his obligations under the Take Care Clause.  *See Fed. Elec. Comm'n v. NRA Political Victory Fund*, 6 F.3d 821, 825 (D.C. Cir. 1993) (quoting *Bowsher v. Synar*, 478 U.S. 714, 727 n.5 (1986)).  Indeed, that "structural protection[] against abuse of power [is] critical to preserving liberty." *Free Enter. Fund*, 561 U.S. at 501 (citation omitted).  But the constitutional dynamic breaks down where an executive Officer—like the ALJ here—is effectively shielded

from removal. The official's decisionmaking process will naturally differ from those who recognize their accountability to the President and the people he serves. The official can act as he pleases because he need not answer to anyone. *See Seila Law*, 140 S. Ct. at 2203. In that way, the removal protections predictably "have some impact" on how the FTC's ALJ "decides matters before [him]." *NRA Political Victory Fund*, 6 F.3d at 825. And even though that impact is all but "impossible to measure," *id.*, the unconstitutional dynamic has loomed over every decision that the ALJ has made in this multi-year proceeding, thereby "infect[ing] the entire [adjudication] process," *Neder*, 527 U.S. at 8 (citation omitted).

Intuit need not show more to obtain relief. Intuit has a constitutional right to "an administrative adjudication untainted by [this] separation-of-powers violation[]." *Cochran v. U.S. Sec. & Exch. Comm'n*, 20 F.4th 194, 210 n.16 (5th Cir. 2021) (en banc), *aff'd sub nom.*, *Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023); *see Jarkesy*, 34 F.4th at 465. And "[t]he deprivation of that right, with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as 'structural error.'" *Sullivan v. Louisiana*, 508 U.S. 275, 281–82 (1993). Accordingly, there is no need to engage in "a speculative inquiry into what might have occurred in an alternate universe." *Gonzalez-Lopez*, 548 U.S. at 150. Intuit is at the very least entitled to a new hearing.

Correcting the error here would also "protect[] some other interest" beyond preserving Intuit's liberty, which further confirms that the error qualifies as structural. *Weaver*, 582 U.S. at 295; *see Bond v. United States*, 564 U.S. 211, 223 (2011) (explaining that the separation of powers protects individual liberty). In particular, "[t]he President cannot 'take Care that the Laws be faithfully executed' if he cannot oversee the faithfulness of the officers who execute them." *Free Enter. Fund*, 561 U.S. at 484. And the President and the public have a significant interest in eliminating such constitutional defects. Courts should craft remedies that "[i]ncentiv[ize]" litigants to raise separation-of-powers challenges which restore the structural safeguards provided by Article II. *Lucia*, 585 U.S. at 251 & n.5 (quoting *Ryder v. United States*, 515 U.S. 177, 183 (1995)) (setting aside agency action based on improperly appointed ALJ whose decision was reviewed *de novo* by the SEC, without inquiring into prejudice). But forcing litigants to engage in the futile task of proving harm from the removal protections afforded to Officers who preside over their adjudications does just the opposite. It would deter them from bringing such challenges and thus perpetuate the unconstitutional scheme—to the detriment of the individual litigant, the President, and the public alike.

In short, when a constitutional error infects the decisionmaking processes of an ALJ "charged with bringing a defendant to judgment," as it does here, "a reviewing court can neither indulge a presumption of regularity nor evaluate the

resulting harm." *Vasquez v. Hillary*, 474 U.S. 254, 263 (1986). The ALJ's lack of constitutional accountability "affects the framework within which the [adjudication] proceeds" and thereby "defies analysis by harmless error standards." *Weaver*, 582 U.S. at 295 (alterations adopted; citations omitted). Intuit "must therefore be accorded a new" adjudication before the agency "without any need first to show prejudice." *McCoy*, 584 U.S. at 428. The removal protections produced a structural error in this proceeding.

### C. The FTC Misconstrued Precedent in Requiring Intuit to Prove that it was Prejudiced by a Structural Error.

In rejecting Intuit's removal claim, the FTC relied on *Collins v. Yellen*, 141 S. Ct. 1761 (2021), and *Community Financial Services Association of America, Limited v. CFPB*, 51 F.4th 616 (5th Cir. 2022) ("*CFSA*"), *cert. granted*, 143 S. Ct. 978 (2023). *See* FTC Op. at 78–79. But those cases left the door open to a finding of harmlessness only because neither case dealt with an agency adjudication that triggered the doctrine of structural error.

*Collins* involved a collateral challenge to a pair of hundred-billion-dollar agreements negotiated between the Federal Housing Finance Agency ("FHFA") and the Department of Treasury in the wake of the 2008 financial crisis. *See* 141 S. Ct. at 1770, 1772–73. Years after the third amendment to those agreements took effect, a group of Fannie Mae and Freddie Mac shareholders sued the FHFA, arguing that the removal protections afforded to the agency's director were unconstitutional. *Id.*

at 1775. The shareholders asked the Court to "completely undo[]" the third amendment and order a "return to Fannie and Freddie of all dividend payments made pursuant to it," which totaled well over $100 billion. *Id.* at 1774, 1787 (alterations adopted). In that unusual context, where the plaintiffs sought to vindicate "compensable" harm from an otherwise valid agency action, the Court remanded for the lower courts to "resolve[] in the first instance" whether the "unconstitutional removal restriction inflicted harm." *Id.* at 1789; *see also id.* at 1799 (Gorsuch, J., concurring in part) (observing that "the Court's opinion today is a product of its unique context" and did not "undo[] our prior guidance authorizing more meaningful relief in other situations"). The Court said nothing to displace—or even cast doubt on—the doctrine of structural error that governs party-specific adjudications.

