# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

INTUIT INC.,
*Petitioner*,

v.

FEDERAL TRADE COMMISSION,
*Respondent*.

───────────────────────

*On Petition for Review of a Final Order of the Federal Trade Commission Dated January 19, 2024, FTC Docket No. 9408*

───────────────────────

## BRIEF OF THE CATO INSTITUTE AS *AMICUS CURIAE* IN SUPPORT OF THE PETITIONER

───────────────────────

Brent Skorup
    *Counsel of Record*
Anastasia P. Boden
Christopher D. Barnewolt
CATO INSTITUTE
1000 Mass. Ave., N.W.
Washington, DC 20001
(202) 218-4609
bskorup@cato.org

Dated: April 22, 2024

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

CASE NO. 24-60040

*Intuit, Inc. v. Federal Trade Commission*

The undersigned counsel of record certifies that the following listed persons and entities as described in Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Person or Entity | Connection to Case |
|---|---|
| Brent Skorup | Counsel to *Amicus* |
| Anastasia P. Boden | Counsel to *Amicus* |
| Christopher D. Barnewolt | Counsel to *Amicus* |
| Cato Institute | *Amicus curiae* |

*Amicus* Cato Institute is a Kansas nonprofit corporation that has no parent companies, subsidiaries, or affiliates, and does not issue shares to the public.

/s/ Brent Skorup

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ............................................................................i

TABLE OF AUTHORITIES ................................................................ iii

INTEREST OF *AMICUS CURIAE*..........................................................1

INTRODUCTION AND SUMMARY OF THE ARGUMENT ...............................1

ARGUMENT .......................................................................................4

    I.     THE CONSTITUTION BARS THE COMBINATION OF JUDICIAL, LEGISLATIVE, AND EXECUTIVE POWERS THAT THE FTC NOW WIELDS. ....................................................4

    II.    DUE PROCESS REQUIRES A NEUTRAL AND INDEPENDENT DECISIONMAKER, BUT THE FTC'S IN-HOUSE ADJUDICATION PROCESS IS NEITHER. .......................................9

    III.    THE FTC'S UNCONSTRAINED AUTHORITY TO CHOOSE BETWEEN FEDERAL COURT AND AGENCY ADJUDICATION VIOLATES THE NON-DELEGATION DOCTRINE. ......................................................................11

CONCLUSION ...................................................................................14

CERTIFICATE OF COMPLIANCE .....................................................15

CERTIFICATE OF SERVICE .............................................................16

# TABLE OF AUTHORITIES

**Cases**

*Axon Enter., Inc. v. FTC*, 143 S. Ct. 890 (2023) ......................................................8

*Calder v. Bull*, 3 U.S. (3 Dall.) 386 (1798).................................................. 3, 9, 11

*Humphrey's Executor v. United States*, 295 U.S. 602 (1935)..................................7

*Illumina, Inc. v. FTC*, 88 F.4th 1036 (5th Cir. 2023) .............................................10

*In re Polypore Int'l, Inc.*, 2010 WL 3053866 (FTC July 28, 2010) .........................8

*Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022) ........................................... 11, 12, 13

*Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980)........................................................9

*Mistretta v. United States*, 488 U.S. 361 (1989).....................................................12

*N. Tex. Specialty Physicians v. FTC*, 528 F.3d 346 (5th Cir. 2008)........................8

*Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320 (1909) ......................12

*Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020).............7, 8

*Tumey v. Ohio*, 273 U.S. 510 (1927) ................................................................ 9, 10

*Wayman v. Southard*, 23 U.S. 1 (1825) ..................................................................11

*Williams v. Pennsylvania*, 579 U.S. 1 (2016) ........................................................10

**Statutes**

15 U.S.C. § 45(c) .......................................................................................................8

15 U.S.C. § 45(m) ......................................................................................................7

15 U.S.C. § 57a ..........................................................................................................7

