No. 24-60040

_____

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

_____

INTUIT, INC.,
*Petitioner,*

v.

FEDERAL TRADE COMMISSION
*Respondent.*

_____

On Petition for Review of an Order
of the Federal Trade Commission

_____

## BRIEF OF AMICI CURIAE PUBLIC CITIZEN AND NATIONAL CONSUMER LAW CENTER IN SUPPORT OF RESPONDENT

_____

Nandan M. Joshi
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Attorneys for Amici Curiae
Public Citizen and National
Consumer Law Center*

June 21, 2024

# SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS

No. 24-60040

## IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

INTUIT, INC.,
*Petitioner*,

v.

FEDERAL TRADE COMMISSION,
*Respondent*.

On Petition for Review of an Order
of the Federal Trade Commission

Pursuant to this Court's Rule 29.2 and Federal Rule of Appellate Procedure 26.1, amici curiae Public Citizen and National Consumer Law Center submit this supplemental certificate of interested persons to fully disclose all those with an interest in this brief and to provide the required information as to their corporate status and affiliations.

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1, in

addition to those listed in the brief of petitioner, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

A.    Amicus curiae **National Consumer Law Center** is a nonprofit, non-stock corporation. It has no parent corporation, and no publicly traded corporation has an ownership interest in it of any kind.

B.    Amicus curiae **Public Citizen** is a nonprofit, non-stock corporation. It has no parent corporation, and no publicly traded corporation has an ownership interest in it of any kind.

C.    The above-listed amici curiae are represented by **Nandan M. Joshi** and **Allison M. Zieve** of **Public Citizen Litigation Group**.

<u>/s/ Nandan M. Joshi</u>
Nandan M. Joshi

*Attorney for Amici Curiae*
*Public Citizen and National*
*Consumer Law Center*

June 21, 2024

# TABLE OF CONTENTS

SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS .........i

TABLE OF CONTENTS ........................................................................ iii

TABLE OF AUTHORITIES ...................................................................iv

INTEREST OF AMICI CURIAE ............................................................1

SUMMARY OF ARGUMENT .................................................................3

ARGUMENT ...........................................................................................6

I.     Intuit did not cure its deceptive advertising by referring
       consumers to the TurboTax website. ..............................................6

       A. The FTC Act prohibits sellers from using deceptive
          advertising to entice consumers to buy products. .................6

       B. Referring consumers to a website does not cure an
          advertisement that is deceptive on first contact. ................ 12

II.    The remedial disclosure required by the FTC's order is
       subject to scrutiny under *Zauderer* ............................................ 20

       A. The FTC's order concerns commercial speech. .................... 21

       B. The required disclosure is uncontroversial under
          *Zauderer*. ............................................................................. 23

CONCLUSION ..................................................................................... 26

CERTIFICATE OF SERVICE .............................................................. 28

CERTIFICATE OF COMPLIANCE ..................................................... 29

# TABLE OF AUTHORITIES

**Cases**                                                                    **Pages**

*All-State Industries of North Carolina, Inc. v. FTC,*
   423 F.2d 423 (4th Cir. 1970) ................................................................. 9

*Bell v. Publix Super Markets, Inc.,*
   982 F.3d 468 (7th Cir. 2020) ............................................................... 19

*Bolger v. Youngs Drug Products Corp.,*
   463 U.S. 60 (1983) ............................................................................... 22

*Carter Products, Inc. v. FTC,*
   186 F.2d 821 (7th Cir. 1951) ............................................................... 10

*Central Hudson Gas & Electric Corp.*
   *v. Public Service Commission of New York,*
   447 U.S. 557 (1980) ....................................................................... 22, 23

*CFPB v. Gordon,*
   819 F.3d 1179 (9th Cir. 2016) ....................................................... 11, 16

*Chamber of Commerce of the United States of America*
   *v. SEC,*
   85 F.4th 760 (5th Cir. 2023) ............................................................... 23

*Donaldson v. Read Magazine,*
   333 U.S. 178 (1948) ............................................................... 12, 13, 15

*Duncan v. Kahala Franchising, L.L.C.,*
   No. 22-cv-7841, 2024 WL 1936053 (E.D.N.Y. May 2, 2024) ............... 16

*Exposition Press, Inc. v. FTC,*
   295 F.2d 869 (2d Cir. 1961) ............................................................... 11

*FTC v. Colgate-Palmolive Co.,*
   380 U.S. 374 (1965) ........................................................... 7, 8, 9, 10, 12

iv

*FTC v. Credit Bureau Center, LLC,*
   325 F. Supp. 3d 852 (N.D. Ill. 2018) .................................................... 15

*FTC v. Cyberspace.com LLC,*
   453 F.3d 1196 (9th Cir. 2006) ...................................................... 15, 26

*FTC v. Digital Altitude, LLC,*
   No. 18-cv-729, 2018 WL 1942392 (C.D. Cal. Mar. 9, 2018) ................. 15

