No. 24-60040

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

INTUIT INC.,

*Petitioner*,

*v.*

FEDERAL TRADE COMMISSION,

*Respondent*.

On Petition for Review of a Final Order of the Federal Trade Commission
Dated January 19, 2024, FTC Docket No. 9408

## PETITIONER'S REPLY BRIEF

HOWARD M. SHAPIRO
JONATHAN E. PAIKIN
DANIEL S. VOLCHOK
DEREK A. WOODMAN
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6000

DAVID Z. GRINGER
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, N.Y. 10007
(212) 230-8800

July 12, 2024

## CERTIFICATE OF INTERESTED PERSONS

The persons and entities that have an interest in the outcome of this case, as described in the fourth sentence of Circuit Rule 28.2, are those listed in the certificate of interested persons in Intuit's opening brief plus respondent's counsel who appeared since that brief was filed and all amici curiae in this matter and their respective counsel of record.  These representations are made so that members of this Court may evaluate possible recusal.

/s/ Daniel S. Volchok
DANIEL S. VOLCHOK

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS ........................................................i

TABLE OF AUTHORITIES ...................................................................iv

GLOSSARY OF ABBREVIATIONS FOR RECORD DOCUMENTS ............... vii

INTRODUCTION ........................................................................1

ARGUMENT ..........................................................................4

I.    THE FTC'S UNCONSTITUTIONAL PROCEEDING ................................4

    A.    Due Process ...................................................................4

    B.    ALJ Removal Protections .....................................................6

    C.    Administrative Adjudication Of Private Rights ...................................7

II.   THE FTC'S FLAWED DECEPTION HOLDING ....................................8

    A.    Lack Of Substantial Evidence Of Deception .......................................8

        1.    The ads ...................................................................8

        2.    Extrinsic evidence the commissioners invoked ........................11

        3.    Additional evidence ignored or misconstrued ..........................15

    B.    The Commissioners' Multiple Legal Errors .......................................16

        1.    Heightened disclosure standard ................................16

        2.    Piecemeal ad analysis ................................19

        3.    Deceptive-door-opener theory ................................20

III.  THE UNLAWFUL CEASE-AND-DESIST ORDER ................................22

    A.    The FTC Fails To Justify Any Cease-And-Desist Order ....................22

    B.    The FTC Fails To Justify The Order Here ..........................................28

CONCLUSION ......................................................................................................33

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013)........................................................26

*Apter v. Department of Health & Human Services*, 80 F.4th 579 (5th Cir. 2023)....................................................................................................18

*Barr v. AAPC, Inc.*, 140 S.Ct. 2335 (2020) ................................................6

*Bell v. Publix Super Markets, Inc.*, 982 F.3d 468 (7th Cir. 2020)..........................21

*Book People, Inc. v. Wong*, 91 F.4th 318 (5th Cir. 2024)........................................30

*Campbell v. St. Tammany Parish School Board*, 64 F.3d 184 (5th Cir. 1995)........................................................................................................6

*Chamber of Commerce of United States v. DOL*, 885 F.3d 360 (5th Cir. 2018)........................................................................................................25

*Chamber of Commerce of United States v. SEC*, 85 F.4th 760 (5th Cir. 2023)........................................................................................................31

*Christensen v. Harris County*, 529 U.S. 576 (2000) ................................................18

*Clarke v. CFTC*, 74 F.4th 627 (5th Cir. 2023) ........................................21

*Collins v. Yellen*, 594 U.S. 220 (2021) ....................................................6

*Dickinson v. Zurko*, 527 U.S. 150 (1999) ................................................8

*Encyclopaedia Britannica, Inc.*, 87 F.T.C. 421 (1976) ..........................................20

*Free Enterprise Fund v. PCAOB*, 561 U.S. 447 (2010) ..........................................7

*FTC v. AMG Capital Management, LLC*, 910 F.3d 417 (9th Cir. 2018) ...............21

*FTC v. DirecTV*, 2018 WL 3911196 (N.D. Cal. Aug. 16, 2018) ..........................14

*FTC v. Financial Freedom Processing, Inc.*, 538 F.App'x 488 (5th Cir. 2013)....................................................................................................20, 21

*FTC v. Grant Connect, LLC*, 827 F.Supp.2d 1199 (D. Nev. 2011) ......................20

*FTC v. Mary Carter Paint Co.*, 382 U.S. 46 (1965) ................................. 18

*Illinois v. Wardlow*, 528 U.S. 119 (2000) ............................................. 4

*Illumina, Inc. v. FTC*, 88 F.4th 1036 (5th Cir. 2023) ............................. 15

*In re Boston Children's First*, 244 F.3d 164 (1st Cir. 2001) .................... 5

*In re POM Wonderful LLC*, 155 F.T.C. 1 (2013) ..................................... 9

*Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022) ......................................... 6

*Kraft, Inc. v. FTC*, 970 F.2d 311 (7th Cir. 1992) ................................... 28

*LabMD, Inc. v. FTC*, 894 F.3d 1221 (11th Cir. 2018) ....................... 29, 30

*Loper Bright Enterprises v. Raimondo*, 2024 WL 3208360 (U.S. June 28, 2024) ................................................................................. 16

*McGinity v. Procter & Gamble Co.*, 69 F.4th 1093 (9th Cir. 2023) ........ 12

*National Institute of Family & Life Advocates v. Becerra*, 585 U.S. 755 (2018) ................................................................................. 31

*Resort Car Rental Systems, Inc. v. FTC*, 518 F.2d 962 (9th Cir. 1975) .... 20

*SEC v. Gann*, 565 F.3d 932 (5th Cir. 2009) ......................................... 26

*SEC v. Jarkesy*, 2024 WL 3187811 (U.S. June 27, 2024) ................. 1, 6, 8

*Seila Law LLC v. CFPB*, 591 U.S. 197 (2020) ....................................... 7

*Spiegel, Inc. v. FTC*, 494 F.2d 59 (7th Cir. 1974) ................................. 18

*Standard Oil Co. of California v. FTC*, 577 F.2d 653 (9th Cir. 1978) ....... 28, 29

*Strand Theatre of Shreveport Corp. v. NLRB*, 493 F.3d 515 (5th Cir. 2007) ................................................................................. 9