*CFSA* similarly involved a challenge to an agency rule, not an adjudication. The plaintiffs there sought "an 'order and judgment holding unlawful, enjoining, and setting aside' the [CFPB's] Payday Lending Rule," in part because it "was initially promulgated by a director who was unconstitutionally shielded from removal." *CFSA*, 51 F.4th at 625, 631. In that *rulemaking* context, the Court demanded a particularized showing that the removal restriction harmed the plaintiffs. *See id.* at 632–33. But this Court had no occasion to address the possibility of structural error in the *adjudicatory* context. And, as already explained, it is well-established that

errors in the "adjudicatory framework" of a proceeding "cannot be deemed harmless." *Williams*, 579 U.S. at 16.

Nor does it make any difference that the FTC Commissioners reviewed the unconstitutionally insulated ALJ's decision. That does not cure the structural error. In *Vasquez*, for example, the government argued that racial "discrimination in the grand jury amounted to harmless error" because the evidence was "overwhelming," and the respondent was "convict[ed] after a fair trial." 474 U.S. at 260. In the government's view, that subsequent trial proceeding "purged any taint attributable to the indictment process." *Id.* But the Supreme Court disagreed. As it explained, "even if a grand jury's determination of probable cause is confirmed in hindsight by a conviction on the indicted offense, that confirmation in no way suggests that the discrimination did not impermissibly *infect the framing* of the indictment and, consequently, the nature or very existence of the proceedings to come." *Id.* at 263 (emphasis added). As a result, the error in the grand-jury proceeding was "not amenable to harmless-error review." *Id.* at 264; *see also Ward v. Vill. of Monroeville*, 409 U.S. 57, 61 (1972) (rejecting argument that adjudicator bias in mayor's traffic court could "be corrected on appeal and trial *de novo* in the County Court of Common Pleas").

The same logic applies with even more force here. By the time Intuit's case had reached the Commission, the unconstitutionally insulated ALJ had already

presided over and significantly "shape[d] the course and scope" of the enforcement proceeding. *Burgess*, 871 F.3d at 303; *see Lucia*, 585 U.S. at 248. The ALJ oversaw discovery matters, resolved various pre-trial motions, held a "multi-week trial," "received live or deposition testimony from 41 fact witnesses and six expert witnesses," "admitted over 2,300 exhibits into evidence," and issued a 242-page "Initial Decision" on the agency's behalf, much of which the Commission adopted. FTC Op. at 2 & n.2; *see* Initial Decision, *In re Intuit Inc.*, FTC No. 9408 (Sept. 6, 2023), https://bit.ly/3Q7uznq. There is no question that the ALJ shaped the record that came before the Commission, and in these circumstances, one "simply cannot know" how the unconstitutional removal provisions impacted the outcome of the adjudication. *Vasquez*, 474 U.S. at 264. That inherent uncertainty requires "adherence to a rule of mandatory [vacatur]." *Id.*

## CONCLUSION

The Chamber and the NFIB Legal Center respectfully request that this Court grant Petitioner relief that, at a minimum, vacates the FTC's Order and remands to the agency for an adjudication that complies with the structure of Article II of the Constitution.

Respectfully Submitted,

/s/ Steven A. Engel

TARA S. MORRISSEY
JORDAN L. VON BOKERN
KEVIN R. PALMER
U.S. CHAMBER LITIGATION
   CENTER
1615 H Street, NW
Washington, DC 20062

*Counsel for the Chamber of Commerce of the United States of America*

ELIZABETH MILITO
ROB SMITH
NFIB SMALL BUSINESS LEGAL
   CENTER, INC.
555 12th Street, NW
Suite 1001
Washington, DC 20004

*Counsel for the NFIB Small Business Legal Center, Inc.*

STEVEN A. ENGEL
   *Attorney of Record*
MICHAEL H. MCGINLEY
JUSTIN W. AIMONETTI
DECHERT LLP
1900 K Street, NW
Washington, DC 20006
(202) 261-3369
steven.engel@dechert.com

BRIAN A. KULP
DECHERT LLP
Cira Centre
2929 Arch St
Philadelphia, PA 19104

*Counsel for* Amici Curiae

**CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2024, I caused the foregoing *amici curiae* brief to be filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit. The Court's CM/ECF system was used to file the brief, and service will therefore be accomplished by the CM/ECF system on all CM/ECF-registered counsel.

Dated: April 22, 2024            */s/ Steven A. Engel*

                                          Steven A. Engel
                                          DECHERT LLP
                                          1900 K Street, NW
                                          Washington, DC 20006
                                          (202) 261-3369
                                          steven.engel@dechert.com

                                          *Attorney of record for* Amici Curiae

**CERTIFICATE OF COMPLIANCE**

This *amici curiae* brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because it contains 4,885 words, excluding those portions of the brief exempted by Fed. R. App. P. 32(f).  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Times New Roman 14-pt font.

Dated: April 22, 2024

*/s/ Steven A. Engel*

Steven A. Engel
DECHERT LLP
1900 K Street, NW
Washington, DC 20006
(202) 261-3369
steven.engel@dechert.com

*Attorney of record for* Amici Curiae