Magnuson-Moss Warranty Act of 1975, Pub. L. No. 93-637, 88 Stat. 2183,
  2193 (codified as amended at 15 U.S.C. § 57a) ...................................................7

Magnuson-Moss Warranty Act of 1975, Pub. L. No. 93-637, 88 Stat. 2183,
  2200-01 (codified as amended at 15 U.S.C. § 45(m)) ..........................................7

**Other Authorities**

JAMES MADISON, THE REPORT OF 1800 (Jan. 7, 1800) ........................................ 6, 12

Martin H. Redish & Kristin McCall, *Due Process, Free Expression, and the
  Administrative State*, 94 NOTRE DAME L. REV. 297 (2018)................................11

MONTESQUIEU, THE SPIRIT OF THE LAWS (1748) .......................................................5

RANDY BARNETT, OUR REPUBLICAN CONSTITUTION (2016)......................................2

THE FEDERALIST NO. 47 (James Madison) ..........................................................2, 5

THE FEDERALIST NO. 48 (James Madison) ..........................................................4, 5

THE FEDERALIST NO. 49 (James Madison)................................................................4

THE FEDERALIST NO. 80 (Alexander Hamilton) ......................................................9

THOMAS JEFFERSON, NOTES ON THE STATE OF VIRGINIA (1784) ............................6

WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND (1765)...........4

**Regulations**

16 CFR § 3.43(b) ....................................................................................................8

**Constitutional Provisions**

U.S. CONST. amend. V..............................................................................................9

## INTEREST OF *AMICUS CURIAE*[1]

The Cato Institute is a nonpartisan public policy research foundation founded in 1977 and dedicated to advancing the principles of individual liberty, free markets, and limited government. Toward that end, Cato's Robert A. Levy Center for Constitutional Studies publishes books and studies about legal issues, conducts conferences, produces the annual *Cato Supreme Court Review*, and files amicus briefs. Cato Institute scholars have also published extensive research on regulation and constitutional law. The Federal Trade Commission (FTC) in this case used its unilateral authority to bring enforcement actions before its own administrative law judges and its commissioners, rather than an Article III court. This case interests Cato because the FTC's structure and practices raise issues regarding the separation of powers and the protection of individual liberty and property.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Every day, Americans find themselves and their companies shunted into administrative proceedings at agencies like the FTC. In these proceedings, individuals and regulated parties litigate, often for years, within an agency that simultaneously writes the applicable regulations, enforces those rules before its own hearing officers or courts, hears appeals, and adjudicates initial complaints. For

---

[1] Fed. R. App. P. 29 Statement: No counsel for either party authored this brief in any part. No person or entity other than *amicus* made a monetary contribution to its preparation or submission. All parties have consented to the filing of this brief.

many Americans, it must be jarring to find themselves subject to severe financial, reputational, and professional penalties in adjudications very different from a courtroom. The Federal Rules of Evidence do not apply, juries are nonexistent, and the hearing officers are overseen, and at risk of removal, by the head (or heads) of the agency. Quietly and routinely, people lose their businesses and their livelihoods. Surely many accept an early settlement offer or lighter penalties rather than attempt the risky and expensive process to vindicate their rights in federal court.

The consolidation and exercise of power at many federal agencies is alarming. The U.S. Founders viewed the combination of legislative, executive, and judicial powers in a single person or body as the essence of tyranny. The U.S. Constitution, therefore, was written to maintain separation of powers between these branches of government. *See*, *e.g.*, THE FEDERALIST NO. 47 (James Madison). The Framers of the Constitution shared that understanding and incorporated those principles into the highest law of the land—"the law that governs those who govern us." RANDY BARNETT, OUR REPUBLICAN CONSTITUTION 23 (2016). Separation of powers is therefore not an abstraction or a mere "technicality." It is a vital component of the Constitution that acts to restrain the government and to protect the rights of the people.