*FTC v. E.M.A. Nationwide, Inc.,*
   767 F.3d 611 (6th Cir. 2014) .................................................. 11, 13, 16

*FTC v. Financial Freedom Processing, Inc.,*
   538 F. App'x 488 (5th Cir. 2013) ............................................. 11, 15, 16

*FTC v. Grant Connect, LLC,*
   827 F. Supp. 2d 1199 (D. Nev. 2011) ................................................... 15

*FTC v. Mary Carter Paint Co.,*
   382 U.S. 46 (1965) ............................................................................... 9

*FTC v. Standard Education Society,*
   302 U.S. 112 (1937) ............................................................ 6, 8, 10, 12

*FTC v. World Patent Marketing, Inc.,*
   No. 17-cv-20848, 2017 WL 3508639 (S.D. Fla. Aug. 16, 2017) ........... 18

*Harris v. Las Vegas Sands, LLC,*
   No. 12-cv-10858, 2013 WL 5291142 (C.D. Cal. Aug. 16, 2013) ........... 20

*Marksberry v. FCA US LLC,*
   606 F. Supp. 3d 1075 (D. Kan. 2022) ................................................. 20

*Milavetz, Gallop & Milavetz, P.A. v. United States,*
   559 U.S. 229 (2010) ............................................................................ 21

*Moore v. Trader Joe's Co.,*
   4 F.4th 874 (9th Cir. 2021) ................................................................ 19

*National Institute of Family & Life Advocates v. Becerra,*
  585 U.S. 755 (2018) ................................................................. 22

*Ohralik v. Ohio State Bar Ass'n,*
  436 U.S. 447 (1978) ................................................................. 22

*R J Reynolds Tobacco Co. v. FDA,*
  96 F.4th 863 (5th Cir. 2024) ............................................... 23, 24

*Removatron International Corp. v. FTC,*
  884 F.2d 1489 (1st Cir. 1989) ........................................ 13, 14, 25

*Resort Car Rental Systems, Inc. v. FTC,*
  518 F.2d 962 (9th Cir. 1975) ......................................... 11, 12, 16

*Tashof v. FTC,*
  437 F.2d 707 (D.C. Cir. 1970) ................................................... 9

*United States v. Shah,*
  95 F.4th 328 (5th Cir. 2024) .................................................... 13

*Virginia Board of Pharmacy
  v. Virginia Citizens Consumer Council, Inc.,*
  425 U.S. 748 (1976) ................................................................. 21

*Washington v. Hyatt Hotels Corp.,*
  No. 1:19-cv-04724, 2020 WL 3058118 (N.D. Ill. June 9, 2020) ............ 20

*Zauderer v. Office of Disciplinary Counsel
  of Superior Court of Ohio,*
  471 U.S. 626 (1985) .................................................... 5, 20, 22, 23, 24

## Statutes

15 U.S.C. § 45(a)(1) ....................................................................... 7, 13

15 U.S.C. § 45(a)(2) .......................................................................... 7

**Regulations**

16 C.F.R. §§ 233.1–.3 ...................................................................9

16 C.F.R. § 233.4(c) ....................................................................9

16 C.F.R. § 238.0 ........................................................................9

16 C.F.R. § 238.2(b) ..................................................................10

16 C.F.R. § 251.1 ........................................................................9

16 C.F.R. § 251.1(a)(2) ..............................................................10

16 C.F.R. § 251.1(c) ...................................................................10

**Other Authorities**

Federal Trade Commission, *.com Disclosures: How to Make Effective
Disclosures in Digital Advertising* (Mar. 2013),
https://www.ftc.gov/system/files/documents/plain-
language/bus41-dot-com-disclosures-information-about-
online-advertising.pdf ..........................................................17

*US Online and Traditional Media Advertising Outlook, 2023-2027*,
Marketing Charts (July 26, 2023), https://www.marketingcharts.
com/featured-230110..............................................................18

**INTEREST OF AMICI CURIAE[1]**

Amici curiae are two non-profit organizations devoted to consumer protection. Amici submit this brief to support the decision of the Federal Trade Commission (FTC) challenged in this case, which aims to protect consumers from misleading and deceptive advertising practices.

**Public Citizen** is a nonprofit consumer advocacy organization founded in 1971, with members in all fifty states. Public Citizen works before Congress, administrative agencies, and courts for enactment and enforcement of laws protecting consumers from unfair and deceptive practices. Public Citizen has appeared as amicus curiae to advocate for increased consumer protections and stronger regulatory authority across a variety of industries, including in cases involving the FTC.