*Texas v. EEOC*, 933 F.3d 433 (5th Cir. 2019) ..................................... 26

*THOIP v. Walt Disney Co.*, 690 F.Supp.2d 218 (S.D.N.Y. 2010) .......... 13

*United States v. Bonilla-Romero*, 984 F.3d 414 (5th Cir. 2020) ............. 6

*United States v. Cooley*, 1 F.3d 985 (10th Cir. 1993)................................................5

*United States v. Rusmisel*, 716 F.2d 301 (5th Cir. 1983)..........................................4

*Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F.Supp.2d 734 (E.D. Mich. 2003)................................................................................................12

*Westbrook v. Thaler*, 585 F.3d 245 (5th Cir. 2009)....................................................4

*Wright v. Farouk Systems, Inc.*, 701 F.3d 907 (11th Cir. 2012).............................27

## STATUTORY PROVISIONS

5 U.S.C. §552a ..........................................................................................................13

## REGULATIONS AND LEGISLATIVE MATERIALS

16 C.F.R. §251.1 ...............................................................................................17, 29

36 Fed. Reg. 21517 (Nov. 10, 1971) .......................................................................18

Transcript of House Committee on the Judiciary Hearing Regarding Oversight of the Federal Trade Commission (July 13, 2023) ........................5

## OTHER AUTHORITIES

FTC, *.com Disclosures* (Mar. 2013), https://bit.ly/3S3xCOq..................................17

*FTC Policy Statement on Deception*, 103 F.T.C. 174 (1983)...........................17, 19

Jay, E. Deborah, *Ten Truths of False Advertising Surveys*, 103 Trademark Rep. 1116 (2013)....................................................................13

## GLOSSARY OF ABBREVIATIONS FOR RECORD DOCUMENTS

| Abbreviation | Meaning |
| --- | --- |
| Hr'g Tr. | Transcript of Hearing Before Federal Trade Commission Administrative Law Judge (Mar. 27-Apr. 10, 2023) |
| ID | Initial Decision |
| Op. | Opinion of the Commission (Jan. 22, 2024) |
| RPF | Respondent's Proposed Findings of Fact |
| RRF | Respondent's Replies to Complaint Counsel's Proposed Findings of Fact |

# INTRODUCTION

The Federal Trade Commission provides no sound basis to uphold the commissioners' decision or order. For starters, nothing the FTC says changes the constitutional infirmities with the agency's adjudication here: The Commission adjudicated Intuit's private rights outside an article III forum—after first failing to convince a neutral decisionmaker in federal court. It forced Intuit into proceedings before an administrative law judge ("ALJ") who enjoyed the same tenure protections this Court has declared unlawful. And it permitted a commissioner who publicly agreed that Intuit is an "evil actor" and urged an end to its supposed "lawbreaking" to participate in the agency's ultimate decision—despite having made those statements (and others) while serving in a judicial capacity here. These infirmities permitted the FTC to reach an absurd conclusion: Inuit may not truthfully advertise the free version of its product as free, even if Intuit's ads included easily understood and widely used disclaimers about which tax situations that product covered.

The FTC's attempts to avoid these constitutional defects rest on incorrect assertions of law. For example, the Supreme Court's recent decision in *SEC v. Jarkesy*, 2024 WL 3187811 (U.S. June 27, 2024), forecloses the Commission's capacious interpretation of agencies' adjudicative authority. And the agency's defense of its ALJ's removal protections flouts basic principles of statutory

interpretation (including regarding severability).  Finally, there can be no credible dispute that—applying the proper standard rather than the FTC's incorrect one— Chair Lina Khan's repeated anti-Intuit statements and her self-identification as a plaintiff while serving as a judge render this proceeding unconstitutional.

As for its deception ruling, the FTC excuses none of the three fatal legal errors Intuit identified.  The agency's denial that the commissioners applied a heightened disclosure standard for free offers—violating the agency's own guidance—is refuted by the commissioners' own words (Op.45-46).  Its defense of the commissioners' piecemeal analysis of the challenged ads ignores that that analysis involved the commissioners overlooking the critical fact (one that agency policy required them to consider) that the ads juxtaposed multiple disclosures, and likewise overlooking the effect that that juxtaposition had on reasonable consumers' understanding of the qualifications for Free Edition.  Moreover, while the FTC argues that the commissioners' ruling did not involve an unprecedented expansion of the "deceptive-door-opener" theory to on-line sales, it cannot point to any prior similar application and cannot deny that this expansion contradicts the Commission's obligation to consider all information readily available to consumers.

The FTC also asks this Court to defer blindly to its factual narrative.  But courts have an important role to play in policing agencies that, as here, make

decisions contrary to the factual record.  For instance, the FTC repeatedly claims (e.g., Br.27) that "Intuit does not dispute that the 'simple returns' disclosure was missing from many ads."  Intuit vigorously disputes that, because it is untrue—as the FTC has admitted, RPF¶308.  Meanwhile, the agency cannot rationalize the commissioners' disregard of evidence that contradicts their deception ruling.  Nor does the FTC provide any valid reason to credit the limited (and misconstrued) evidence on which the commissioners relied, including a "survey" in which participants did not see *any* challenged ads, and internal documents and data reflecting the *absence* of deception.

Lastly, the FTC's arguments regarding the cease-and-desist order lack merit.  The agency cites nothing showing that relief beyond Intuit's consent order with 51 state attorneys general is needed to prevent deception.  Nor does it cite anything warranting a multi-product order, or one that compels controversial speech.  And it remarkably argues that whether consumers would be harmed by the order is *irrelevant*.  None of this remotely provides a basis for any order, let alone the expansive one the commissioners adopted.  Their decision and the order should be vacated.

# ARGUMENT

## I.    THE FTC'S UNCONSTITUTIONAL PROCEEDING

### A.    Due Process

The commissioners improperly refused to disqualify Chair Khan based on anti-Intuit remarks she made while serving as a judge in this case, including agreeing Intuit was an "evil actor" "trick[ing] and trap[ping consumers] into paying" for its products, and urging action to stop Intuit's "lawbreaking."  Opening Br. ("OB") 23-26.

In response, the Commission first states (Br.53) that disqualification was unwarranted because Intuit cannot prove that Khan could not set aside her preconceived conclusions.  The actual standard, however, is whether "a reasonable person, knowing all the circumstances involved, would harbor doubts about [her] impartiality," *Westbrook v. Thaler*, 585 F.3d 245, 258 (5th Cir. 2009).  That standard is met here.  OB.23-24.