Unfortunately, the FTC, like other agencies, has tested the bounds of these constitutional principles. Instead of limiting its activities to the execution of laws

passed by Congress, as is appropriate for an agency under the executive branch, the FTC also exercises powers that ought to be left to the judiciary and the legislature. And by both prosecuting and adjudicating cases, the FTC has become judge, jury, and executioner—the very example of unjust government that our Founders rebelled against, and that the Framers wrote the Constitution to prevent.

The fact that the FTC can bring enforcement actions, and at the same time adjudicate the cases that it brings, is troubling. It seems to fly in the face of the basic principle that a party cannot be a judge in his own suit. "[A] law that makes a man a judge in his own cause . . . is against all reason and justice . . . ." *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 388 (1798). Further, the Supreme Court has been clear that the separation of powers limits the ability of Congress to delegate its legislative powers to administrative agencies. Congress may only delegate if it provides an "intelligible principle" by which the agency may exercise the delegated power. But Congress provided *no* principle, let alone an intelligible one, by which the FTC is to determine which subjects of its enforcement actions are entitled to a trial in an Article III court and which are not.

The Constitution bars the concentration of powers that the FTC possesses and exercised here. This Court should apply Fifth Circuit and Supreme Court precedent and vacate the FTC's order.

**ARGUMENT**

## I. THE CONSTITUTION BARS THE COMBINATION OF JUDICIAL, LEGISLATIVE, AND EXECUTIVE POWERS THAT THE FTC NOW WIELDS.

The separation of powers is "essential to a free government." THE FEDERALIST NO. 48 (James Madison). However, the separation of powers hinders the government from achieving what it sets out to do. It is certainly more efficient to have a government body write, interpret, and enforce their own laws, particularly when that body is not subject to electoral accountability and legislative debate and compromise. But our Constitution was not drafted to maximize government efficiency; it was written to protect and extend Americans' liberty. The Founders of the U.S. created a system of separation of powers to prevent government bodies from accumulating and exercising powers that the FTC now possesses.

The Framers wanted to prevent the abuses they had seen while they were British subjects.[2] James Madison says that they aimed to prevent, namely, "aggrandizement of the legislative, at the expense of the other departments" they had experienced under the British parliament. THE FEDERALIST No. 49 (James Madison). Therefore, there was great consensus among the Framers of the U.S. Constitution on

---

[2] Blackstone, who exerted an immense influence over the Founding generation, stated that "the public liberty . . . cannot subsist long in any state, unless the administration of common justice be in some degree separated both from the legislative and also from the executive power." WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND (1765).

the importance of separating the legislative, executive, and judicial powers of government. *See* THE FEDERALIST NO. 48 (James Madison). This separation of powers, a concept the Framers attributed to the French philosopher Charles Montesquieu, *see* THE FEDERALIST NO. 47 (James Madison), was viewed as essential to liberty. Montesquieu explained in his 1748 work *The Spirit of the Laws*:

> There would be an end of everything, were the same man or the same body, whether of the nobles or of the people, to exercise those three powers, that of enacting laws, that of executing the public resolutions, and of trying the causes of individuals.

MONTESQUIEU, THE SPIRIT OF THE LAWS, bk XI, ch. VI (1748).

> This sentiment was echoed by the Framers. As James Madison said,

> The accumulation of all powers legislative, executive and judiciary in the same hands, whether of one, a few or many, and whether hereditary, self appointed, or elective, may justly be pronounced the very definition of tyranny. Were the federal constitution therefore really chargeable with this accumulation of power or with a mixture of powers having a dangerous tendency to such an accumulation, no further arguments would be necessary to inspire a universal reprobation of the system.