**National Consumer Law Center** (NCLC) is a national research and advocacy organization focused on the legal needs of consumers, and in particular low-income and elderly consumers. For more than 50 years, NCLC has served as a consumer-law resource center for legal services

---

[1] This brief was not authored in whole or part by counsel for a party, and no one other than amici curiae or their counsel made a monetary contribution to the preparation or submission of the brief. Counsel for all parties have consented to its filing.

and private lawyers, state and federal consumer protection officials, public policymakers, consumer and business reporters, and consumer and low-income community organizations across the nation.

Public Citizen and NCLC file this brief to address two legal issues raised by appellant Intuit, Inc. in its challenge to the FTC's determination that Intuit deceptively advertised its "free" TurboTax tax-filing service and to the agency's issuance of a cease-and-desist order to prevent future deception. First, Intuit argues that its advertising was not deceptive because the advertisements referenced the TurboTax web address where it published additional information about its "free" service. Amici are concerned that Intuit's argument, if accepted, would harm consumers by enabling advertisers to disclose information necessary to avoid deceiving consumers only on websites noted in the fine print of their advertisements, rather than prominently within the advertisements that consumers see. Second, Intuit challenges the disclosure requirement imposed by the FTC's cease-and-desist order on First Amendment grounds and urges this Court to employ a higher level of scrutiny than called for by longstanding precedent. Amici are concerned that Intuit's argument, if accepted, would harm consumers by

making it more difficult for governmental bodies to impose disclosure requirements needed to ensure that consumers are not harmed by deceptive advertising practices.

## SUMMARY OF ARGUMENT

**I.** The prohibition in the Federal Trade Commission Act (FTC Act) on unfair and deceptive acts and practices aims to rid commerce of dishonesty designed to prompt consumer purchases. As the Supreme Court has long recognized, advertisers violate the FTC Act when they use deceptive advertising to entice consumers to enter into transactions for goods and services that consumers might otherwise have avoided.

Courts have recognized that the Act's prohibition on deceptive advertising would have little value if sellers could use deception to lure consumers in, but avoid accountability by giving accurate information before completing the sale. Accordingly, courts have held that sellers cannot escape liability for violating the FTC Act by "curing" the deception after "first contact" with the consumer has occurred. In other words, a deceptive advertisement violates the FTC Act even if the seller subsequently provides the consumer with accurate disclosures about the advertised item.

3

Today, sellers make "first contact" with consumers through a variety of advertising media. Regardless of the medium used, however, the question whether an advertisement is deceptive is determined by examining its effect on consumers. Whether on television or radio, online, or in any other medium, an advertisement must include information needed to avoid deceiving consumers and must present that information in a clear and conspicuous manner.

Intuit is wrong that inclusion of a website address in an advertisement makes website information available to consumers on "first contact." For television and radio ads, referring to a web address does not automatically provide consumers with all the information published at that web address and, thus, cannot cure a misleading ad. And for online ads, the ability to include links to a website where consumers can find the disclosures necessary to cure a misleading ad does not relieve the advertiser of the duty to design online ads to ensure that consumers are not misled.

**II.** The FTC's cease-and-desist order requires Intuit to disclose information about the percentage of taxpayers or consumers who qualify for a product that Intuit advertises as "free." Because the order requires

a disclosure in connection with commercial speech, Intuit's First Amendment challenge to the requirement is properly evaluated under *Zauderer v. Office of Disciplinary Counsel of Superior Court of Ohio*, 471 U.S. 626 (1985). Under *Zauderer*, the government may require purely factual and uncontroversial disclosures about commercial products if the disclosure is not unjustified or unduly burdensome.

Contrary to Intuit's contention, the disclosure requirement here is not controversial. The disclosure does not require a statement about a hotly debated political matter, and the disclosure does not require Intuit to make an inaccurate statement. Although Intuit would prefer a different disclosure, where the percentage is based on taxpayers who use online tax-filing software, an agency's decision to reject a regulated entity's preference does not make the disclosure controversial. In any event, the FTC had a valid basis for the choice it made: Intuit's advertising reached—and had the potential to deceive—all taxpayers, not only those taxpayers who already used online tax-filing services. Therefore, Intuit's contention that the *Zauderer* standard of review should not apply has no basis.

# ARGUMENT

## I.   Intuit did not cure its deceptive advertising by referring consumers to the TurboTax website.

The FTC found that Intuit deceptively advertised TurboTax as "free" when, in fact, it was not free for most consumers. Intuit argues that its television, radio, and online ads identified the Turbotax.com website as a source of additional information that would dispel the deception. Longstanding precedent, however, puts the responsibility on the advertiser to refrain from using deception to lure consumers in the first place. This Court should reject Intuit's call to allow misleading ads as long as the ad includes a link to the seller's website where additional facts needed to avoid misleading the consumer are available.