The FTC also isolates each instance of Khan's bias.  But courts must consider "the totality of circumstances" when evaluating a due-process claim like Intuit's.  *United States v. Rusmisel*, 716 F.2d 301, 305 (5th Cir. 1983); *see also Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (facts insufficient alone to satisfy a standard can, taken together, do so).

Under the proper standard and analysis, the FTC's arguments fail.  The FTC notes (Br.54) the perfunctory acknowledgements in *some* of Khan's statements that Intuit's misconduct was "alleg[ed]."  But she omitted that qualifier in telling Congress—while sitting as an adjudicator here—that Intuit's conduct involved "deceptive practices."  Transcript of House Committee on the Judiciary Hearing Regarding Oversight of the Federal Trade Commission 74 (July 13, 2023).  She also referred to "our complaint," *id.*, confirming that she was not a neutral judge but Intuit's adversary.  Reasonable observers, considering this alongside Khan's other statements, would doubt her partiality.

The FTC's distinctions (Br.55-56) of the cases Intuit cited to support disqualification (OB.25) fall short.  No distinction changes the fact that Khan repeatedly criticized Intuit while sitting as a judge in its case.  She was subject to the same standards as article III judges, OB.23, who unquestionably would need to recuse or be disqualified, *see, e.g.*, *In re Boston Children's First*, 244 F.3d 164, 166-167 (1st Cir. 2001); *United States v. Cooley*, 1 F.3d 985, 990, 995 (10th Cir. 1993).

Finally, the other extensive evidence of prejudgment Intuit cited confirms the need for recusal.  OB.15-16, 22-23.  Ignoring most of this, the FTC protests (Br.52) that it has dismissed many cases "in recent decades" on the merits.  That is

wrong: Since 1978, under 4% of cases have been so resolved, including *zero* since 1999. OB.23.

### B.    ALJ Removal Protections

The FTC never disputes that its ALJs enjoy the same tenure protections held unconstitutional in *Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022) (subsequent history omitted). It offers no good reason to ignore this constitutional defect.[1]

The FTC argues (Br.56) that under *Collins v. Yellen*, 594 U.S. 220 (2021), agency action is void only if Intuit demonstrates prejudice. Not so: The FTC's order is void because the ALJ's statutory authority to oversee adjudications is not severable from his tenure protection. OB.28-29. The FTC's response (Br.59-60) relies on an incorrect severability standard, drawn from *Barr v. AAPC, Inc.*, 591 U.S. 610 (2020). That "plurality opinion does not constitute binding precedent." *Campbell v. St. Tammany Parish School Board*, 64 F.3d 184, 189 (5th Cir. 1995). And this Court subsequently reaffirmed that a provision is non-severable where "Congress would not have enacted" the post-severance statute "had [it] foreseen" the rulings invalidating the provision. *United States v. Bonilla-Romero*, 984 F.3d 414, 418 (5th Cir. 2020).

---

[1] The FTC assertion (Br.56-57) that "[t]he ALJ's removal restriction is consistent with Article II" is foreclosed by the Supreme Court's *Jarkesy* opinion, *see* 2024 WL 3187811, at *7.

The FTC does not rebut the evidence (OB.28-29) that Congress would not have granted ALJs extensive powers had it known they would be subject to at-will presidential removal.  The FTC's observation (Br.60) that agency officials oversaw adjudications before the Administrative Procedure Act was enacted is immaterial; the APA both gave those officials more power and ensured they would not be subject to excessive presidential pressure.  OB.28-29.  Similarly, the provisions the FTC says "protect[] the integrity of ALJ proceedings … distinct from tenure protection" (Br.60-61) guard against *prosecutorial* overreach.  None protects agency *adjudicators* from improper pressure.  These protections thus do not satisfy Congress's goal to shield ALJs from undue influence.

Lastly, the FTC contends (Br.59-60) that this case is "analogous" to *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020), and *Free Enterprise Fund v. PCAOB*, 561 U.S. 447 (2010).  Neither case, however, involved ALJs.  Hence, the independence-related concerns that drove Congress to confer significant powers on ALJs were not at issue.

## C.    Administrative Adjudication Of Private Rights

As will be explained fully in Intuit's supplemental brief, the Supreme Court's *Jarkesy* decision confirms that article III bars the FTC's adjudication of Intuit's private rights.  The FTC defends this administrative adjudication by arguing (Br.62-65) that the proceeding adjudicated public rights.  But the "public

rights exception is … an *exception*," and "the legal basis for the assertion of the doctrine" must be "evaluated … with care." *Jarkesy*, 2024 WL 3187811, at *12. The FTC does not even argue that deceptive-advertising cases have the historical pedigree *Jarkesy* requires to implicate public rights—rightly so. As Intuit explained (OB.31-32), deceptive-advertising cases, including for equitable relief, were often pursued at common law.

## II.  THE FTC'S FLAWED DECEPTION HOLDING

### A.  Lack Of Substantial Evidence Of Deception

The FTC's defense of the deception ruling rests heavily on the substantial-evidence standard. But that standard "requires meaningful [judicial] review," not "rubber-stamping agency factfinding." *Dickinson v. Zurko*, 527 U.S. 150, 162 (1999). Here, the evidence the commissioners relied on does not support the deception ruling, and the evidence they *ignored* eviscerates that ruling.[2]

### 1.  The ads

The FTC says (Br.18) that the commissioners' deception ruling can rest solely on the challenged ads, disregarding "testimony or exhibits" in the record. But the agency has explained that "if extrinsic evidence has been introduced, that

---

[2] Intuit properly supported its arguments with citations to papers from the agency proceedings. *Contra* Br.21 n.2 (relying on a decision that was not an agency case).

evidence 'must be considered.'" *In re POM Wonderful LLC*, 155 F.T.C. 1, 9

(2013). Extrinsic evidence here defeats any claim of deception.

That aside, the ads supply no (let alone substantial) evidence of deception.