THE FEDERALIST NO. 47 (James Madison).[3] In his *Notes on the State of Virginia*, Thomas Jefferson lamented that his home state of Virginia had not adequately abided

---

[3] Madison noted later how the Alien and Sedition Acts violated the separation of powers:

> According to the particular organization of the constitution, its legislative powers are vested in the Congress; its executive powers in the President, and its judicial powers, in a supreme and inferior tribunals. The union of any two

by these principles. THOMAS JEFFERSON, NOTES ON THE STATE OF VIRGINIA, query 13 (1784). To Jefferson, "little will it avail us that [the government is] chosen by ourselves" if that government did not abide by the separation of powers. Indeed, a government body with merged judicial, legislative, and executive powers, even if elected, would still be "the definition of despotic government." JEFFERSON, *supra*, query 13.

The history of the American Revolution and the ratification of the Constitution makes it clear: The Founders recognized that the mingling of legislative, executive, and judicial power in a single person or body was dangerous to liberty.

Today, however, these careful demarcations and constitutionally-imposed firewalls between these powers of government have eroded. Dozens of "independent" agencies—part lawmaker, part enforcer, part judge—sprouted up in the 20th century. The FTC's (once) novel structure—Commissioners removable by the President only for cause—was sustained by the Supreme Court in *Humphrey's Executor* only because the FTC functioned at the time as a "mere legislative or judicial aid." *See Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183,

---

of these powers, and still more of all three, in any one of these departments . . . must consequently subvert the constitutional organization of them.

JAMES MADISON, THE REPORT OF 1800 (Jan. 7, 1800), available at https://tinyurl.com/wnc455jh.

2200 (2020); *Humphrey's Executor v. United States*, 295 U.S. 602, 628 (1935) ("The Federal Trade Commission is an administrative body created by Congress . . . to perform . . . specified duties as a legislative or as a judicial aid."). In 1935, the agency had no executive powers. *Humphrey's Executor*, 295 U.S. at 628 (asserting the agency "cannot in any proper sense be characterized as an arm or an eye of the executive").

However, due to the ambitions of regulators and the encouragement from Congress, the FTC of 2024 no longer resembles the FTC of 1935. "Instead of making reports and recommendations to Congress, as the 1935 FTC did," *Seila Law LLC*, 140 S. Ct. at 2200, the agency can write laws, seek daunting penalties, and adjudicate claims.

Notably, the agency has acquired, since *Humphrey's Executor*, legislative power, like its authority to promulgate binding rules, *see* 15 U.S.C. § 57a, a power Congress granted in 1975.[4] The FTC was also empowered, in the same 1975 law,[5] to bring actions in federal court to enforce violations of Section 5 of the FTC Act and to seek civil penalties. 15 U.S.C. § 45(m). The "power to seek daunting monetary penalties against private parties on behalf of the United States in federal court," the

---

[4] *See* section 202(a) of the Magnuson-Moss Warranty Act of 1975, Pub. L. No. 93-637, 88 Stat. 2183, 2193 (codified as amended at 15 U.S.C. § 57a).

[5] *See* section 205(a) of the Magnuson-Moss Warranty Act of 1975, Pub. L. No. 93-637, 88 Stat. 2183, 2200-01 (codified as amended at 15 U.S.C. § 45(m)).

Supreme Court has said, is "a quintessentially executive power not considered in *Humphrey's Executor*." *Seila Law LLC*, 140 S. Ct. at 2200 (2020).

The FTC also functions, in administrative hearings, as a court of first impression and appellate quasi-court. When hearing appeals from FTC adjudications, appellate courts are required to treat FTC findings as conclusive, much like a trial court decision. 15 U.S.C. § 45(c). This Court has said it is bound by FTC factual determinations "even if suggested alternative conclusions may be equally or even more reasonable and persuasive." *N. Tex. Specialty Physicians v. FTC*, 528 F.3d 346, 354 (5th Cir. 2008) (internal quotation marks and citation omitted). This mandated respect for FTC findings is especially confounding because the Commission "employ[s] relaxed rules of procedure and evidence—rules they make for themselves." *Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 917 (2023) (Gorsuch, J., concurring). The Federal Rules of Evidence do not apply, so respondents in FTC proceedings must contend with FTC's liberal allowance for hearsay and other dubious evidence. *See* 16 CFR § 3.43(b); *In re Polypore Int'l, Inc.*, 2010 WL 3053866, at *2 (FTC July 28, 2010) (admitting four affidavits into evidence because "it is long settled that hearsay evidence is not to be out of hand rejected or excluded by administrative tribunals").