### A.   The FTC Act prohibits sellers from using deceptive advertising to entice consumers to buy products.

**1.** The FTC Act reflects Congress's judgment that "honesty should govern competitive enterprises, and that the rule of *caveat emptor* should not be relied upon to reward fraud and deception." *FTC v. Standard Educ. Soc.,* 302 U.S. 112, 116 (1937). Section 5 of the FTC Act advances those principles by making it "unlawful" to engage in "unfair or deceptive acts or practices in or affecting commerce" and "empower[ing] and

6

direct[ing]" the FTC to "prevent … corporations" from engaging in prohibited conduct. 15 U.S.C. § 45(a)(1), (2).

Section 5's prohibition of unfair or deceptive acts or practices extends to misrepresentations "designed to get a consumer to purchase a product." *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 388 (1965). In *Colgate-Palmolive*, for instance, the Supreme Court considered whether "it is a deceptive trade practice … to represent falsely that a televised test, experiment, or demonstration provides a viewer with visual proof of a product claim, regardless of whether the product claim is true." *Id.* at 375–76. The Court held that a false "proof" about a product's capabilities is deceptive in violation of the Act even if the product possesses the capability asserted. *Id.* at 386–89. As the Court explained, section 5 prohibits "methods designed to get a consumer to purchase a product" that rely on "a misrepresentation to break down what [the seller] regards to be an annoying or irrational habit of the buying public" in the hopes that "when the habit is broken the buyer will be satisfied with the performance of the product he receives." *Id.* at 388–89. Thus, a seller violates section 5 if it misrepresents that a product "is being offered at a special reduced price, even if the offered price represents the actual value

7

of the product and the purchaser is receiving his money's worth." *Id.* at

387 (citing *Standard Educ. Soc.*, 302 U.S. at 115–17).

Similarly, a seller violates section 5 if it uses a false promise of "a

free set of books" to "obtain[] an audience with prospective purchasers."

*Standard Educ. Soc.*, 302 U.S. at 115. In this situation, the question is

not whether consumers received a fair value from the transactions that

resulted from the initial deception. Rather, the use of deception to entice

consumers at the outset is itself "contrary to decent business standards"

and unlawful under section 5. *Id.* at 116; *see also id.* ("To fail to prohibit

such evil practices would be to elevate deception in business and give to

it the standing and dignity of truth.").

**2.** Sellers have employed various unfair or deceptive advertising

practices to lure consumers into purchasing products and services that

they might not otherwise purchase, or from sellers from which they might

not otherwise purchase. Perhaps the most well-known of these deceptive

methods is bait-and-switch. In bait-and-switch, the advertising (the

"bait") consists of an "alluring but insincere offer" for a product or service

with the aim of "switch[ing] consumers from buying the advertised

merchandise, in order to sell" a different product or service that the seller

8

prefers to sell. 16 C.F.R. § 238.0. Even if the purchased item is sold at a reasonable price and performs up to the consumer's expectations, the ad violates the FTC Act if it misrepresented facts in an effort to "materially induce[] a purchaser's decision to buy." *Colgate-Palmolive*, 380 U.S. at 387; *see, e.g.*, *Tashof v. FTC*, 437 F.2d 707, 709–10 (D.C. Cir. 1970); *All-State Indus. of N.C., Inc. v. FTC*, 423 F.2d 423, 424–25 (4th Cir. 1970).

The FTC has been especially concerned about the use of price misrepresentations in advertising to lure consumers into considering transactions that they would not otherwise consider. The FTC has advised, for instance, that the Act prohibits sellers from representing that an advertised price is lower than a specified benchmark price, when the latter is not a bona fide price. 16 C.F.R. §§ 233.1–.3. Similarly, if advertisers offer items for "free," "all the terms and conditions of the offer should be made clear at the outset" to avoid deception. *Id.* § 233.4(c); *see FTC v. Mary Carter Paint Co.*, 382 U.S. 46, 48 (1965) (affirming the finding of deception where the seller allocated "the price of two cans [of paint] to one can" and advertised the other can as "free").

The FTC has also addressed advertisements offering "free" merchandise. 16 C.F.R. § 251.1. Such offers are particularly enticing to

consumers because "the purchasing public continually searches for the best buy, and regards the offer of 'Free' merchandise or service to be a special bargain." *Id.* § 251.1(a)(2). Accordingly, the FTC has advised advertisers that "all such offers must be made with extreme care so as to avoid any possibility that consumers will be misled or deceived." *Id.* "[S]o as to leave no reasonable probability that the terms of the offer might be misunderstood … all of the terms, conditions and obligations should appear in close conjunction with the offer of 'Free' merchandise or service." *Id.* § 251.1(c).