The FTC's contrary argument depends largely (Br.18) on isolated snippets from

the ads, an impermissible approach (OB.48-50). For example, the FTC ignores

that the ads advertised "TurboTax *Free Edition*" (or similar products), not

"TurboTax." The FTC also repeatedly misstates (e.g., Br.18) that the advertised

products were "*not* free for most consumers." To reiterate, "it is undisputed that

TurboTax Free Edition is," like the other products in the challenged ads, "free—*no

one can pay to use it*." OB.3-4.

Next, the FTC contends (Br.19) that Intuit's "simple returns" disclosure was

facially inadequate, i.e., irrespective of extrinsic evidence bearing on reasonable

consumers' understanding. But not even the commissioners so held, *see* Op.43-45

(relying on extrinsic evidence), and this Court "may not affirm an agency decision

on reasons other than those [the agency] provided," *Strand Theatre of Shreveport

Corp. v. NLRB*, 493 F.3d 515, 520 n.3 (5th Cir. 2007). As for the challenged ads'

other disclosures—identifying the specific product advertised and directing

consumers to find full details at TurboTax.com—the FTC echoes (Br.19) the

commissioners' *ipse dixit* that those disclosures "'provide almost no information,'"

ignoring Intuit's argument (OB.50) that those disclosures satisfied the "key criteria" of "effective disclosure[s]."

The FTC also asserts (Br.19) that Intuit never "address[es] the Commission's finding that consumers were unlikely to *notice* the disclosures in many TurboTax ads" because the disclosures were supposedly "inconspicuous" (Br.27). Intuit did address that, explaining that—according to the *only* evidence that objectively measured conspicuousness, RPF¶¶234-237, 258-259—the "disclosures' size, placement, and duration were consistent with or better than comparable ads' disclosures," OB.7. Likewise false is the FTC's repeated assertion (e.g., Br.27) that "Intuit does not dispute that the 'simple returns' disclosure was missing from many ads." Intuit does dispute that. OB.7, 34. So does FTC counsel, who conceded below that "a simple tax returns only" disclosure appears in "most, if not all" of the challenged ads. RPF¶308. And the few ads that did not include it contained materially similar disclosures. RPF¶215, 267.

Finally, the FTC has no sound answer to U.S. District Judge Charles Breyer's deep skepticism of its deception theory. Although he of course did not formally "pass[] judgment on the merits" while addressing a preliminary-injunction motion, Br.20, his scorn for the FTC's theory was obvious, OB.15, 34. The language the FTC cites to suggest otherwise (Br.20) reflects not his conclusions but his restatement of the FTC's arguments—made so he could "figure

out exactly what [the FTC's] quarrel is with," RX73 at 15:2-3.  That that is the best the FTC can muster speaks volumes.

### 2.     Extrinsic evidence the commissioners invoked

The FTC does not render adequate the extrinsic evidence on which the commissioners' deception ruling relies.

a.     Rather than contend with what Intuit's documents actually conveyed (OB.42-43), the FTC repeats the commissioners' selective reading.  That includes misrepresenting (Br.21-22) what Intuit's marketing documents say, isolating statements about telling consumers they could file for free while ignoring *immediately adjacent* language showing that those consumers were ones who *could* file for free, RRF¶¶613, 618.

The FTC's reliance on Intuit's ad-testing documents (Br.22-23) is equally misconceived.  The cited tests showed consumers draft ads that did not include disclosures—unlike the ads that consumers actually saw.  RRF¶609; RPF¶699.  Moreover, the FTC's reliance on a 2018 test for the proposition that consumers "associated 'free' with the *entire* TurboTax brand" (Br.22) is absurd.  That test asked:  "Which brand do you think this ad was for?"  RRF¶609.  The *correct answer* was TurboTax.  As for the 2021 test, Intuit's explanation (OB.42) that the test was given to consumers who were disproportionately likely to qualify for free

products is not "speculation" (Br.22). It is based on uncontested testimony and the fact that younger individuals more likely have simple returns. RPF¶690.

b.      Nathan Novemsky's survey was riddled with methodological flaws—including, incredibly, failing to show participants any challenged ads or webpages. OB.41-42. The FTC says (Br.24) that that failure enabled Novemsky to measure the effects of the entirety of Intuit's "extensive marketing efforts." That makes no sense; consumers cannot react to the entirety of something when they are shown none of it. The fact remains: "Because [Novemsky] did not show the survey respondents [Intuit's] ads, there is no way for anyone to know whether the respondents had [Intuit's] ads in mind when they answered his questions." *Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F.Supp.2d 734, 752 (E.D. Mich. 2003).

Relatedly, the FTC relies (Br.24) on Novemsky's finding that consumers did not understand Intuit's "simple returns" disclosure. But it does not explain how that finding can be reliable when the survey showed participants no ads—meaning the survey omitted the context in which the challenged ads used "simple returns," RRF¶¶491-492. The Ninth Circuit recently disregarded a survey about a specific phrase that similarly withheld disclosure language; given that "omission," the court explained, the survey was not "instructive of how the 'reasonable consumer' underst[ood] the phrase." *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1099 (9th Cir. 2023). The FTC offers no legitimate basis for a different conclusion here,

merely purporting (Br.24 & n.5) to distinguish *McGinity* on the conclusory (and

debunked, OB.50-51) ground that the disclosures Novemsky withheld "did not

clarify the meaning of 'simple.'"

The FTC similarly has no persuasive response to the remaining flaws Intuit

identified with Novemsky's survey (OB.41-42).  For instance, the FTC asserts

(Br.23 n.4) that some surveys may be reliable without a control.  But likelihood-of-

confusion surveys like Novemsky's *do* require a control.  *See* RRF¶481; Jay, *Ten

Truths of False Advertising Surveys*, 103 Trademark Rep. 1116, 1143 (2013).

"Without a proper control, there is no benchmark for determining whether a

likelihood of confusion estimate is significant or merely reflects [survey] flaws,"

*THOIP v. Walt Disney Co.*, 690 F.Supp.2d 218, 240 (S.D.N.Y. 2010).