*Amicus* hopes this Court will assess the FTC's powers presently and distinguish them from those it had in prior eras.

## II. DUE PROCESS REQUIRES A NEUTRAL AND INDEPENDENT DECISIONMAKER, BUT THE FTC'S IN-HOUSE ADJUDICATION PROCESS IS NEITHER.

Americans are entitled to "due process" before they are deprived of their "life, liberty, or property." U.S. CONST. amend. V. Relevant here, "[t]he Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). This is so in order that "no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him." *Id*. Alexander Hamilton stated in Federalist 80 that "[n]o man ought certainly to be a judge in his own cause, or in any cause in respect to which he has the least interest or bias." THE FEDERALIST NO. 80 (Alexander Hamilton). In the words of Samuel Chase, one of the first justices of the Supreme Court: "[a]n act of the legislature (for I cannot call it a law) contrary to the great first principles of the social compact cannot be considered a rightful exercise of legislative authority." *Calder*, 3 U.S. (3 Dall.) at 388. Among Justice Chase's examples of impermissible legislative acts included "a law that makes a man a judge in his own cause[.]" *Id*.

Consequently, the Supreme Court has held that officials "acting in a judicial or quasi judicial capacity are disqualified by their interest in the controversy[.]" *Tumey v. Ohio*, 273 U.S. 510, 522 (1927). In holding that due process requires interested judges to be disqualified, the Supreme Court noted that:

[T]he requirement of due process of law in judicial procedure is not satisfied by the argument that men of the highest honor and the greatest self-sacrifice could carry it [on] without danger of injustice. Every procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law.

*Id*. at 532. In other words, the mere temptation to impartiality tends to undermine the due process guaranteed by the Constitution.

The fundamental problem with the FTC's adjudication of this case is that the FTC plays two roles simultaneously: it is both the prosecutor (the initiator of the complaint) and the judge. Pet. Br. at 23. Indeed, the Supreme Court has acknowledged that "an unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case." *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016). The FTC's win-loss record against itself suggests these concerns of bias are well-founded. In the last 46 years, the FTC has lost only *five* of the over 150 cases decided on the merits through in-house adjudication. Pet. Br. at 23.

To be sure, this Court has held that the FTC acting as both prosecutor and judge does not, by itself, violate due process. *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1047 (5th Cir. 2023). Yet in making this holding, the Court also held that "if there is evidence that a decisionmaker has 'actual bias' against a party, that raises due process concerns." *Id*. Here, the record indeed shows such evidence. While Intuit's

10

case was pending before an FTC administrative law judge, the FTC chair signaled she had pre-judged the findings in this case. Pet. Br. at 24. This Court should assess whether the FTC satisfied their constitutional duty to be neutral—because "absent a neutral adjudicator, all other procedural protections are rendered irrelevant." Martin H. Redish & Kristin McCall, *Due Process, Free Expression, and the Administrative State*, 94 NOTRE DAME L. REV. 297, 319 (2018).

## III.  THE FTC'S UNCONSTRAINED AUTHORITY TO CHOOSE BETWEEN FEDERAL COURT AND AGENCY ADJUDICATION VIOLATES THE NON-DELEGATION DOCTRINE.

The separation of powers mandated by our Constitution would mean little if the legislative, executive, and judicial branches of government could simply give their respective powers to other bodies without limit. Accordingly, while the Supreme Court has permitted Congress to delegate some powers, it has imposed important limits on delegation. From the outset, the Supreme Court has recognized that "[t]here are acts which the federal or state legislature cannot do without exceeding their authority." *Calder*, 3 U.S. (3 Dall.) at 388.