**3.** Deceptive advertising provides value to sellers because it manipulates consumers into transactions that otherwise might not occur. *Colgate-Palmolive*, 380 U.S. at 389. Therefore, to achieve the FTC Act's goal of ensuring that "honesty should govern competitive enterprises" and "fraud and deception" should not be rewarded, *Standard Educ. Soc.*, 302 U.S. at 116, "the law is violated if the first contact or interview is secured by deception," *Carter Prods., Inc. v. FTC*, 186 F.2d 821, 824 (7th Cir. 1951) (citing *Standard Educ. Soc.*, 302 U.S. at 115); *see also* 16 C.F.R. § 238.2(b). And the FTC has the "power to prohibit the initial deception" to prevent a seller from "attract[ing] business which it would not

10

otherwise have obtained." *Exposition Press, Inc. v. FTC*, 295 F.2d 869, 873 (2d Cir. 1961).

As a corollary to the goal of preventing sellers from using deception to entice consumers in the first place, this Court and others have recognized that deceptive advertising violates section 5 "even though the true facts are made known to the buyer before he enters into the contract of purchase." *FTC v. Fin. Freedom Processing, Inc.*, 538 F. App'x 488, 489 (5th Cir. 2013) (quoting *Exposition Press*, 295 F.2d at 873, quoting in turn, *Carter Prods., Inc.* 186 F.2d at 824); *see also CFPB v. Gordon*, 819 F.3d 1179, 1194 (9th Cir. 2016) ("A later corrective written agreement does not eliminate a defendant's liability for making deceptive claims in the first instance," citing *Resort Car Rental Sys., Inc. v. FTC*, 518 F.2d 962, 964 (9th Cir. 1975)); *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 632 (6th Cir. 2014) ("Although Defendants later provided … a contract that more accurately characterized their services, … [a] court need not look past the first contact with a consumer to determine the net impression from that contact."). Moreover, under section 5, it is no defense that a consumer should have unearthed the deception. Consumers have "no duty … to suspect the honesty of those with whom

[they] transact[] business." *Standard Educ. Soc.*, 302 U.S. at 116. And "the public is not under any duty to make reasonable inquiry into the truth of advertising." *Resort Car Rental Sys., Inc.*, 518 F.2d at 964.

### B.    Referring consumers to a website does not cure an advertisement that is deceptive on first contact.

Today, sellers use a variety of media to make "first contact" with consumers. Intuit's advertising campaign for its "free" TurboTax service, for instance, utilized "television, radio, and online ads." FTC Op. 1 (available at ECF 34-3). Intuit's online ads reached consumers through "banners on websites [and] as videos on social media sites such as TikTok, Facebook, or Snapchat," *id.* at 14, and it engaged in direct email marketing and paid search (*i.e.*, Google) advertising, *id.* at 18–23. These advertising channels are in addition to the advertising that occurs directly on the TurboTax website. *Id.* at 23–32.

Although section 5's prohibition of "unfair or deceptive acts or practices" was enacted in 1938, it is sufficiently "flexible" to reach the array of modern advertising. *Colgate-Palmolive*, 380 U.S. at 385. That is because the question whether advertising is deceptive does not turn on the medium used, but on "the effect advertisements would most probably produce on ordinary minds." *Donaldson v. Read Magazine*, 333 U.S. 178,

189 (1948) (concerning direct mail advertising). Even where "many people are intellectually capable of discovering the cost and nature" of the item being advertised, the advertisement may be "completely misleading" if "things are omitted that should be said, or because [it is] composed or purposefully printed in such way as to mislead." *Id.* at 188. And where an advertisement makes claims about an item, "[d]isclaimers or qualifications" to those claims "are not adequate to avoid liability unless they are sufficiently prominent and unambiguous to change the apparent meaning of the claims and to leave an accurate impression." *Removatron Int'l Corp. v. FTC*, 884 F.2d 1489, 1497 (1st Cir. 1989); *see also E.M.A. Nationwide, Inc.*, 767 F.3d at 632 (same). Although Intuit suggests that these principles are "inapplicable" to the "online context," Intuit Br. 51 (formatting altered), it does not dispute that online advertising involves acts and practices "in or affecting commerce." 15 U.S.C. § 45(a)(1). *See also United States v. Shah*, 95 F.4th 328, 358 (5th Cir. 2024) (recognizing that the Internet is an instrumentality of interstate commerce).

Intuit asserts that its television, radio, and online advertising was not deceptive because the ads included references or links to the

TurboTax website, often in the fine print of the advertisements. It argues that, because consumers can visit the website to obtain additional information, including those references or links in its ads cures the misimpressions created by the ads alone. Intuit Br. 51–52. The FTC has explained why, even if the information on the TurboTax website is considered, that information would not cure the deception. FTC Op. 50–52; FTC Br. 33–37. But the premise of Intuit's argument—that the inclusion of a website address in an advertisement makes website information available to consumers on "first contact"—is also wrong. Contrary to Intuit's suggestion, no court has adopted such a rule, and for good reason: Intuit's approach would gut core principles of deceptive advertising law and harm consumers in precisely the ways that section 5 was designed to prevent.