The FTC's defense of Novemsky's decision to allow opt-outs (Br.24-25)

likewise fails.  The Privacy Act is no excuse because the FTC was not required to

maintain Novemsky's results in a "system of records," as defined in the act, 5

U.S.C. §552a(a)(5).  Nor does it matter that Novemsky "deferred the … opt-out

until the survey's conclusion," Br.24.  That deferral *amplified* the problem,

allowing consumers to reflect on the consequences of their responses when

deciding whether to opt out, RRF¶541.

c.      The FTC still has not explained how the paltry number of complaints

the commissioners cited evinces the widespread and long-lasting deception

alleged.  Its contention (Br.25) that some "[d]eceived consumers may decide not to complain" is unavailing given undisputed evidence that, *in the aggregate*, consumers respond to deceptive advertising by complaining, RPF¶¶624-625.  As the federal judge in an analogous case recognized, "if consumers believed that the terms in … advertisements did not match" reality, their "feeling of deception would [be] reflected in" consumer-feedback data commensurate with the reach of the ad campaign.  *FTC v. DirecTV*, 2018 WL 3911196, at *18 (N.D. Cal. Aug. 16, 2018).  As there, the FTC here challenges "years' worth of advertisements" across "different formats."  *Id*. at *5, *15.  Indeed, consumers had *billions* of interactions with Intuit's challenged ads.  RPF¶637.  Against that backdrop, the miniscule number of complaints identified (not to mention the overwhelming evidence of consumer satisfaction, OB.37) "underscores how this case is very unlike the straightforward deception cases upon which the FTC purports to rely," *DirecTV*, 2018 WL 3911196, at *18; *see* OB.35-37.  That is particularly true given that an FTC economist's analysis confirms that Intuit's complaint rate is inconsistent with deception.  OB.35.  The FTC's response (Br.25 n.6)—that Intuit "misrepresent[s]" that analysis—cannot be credited, as the agency identifies *no* misrepresentation.

Lastly, the FTC wrongly suggests (Br.25) that complainants' deposition testimony reflected deception.  In reality, the depositions *contradict* the agency's

deception theory, showing the complainants understood that free TurboTax

products were for taxpayers with simple returns.  RPF¶¶634-635.

### 3.    Additional evidence ignored or misconstrued

Intuit "asks this Court [not] to reweigh the evidence" (Br.26), but to "fairly

consider evidence" that "detracts" from the commissioners' ruling—as the

substantial-evidence standard requires, *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1059-

1060 (5th Cir. 2023)—and not to countenance the FTC ignoring (and

misrepresenting) evidence in defending the commissioners' view that a substantial

minority of reasonable consumers was likely to be deceived by the challenged ads'

"simple returns" disclosure.

The commissioners failed to consider significant evidence that detracts from

their deception ruling.  OB.34-40.  That includes evidence that reasonable

consumers understand that free-tax-preparation offers typically cover only basic

tax situations, RPF¶¶473-484; that Intuit's use of "simple returns" followed

"industry convention," RRF¶697; and that consumers found Intuit's disclosures

"easy to understand," RPF¶¶134, 869, and in fact understood them, RPF¶635.

The FTC misconstrues this evidence, to the extent it engages with the

evidence at all.  For example, slight variances in "[t]he private sector's use of

'simple'" (Br.27) are irrelevant.  What matters is companies' consistent use of

"simple returns" to convey that qualification for free products depends on tax-

return complexity.  RRF¶697.  The FTC likewise misses the point in asserting (Br.27) that consumers may not have been "aware of [government] documents" using the term "simple returns."  What matters (OB.38) is that the government's use of the term shows the term is widespread—a point the FTC ignores.  Finally, Intuit does not argue that consumers must "educate themselves" to understand the "simple returns" disclosure (Br.28).  Intuit argues (and unrebutted evidence shows, OB.40) that reasonable consumers *do* undertake research and consultation when selecting a tax-prep product.

In sum, the FTC's deception ruling is not supported by substantial evidence.

## B.    The Commissioners' Multiple Legal Errors

The FTC fails to explain why each of the legal errors Intuit identified does not require vacatur.  Indeed, vacatur is even more clearly appropriate now, because whatever "deference" the FTC claimed its interpretation of the FTC Act was due (Br.16) did not survive the Supreme Court's intervening holding that "agency interpretations of statutes[] … are *not* entitled to deference," *Loper Bright Enterprises v. Raimondo*, 2024 WL 3208360, at *12 (U.S. June 28, 2024).

### 1.    Heightened disclosure standard

The FTC wrongly claims (Br.28) that the commissioners "did not apply a 'heightened disclosure standard' to 'free' advertisements."  The commissioners stated (Op.45-46) that "a 'free' message is extremely powerful"; that disclosures

associated with such messages "must be commensurate with th[at] strength"; and that, "as a result," the disclosure requirement for "free" ads is "particularly strong."

Nor is the commissioners' heightened standard—under which free-product ads must disclose an offer's terms in exhaustive detail, OB.44—"supported by [FTC] guidance" (Br.29), such as the FTC's *Policy Statement on Deception*, 103 F.T.C. 174 (1983). That policy statement establishes standards "undergird[ing] *all* deception cases," *id*. at 175 (emphasis added); it does not condone special treatment for cases involving free claims.

The FTC next contends (Br.29-30) that the commissioners' standard flows from agency guidance stating that "'[d]isclosures that are an integral part of a claim' … must 'be placed … next to the claim.'" But under the guidance, what is "integral" is the "nature and relevance" of limitations, FTC, *.com Disclosures* 10, A-8 (Mar. 2013), https://bit.ly/3S3xCOq. The challenged ads disclosed that next to the relevant claim. OB.45.[3]

Equally unavailing is the FTC's effort (Br.30) to ground the commissioners' standard in its "Free Guide," 16 C.F.R. §251.1. That guide applies not to standalone free offers (like Intuit's) but to free offers that apply "with the purchase of some other article or service," *id*. §251.1(a). In other words, the guide applies

---

[3] The FTC never disputes that the logic of the *.com Disclosures* guidance extends to all the challenged ads, not just those online.

only to offers that are—as in the lone case the FTC cites (Br.30)—"not truly free," *Spiegel, Inc. v. FTC*, 494 F.2d 59, 63 (7th Cir. 1974). Nothing in it suggests that it applies here, where it is undisputed that "consumers using any of the free TurboTax SKUs … cannot [] pay … to do so," RRF¶596.