As this Court has recognized, "[i]n keeping with Founding conceptions of separation of powers, the Supreme Court has made clear that Congress cannot 'delegate to the Courts, or to any other tribunals, powers which are strictly and exclusively legislative.'" *Jarkesy v. SEC*, 34 F.4th 446, 460 (5th Cir. 2022) (quoting *Wayman v. Southard*, 23 U.S. 1, 42 (1825)). While the Supreme Court has held that

Congress may delegate regulatory power, it did so only with the important limitation that ". . . Congress may grant regulatory power to another entity only if it provides an 'intelligible principle' by which the recipient of the power can exercise it." *Id*. at 461 (quoting *Mistretta v. United States*, 488 U.S. 361, 372 (1989)).[6]

This Court has acknowledged, "[t]he Supreme Court has noted that the power to assign disputes to agency adjudication is 'peculiarly within the authority of the legislative department.'" *Id*. (quoting *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909)). In *Jarkesy*, the SEC argued that the power to choose whether to bring an action in an agency tribunal instead of an Article III court was "merely a form of prosecutorial discretion—an executive, not legislative, power." *Id*. at 461–62. This Court rejected that argument:

> That position reflects a misunderstanding of the nature of the delegated power. Congress did not, for example, merely give the SEC the power to decide whether to bring enforcement actions in the first place, or to choose where to bring a case among those district courts that might have proper jurisdiction. It instead effectively gave the SEC the power to decide which defendants should receive *certain legal processes*

---

[6] James Madison anticipated the necessity of the "intelligible principle" doctrine: "Details, to a certain degree, are essential to the nature and character of a law; and, on criminal subjects, it is proper, that details should leave as little as possible to the discretion of those who are to apply and to execute the law. If nothing more were required, in exercising a legislative trust, than a general conveyance of authority, without laying down any precise rules, by which the authority conveyed, should be carried into effect; it would follow, that the whole power of legislation might be transferred by the legislature from itself, and proclamations might become substitutes for laws."

MADISON, THE REPORT OF 1800, *supra*.

(those accompanying Article III proceedings) and which should not. Such a decision—to assign certain actions to agency adjudication—is a power that Congress uniquely possesses.

*Id.* at 462 (emphasis in the original).

It follows that the FTC's power to assign proceedings like Petitioner's to agency adjudication is also a legislative power, subject to the Supreme Court's "intelligible principle" limitations on delegation.

In the words of this Court, "[i]f the intelligible principle standard means anything, it must mean that a *total absence* of guidance is impermissible under the Constitution." *Id.* at 462 (emphasis added). This case evinces the "total absence of guidance" in where to bring complaints. Here, the FTC issued an administrative complaint against petitioner and, while that proceeding was pending at the Commission, sued in federal court. Pet. Br. at 15. A federal judge denied the FTC's motion for a preliminary injunction. *Id*. Nevertheless, the FTC simply reissued the administrative complaint, a move justified with a terse assertion that "the public interest warrants further litigation." *Id*. at 16. *Amicus* hopes this Court will reject the FTC's exercise of broad power to choose, and—when stymied at one venue—re-choose, the venue and applicable legal processes for parties.

## CONCLUSION

The FTC's exercise of power here violates due process protections and reveals a breakdown in the separation of powers. This Court should vacate the Commission's decision and order.

Respectfully submitted,

*/s/ Brent Skorup*

Dated: April 22, 2024

Brent Skorup
  *Counsel of Record*
Anastasia P. Boden
Christopher D. Barnewolt
CATO INSTITUTE
1000 Mass. Ave., N.W.
Washington, DC 20001
(202) 218-4609
bskorup@cato.org

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and Fed. R. App. P. 32(a)(7)(B) because it contains 3,320 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface in Times New Roman, 14-point font.

*/s/ Brent Skorup*

April 22, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Court, who will enter it into the CM/ECF system, which will send a notification of such filing to the appropriate counsel.

/s/ *Brent Skorup*

April 22, 2024