Referring to a web address (*e.g.*, TurboTax.com) in advertising plainly does not provide consumers viewing the ad with all the information published at that web address. It is hard to see how information *not* contained in the ad itself could be "sufficiently prominent and unambiguous" (*Removatron Int'l Corp.*, 884 F.2d at 1497) to cure an otherwise misleading impression. Indeed, courts have consistently

rejected the notion that disclaimers presented to consumers *at the same time* as the initial contact necessarily cure deceptive advertising. *See Donaldson*, 333 U.S. at 186 (concluding that "small and inconspicuous portions of lengthy descriptions" used in advertising did not preclude a finding of deception); *FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006) (rejecting argument that "fine print notices … on the reverse side" of mailings "preclude liability under" section 5). Courts have applied the same principle to online advertising as well.[2]

Intuit argues that consumers have the information posted on websites at their "fingertips." Intuit Br. 52. But a consumer's ability, *after* being misled, to go to a computer to read more information that may cure the inaccurate impression does not excuse the misleading ad. *See Fin.*

---

[2] *See, e.g., FTC v. Grant Connect, LLC*, 827 F. Supp. 2d 1199, 1220 (D. Nev. 2011) ("The disclosures were often in dense compact text or text which is difficult to see, or the consumer had to scroll down on the screen or navigate to another page to read the disclosures"), *aff'd in part, vacated in part on other grounds*, 763 F.3d 1094 (9th Cir. 2014); *FTC v. Credit Bureau Ctr., LLC*, 325 F. Supp. 3d 852, 861 (N.D. Ill. 2018) (holding that "explanatory text is insufficient to cure a misleading description unless the text changes the overall impression" of a website), *aff'd in part, vacated in part on other grounds*, 937 F.3d 764 (7th Cir. 2019); *see also FTC v. Digital Altitude, LLC*, No. 18-cv-729, 2018 WL 1942392, at *9 (C.D. Cal. Mar. 9, 2018) (rejecting relevance of website disclosures in assessing consumer perceptions).

15

*Freedom Processing, Inc.*, 538 F. App'x at 489 (noting that disclosure of "true facts" does not cure deceptive advertising); *see also*, *e.g.*, *Gordon*, 819 F.3d at 1194; *E.M.A. Nationwide, Inc.*, 767 F.3d at 632. Moreover, "the public is not under any duty to make reasonable inquiry into the truth of advertising," *Resort Car Rental Sys., Inc.*, 518 F.2d at 964, but that is what Intuit's argument would require—consumers would not be able to rely on the representations conveyed by an ad but would need to visit a seller's website to get a complete picture of the seller's offer.

Intuit dismisses this burden, arguing that it takes only a few seconds to locate website information. Intuit Br. 52; *but see* FTC Br. 34 n.9 (refuting Intuit's contention). But that argument both ignores the case law cited above and, moreover, assumes that the consumer is ready to conduct the search upon viewing or hearing the ad. Intuit offers no basis for that assumption. *See Duncan v. Kahala Franchising, L.L.C.*, No. 22-cv-7841, 2024 WL 1936053, at *6 (E.D.N.Y. May 2, 2024) (rejecting claim that "an online ingredients list can negate claims of misrepresentation" because "examining defendant's ingredients list requires access to an Internet-capable device and conducting a web search to locate it.").

16

Intuit argues that its online advertising complied with the FTC's guidance for online ads. Intuit Br. 45 (citing FTC, *.com Disclosures: How to Make Effective Disclosures in Digital Advertising* (Mar. 2013) (Digital Ad Guidance), https://www.ftc.gov/system/files/documents/plain-lang uage/bus41-dot-com-disclosures-information-about-online-advertising .pdf). But the FTC's guidance makes clear that the ability to link to information does not change the fact that "general principles of advertising law apply online." Digital Ad Guidance at i. "Disclosures that are an integral part of a claim or inseparable from it should not be communicated through a hyperlink." *Id.* at 10. Instead, "advertisers should incorporate relevant limitations and qualifying information into the underlying claim" and those "[r]equired disclosures must be clear and conspicuous." *Id.* at i. And where a hyperlink can be used, the link should be "obvious"; it should be labeled "appropriately to convey the importance, nature, and relevance of the information it leads to"; it should be placed "as close as possible to the relevant information it qualifies" and be "noticeable"; and it should "take consumers directly to the disclosure on the click-through page." *Id.* at ii; *see also id.* at 10–14.