Moreover, "the Free Guide … do[es] not constitute binding law," meaning "violation of the guidance … do[es] not establish a violation of the FTC Act." Order Denying Intuit's Mot. for Discovery 4 (Nov. 7, 2022). The FTC confirmed as much when it introduced the guide, which it described as "interpretive … and thus advisory," 36 Fed. Reg. 21517, 21517 (Nov. 10, 1971). Caselaw likewise holds that agency "interpretations contained in … enforcement guidelines … lack the force of law," *Christensen v. Harris County*, 529 U.S. 576, 587 (2000), meaning they "bind[]" *only* "the agency," *Apter v. Department of Health & Human Services*, 80 F.4th 579, 594 (5th Cir. 2023). Hence, such guidelines are "not fixed rules" with which non-compliance is a permissible basis for imposing liability. *FTC v. Mary Carter Paint Co.*, 382 U.S. 46, 48 (1965).

Finally, the FTC never confronts the anomalous consequences the commissioners' standard produces. The agency does not dispute that the standard is inconsistent with the commissioners' own cease-and-desist order (OB.47) and would harm consumers (OB.48). And its lone response to Intuit's observation that the *IRS's* free-product marketing violates the commissioners' standard (OB.47-48)

- 18 -

rests on the false claim (Br.30) that Intuit informs consumers of ineligibility for a free product "only … after" consumers "enter[] their data." Intuit's website "lists … tax situations … applicable to each product" "*before* [consumers] start preparing their taxes." Op.30 (emphasis added).

## 2.    Piecemeal ad analysis

Addressing Intuit's argument (OB.48-51) that the commissioners never conducted the required holistic analysis of the challenged ads, the FTC says (Br.33) that "the Commission accounted for every relevant aspect of the ads." Not true. By engaging in siloed analysis of the ads' various disclosures, the commissioners failed to account for an aspect of the ads that agency policy requires "be considered": "the juxtaposition of various phrases," *Policy Statement on Deception*, 103 F.T.C. at 176. That policy commits the Commission to consider, for example, whether one phrase "immediately precedes" another and, if so, what is "conveyed" "[b]y placing th[o]se two statements in close proximity." *Id*. at 176 n.7. Here, the commissioners did not consider the fact that "simple returns only" immediately preceded the challenged ads' invitation to "see details" at TurboTax.com, or that by juxtaposing those statements, the ads clearly conveyed that consumers could not conclude that the advertised product would cover their tax situation *without* seeing details on the website. RPF¶¶131, 311-334, 503-527. Instead, the commissioners relied on a survey that presented consumers with the

phrase "simple returns only"—*without* the context that surrounded that phrase in the challenged ads.  *Supra* p.12.

### 3.   Deceptive-door-opener theory

Although Congress and courts have understood the deceptive-door-opener theory *not* to apply online (OB.53-54), the FTC contends (Br.36) that the theory is "especially important" in that setting due to the "proliferation" of online advertising.  But the theory was developed to address problems not present in e-commerce, such as consumers being lured to a physical facility under false pretenses, *Resort Car Rental Systems, Inc. v. FTC*, 518 F.2d 962, 964 (9th Cir. 1975) (per curiam), or induced to literally open their doors so that salesmen could "gain entrance into [their] homes," *Encyclopaedia Britannica, Inc.*, 87 F.T.C. 421, 496 (1976).  Such a theory has no place in the e-commerce context.[4]

Seeking to disprove that the decision here was the first ever to apply the deceptive-door-opener theory in the online context, the FTC points (Br.35) to *FTC v. Grant Connect, LLC*, 827 F.Supp.2d 1199 (D. Nev. 2011).  But it never answers Intuit's argument (OB.54) that, if anything, that case shows that the theory does *not* apply online.  The FTC also points (Br.35) to *FTC v. Financial Freedom Processing, Inc.*, 538 F.App'x 488 (5th Cir. 2013).  There, however, the FTC "did

---

[4] The fact that some of the challenged ads appeared on "TV and radio" (Br.36) does not mean this is not an e-commerce case.  The products at issue were accessible only through TurboTax.com (or its mobile equivalent).  OB.11.

not … challenge" the district court's holding that "deception should be evaluated [based] on … all information … disclosed to consumers." *Id*. at 489-490. The commissioners' adoption of the opposite position here is arbitrary and capricious. *See Clarke v. CFTC*, 74 F.4th 627, 641 (5th Cir. 2023). And the FTC's remaining cases (Br.35-36) are inapposite because, in each, it was the allegedly deceptive material—not clear and detailed disclosures—that appeared online. *See, e.g.*, *FTC v. AMG Capital Management, LLC*, 910 F.3d 417, 421, 424 (9th Cir. 2018). Lastly, the FTC fails to distinguish the cases Intuit cited (OB.53) confirming that the door-opener theory does not apply online. It merely declares (Br.37 n.11) that "those [cases] do not set out a different rule" than the one the commissioners applied. That is wrong; they *do* set out a different rule. OB.53.

The FTC likewise fails to explain how disregarding the disclosures on TurboTax.com (the consequence of applying the door-opener theory here) is consistent with the requirement to consider any information readily available to consumers that would easily resolve any ambiguity, OB.52. The FTC says (Br.36) that the cases Intuit cited recognizing that requirement did "not arise under the FTC Act." But they arose under "statutes … patterned on the Act," *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474 (7th Cir. 2020). Nor can the FTC distinguish Intuit's cases on the ground that they involved disclosures appearing on "the *product itself*" or its packaging, Br.36. The TurboTax website is, in practical

- 21 -

effect, the product packaging here, because consumers must visit it to use TurboTax, OB.11.

Finally, the FTC notes (Br.34) the commissioners' conclusion that TurboTax.com itself "reinforced the [supposed] deception." That conclusion was transparently an afterthought; in fact, the ALJ noted that the FTC's trial brief did not argue that anything on the website was "among the advertisements claimed to be deceptive," ID.204 n.31. In any event, the FTC's critique of TurboTax.com is belied by the commissioners' acknowledgment that the site "lists each TurboTax product, its price, and examples of tax situations that are applicable to each product"—again, all "*before* [consumers] start preparing their taxes," Op.30 (emphasis added).

## III.    THE UNLAWFUL CEASE-AND-DESIST ORDER

### A.    The FTC Fails To Justify Any Cease-And-Desist Order

No cease-and-desist order is appropriate here because Intuit has stopped running the challenged ads and the consent order with 51 state attorneys general prevents any future deception. The FTC's responses are meritless.