17

Adherence to these common-sense standards is particularly important because online advertising today dominates the advertising marketplace, making up approximately three times the amount spent on television ads, "the next-largest advertising market." *US Online and Traditional Media Advertising Outlook, 2023-2027*, Marketing Charts (July 26, 2023), https://www.marketingcharts.com/featured-230110. If advertisers could meet their obligation to provide consumers with accurate, non-misleading information simply by linking to a company's webpage in the fine print of an online ad, it would create a substantial risk of misleading consumers because many will not click the link when they see the ad. *See FTC v. World Patent Mktg., Inc.*, No. 17-cv-20848, 2017 WL 3508639, at *13 (S.D. Fla. Aug. 16, 2017) ("Defendants' disclaimers on their website and in articles emailed to consumers similarly do not absolve Defendants of liability. A consumer who did not visit the website or regularly read WPM's emails might not have seen these disclosures."). Accordingly, as the FTC has explained, "[t]he ultimate test is not the size of the font or the location of the disclosure …; the ultimate test is whether the information intended to be disclosed is actually conveyed to consumers." Digital Ad Guidance at 1. Here, despite

18

Intuit's suggestion, Intuit Br. 45, the record before the FTC supports the conclusion that Intuit's ads did not adhere to online advertising standards, FTC Op. 14–18, 25–30, and, therefore, were not available to consumers at "first contact."

None of the decisions on which Intuit relies supports its extraordinary argument that sellers may rely on web addresses in advertising to cure deception. Citing *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468 (7th Cir. 2020), and *Moore v. Trader Joe's Co.*, 4 F.4th 874 (9th Cir. 2021), Intuit suggests that website information is necessarily available to consumers. Neither of those decisions, however, requires consumers to seek out clarifying information from advertisers' websites. Rather, *Bell* and *Moore* address whether the information presented on the labels for food products would deceive reasonable consumers as to how the food was manufactured. *See Bell*, 982 F.3d at 476; *Moore*, 4 F.4th at 880; *see also* FTC Op. 49.

Intuit cites three district court cases that it contends authorize sellers to disclose material information to consumers in documents that were "difficult to access" or "not made until the point of sale." Intuit Br. 53 (italics removed). But none of these cases suggests that advertising

that is deceptive at first contact can be cured by later disclosures. In *Marksberry v. FCA US LLC*, 606 F. Supp. 3d 1075 (D. Kan. 2022), the court found that the advertisements about the warranty being offered were accurate and that the additional details set out in documents referenced in the warranty did not indicate that the advertisements were deceptive. *Id.* at 1081–82. The other two cases concern price information presented to consumers on hotel websites (or app) during the process of making reservations. *See Washington v. Hyatt Hotels Corp.*, No. 1:19-cv-04724, 2020 WL 3058118, at *4–*5 (N.D. Ill. June 9, 2020); *Harris v. Las Vegas Sands, LLC*, No. 12-cv-10858, 2013 WL 5291142, at *5–*6 (C.D. Cal. Aug. 16, 2013). Those cases, which hold that the total price of a hotel room need not appear on the initial screen during the booking process, do not condone the use of a web address in advertising to cure an ad's deceptive content. Because allowing such use would upend the long-held understanding of section 5 and would harm consumers, the Court should reject Intuit's theory.

## II.    The remedial disclosure required by the FTC's order is subject to scrutiny under *Zauderer*.

After concluding that Intuit engaged in deceptive advertising, the FTC issued a cease-and-desist order that prohibits Intuit from

representing in its advertising "that a good or service is 'Free' unless" it is free to all consumers or the advertising clearly and conspicuously discloses (1) "the percentage of U.S. taxpayers (or other U.S. consumers … )" that "qualify for the product" or (2) if such percentage is less than a majority, the fact that a majority do not qualify. FTC Order § I.A.–.B. (available at ECF 34-4). The order also requires Intuit to disclose the terms and conditions upon which the free good or service are contingent. *Id.* Contrary to Intuit's argument, this disclosure requirement comports with the First Amendment.

## A.    The FTC's order concerns commercial speech.

Without question, Intuit's advertising constitutes "commercial speech." *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 249 (2010). Since the Supreme Court first recognized commercial speech as constitutionally protected expression almost 50 years ago, *see Va. Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 770 (1976), courts, including this Court, have consistently accorded commercial speech "less protection" than "other constitutionally safeguarded forms of expression" in light of "the 'common-sense' distinction between speech proposing a commercial transaction, which

occurs in an area traditionally subject to government regulation, and other varieties of speech." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 64–65 (1983) (third quotation quoting *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 455–56 (1978)).

Moreover, in the commercial speech context, courts have recognized "material differences between disclosure requirements and outright prohibitions on speech." *Zauderer*, 471 U.S. at 650. Prohibitions on protected commercial speech are assessed under the test articulated in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 563–66 (1980). *Central Hudson* directs courts to apply "intermediate scrutiny" to the prohibition and to uphold it if the prohibition "directly advanc[es] a substantial governmental interest and [is] no more extensive than is necessary to serve that interest." *Milavetz*, 559 U.S. at 249 (cleaned up). In contrast, laws that compel the disclosure of information rather than prohibiting speech are subject to "a lower level of scrutiny … in certain contexts." *Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755, 768 (2018). Specifically, *Zauderer* permits the government to require "purely factual and uncontroversial disclosures about commercial products," *id.* at 775, so long as the required disclosure

is not "'unjustified or unduly burdensome,'" *id*. at 768 (quoting *Zauderer*, 471 U.S. at 651). Under *Zauderer*, a commercial disclosure standard is justified if it is "reasonably related" to the governmental interest that the law is designed to address. *Zauderer*, 471 U.S. at 651.