First, the FTC bore the burden of *proving* that relief beyond the consent order was needed, yet its counsel offered no evidence about consumers' perceptions of ads that ran after that order took effect. In fact, the only evidence

about post-consent-order ads shows they are *not* deceptive.  RPF¶804.  The ads themselves confirm that:



RX1547.



GX734.

Ad · https://turbotax.intuit.com/free/taxes  ⋮

TurboTax® Official Site - $0 Fed. $0 State. $0 To File.

Free For Simple Tax Returns Only With TurboTax® Free Edition. See If You Qualify Today. Get A
Jumpstart On Your Taxes. Import Your Tax Forms And File For Your Max Refund Today. File With
Confidence. Audit Support Guarantee. Maximum Refund Guaranteed.

RX1438; *see also* RPF¶¶335-352; OB.56-57.

The FTC dismisses (Br.40) Intuit's recent ad testing, repeating the

commissioners' criticisms (Op.54-55). Those criticisms are untenable. For

example, Intuit did not fail to assess whether participants "could" file for free

(Br.40); it knew most consumers were likely eligible to do so, RPF¶¶705-706. This criticism, moreover, applies equally to the testing the commissioners relied on. GX340; GX460; RPF¶¶689-690; RRF¶¶561-562, 606. That selective application renders their decision arbitrary and capricious. *See Chamber of Commerce of United States v. DOL*, 885 F.3d 360, 382 (5th Cir. 2018). Indeed, the commissioners' preferred testing suffered from numerous flaws they ignored. *Supra* pp.11-12.

The FTC next argues (Br.38) that "gaps" and "loopholes" in the consent order prospectively permit "the same deception" for which Intuit was held liable. Not so. Among other things, the consent order prohibits disclosures using only "small white letter[ing]" on moving backgrounds and forbids ads that repeat the word "free," RX261 at 7-8—both central to the FTC's arguments (Br.6-7). In fact, the FTC effectively concedes (Br.40-41) that the consent order sufficiently addressed disclosure legibility.

All that aside, the FTC's order shows that the consent order's claimed gaps are illusory. For example, while the commissioners complained that the consent order requires "no audio disclosures" in some "space-constrained video ads," Op.84, their order requires *no disclosures* about qualifications—written or audio— in *any* space-constrained ads, Order §I.C. Similarly, the commissioners faulted the consent order for allowing supposedly ambiguous eligibility disclosures, Op.84,

but their order requires *no* eligibility disclosures in the many ads with space constraints, OB.57.  And Intuit already addressed (OB.56-57) the ads the FTC says (Br.38-40) highlight these gaps.

Amici states' assertion (Br.25-26) that the consent order is "different" from the FTC order is undisputed but beside the point.  The relevant question is whether the FTC order is *necessary* given the consent order.  On that question, amici's silence speaks volumes.

The FTC next contends (Br.40-41) that additional factors justify the cease-and-desist order, irrespective of the consent order.  That is incorrect.  The consent order effectively moots this case by precluding any "reasonable expectation that the wrong will be repeated."  *Texas v. EEOC*, 933 F.3d 433, 449 (5th Cir. 2019); *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 97 (2013).  The case the FTC counters with, *SEC v. Gann*, 565 F.3d 932 (5th Cir. 2009), is inapposite because the defendant there voluntarily stopped the challenged conduct—and nothing prevented that conduct from resuming, *see id.* at 939-940.

In any event, the other factors the FTC invokes do not help it.  To start, the FTC misrepresents that Intuit does not challenge that the alleged deception was "willful" (Br.40, 43).  Intuit has consistently argued that the only reliable evidence about its intent shows that Intuit has always sought to be honest with consumers.  Indeed, FTC counsel conceded before trial that they lacked evidence of deceptive

intent. RPF¶175. And at trial, the evidence showed that Intuit "would have stopped" running any ad it had reason to believe was deceptive. RPF¶174; *accord, e.g.*, RPF¶¶169-173. Unsurprisingly given that evidence, the ALJ credited "Intuit's witnesses testifying to Intuit's commitment not to deceive its customers." ID.221. That finding, which the commissioners did not disturb, defeats any notion of intentional deception.

That Intuit knew about investigations or allegations about its ads (Br.40) does not justify the order either. "[A]llegations are not evidence of the truth of what is alleged," *Wright v. Farouk Systems, Inc.*, 701 F.3d 907, 911 n.8 (11th Cir. 2012), so no conclusion about Intuit's intent can be drawn from them. Otherwise, companies would have to adjust their conduct with every investigation or lawsuit, no matter how frivolous. Regardless, many of the allegations here were unrelated to the deception the FTC alleged, and *none* of the cases was successful. RRF¶¶917-934. Only the FTC—with its home-court advantage—has deemed the challenged conduct unlawful.

Finally, considering Intuit's commitment not to deceive, simply labeling the challenged advertising "broad[ and] enduring" (Br.40) cannot justify the otherwise-unwarranted order.

## B.     The FTC Fails To Justify The Order Here

1.     The commissioners' rationale for the order contradicts its terms, rendering it arbitrary and capricious.  OB.47, 57.  The FTC responds (Br.41-42) that the mandated 37-percent-of-taxpayers-qualify disclosure informs consumers better than "simple returns."  To the contrary, the percentage disclosure—unlike "simple returns"—says *nothing* about exactly who qualifies.  Nor does the FTC cite anything to support its conjecture (Br.42) that the percentage disclosure "alters the net impression that consumers can file for free."

2.     The FTC argues (Br.43) that a multi-product order is justified because Intuit knew about customer frustration.  But the vast majority of feedback received was positive, OB.35-36, which reasonably led Intuit to believe its ads were not misleading.  RPF¶¶649-662, 773; *see* OB.6-7.  As an Intuit executive testified, it "wouldn't make sense" to focus on minimal negative comments; instead, "you look at … trends … and what the prevailing data is."  Hr'g Tr.1504-1505.

The FTC's argument, moreover, is irrelevant to the prerequisite for a multi-product order.  What the FTC needed was evidence sufficient to meet its burden of showing that Intuit's alleged "violations were readily transferable to other … products."  *Kraft, Inc. v. FTC*, 970 F.2d 311, 327 (7th Cir. 1992); *see also Standard Oil Co. of California v. FTC*, 577 F.2d 653, 662-663 (9th Cir. 1978).  Its brief cites no such evidence, because there is none.