Although Intuit asks this Court to apply strict scrutiny, *see* Intuit Br. 65, this Court has recognized that, "[f]or decades, the Supreme Court has consistently applied *Central Hudson* and *Zauderer* to cases implicating regulation of commercial speech." *R J Reynolds Tobacco Co. v. FDA*, 96 F.4th 863, 876 (5th Cir. 2024). The doctrines set forth in these two cases—one applicable to restrictions on commercial speech and the other to compelled disclosures—preclude application of strict scrutiny. *See Chamber of Comm. of U.S. v. SEC*, 85 F.4th 760, 768 (5th Cir. 2023) (explaining that "lesser scrutiny," not "strict scrutiny," "applies when the government compels disclosures in the context of commercial speech").

## B.    The required disclosure is uncontroversial under *Zauderer*.

The cease-and-desist order does not restrict Intuit's speech. It instead requires Intuit to make disclosures as a remedy for its deceptive advertising. The appropriate First Amendment standard to apply, therefore, is the deferential standard set forth in *Zauderer*. Without

mentioning *Zauderer*, Intuit argues that the required disclosure "is misleading and hence not 'noncontroversial.'" Intuit Br. 65. That argument is baseless.

This Court has defined a "controversial" disclosure under *Zauderer* to be a factual statement "where the truth of the statement is not settled or is overwhelmingly disproven or where the inherent nature of the subject raises a live, contentious political dispute." *R J Reynolds*, 96 F.4th at 881. Here, Intuit argues that the required disclosure—stating the percentage of users of TurboTax products advertised as "free" who are not eligible for the free product or stating that the product is "not Free for a majority of U.S. taxpayers"—is controversial. Its argument is that the FTC-required percentage should not be based on "U.S. taxpayers" (or "U.S. consumers"), but rather on the percentage of taxpayers who use online tax-preparation software. *See* Intuit Br. 65. (describing "consumers *in the relevant population*" as "those using online-tax-preparation products"). Yet a factual disclosure about the percentage of consumers that can benefit from a free service is not "an inherent part of a national political debate." *R J Reynolds*, 96 F.4th at 882. And Intuit does not seriously dispute the truth of the required disclosure—that is, it

does not contend that the order requires Intuit to make an untrue statement about the percentage of taxpayers (or consumers) that can benefit from its free products and services. It simply prefers a disclosure based on the percentage of online tax-preparation users. But as this Court recently stated, "merely dislik[ing] the nature of the warnings" is not a basis for concluding that the warning is controversial; otherwise, "the government could never compel any disclosure." *Id.* at 881–82 & n.58.

In any event, the FTC had a valid basis for requiring Intuit to disclose the percentage of taxpayers or consumers who would qualify for free products and services. "The relevant audience … includes potential purchasers." *Removatron Int'l Corp.*, 884 F.2d at 1497. Here, Intuit's deceptive advertising was not targeted only at taxpayers who already use online tax-preparation software. Its television, radio, and online ads were directed at all taxpayers. As the FTC found—and as Intuit does not dispute—taxpayers that did not use online software in one year "might switch to an online service the next year, enticed by the promise of 'free, free, free' online filing." FTC Op. 47; *see also id.* at 54 n.34. "Indeed, that is a major purpose of advertising—to attract new customers." *Id.* at 47.

25

Moreover, Intuit does not challenge the FTC's finding that its misrepresentations were material—meaning that the information "is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." FTC Op. 69 (quoting *Cyberspace.com, LLC*, 453 F.3d at 1201). Those consumers include both those who already use online tax-filing software and those that may use it in the future.

For these reasons, this Court should reject Intuit's argument that strict scrutiny applies and should evaluate the required disclosure under the *Zauderer* framework. For the reasons set forth in the FTC's brief, FTC Br. 47–51, the disclosure satisfies the *Zauderer* standard.

## CONCLUSION

For the foregoing reasons, this Court should deny the petition for review of the FTC's Order.

Respectfully submitted,

/s/ Nandan M. Joshi
Nandan M. Joshi
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Attorneys for Amici Curiae*
*Public Citizen and National Consumer*
*Law Center*

June 21, 2024

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Brief of Amici Curiae Public Citizen and National Consumer Law Center with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit on June 21, 2024, using the Appellate Electronic Filing system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Nandan M. Joshi
Nandan M. Joshi

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B)(i) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and the Rules of this Court, it contains 5249 words.

This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 29(a)(4), 32(a)(5), and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

/s/ Nandan M. Joshi
Nandan M. Joshi