The best the FTC can do is point to the fact—from outside the record—that Intuit has a free version of its Mailchimp marketing platform.  But there was no discussion of Mailchimp at trial, the commissioners' ruling and order offer no explanation of how the alleged violations would be transferrable to Mailchimp, and Intuit did not even own Mailchimp when the challenged ads ran.

These systemic defects in the order are not cured by the FTC's suggestion (Br.45) that Intuit can "seek relief" from the Commission down the road as "situation[s] arise."  The same argument was rejected in *Standard Oil*.  *See* 577 F.2d at 661-662.  And it is hardly consolation to tell Intuit to seek relief from the same biased agency that issued the flawed order.  Likewise, Intuit should not be required to speculate—for the next *twenty years*—about the effect of a vague and indeterminate order on its diverse range of current and future business lines, particularly given the product-specific theories that are the order's exclusive focus.

3.    The FTC argues (Br.46) that Provision I.B.2 is not impermissibly vague because it "tracks verbatim" the FTC's Free Guide.  But the *guide* is impermissibly vague, saying nothing about what it means "to leave no reasonable probability" (16 C.F.R. §251.1(c)) that consumers might misunderstand the offer.  Whether or not that ambiguity is permissible with generalized guidance, the FTC's authority to issue cease-and-desist orders requires terms "stated with clarity and precision," to avoid violating due process, *LabMD, Inc. v. FTC*, 894 F.3d 1221,

1235-1236 (11th Cir. 2018).  An "indeterminable standard of reasonableness" like the one here thus cannot stand.  *Id.* at 1236-1237.  Moreover, enforcing the Free Guide as a binding consent-order provision exceeds the FTC's enforcement authority; the FTC Act prohibits ads *likely* to deceive a *substantial minority* of reasonable consumers, not ads that *might* leave *any* consumers misunderstanding the offer.

The FTC's reliance on the Free Guide separately fails because, again, the guidance is not binding law.  *Supra* p.18.  Nor does it apply to standalone free offers like those here.  *Supra* pp.17-18.  And the fact that the commissioners simply parroted inapplicable guidance underscores that they made no effort to provide precise injunctive terms that account for this case's specific circumstances (much less offered "extensive guidance" (Br.46)).

4.    The FTC (Br.47) mischaracterizes Intuit's compelled-speech argument as an argument that Intuit cannot be compelled to inform consumers about factual information.  In reality, Intuit argues only that the commissioners' order unconstitutionally compels speech that is controversial and unjustified.  OB.64-67; *Book People, Inc. v. Wong*, 91 F.4th 318, 340 (5th Cir. 2024).

The FTC insists (Br.47-48) that there is nothing misleading about telling taxpayers that most do not qualify for free TurboTax products.  But most consumers who consider using a TurboTax product *will* qualify to file for free.

RPF¶¶129, 464-465.  So it *is* misleading to tell those consumers that they likely

will not qualify.  But that is what the order requires.

Even if the compelled disclosure were factual and non-controversial, it

would still be impermissible.  The FTC had to *prove* that any disclosure is

appropriately tailored; "speculative" justifications or "purely hypothetical benefits

when the government 'points to nothing' supporting its interest" are insufficient,

*Chamber of Commerce of United States v. SEC*, 85 F.4th 760, 770-771 (5th Cir.

2023).  Here, the FTC "points to nothing" supporting its claimed interest in the

compelled disclosure.  *National Institute of Family & Life Advocates v. Becerra*,

585 U.S. 755, 777 (2018).  The FTC simply did not prove its apparent hypothesis

that the "~37% of filers qualify" disclosure would meaningfully affect consumers'

understanding of free-tax-prep-product qualifications compared to existing

disclosures that told consumers TurboTax Free Edition is "For simple tax returns

only" and "See if you qualify at TurboTax.com."

The FTC is also wrong that the compelled speech is not unduly burdensome

because Intuit's website already included the percentage who qualify (Br.49).  As

explained (OB.66), Intuit—aware of the FTC's unblemished record litigating

before itself—updated TurboTax.com in anticipation of the commissioners' order.

Intuit expects it will discontinue the use of the unnecessary language if the order is

vacated.

5.    The FTC contends (Br.50-51) that Intuit's argument that consumers would be harmed by the order is not cognizable.  But the FTC concedes (Br.41, 50) that any order must reasonably relate to the challenged conduct.  An order that harms consumers is not reasonably related to preventing deceptive advertising—certainly not when the harm is deceiving customers by requiring misleading and hard-to-understand disclosures.

The FTC next argues (Br.50-51) that consumers will not be harmed because the commissioners claimed the order will convey "accurate information" and thus help consumers "determine whether they qualify" (Op.89).  But that claim lacks support.  To the contrary, *both* parties' experts agreed that disclosures like those the order requires will be ineffective, causing information overload.  OB.63-64.  The fact that the ALJ characterized the experts' testimony as addressing the "potential" to overload consumers (Op.89) does not help the FTC—that characterization simply reflected that the disclosures had not then been ordered.  Contrary to the commissioners' bald claim, moreover (Br.50), the evidence shows that consumers benefit from simple disclosures like those challenged here.  RPF¶¶139-140, 333.

## CONCLUSION

The Commission's decision and order should be vacated and the case remanded with instructions to dismiss.

July 12, 2024

Respectfully submitted,

/s/ Daniel S. Volchok
HOWARD M. SHAPIRO
JONATHAN E. PAIKIN
DANIEL S. VOLCHOK
DEREK A. WOODMAN
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6000

DAVID Z. GRINGER
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, N.Y. 10007
(212) 230-8800

## CERTIFICATE OF COMPLIANCE

According to the word-count feature of the word-processing program with which it was prepared, the foregoing brief contains 6,496 words, excluding the portions exempted by Rules 27(d)(2) and 32(f).  This brief also complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office in 14-point Times New Roman font.

/s/ Daniel S. Volchok
DANIEL S. VOLCHOK

## CERTIFICATE OF SERVICE

I caused the foregoing to be electronically filed on July 12, 2024, using the Court's appellate CM/ECF system, which effected service on all counsel of record.

/s/ Daniel S. Volchok
DANIEL S. VOLCHOK