No. 24-60040

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

INTUIT, INCORPORATED,
*Petitioner*,

v.

FEDERAL TRADE COMMISSION,
*Respondent.*

Petition for Review on an Order of the
Federal Trade Commission
(FTC Docket No. 9408)

## BRIEF OF THE FEDERAL TRADE COMMISSION
## [REDACTED PUBLIC COPY]

Of Counsel:
LOIS C. GREISMAN
  *Associate Director*

WILLIAM MAXSON
  *Assistant Director*

ROBERTO ANGUIZOLA
REBECCA PLETT
JAMES EVANS
SARA TONNESEN
  *Attorneys*

FEDERAL TRADE COMMISSION
  Washington, D.C. 20580

ANISHA S. DASGUPTA
  *General Counsel*

MARIEL GOETZ
  *Acting Deputy General Counsel*

BRADLEY DAX GROSSMAN
ANUPAMA R. SAWKAR
  *Attorneys*

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
bgrossman@ftc.gov
202-326-2994

**STATEMENT REGARDING ORAL ARGUMENT**

Oral argument would aid the Court in resolving the issues raised in this petition for review.

## TABLE OF CONTENTS

Statement Regarding Oral Argument ...................................................... i

Table of Authorities ..................................................................... iv

Citation Abbreviations ................................................................. xii

Introduction ............................................................................ 1

Jurisdictional Statement ................................................................ 3

Questions Presented .................................................................... 3

Statement of the Case .................................................................. 3

    A.   FTC Framework for Deceptive Advertising ............................... 3

    B.   Intuit's Deceptive "Free" TurboTax Claims .............................. 5

    C.   Proceedings Below ..................................................... 11

Summary of Argument ................................................................. 13

Standard of Review .................................................................... 16

Argument .............................................................................. 17

I.    The Commission Properly Found That Intuit's Advertising Was
    Deceptive ........................................................................ 17

    A.   Substantial Evidence Supports the Commission's Factual
        Finding That Intuit's Ads Were Likely to Mislead ..................... 18

        1.   The Ads Were Misleading on Their Face ........................... 18
        2.   Evidence Confirms the Deception ................................. 20
        3.   The Commission Was Not Required to Credit Intuit's
            Preferred Factual Narrative ....................................... 26

    B.   The Commission Applied the Correct Legal Framework .................. 28

        1.   Disclosures Must Be Sufficiently Clear and Prominent to
            Counteract Misleading Claims ..................................... 28

      2.    The Commission Reviewed the Ads in Full Context..........................31

      3.    Intuit's Website Does Not Cure the Deception...................................33

II.   The Remedial Order Was Within the Commission's Discretion ....................37

  A.   Substantial Evidence Supports the Commission's Finding That
       Intuit's Violations Were Ongoing and Likely to Continue ........................37

  B.   The Order is Lawful and Appropriate..........................................................41

      1.    The Order Is Reasonable in Scope .......................................................41

      2.    The Order Is Clear and Precise ............................................................45

      3.    The Order Comports with the First Amendment .................................47

      4.    Intuit's Policy Disagreements Are Baseless and Not
          Cognizable...............................................................................................50

III.  The Administrative Proceedings Were Constitutional ....................................52

  A.   The Commission Did Not Display Unconstitutional Bias...........................52

  B.   The ALJ's Involvement Did Not Taint the Proceedings ............................56

  C.   The Commission Did Not Improperly Adjudicate Private
       Rights .........................................................................................................61

Conclusion .........................................................................................................65

# TABLE OF AUTHORITIES

## CASES

*Akzo N.V. v. ITC,*
  808 F.2d 1471 (Fed. Cir. 1986) .................................................................. 65

*Am. Beverage Ass'n. v. San Francisco,*
  916 F.3d 749 (9th Cir. 2019) ..................................................................... 49

*Am. Cyanamid Co. v. FTC,*
  363 F.2d 757 (6th Cir. 1966) ..................................................................... 55

*Am. Home Prods. Corp. v. FTC,*
  695 F.2d 681 (3d Cir. 1982) ................................................................. 41, 45

*Am. Washboard Co. v. Saginaw Mfg. Co.,*
  103 F.281 (6th Cir. 1900) ..................................................................... 61, 62

*AMG Cap. Mgmt., LLC v. FTC,*
  593 U.S. 67 (2021) ......................................................................... 3, 61, 63

*Amin v. Mayorkas,*
  24 F.4th 383 (5th Cir. 2022) ..................................................................... 17

*Atlas Roofing Co. v. OSHRC,*
  430 U.S. 442 (1977) .................................................................................. 62

*Axon Enter., Inc. v. FTC,*
  598 U.S. 175 (2023) .................................................................................. 59

*Barr v. Am. Ass'n of Pol. Consultants, Inc.,*
  140 S. Ct. 2335 (2020) ......................................................................... 59, 60

*Bell v. Publix Super Markets, Inc.,*
  982 F.3d 468 (7th Cir. 2020) ..................................................................... 36

*Bowman v. USDA,*
  363 F.2d 81 (5th Cir. 1966) ....................................................................... 54

*Butz v. Economou,*
  438 U.S. 478 (1978) ............................................................................. 60, 61

*Calcutt v. FDIC,*
  37 F.4th 293 (6th Cir. 2022) ..................................................................... 58

*Calcutt v. FDIC,*
  598 U.S. 623 (2023) .................................................................................. 58

*Caperton v. A.T. Massey Coal Co.*,
556 U.S. 868 (2009) .................................................................................53

*Carter Prods., Inc. v. FTC*,
323 F.2d 523 (5th Cir. 1963) ................................................... 4, 17, 18

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*,
447 U.S. 557 (1980) .................................................................................47

*Chicago Bridge & Iron Co. N.V. v. FTC*,
534 F.3d 410 (5th Cir. 2008) ................................................... 17, 41, 50

*Cinderella Career & Finishing Sch., Inc. v. FTC*,
425 F.2d 583 (D.C. Cir. 1970) ................................................................55

*Cliffdale Assocs., Inc.*,
1984 WL 565319 (Mar. 23, 1984) ..........................................................29

*Cmty. Fin. Servs. Ass'n of Am. v. CFPB*,
51 F.4th 616 (5th Cir. 2022) ...................................................................58

*Cmty. Fin. Servs. Ass'n of Am. v. CFPB*,
601 U.S. 416 (2024) ..........................................................................58, 65

*Collins v. Dep't of Treasury*,
83 F.4th 970 (5th Cir. 2023) .............................................................56, 58

*Collins v. Yellen*,
141 S. Ct. 1761 (2021) ...............................................................56, 57, 59

*Cotherman v. FTC*,
417 F.2d 587 (5th Cir. 1969) ..................................................................45

*Decker Coal Co. v. Pehringer*,
8 F.4th 1123 (9th Cir. 2021) ...................................................................57

*Env't Conservation Org. v. City of Dallas*,
529 F.3d 519 (5th Cir. 2008) ..................................................................41

*Exposition Press, Inc. v. FTC*,
295 F.2d 869 (2d Cir. 1961) ....................................................................34

*Fanning v. FTC*,
821 F.3d 164 (1st Cir. 2016) .....................................................................4

*Free Enter. Fund v. PCAOB*,
561 U.S. 477 (2010) ..........................................................................57, 60

*Free Speech Coal., Inc. v. Paxton*,
95 F.4th 263 (5th Cir. 2024) ...................................................................48

*FTC v Indiana Fed'n of Dentists*,
   476 U.S. 447 (1986) ................................................................................17

*FTC v. Algoma Lumber Co.*,
   291 U.S. 67 (1934) .................................................................................62

*FTC v. AMG Cap. Mgmt., LLC*,
   593 U.S. 67 (2021) .................................................................................32

*FTC v. AMG Cap. Mgmt., LLC*,
   910 F.3d 417 (9th Cir. 2018) ....................................................... 32, 33, 36

*FTC v. Brown & Williamson Tobacco Corp.*,
   778 F.2d 35 (D.C. Cir. 1985) ..................................................................19

*FTC v. Cement Inst.*,
   333 U.S. 683 (1948) ...............................................................................53

*FTC v. Cinderella Career & Finishing Sch., Inc.*, 404
   F.2d 1308 (D.C. Cir. 1968) ............................................................... 53, 54

*FTC v. Colgate-Palmolive Co.*,
   380 U.S. 374 (1965) ................................................ 17, 43, 45, 50, 51

*FTC v. Cyberspace.Com LLC*,
   453 F.3d 1196 (9th Cir. 2006) ................................................................20

*FTC v. Fin. Freedom Processing, Inc.*,
   538 F. App'x 488 (5th Cir. 2013) ....................................................... 33, 34, 35

*FTC v. Fleetcor Techs., Inc.*,
   620 F. Supp. 3d 1268 (N.D. Ga. 2022) ..................................................36

*FTC v. Freecom Commc'ns, Inc.*,
   401 F.3d 1192 (10th Cir. 2005) ....................................................... 26, 64

*FTC v. Grant Connect, LLC*,
   63 F.3d 1094 (9th Cir. 2014) ..................................................................35

*FTC v. Grant Connect, LLC*,
   827 F. Supp. 2d 1199 (D. Nev. 2011) .....................................................35

*FTC v. Intuit Inc.*,
   2022 WL 1601403 (N.D. Cal. Apr. 22, 2022) ......................................11

*FTC v. Nat'l Lead Co.*,
   352 U.S. 419 (1957) ....................................................................... 41, 45

*FTC v. OMICS Grp., Inc.*,
   374 F. Supp. 3d 994 (D. Nev. 2019) ......................................................36

*FTC v. OMICS Grp., Inc.*,
    827 F. App'x 653 (9th Cir. 2020) ..........................................................36

*FTC v. On Point Cap. Partners LLC*,
    17 F.4th 1066 (11th Cir. 2021) ..................................................... 32, 35

*FTC v. Pantron I Corp.*,
    33 F.3d 1088 (9th Cir. 1994).............................................................26

*FTC v. R.F. Keppel & Bro.*,
    291 U.S. 304 (1934).........................................................................62

*FTC v. Sperry & Hutchinson Co.*,
    405 U.S. 233 (1972).........................................................................62

*FTC v. Spiegel, Inc.*,
    494 F.2d 59 (7th Cir. 1974)..............................................................30

*FTC v. Stefanchik*,
    559 F.3d 924 (9th Cir. 2009).............................................................26

*FTC v. Tashman*,
    318 F.3d 1273 (11th Cir. 2003) ........................................................28

*FTC. v. E.M.A. Nationwide, Inc.*,
    767 F.3d 611 (6th Cir. 2014)............................................ 4, 19, 33, 34

*Granfinanciera, S.A. v. Nordberg*,
    492 U.S. 33 (1989) .................................................................... 62, 64

*Grove Labs. v. FTC*,
    418 F.2d 489 (5th Cir. 1969).......................................................28, 44

*Hasie v. Off. of Comptroller of Currency*,
    633 F.3d 361 (5th Cir. 2011)..............................................................53

*Illumina, Inc. v. FTC*,
    88 F.4th 1036 (5th Cir. 2023) ...................................... 2, 16, 17, 52

*Impax Labs., Inc. v. FTC*,
    994 F.3d 484 (5th Cir. 2021)..............................................................16

*Jarkesy v. SEC*,
    143 S. Ct. 2688.................................................................................57

*Jarkesy v. SEC*,
    34 F.4th 446 (5th Cir. 2022) ......................................... 57, 58, 61, 62, 63

*Jarkesy v. SEC*,
    51 F.4th 644 (5th Cir. 2022) ...............................................................57

*K&R Contractors, LLC v. Keene*,
    86 F.4th 135 (4th Cir. 2023) .................................................58

*Kaufmann v. Kijakazi*,
    32 F.4th 843 (9th Cir. 2022) .................................................58

*Keele Hair & Scalp Specialists, Inc. v. FTC*,
    275 F.2d 18 (5th Cir. 1960)...............................................4, 42

*Kraft, Inc. v. FTC*,
    970 F.2d 311 (7th Cir. 1992).......................................... 43, 48

*LabMD, Inc. v. FTC*,
    894 F.3d 1221 (11th Cir. 2018) ...........................................46

*Landry v. FDIC*,
    204 F.3d 1125 (D.C. Cir. 2000) ..........................................59

*Leachco, Inc. v. CPSC*,
    2024 WL 2822147 (10th Cir. Jun. 4, 2024)..................... 57, 58, 59

*Litton Indus., Inc. v. FTC*,
    676 F.2d 364 (9th Cir. 1982)...............................................43

*Marine Shale Processors, Inc. v. EPA*,
    81 F.3d 1371 (5th Cir. 1996)...............................................64

*McGinity v. Procter & Gamble Co.*,
    69 F.4th 1093 (9th Cir. 2023) .............................................24

*Menard v. FAA*,
    548 F.3d 353 (5th Cir. 2008)...............................................53

*Meta Platforms, Inc. v. FTC*,
    2024 WL 1121424 (D.D.C. Mar. 14, 2024)........................ 61, 64

*Meta Platforms, Inc. v. FTC*,
    2024 WL 1549732 (D.C. Cir. Mar. 29, 2024) ...................... 52, 61

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021) .................................................37

*Mosler Safe Co. v. Ely-Norris Safe Co.*,
    273 U.S. 132 (1927)...........................................................64

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
    585 U.S. 755 (2018) ...........................................................49

*NLRB v. Jones & Laughlin Steel Corp.*,
    301 U.S. 1 (1937)...............................................................64

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
  584 U.S. 325 (2018) ............................................................64

*Perez v. Barnhart*,
  415 F.3d 457 (5th Cir. 2005) ........................................ 21, 26

*POM Wonderful, LLC v. FTC*,
  777 F.3d 478 (D.C. Cir. 2015) ................... 4, 17, 18, 21, 51

*Pub. Citizen Inc. v. Louisiana Att'y Disciplinary Bd.*,
  632 F.3d 212 (5th Cir. 2011) ............................................50

*Pulse Network, LLC v. Visa, Inc.*,
  30 F.4th 480 (5th Cir. 2022) ............................................56

*Recht v. Morrisey*,
  32 F.4th 398 (4th Cir. 2022) ............................................48

*Regan v. Time, Inc.*,
  468 U.S. 641 (1984) .........................................................61

*Removatron Int'l Corp. v. FTC*,
  884 F.2d 1489 (1st Cir. 1989) ................... 4, 28, 29, 32, 33, 46

*RJ Reynolds Tobacco Co. v. FDA*,
  96 F.4th 863 (5th Cir. 2024) ................................... 47, 48, 49

*Schnell v. State Farm Lloyds*,
  98 F.4th 150 (5th Cir. 2024) ............................................21

*Sears, Roebuck & Co. v. FTC*,
  676 F.2d 385 (9th Cir. 1982) ............................................44

*SEC v. Blatt*,
  583 F.2d 1325 (5th Cir. 1978) ...........................................37

*SEC v. Gann*,
  565 F.3d 932 (5th Cir. 2009) ........................................ 38, 40

*Seila Law LLC v. CFPB*,
  591 U.S. 197 (2020) ..................................................... 57, 60

*Singh v. Garland*,
  20 F.4th 1049 (5th Cir. 2021) ...........................................52

*Smith-Victor Corp. v. Sylvania Elec. Prods., Inc.*,
  242 F. Supp. 302 (N.D. Ill. 1965) ....................................64

ix

*Stern v. Marshall*,
564 U.S. 462 (2011) ....................................................................62

*Telebrands Corp. v. FTC*,
457 F.3d 354 (4th Cir. 2006).............................................. 18, 43, 44

*Telebrands Corp.*,
140 F.T.C. 278 (2005)................................................................18

*United States v. Benitez-Villafuerte*,
186 F.3d 651 (5th Cir. 1999).......................................................53

*United States v. Borden Co.*,
347 U.S. 514 (1954)...................................................................38

*United States v. Stalnaker*,
571 F.3d 428 (5th Cir. 2009)........................................................45

*United States v. W.T. Grant Co.*,
345 U.S. 629 (1953)...................................................................37

*Weaver v. Massachusetts*,
582 U.S. 286 (2017)...................................................................58

*Zauderer v. Off. of Disciplinary Couns.*,
471 U.S. 626 (1985) ............................................................. 47, 48

## STATUTES

15 U.S.C. §45(a) .........................................................................3

15 U.S.C. §45(b) .........................................................................3

15 U.S.C. §45(c) ......................................................................3, 17

5 U.S.C. §3105 ..........................................................................59

5 U.S.C. §552a(e)(3) ...................................................................24

5 U.S.C. §7521 ..........................................................................59

## OTHER AUTHORITIES

*FTC Policy Statement on Deception* (Oct. 14, 1983),
https://www.ftc.gov/system/files/documents/public_sta
tements/410531/831014deceptionstmt.pdf .......................................29

FTC, *.com Disclosures* (Mar. 2013),
   https://www.ftc.gov/system/files/documents/plain-
   language/bus41-dot-com-disclosures-information-
   about-online-advertising.pdf ..................................................................30

## REGULATIONS

16 C.F.R. §251.1(c) ........................................................... 30, 46

16 C.F.R. §3.42 ....................................................................57

16 C.F.R. §3.51 ....................................................................57

16 C.F.R. §3.54 ............................................................ 12, 57

88 Fed. Reg. 42872 (Jul. 5, 2023) ..........................................57

# CITATION ABBREVIATIONS

This Brief uses the following abbreviations for record documents:

| | |
|---|---|
| Bias Order | Order Denying Respondent's Motion for Discovery Pursuant to Rule 3.36 (Nov. 7, 2022) |
| Disqualification Order | Order Denying Motion To Disqualify (Oct. 19, 2023) |
| GX | Government Exhibit |
| ID | Initial Decision |
| IDF | Initial Decision Finding of Fact |
| Khan Statement | Statement of Chair Lina M. Khan Regarding the Petition for Recusal from Involvement in *Intuit Inc.* (Oct. 19, 2023) |
| Op. | Opinion of the Commission (Jan. 22, 2024) |
| RAB | Respondent's Appeal Brief |
| RPF | Respondent's Proposed Findings of Fact |
| RX | Respondent's Exhibit |
| Tr. | Transcript of Hearing Before Federal Trade Commission Administrative Law Judge (Mar. 27-Apr. 10, 2023) |

## INTRODUCTION

For years, Intuit blanketed the airwaves and internet with ads proclaiming that "TurboTax Free is free.  Free, free free free"—even though TurboTax was *not* free for two-thirds of taxpayers.  Consumers gave Intuit their time and sensitive data, only to discover later that they needed to pay to complete their tax returns using TurboTax.  Although Intuit's ads sometimes qualified the offer as applying to "simple returns only," that text was often barely perceptible—and failed to dispel consumers' misimpression that they could file for free.

After a trial, an administrative law judge found that Intuit had engaged in deceptive advertising in violation of the FTC Act.  The Federal Trade Commission affirmed that ruling on *de novo* review.  The Commission ordered that, if Intuit makes a "free" offer that is not free for everyone, it must disclose the percentage of taxpayers who qualify (or disclose that most do not qualify) and, where space permits, provide clear and conspicuous information about which taxpayers qualify.

The Commission had abundant evidence to find Intuit's ads likely to mislead reasonable consumers.  Intuit's TV commercials, for example, explicitly told consumers that "you" could use TurboTax to file for free, while burying "simple returns only" in tiny white letters that flashed on-screen for mere seconds.  Even if consumers noticed that disclaimer, the Commission found that "simple returns" did not have a clear meaning, and that consumers widely misunderstood it in practice.

Intuit knew its ads were deceiving consumers, but continued the misleading campaign anyway, hoping to convert users to a paid product. Intuit's bait-and-switch tactics to misrepresent product cost are a classic form of deception.

The Commission's remedy is sound. The Commission properly found advertising restrictions necessary because, even after a separate state settlement, Intuit continued to make prominent "FREE" claims with only a fine-print "simple returns" disclaimer. The Commission's order requires Intuit to disclose factual information necessary to cure its misleading claims, while permitting abbreviated disclosures where ads are space-constrained. Because the order remedies Intuit's deception without causing undue burden, it comports with the First Amendment. And the order is sufficiently clear, tracking the FTC's 50-year guidance on conditional "free" offers.

Finally, precedent forecloses Intuit's constitutional attacks. This Court has rejected Intuit's arguments that FTC Commissioners are improperly insulated from removal, that the FTC Act violates the nondelegation doctrine, and that "the FTC's structure, which combines prosecutorial and adjudicative functions, deprives parties of due process." *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1046-47 (5th Cir. 2023). In accusing FTC Chair Khan of prejudgment, Intuit misrepresents her public statements. Intuit's challenge to the ALJ's removal restrictions fails, too, because Intuit does not suggest that the President would have removed the ALJ and

2

the Commission would have acted differently.  And while Intuit claims the Commission violated Article III by adjudicating "private rights," the Supreme Court has held that the FTC Act creates new public rights not found at common law.

## JURISDICTIONAL STATEMENT

The Commission entered its order on January 19, 2024, pursuant to 15 U.S.C. §45(b).  Intuit timely filed its petition on January 22, 2024.  This Court has jurisdiction under 15 U.S.C. §45(c).

## QUESTIONS PRESENTED

1.  Did the Commission have substantial evidence to find that Intuit's advertising was deceptive in violation of the FTC Act?

2.  Did the Commission properly exercise its discretion when it entered a remedial order to prevent Intuit from committing similar deception in the future?

3.  Was the adjudicative proceeding constitutional?

## STATEMENT OF THE CASE

### A.    FTC Framework for Deceptive Advertising

"[S]ince the Commission's creation in 1914, it has been authorized to enforce the [FTC] Act through its own administrative proceedings."  *AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. 67, 72 (2021).  Section 5 of the Act prohibits "deceptive acts or practices" and authorizes the Commission to adjudicate those claims administratively.  15 U.S.C. §45(a)-(b).

3

To determine whether an ad is deceptive, the Commission asks "(i) what claims are conveyed in the ad, (ii) whether those claims are false, misleading, or unsubstantiated, and (iii) whether the claims are material." *POM Wonderful, LLC v. FTC*, 777 F.3d 478, 490 (D.C. Cir. 2015). The "Commission need not confine itself to the literal meaning of the words used but may look to the overall impact of the entire [ad]." *Carter Prods., Inc. v. FTC*, 323 F.2d 523, 528 (5th Cir. 1963). An ad is deceptive if it is likely to mislead "at least a significant minority of reasonable consumers." *Fanning v. FTC*, 821 F.3d 164, 171 (1st Cir. 2016) (cleaned up).

When "a defendant deploys a marketing campaign with a series of discrete communications with consumers, each advertisement must stand on its own merits[,] even if other advertisements contain accurate, non-deceptive claims." *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 632 (6th Cir. 2014) (cleaned up). Disclaimers and qualifying language must be "sufficiently prominent and unambiguous to change the apparent meaning of the claims and to leave an accurate impression." *Removatron Int'l Corp. v. FTC*, 884 F.2d 1489, 1497 (1st Cir. 1989). The Commission may order advertisers to make "affirmative disclosure" of facts "necessary to prevent deception." *Keele Hair & Scalp Specialists, Inc. v. FTC*, 275 F.2d 18, 23 (5th Cir. 1960).

**B.    Intuit's Deceptive "Free" TurboTax Claims**

Since at least 2015, Intuit told consumers they could use TurboTax to file their taxes for "free" in ads generating billions of impressions across TV, radio, and the internet.  Op.4-32.  Intuit deploys the "free" ads to "raise heads and drive traffic and acquisition[s]," hoping to convert or attract users to a paid product.  Op.2, 5.  The ads sometimes included the words "simple returns only," vague terminology that Intuit often buried in fine print.  Op.41-47.

Intuit's "free" campaign came to prominence during the 2015 Super Bowl, with a 60-second TV commercial showing a fictionalized version of the Boston Tea Party in which a British soldier quelled the revolt by asking, "what if it were free to file your taxes? … You'd pay nothing.  Not a thing.  No thing."  Op.5-6; IDF¶67; RX200 ([https://vimeo.com/877248887/eb570a3c5a](https://vimeo.com/877248887/eb570a3c5a)).  A voice-over then declared, "you can file on TurboTax for absolutely nothing.  Intuit TurboTax.  It's amazing what you're capable of."  Op.5-6; IDF¶67.  As the voice-over played, this screen appeared for three seconds:



Op.5-6; IDF¶67.  The following message appeared in small white letters across a moving gray background at the bottom of the screen: "TurboTax Federal Free Edition is for simple U.S. returns only."  But the more prominent and colorful text said, "AbsoluteZero" and "$0 To File," and Intuit's disclaimer was contradicted by the simultaneous voice-over assuring consumers they could file for "absolutely nothing."

The following year, Intuit ran another Super Bowl commercial proclaiming, "TurboTax AbsoluteZero lets you file your taxes for free. … It's free.  There's nothing to sell."  IDF¶69; GX323 ([https://vimeo.com/706541741/12acf89307](https://vimeo.com/706541741/12acf89307)).  A "simple U.S. returns only" disclaimer flashed in small white text at the bottom of the screen for two seconds.  IDF¶70.

Between tax years 2018 and 2021, Intuit bombarded viewers with commercials in which nearly every word spoken was "free."  Op.10-11.  One representative ad—which ran on over 600 TV channels and received millions of internet views in 2021 and 2022—featured an exercise instructor chanting, "Free! And free! And free! And free! Free. And free, and free. Free free."  IDF¶¶182-187, 306-14; RX1417 (https://vimeo.com/877659905/9fe13e0756).  Then came this voice-over: "That's right, TurboTax Free Edition is free. See details at TurboTax.com."  IDF¶183.  For five seconds, a "simple U.S. returns only" disclaimer appeared in tiny white letters:



RX1417.

Even if consumers noticed Intuit's "simple returns only" disclosures, determining who qualifies is hardly self-evident.  Intuit has changed its definition of "simple" at least four times since 2016.  Op.3.  At the time of the Commission's order, two-thirds of taxpayers (*i.e.*, over 100 million filers) were ineligible, including anyone with unemployment income, mortgage or property deductions, charitable donations over $300, education expenses (other than student-loan interest), or independent-contractor income.  Op.3-4; IDF¶¶25-38.

Sometimes, Intuit advertised TurboTax as free without *any* "simple returns" disclosure (Op.18-22, 40):



Op.21; GX726.

When consumers reached the TurboTax homepage, they saw more "FREE" claims, often underscored with "Guaranteed":



Op.50; IDF¶¶353-354; GX342¶95.  To access the eligibility criteria, consumers

had to notice and click on a hyperlink (typically captioned "simple tax returns" or

"see why it's free"), which appeared in much smaller letters than "FREE

Guaranteed" and "$0 To File."  Op.50.

When Intuit's website described the specific features of its products, the text

was in small, hard-to-read monochrome dwarfed by large, colorful "FREE" claims:



IDF¶376; RX138.

Many consumers attempted to use TurboTax Free Edition, but after spending time entering their data, encountered an "upgrade" screen demanding payment. Op.51-52; IDF¶¶388-393.  Consumers complained that the product was "not free as it's advertised," that Intuit's "TV commercials are a big lie," and that Intuit "state[s] free for simple returns, but over $100 later, that is not the case at all."

10

Op.58.  In 2021 alone, Intuit's databases tracked thousands of complaints from consumers supporting the allegations of deception.  Op.57-59.

## C.    Proceedings Below

In 2022, the Commission issued an administrative complaint charging that Intuit violated Section 5 of the FTC Act through misleading claims that consumers could file their taxes for free using TurboTax.  Compl. ¶¶119-20.  The FTC simultaneously sought a preliminary injunction, which a district court denied without reaching the merits.  *FTC v. Intuit Inc.*, No. 22-cv-01973-CRB, 2022 WL 1601403, at *1 (N.D. Cal. Apr. 22, 2022).  The court ruled preliminary relief was not warranted because tax day had just passed and an ALJ would soon hear the case.  *Id.*

After a two-week trial, the ALJ found the ads deceptive after admitting testimony from 41 fact witnesses and 6 experts, and over 2,350 exhibits.  ID.2, 160, 207.  Intuit then appealed the ALJ's findings to the Commission and moved to disqualify FTC Chair Lina Khan from the proceeding.

The Commission (without Chair Khan's participation) declined to disqualify Khan, holding that Intuit "has adduced no evidence—standing alone or in aggregate—of prejudgment or appearance of prejudgment."  Disqualification Order at 6.  Intuit primarily argued that Khan "adopted" a congresswoman's negative comment about Intuit during a hearing.  *Id.* at 5.  But the Commission

found that Khan neither adopted nor agreed with that comment and reminded the

congresswoman "that the case was still pending." *Id.*

Next, the Commission, on *de novo* review (16 C.F.R. §3.54(a)), affirmed the

ALJ's findings. Op.2, 80. The Commission found that Intuit's disclosures were

"too inconspicuous" and devoid of information to counteract the ads' powerful

message that consumers could use TurboTax to file their taxes for free. Op.37-46.

The ads were likely to mislead reasonable consumers, as confirmed by an expert

survey and other key evidence. Op.46-69.

The Commission's remedial order requires Intuit to make discrete

disclosures to ensure consumers will not be misled. If Intuit markets a product as

"free" that is not free to all, it must clearly and conspicuously disclose the

percentage of U.S. taxpayers (or, for non-tax products, the percentage of U.S.

consumers) who qualify or that a majority do not qualify. Order.§I.B. In addition,

if an advertisement is not "Space-Constrained," Intuit must clearly and

conspicuously disclose "all the terms, conditions, and obligations" underlying the

free offer "so as to leave no reasonable probability that the terms of the offer might

be misunderstood." Order.§I.B.2. "Space-Constrained" ads, in lieu of disclosing

all the terms, must clearly and conspicuously "direct[] consumers to view

eligibility requirements on a landing page or webpage on a TurboTax website."

Order.§I.C.  The order also forbids additional material misrepresentations, including those regarding cost and eligibility limitations.  Order.§II.

The Commission found the order necessary because Intuit's misrepresentations were ongoing, deliberate, widespread, long-running, and easily transferable to other Intuit products.  Op.81-86.  Indeed, Intuit's violations "continue[] to the present day": despite a state-law settlement, Intuit was still making prominent "FREE" claims with a "simple returns only" disclaimer while failing to provide clear and conspicuous disclosure of eligibility requirements. Op.81, 84.

Intuit filed a petition for review and moved for a stay pending appeal, which this Court denied.

## SUMMARY OF ARGUMENT

1. a. The Commission had abundant evidence to find Intuit's ads deceptive. Intuit assured consumers that "you can file on TurboTax for absolutely nothing," "[t]here's nothing to sell," and this offer was "FREE Guaranteed."  But the product was *not* free for two-thirds of taxpayers.  Many ads contained a disclaimer with the words "simple returns only," but those words were often buried in hard-to-notice fine print.

Even if consumers noticed those disclaimers, consumers had no clear understanding of "simple" returns, and Intuit's own definition was constantly

13

changing. Intuit's disclaimers did not alert consumers that they became ineligible by collecting unemployment, having a mortgage, or donating to charity.

The Commission could have found deception on the face of Intuit's ads alone, but it also credited robust evidence confirming consumers were actually deceived. Intuit's documents acknowledged that consumers were misled and did not understand its disclaimers. An expert survey showed that many consumers mistakenly believed they had "simple" returns; consumers backed this up in their testimony. Intuit itself was deluged with complaints.

b. The Commission's ruling was faithful to precedent and agency guidance.

*First*, the Commission did not apply a "heightened" standard to Intuit's ads, but applied the hornbook requirement that advertisers convey truthful claims and that any disclaimers must be sufficiently clear and prominent to dispel misimpressions. When Intuit bombarded taxpayers with ads inviting them to file for free, it became obligated to disclose material facts ensuring those claims were accurate.

*Second*, the Commission did not review ads piecemeal, but considered "each ad in its entirety," including "all disclaimers and other visual and audio cues." Op.38 n.17.

*Third*, disclosing terms on a website did not give Intuit carte blanche to run deceptive TV commercials. Each ad must rest on its own merits regardless of

14

terms disclosed elsewhere.  This principle fully applies to internet advertising, as the Commission and courts have recognized.  Besides, Intuit's website only reinforced the deception, making boldfaced, colorful promises of "FREE Guaranteed."

2. The Commission soundly applied its discretion when imposing the remedial order.  Despite a prior state settlement, Intuit continued to promote TurboTax as "FREE" with only a "simple returns" disclaimer.  The order's scope was appropriate given the Commission's findings that Intuit committed longstanding, wide-ranging violations with scienter, and that those violations were easily transferable to other products.  The order was not vague, but tracks longstanding case law and guidance.

The order's disclosure requirements comport with the First Amendment.  Intuit has no right to withhold from taxpayers the fact that most do not qualify for its "free" TurboTax offers.  This information is factual, uncontroversial, and undisputed—and it is necessary to alter the net impression cemented by Intuit ads assuring taxpayers that "*you*" can file for free.  The order minimizes Intuit's burden by allowing Intuit to run space-constrained ads featuring this brief disclosure along with a clear and conspicuous hyperlink to a webpage containing full eligibility requirements.

3. The adjudicative proceeding was constitutional.

*First*, *Illumina* forecloses Intuit's arguments that the FTC's structure violates due process, that FTC Commissioners are improperly insulated from removal, and that the FTC Act violates the nondelegation doctrine. 88 F.4th at 1046-47.

*Second*, in claiming Chair Khan's public statements show prejudgment, Intuit misrepresents isolated sentence fragments while omitting Khan's full quotes, which stressed the allegations were unproven.

*Third*, although Intuit claims the ALJ was improperly insulated from removal, Intuit does not allege it was harmed. In asserting the harm requirement should not apply to adjudication, Intuit ignores the contrary holdings of four circuits.

*Fourth*, as the Supreme Court has repeatedly held, the FTC Act created new public rights against deceptive advertising that can be adjudicated by the agency.

## STANDARD OF REVIEW

1. This Court reviews legal questions *de novo*, while "giv[ing] some deference" to the Commission's "informed judgment that a particular commercial practice is to be condemned" as violating the FTC Act. *Impax Labs., Inc. v. FTC*, 994 F.3d 484, 491 (5th Cir. 2021) (cleaned up).

2. The Court reviews the Commission's factual findings under the substantial-evidence standard. It "must accept the Commission's findings" if "supported by such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *FTC v Indiana Fed'n of Dentists*, 476 U.S. 447, 454 (1986); *see* 15 U.S.C. §45(c). That is so "even if suggested alternative conclusions may be equally or even more reasonable and persuasive." *Illumina*, 88 F.4th at 1046 (cleaned up).

The meaning of an advertisement and its capacity to mislead "are questions of fact" reviewed for substantial evidence. *Carter Prods.*, 323 F.2d at 528; *POM*, 777 F.3d at 492-93, 496. The arbitrary-and-capricious standard (Br.21-22) is "functionally the same" as "substantial evidence" when "invoked to question the factual basis for an agency's conclusions." *Amin v. Mayorkas*, 24 F.4th 383, 393 (5th Cir. 2022).

3. The Court reviews the Commission's remedial orders for abuse of discretion. *Chicago Bridge & Iron Co. N.V. v. FTC*, 534 F.3d 410, 440-41 (5th Cir. 2008).

## ARGUMENT

### I. THE COMMISSION PROPERLY FOUND THAT INTUIT'S ADVERTISING WAS DECEPTIVE

Courts must give "great weight" to the Commission's appraisal of deceptive advertising. *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 385 (1965). Here, ample evidence supports the Commission's finding that Intuit's "free" advertisements were deceptive. Intuit's assertions of legal error contravene longstanding FTC Act precedent.

A.  **Substantial Evidence Supports the Commission's Factual Finding That Intuit's Ads Were Likely to Mislead**

### 1.  The Ads Were Misleading on Their Face

The "primary evidence" in a deceptive-advertising case is the ads themselves, Br.41, and the question is whether those ads were "likely" to mislead at least a "significant minority of reasonable consumers," Br.35 (citing *Telebrands Corp.*, 140 F.T.C. 278, 291 (2005), *aff'd*, 457 F.3d 354 (4th Cir.)).  In answering that question, the Commission may "draw its own inferences from the advertisement and need not depend on testimony or exhibits." *Carter Prods.*, 323 F.2d at 528.

From the face of Intuit's ads, the Commission had substantial evidence to find that "reasonable consumers, including many of those who do not qualify, are likely to take away the message that they can file through TurboTax for free." Op.45.  Intuit's ads assured consumers that (1) "you can file on TurboTax for absolutely nothing"; (2) "[i]t's free.  There's nothing to sell"; (3) TurboTax is "free, and free, and free, and free, and free"; (4) consumers would pay "$0 to File"; and (5) the product was "Guaranteed" to be "FREE." *Supra* pp.5-9; Op.4-30. Intuit claims it "advertise[d] [the] product's true price" (Br.34), but the price was *not* free for most consumers.  *Supra* p.8.  Intuit does not—and cannot—deny that its "free" claims were material to consumers.  Op.69-70; *POM*, 777 F.3d at 491.

The Commission also had reason to find that Intuit's "simple returns" disclosure was not "sufficiently prominent and unambiguous to change the apparent meaning of the claims and to leave an accurate impression." *E.M.A.*, 767 F.3d at 632 (cleaned up); Op.41-42. The word "simple" has a "common meaning" that "differs from Intuit's definition of the term, which has changed over time to include or exclude various tax situations." Op.43. For example, low-income consumers may not realize they become ineligible "merely [by] having a mortgage or unemployment income or giving a charitable contribution." *Id.* Intuit's other purported disclosures—such as "see details at TurboTax.com"—"provide almost no information." Op.41.

Moreover, Intuit does not address the Commission's finding that consumers were unlikely to *notice* the disclosures in many TurboTax ads. *See FTC v. Brown & Williamson Tobacco Corp.*, 778 F.2d 35, 43 (D.C. Cir. 1985) (advertisements were deceptive where "fine-print" disclosures were in "inconspicuous" locations and "virtually illegible form"). Many ads lacked a "simple returns" disclosure. Op.18-22, 40; IDF¶61. Any video disclosures appeared "only in small print at the bottom of the screen"; were "faint in color"; and were "virtually lost against the other, larger, bolder printed messages, such as the TurboTax logo and the adjacent word[], 'free.'" Op.41. These disclosures "typically appeared for only a few seconds … while a voice-over simultaneously reinforced the 'free' claim." *Id.*

19

Similar problems plagued Intuit's radio commercials.  Op.42; IDF¶¶207, 211, 215, 219.[1]  And while Intuit's search ads touted "free" in large headlines, any small-print disclosures "without any accentuation[] [we]re simply lost."  Op.42.

Intuit claims—falsely—that the court in the preliminary-injunction case "rejected the FTC's theory" of deception on the merits.  Br.15.  In fact, the court stressed it was "not passing judgment on the merits," which would not be "appropriate."  RX73 at 6 & 26.  Intuit attempts to seize on the court's recognition that some ads contained a "simple returns" disclosure.  Br.34.  But Intuit omits the court's observation that "the problem is that people don't understand what 'simple' means.  Simple to one person isn't simple to another.  That is the deception."  RX73 at 38.  Indeed, the word "simple" is "misleading in that … it just has too many things in the common parlance of its understanding that would pull people in and that's why it's deceptive."  *Id.* at 15.

## 2.  Evidence Confirms the Deception

Although extrinsic evidence is unnecessary to prove liability, the Commission found that such evidence confirms both that Intuit's ads were likely to mislead and that consumers were actually misled.  Op.37-70; *see also FTC v. Cyberspace.Com LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006) ("[P]roof of actual

---

[1] GX627 (https://www.ftc.gov/system/files/ftc_gov/audio/INTUIT-FTC-PART3-000000542.MP3).

deception" is "highly probative to show that a practice is likely to mislead.").

Intuit disputes the Commission's weighing of evidence, but this Court does not

"reweigh the evidence," "substitute its judgment for the Commission['s]," or

resolve "[c]onflicts of evidence." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir.

2005).[2]

  ***a. Intuit's knowledge of deception.***   Though the FTC Act does not require

deceptive intent, *POM*, 777 F.3d at 498-99, Intuit knew its disclosures were

ineffective and its ads misled consumers.  Intuit executives recognized the "truth"

that "when you start talking about free, that's what people hear. … You can say a

lot of other things, but what they hear is free."  Op.45; IDF¶470; GX357.  Intuit

sought to "captivate[] viewers" with "consistent, unwavering use of the word free"

so consumers would "want to trial" and eventually pay for TurboTax.  Op.46

---

[2] Intuit fails to cite any record evidence in arguing that this Court should overturn the Commission's factual findings, citing only to *arguments* from its briefing and proposed findings below.  *See* Br.35-43.  Intuit has "forfeit[ed] [its] argument through inadequate briefing" by failing to cite "record evidence in [its] brief" and "incorporat[ing] by reference arguments made in [other] filings."  *Schnell v. State Farm Lloyds*, 98 F.4th 150, 161 (5th Cir. 2024); *see also, e.g.,* Br.41 ("Novemsky's survey suffered from myriad additional flaws.  RPF¶¶530-622."); Br.42 (claiming Commission "misconstru[ed] or cherry-pick[ed] from exhibits," but citing no such exhibits).  Intuit's proposed findings contain numerous mischaracterizations of record evidence, as detailed in FTC Complaint Counsel's Reply Findings.  *See* https://www.ftc.gov/system/files/ftc_gov/pdf/607937_-_efile0002437_-d9408_-_public_-_in_re_intuit_-_cc_post-trial_reply_filings.pdf (PDF pp.247-855).

(quoting GX460 at CC-9543); GX428 at CC-7716; GX688 at CC-14872. Intuit

designed the ads not only to reach consumers who "qualified" for free TurboTax

(Br.42), but to drive acquisition of "all" its do-it-yourself tax products, as ">40%

[of] New Paid [users] start in Free." Op.5 (quoting GX457 at CC-9337, 9340).

Intuit closely tracked consumers' dissatisfaction with the ads' lack of "price

transparency" and "predatory" nature. Op.57; GX411 at 1, 3. Intuit's 2018 copy

testing revealed that viewers overwhelmingly associated "free" with the *entire*

TurboTax brand, with "only about ~5%" associating it with specific products or

sub-brands such as "Free Edition." Op.40-41; GX340 at CC-6849. Intuit's 2020

testing revealed that the ads increased consumers' belief that TurboTax was free

and the "simple returns" disclosure had no meaningful effect on these perceptions.

Op.39-42; IDF¶¶446-60 & n.12. Up to 57 percent of viewers believed after

watching the ads that they could file for free, which substantially exceeded the

control group. Op.39-41; IDF¶453; GX460 at CC-9563. And even among those

who did *not* believe they could file for free, many explained this was because they

knew from experience that the ads were deceptive because qualifying for free

TurboTax was "impossible." GX460 at CC-9563.

Nothing but speculation underlies Intuit's complaints about its 2020 copy

tests. Intuit lacks support for its claim that the test participants were "more likely

than the average consumer" to qualify for free TurboTax. Br.42. Intuit did

nothing to assess whether participants were actually eligible for the free product. IDF¶448; GX460 at CC-9537. Likewise, Intuit has no basis to conclude that participants "had an accurate understanding" and a "close to zero" confusion rate. Br.36, 42. Intuit does not know which participants could file for free.[3]

 ***b. Consumer survey.*** The Commission credited a survey by Nathan Novemsky, a Yale professor of consumer psychology and marketing, showing that consumers widely failed to understand the meaning of "simple" returns. Op.44, 62-63; GX303¶1. Novemsky surveyed consumers who did *not* have simple returns (and were therefore ineligible for free TurboTax) regarding whether they believed they had a "simple U.S. return" as defined by Intuit. Op.44; GX303¶10. His survey "was designed to measure consumer perceptions as shaped by all the information consumers have accumulated from various sources, including the effects of years of Intuit marketing." Op.65; GX303¶¶29, 96; GX749¶¶21, 23; Tr.521.[4]

---

[3] Intuit's support for its zero-confusion-rate claim is a proposed finding concerning the beliefs of the "the control group"—*i.e.*, people not shown the ads. RPF¶695. But the percentage of participants who believed they could file for free *after viewing the ads* was far higher. Op.39.

[4] Intuit criticizes the lack of a test/control design and control group (Br.41), but surveys like Novemsky's are "reliable and broadly used," including by Intuit's own expert, and Novemsky applied numerous measures to ensure reliability. Op.65; GX303¶¶49,58-63; GX749¶25; Tr.381-82.

Novemsky found that among respondents who had not filed their taxes using TurboTax in the past three years, "52.7% indicated that they thought they could file their income taxes for free using TurboTax even though they were ineligible." Op.63; GX303¶¶8, 69-70 & Fig.1.  Among the same group of respondents, 55 percent incorrectly believed they had a "simple" return.  Op.44; GX303¶¶10, 85 & Fig.3.  Intuit complains that Novemsky did not show respondents specific ads (Br.41), but Novemsky testified that given Intuit's extensive marketing efforts, it would have been "artificial[]" to test a few ads in isolation.  Tr.521; GX749¶18; IDF¶¶395-99.  Also, showing consumers specific ads would not have affected consumers' understanding of a "simple" return, as other Intuit disclosures (*e.g.*, "see details at turbotax.com") did not clarify the meaning of "simple."  Op.64.[5]

Intuit claims the survey was biased because it allowed consumers to opt out after learning the survey's purpose, Br.41-42, but the notification and opt-out were required by the Privacy Act, 5 U.S.C. §552a(e)(3).  To prevent bias, Novemsky deferred the disclosure and opt-out until the survey's conclusion.  Op.69; IDF¶420. Intuit does not explain why consumers who opted out would have had any greater understanding of "simple" returns than other participants.  Op.69; GX749¶73.

---

[5] This case is thus unlike *McGinity v. Procter & Gamble Co.*, where the survey failed to test unambiguous disclosures on labeling that dispelled misimpressions. 69 F.4th 1093, 1099 (9th Cir. 2023).

*c. Consumer Complaints and Testimony.* The Commission found that in addition to 228 complaints the government received, Intuit itself recorded over 3,800 complaints from deceived users in a single year describing how the product was not free as advertised; many spent significant time preparing what they believed were "simple" returns only to be prompted to pay $100 or more at the "very end" of the process. Op.57-58; IDF¶¶472-507; GXD004; GXD006.

Intuit deposed several complainants, who testified they did not understand the meaning of "simple" returns or the eligibility criteria for free TurboTax. *See* Op.43 & 62; IDF¶514; GX137 at 19, 56, 64. Consumers incorrectly believed, for example, that returns would be "free" for lower-income users, GX138 at 44, for "standard tax preparation" services, GX139 at 47-48, or for users without "over[ly] complicated" investments, GX136 at 70.

The Commission appropriately found that "both the number and contents of consumer complaints are consistent with" the "claims of deception." Op.57. The supposedly low complaint rates Intuit cites (Br.35) excluded thousands of complaints received by Intuit itself. Op.57 n.40.[6]

In any event, Intuit cites no case rejecting an FTC deception finding based on the number of complaints. Deceived consumers may decide not to complain

---

[6] Intuit is not aided by its misrepresentation of an academic paper by an FTC economist. *See* Br.35; Op.56-57 & n.40; RX1552.

"because they think it not worth the trouble, because they feel guilty for having been deceived, because they [blamed themselves], or for any one of a number of other reasons." *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1098 (9th Cir. 1994). The Commission credited expert testimony explaining why some victims may not have complained here. Op.56-57; Tr. 1770-72; GX749¶217.

Finally, because the FTC Act forbids practices that are likely to deceive even a minority of consumers, Intuit's assertion that some customers were satisfied (Br.36-37) "does not constitute a defense." *FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1206 n.8 (10th Cir. 2005); *FTC v. Stefanchik*, 559 F.3d 924, 929 n.12 (9th Cir. 2009). Moreover, Intuit's customer-retention rates failed to account for customers who chose not to use and pay for TurboTax after failing to qualify for the free product. Op.60 n.46. Intuit's documents revealed that ██████████ ████████████████████ *Id.*

### 3. The Commission Was Not Required to Credit Intuit's Preferred Factual Narrative

Intuit asks this Court to reweigh the evidence and find that consumers understand the meaning of "simple tax returns" because this "is a commonplace term in the online-tax-preparation industry." Br.37-40. But substantial evidence supports the Commission's determination that reasonable consumers would not understand the term regardless of whether a different factfinder may have concluded otherwise. *Perez*, 415 F.3d at 461.

26

For starters, Intuit does not dispute that the "simple returns" disclosure was missing from many ads and too inconspicuous to notice in others. *Supra* pp.5-10, 19-20. Therefore, even if consumers could potentially divine Intuit's ever-changing definition of "simple" (*supra* p.8), the ads would *still* be deceptive. In any event, Intuit lacks support for its thesis that reasonable consumers understand this term.

Intuit based its claims about government usage of "simple tax returns" on an IRS slideshow at a 2008 conference (RX77) and a 2022 GAO report to Congress (RX78). Op.43. Neither document addressed the taxpaying public, and Intuit "provided no evidence that consumers were even aware of these documents, let alone understood the terms used in them." *Id.* The private sector's use of "simple" (Br.37-38) only confirms the term's ability to mislead: H&R Block's definition includes unemployment income, certain education fees, and investment income, which Intuit excludes. Op.44; RX1017¶48 n.87.

Moreover, *even if* "simple tax returns" had been a term of art among professionals, this still would not show that reasonable consumers understood the term. The Commission must interpret ads "from the standpoint of the average reader and the meaning which they convey to him rather than as viewed by a … member of the … [relevant] profession." *Grove Labs. v. FTC*, 418 F.2d 489, 495-

96 (5th Cir. 1969).  Here, as the Commission found, average consumers would have no clear understanding of "simple" returns.  *Supra* pp.19-20, 22-25

The FTC Act also does not permit Intuit's defense that, even if consumers did not understand "simple" returns, they could educate themselves by "conducting online research" or "consulting with friends."  Br.40.  "*[C]aveat emptor* is simply not the law."  *FTC v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003).  Regardless, Intuit's claims about consumers doing independent research into TurboTax are "unsupported" and "exaggerated."  Op.53 (citing GX303¶22 n.20); Tr.1776-77.

### B.    The Commission Applied the Correct Legal Framework

Intuit's claims of legal error (Br.44-55) are unfounded.

### 1. Disclosures Must Be Sufficiently Clear and Prominent to Counteract Misleading Claims

The Commission did not apply a "heightened disclosure standard" to "free" advertisements.  Br.44-48.  Instead, the Commission applied the bedrock requirement that disclosures be "sufficiently prominent and unambiguous" to "change the apparent meaning of the claims and to leave an accurate impression."  *Removatron*, 884 F.2d at 1497.  "Anything less is only likely to cause confusion by creating contradictory double meanings."  *Id.*

The Commission found that Intuit's ads "convey[ed] a clear, strong, and compelling message" that users could file for free, which meant Intuit's disclosures must be "similarly clear and strong to make a difference."  Op.46.  Intuit's

disclosures came nowhere close, as they were "often barely visible and rel[ied] on the vague term 'simple returns.'" *Id.* Intuit sought to "captivate[] viewers" through "[c]onsistent, unwavering use of the word 'free,'" *id.*, and thus assumed a duty to ensure that consumers took away an accurate impression. *Removatron*, 884 F.2d at 1497.

The Commission's ruling that strong advertising claims require strong disclosures is amply supported by the guidance Intuit cites. Br.37, 44-47. "[M]isleading price claims" and "bait and switch techniques" are classic forms of deception. *FTC Policy Statement on Deception* (Oct. 14, 1983), reprinted in *Cliffdale Assocs., Inc.*, 1984 WL 565319, at *45 (Mar. 23, 1984). Advertisers must disclose material information "necessary to prevent [a] claim … from being misleading." *Id.* at *46. "[A]ccurate information in the text may not remedy a false headline because reasonable consumers may glance only at the headline." *Id.* at *48. This is especially true when advertisers "direct consumers' attention away from the qualifying disclosures," *id.*—precisely what Intuit did by deploying bold headlines and constantly repeating "Free" to distract from the fine print.

FTC guidance did not authorize Intuit to tell consumers that "you" can file for "free" while placing any limitations on a hyperlinked website. Br.45. To the contrary, "[d]isclosures that are an integral part of a claim or inseparable from it should not be communicated through a hyperlink…. This is particularly true for

cost information." FTC, *.com Disclosures* at 10 (Mar. 2013).[7] Such disclosures

must "be placed on the same page and immediately next to the claim, and be

sufficiently prominent so that the claim and the disclosure are read at the same

time, without referring the consumer somewhere else." *Id.*

Intuit also falsely represents that FTC guidance allows advertisers to make

"qualified 'free' offers that do not state their qualifications *at all*." Br.46. The

FTC has long cautioned advertisers that when making "free" offers, "all the terms,

conditions and obligations … should be set forth clearly and conspicuously at the

outset of the offer so as to leave no reasonable probability that the terms … might

be misunderstood." 16 C.F.R. §251.1(c). *See FTC v. Spiegel, Inc.*, 494 F.2d 59,

63-64 (7th Cir. 1974) (affirming FTC's determination that retailer offered

deceptive "free trials" while placing eligibility conditions in inconspicuous

disclaimers).

Intuit is also wrong to claim the Commission's ruling would prevent the IRS

from describing its Direct File program as "support[ing] simple tax needs." Br.47-

48. The IRS—unlike Intuit—does not bombard users with "free" claims only to

inform users after entering their data that they must pay to file. If anything, the

IRS Direct File program undercuts Intuit's argument that "simple" has a clear

---

[7] https://www.ftc.gov/system/files/documents/plain-language/bus41-dot-com-disclosures-information-about-online-advertising.pdf.

meaning: it includes taxpayers with "unemployment compensation" and "[e]ducator expenses," whereas Intuit's definition of "simple" excludes such taxpayers (*supra* p.8).



See https://www.irs.gov/about-irs/strategic-plan/irs-direct-file-pilot (June 14, 2024).

## 2. The Commission Reviewed the Ads in Full Context

Intuit wrongly charges that the Commission committed legal error by reviewing ads "piecemeal." Br.48-51. The Commission devoted over 35 pages to analyzing all material elements of Intuit's TV, radio, website, email, and search advertisements and consumers' experiences with them. Op.5-32, 35-42, 50-51. The Commission also adopted the findings of the ALJ (Op.2 n.2), who spent over

100 pages analyzing fully transcribed ads.  IDF¶¶63-393.  The Commission

evaluated the record "ad by ad," finding that "the ads conveyed to reasonable

consumers the net impression that they could file their taxes for free with

TurboTax."  Op.40-45.

Intuit complains that the Commission's opinion contains "one section"

analyzing Intuit's claims about free filing (Op.38-39) and a "*separate* section"

(Op.39-46) immediately thereafter explaining why Intuit's disclosures did not

dispel consumers' misimpressions about free filing.  Br.49.  But the Commission

did exactly what courts do when applying the FTC Act:  consider an ad's overall

net impression first, and then ask whether the ad's disclosures were sufficient to

dispel any misleading interpretations.  Thus, in *FTC v. On Point Capital Partners*

*LLC*, 17 F.4th 1066 (11th Cir. 2021), the court held that websites falsely

"promis[ed] government services," and *then* concluded that disclosures failed "to

disabuse consumers of this impression, being either too small or too vague to

dispel the misrepresentations."  *Id.* at 1080.  *See also FTC v. AMG Cap. Mgmt.*,

*LLC,* 910 F.3d 417, 423 (9th Cir. 2018) (addressing deception first, then

disclosures), *rev'd on other grounds*, 593 U.S. 67 (2021); *Removatron*, 884 F.2d at

1497 (same).

Intuit falsely suggests the Commission "admitted" it considered ads

piecemeal.  Br.49.  The Commission in fact stated the opposite:  "[A]lthough we

address the disclaimers and other elements of the ad after discussing the most prominent assertions about free filing," the Commission's findings were "based on a review of each ad in its entirety, taking into account all disclaimers and other visual and audio cues provided."  Op.38 n.17.  Tellingly, Intuit does not challenge the Commission's finding that disclosures were *entirely missing* from many ads and imperceptible in others.  *Supra* pp.19-20.  The Court can watch Intuit's commercials (*supra* pp.5-7) to see that the Commission accounted for every relevant aspect of the ads.[8]

### 3.  Intuit's Website Does Not Cure the Deception

Basic consumer-protection principles refute Intuit's suggestion that advertisers should be free to make deceptive claims so long as they reveal accurate information on a webpage before the point of sale.  Br.51-55.

Under the FTC Act, "[e]ach advertisement must stand on its own merits; even if other advertisements contain accurate, non-deceptive claims, a violation may occur with respect to the deceptive ads."  *AMG*, 910 F.3d at 424 (quoting *Removatron*, 884 F.2d at 1496-97); *accord E.M.A*, 767 F.3d at 632; *FTC v. Fin. Freedom Processing, Inc.*, 538 F. App'x 488, 489-90 (5th Cir. 2013).  Thus, "the

---

[8] *See also* RX1096 (https://vimeo.com/877269617/cdbadbd249);
RX1098 (https://vimeo.com/877274358/797be75e43);
RX1102 (https://vimeo.com/877277158/b970864cfa);
RX1108 (https://vimeo.com/877237514/6a2b0d0cfb).

FTC Act is violated if the first contact … is secured by deception, even though the true facts are made known to the buyer before he enters into the contract of purchase." *E.M.A.*, 767 F.3d at 632 (cleaned up); *see also Fin. Freedom*, 538 F. App'x at 489; *Exposition Press, Inc. v. FTC*, 295 F.2d 869, 873 (2d Cir. 1961).

Intuit cannot get a free pass for its deceptive ads based on what it later reveals on a webpage. Moreover, Intuit's website reinforced the deception, telling consumers in colorful headlines that TurboTax was "FREE Guaranteed," and burying the restrictions behind small-print hyperlinks that consumers were unlikely to notice or click. Op.50-52.; *supra* pp.8-10. The Commission credited expert testimony that consumers instead would likely rely on pre-existing misimpressions about free filing cemented by Intuit's omnipresent TV commercials. Op.50-51 (citing GX749¶¶223, 227; Tr. 535, 1768; IDF¶¶440-44).[9] Although Intuit claims its "Products & Pricing webpage" cured any deception (Br.54-55), that page displayed "Free Guaranteed" and "$0 to File" in large blue letters and the eligibility criteria in barely readable gray. *Supra* p.10; Op.30-31; IDF¶375; RX138. Just as in *On Point*, Intuit's websites were "cleverly designed so that even though disclosures appeared on … [certain] pages, consumer attention would be

---

[9] An expert did not testify that users would see Intuit's disclosures within "seconds," Br. 52, but explained this would only be the case "assuming somebody actually does click on [a hyperlink entitled] 'See if you qualify' and notices it, because until you asked me, I didn't see it." RX1396 at 34-35.

drawn to" the deceptive claims "in larger, more colorful font."  17 F.4th at 1079

(quotation omitted).

Intuit is wrong to claim this is "the first decision ever" to hold in the "online

context" that each solicitation must rest on its own merits, regardless of later non-

misleading disclosures.  Br.51.  In *FTC v. Grant Connect, LLC*, the court expressly

invoked these principles where defendant ran "initial advertisements suggest[ing] a

traditional line of credit," even though its website revealed the truth "later, in

smaller print, after the net impression of a credit card already existed in the

consumer's mind."  827 F. Supp. 2d 1199, 1214, 1219 (D. Nev. 2011), *aff'd in*

*relevant part*, 763 F.3d 1094 (9th Cir. 2014)*.  In *Financial Freedom*, this Court

explained that where an advertiser's websites falsely offered to eliminate

consumers' debt in 18 to 36 months, the advertiser may not rely on other

"disclosures made at or shortly before the point of purchase," because the first

contact was secured by deception.  538 F. App'x at 488-89.[10]  And in *AMG*, the

Ninth Circuit held that a lender's loan note was deceptive even though its website

contained hyperlinks to the actual terms, since "the Commission must show only

that *a specific representation* was likely to mislead."  910 F.3d at 421, 424

---

[10] The Court declined to resolve the case on this ground, which it found not
preserved, but would have found it "difficult to conclude that the websites [we]re
not deceptive" had it reached the issue.  538 F. App'x at 490.

(cleaned up, emphasis added).  *See also FTC v. Fleetcor Techs., Inc.*, 620 F. Supp.

3d 1268, 1298-99 (N.D. Ga. 2022); *FTC v. OMICS Grp., Inc.*, 374 F. Supp. 3d

994, 1010-11 (D. Nev. 2019), *aff'd*, 827 F. App'x 653 (9th Cir. 2020).

The Commission found it "especially important to reaffirm" the first-contact

principle in "the online world, which has seen the proliferation of misleading click-

bait ads that drive traffic to advertisers' websites under false pretenses," including

by promising "free product[s]" that are not actually free.  Op.48.  Intuit's argument

that traditional principles of deceptive advertising should not apply "online"

(Br.52) makes little sense.  Besides, Intuit also used conventional TV and radio

commercials to assure consumers they could file for free.  Just as Intuit could not

avoid liability by providing disclosures uncoupled from those ads by phone, mail,

fax, or in person, it may not do so by placing the terms on a website.

Intuit's cited cases are distinguishable because they do not arise under the

FTC Act or address the first-contact principle.  Op.48-50 & n.28.  Two cases

involved information available on food packaging during the first contact.  In *Bell

v. Publix Super Markets, Inc.*, the Seventh Circuit held that "fine print on the back

label" does not immunize deceptive claims on the front label.  982 F.3d 468, 477

(7th Cir. 2020).  In *Moore v. Trader Joe's Co.*, the Ninth Circuit held that

"contextual inferences from the *product itself*" would have dispelled

misimpressions about the product's contents.  4 F.4th 874, 883 (9th Cir. 2021)

(emphasis added).  The court did not suggest that consumers needed to visit any website to learn the truth.  None of Intuit's cases suggests that an advertiser can run deceptive TV commercials and escape liability by hyperlinking to fine print on a website.[11]

## II.   THE REMEDIAL ORDER WAS WITHIN THE COMMISSION'S DISCRETION

### A.   Substantial Evidence Supports the Commission's Finding That Intuit's Violations Were Ongoing and Likely to Continue

The Commission had ample evidence to find that Intuit's violations were ongoing and posed a "cognizable danger of recurren[ce]," *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953), making a cease-and-desist order "essential." Op.81-84.  The Commission appropriately considered (1) the conduct's egregiousness; (2) its recurrent and widespread nature; (3) Intuit's scienter; (4) Intuit's failure to recognize the wrongful nature of its acts; and (5) that Intuit has opportunities to reoffend—and indeed was still violating the law despite the state settlement.  Op.81-84; *see SEC v. Blatt*, 583 F.2d 1325, 1334 & n.29 (5th Cir. 1978).  Intuit asserts that the settlement prevents future wrongdoing (Br.55-57), but "completely ignores the other factors on which the [Commission] relied," which

---

[11] Intuit cites three district-court cases addressing private actions for willful deception or fraud under state law, Br.53, but those do not set out a different rule.

"independent[ly]" support the remedy.  *SEC v. Gann*, 565 F.3d 932, 940 (5th Cir. 2009).

The Commission had the "right and duty to … protect the public interest" from Intuit's wrongdoing under federal law.  *United States v. Borden Co.*, 347 U.S. 514, 519 (1954).  The Commission found that the state settlement contains "gaps" and "loopholes" (Op.33, 81-84) allowing Intuit to commit the same deception it perpetuated for years:  advertising TurboTax as "FREE," qualified only by a vague, fine-print "simple returns" disclaimer.  Op.84.  A 2023 video ad (Br.56) that Intuit ran after the Commission's complaint encapsulates the problem— displaying "FILE FREE" in large neon letters and burying "simple returns" in small white letters at the bottom of the screen, with no audio disclosures.  Op.12, 41, 83; RX1476 (https://vimeo.com/946979547).



Likewise, Intuit's recent search ads (Br.54) feature headlines promising

"Free Simple Tax Filing Online."



Op.22; RX1440.  The Commission found these ads even more lacking than the "simple returns only" disclosure as they suggest that *using* TurboTax is simple. Op.42-43, 82-83.

Intuit claims it tested recent ads with consumers and found them non-deceptive (Br.56-57), but the Commission explained why those tests were plagued with errors.  Op.54-55.  For example, the tests did not assess whether participants "actually could" file for free, making it impossible to tell who was misled.  *Id* at 55.

Nor is there merit to Intuit's argument that federal relief is superfluous because the FTC order and state settlement similarly define "Clear[] and Conspicuous[]" disclosures (Br.57) as being "difficult to miss (*i.e.*, easily noticeable) and easily understandable by ordinary consumers."  Order.Def.B.  The Commission had authority to find Intuit's "simple" returns disclosures insufficient, regardless of how the states may interpret or enforce their own settlement.

Finally, the Commission was warranted in imposing relief *even if* Intuit had terminated the deception.  Intuit does not challenge the Commission's findings that Intuit's violations were "broad, enduring, and willful" and continued "for years even as it faced serious law enforcement investigations and challenges."  Op.82; *see Gann*, 565 F.3d at 940.  The Commission thus had substantial evidence to find "a realistic prospect that the violations …will continue notwithstanding the consent

decree." *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 528 (5th Cir. 2008).

## B.    The Order is Lawful and Appropriate

The Commission's order protects consumers by prohibiting material misrepresentations and requiring affirmative disclosures concerning the limitations of Intuit's "free" offers.  Order.§§I-II.  This Court "will not interfere" with an FTC order unless it "has no reasonable relation to the unlawful practices." *Chicago Bridge*, 534 F.3d at 441 (quoting *FTC v. Nat'l Lead Co.*, 352 U.S. 419, 428 (1957)).  The Commission has "wide latitude in ordering advertisers to make disclosures which limit or counteract affirmative advertising claims." *Am. Home Prods. Corp. v. FTC*, 695 F.2d 681, 699-700 (3d Cir. 1982).  Intuit claims the Commission's order is underinclusive, overinclusive, vague, unconstitutional, and bad policy.  All these challenges fail.

## 1.  The Order Is Reasonable in Scope

*a. Underinclusiveness.*  Intuit first attacks the order as underinclusive for allowing "Space-Constrained" ads lacking the full eligibility criteria for "free" TurboTax.  Order.§I.A-C.  Intuit incorrectly asserts that the order is no improvement over Intuit's "simple returns" disclosure.  Br.47, 57.

The Commission rejected the "simple returns" disclosure because it was not "understandable" and did not "change the strong and powerful net impression" that

consumers can file for free.  Op.43-45.  The Commission's order resolves those

deficiencies by requiring Intuit to disclose clearly and conspicuously either that a

majority of taxpayers do not qualify or the percentage who do.  Order.§I.A-B.

Unlike "simple returns," this information is specific and—together with the other

disclosure requirements of the order—alters the net impression that consumers can

file for free.  The disclosure resembles one this Court upheld in *Keele Hair*,

alerting consumers that a hair-loss treatment was ineffective for "approximately 95

per cent of … cases of baldness."  275 F.2d at 23.

The Commission relieved Intuit from having to disclose the full eligibility

criteria in space-constrained ads, which the ALJ had required (ID.232), based on

Intuit's concern that this term would hamstring it from running space-constrained

ads.  Op.88-89.[12]  In doing so, the Commission reasonably weighed the need to

protect consumers and Intuit's interest in advertising.

**b. *Overinclusiveness.***  The order also appropriately extends to products

beyond TurboTax.  The "Commission is not limited to prohibiting the illegal

practice in the precise form in which it … existed in the past," but may bar similar

practices "with respect to the other products [defendants] advertise," as those

"caught violating the [FTC] Act … must expect some fencing in."  *Colgate-*

---

[12] Space-constrained ads must clearly and conspicuously direct consumers to a webpage with the eligibility requirements.  Order.§I.C.

*Palmolive*, 380 U.S. at 394-95 (cleaned up).  The Commission may issue "orders

encompassing all products" even for "violations involving only a single product."

*Litton Indus., Inc. v. FTC*, 676 F.2d 364, 370 (9th Cir. 1982) (cleaned up).

Courts and the Commission apply three factors when determining an order's

scope: (1) the violation's "seriousness and deliberateness"; (2) "the ease with

which the violative claim may be transferred to other products"; and (3) any

"history of prior violations."  *E.g., Telebrands Corp. v. FTC*, 457 F.3d 354, 358

(4th Cir. 2006) (cleaned up).  *Telebrands* held that the first two factors justified an

order prohibiting deception concerning "all claims" for "all products," regardless

of whether the defendants had committed previous violations.  *Id.* at 355, 357-59,

362.  The same reasoning supports this order.

Regarding the first factor, the Commission found Intuit's conduct egregious,

broad, enduring, and willful.  Op.81-82, 85-86.  For years, Intuit knew "full well"

its ads were leading ineligible consumers to believe TurboTax would be free for

them.  Op.85-86; *supra* pp.21-22, 25.  *See Kraft, Inc. v. FTC*, 970 F.2d 311, 327

(7th Cir. 1992).  Moreover, the "size" and "duration" of the campaign demonstrate

the violations were serious.  *Id.* at 326; *Telebrands*, 457 F.3d at 359.

Regarding the second factor, the Commission had substantial evidence to

find that Intuit's "violations were readily transferable to other … products."  *Kraft*,

970 F.2d at 327.  Intuit made the same "free" claims when launching a new

product in 2020.  Op.86; *see also* Op.3, 13, 53.  Intuit's business records showed that █████████████████████████████████████████████████████████████

█████████████████████████████████████████ Op.86

(discussing GX638 & GX639).  Intuit calls these documents "anonymous" "draft[s]," but does not dispute that they contain ███████████████████

████████████████████████████ Br.59-60.  In any event, Intuit's

denial that it offers a "free version" of other products (Br.60) is not credible, as its

website *currently* markets a "Free" version of Mailchimp.  *See*

https://mailchimp.com/pricing/free-details/ (June 14, 2024).

Intuit asserts that its non-tax offerings are "fundamentally different" from

TurboTax (Br.59), but the "Commission is concerned not with how [TurboTax]

work[s], but with how [it is] sold."  *Sears, Roebuck & Co. v. FTC*, 676 F.2d 385,

392 (9th Cir. 1982).  Intuit sold TurboTax by misrepresenting its price, making

deceptive "Free" claims, and misleading consumers about eligibility.  Such

violations have "potential applicability to almost any kind of product or service,"

*Telebrands*, 457 F.3d at 361, which makes the order appropriate in scope.[13]

Furthermore, the current misrepresentations "have been extensively disseminated

---

[13] *Grove Laboratories* did not dispute the validity of all-products orders, but found such an order "too broad in [that] particular case."  418 F.2d at 496-97.

over a long period," *Am. Home. Prods.,* 695 F.2d at 707-08, undeterred by the state settlement.

Intuit also claims it would be infeasible to disclose the percentage of consumers eligible for its free offers.  Br.61, 66-67.  But the order allows Intuit to disclose instead that a "majority" of consumers do not qualify.  Order.§I.B.1. Moreover, Intuit has had no trouble calculating the percentage of taxpayers eligible for free TurboTax.  Op.90.  If Intuit faces compliance difficulties for a specific product in the future, it may seek relief from the Commission as "[a]ctual situations arise," rather than as "hypothetical" "conjecture[]" in this appeal.  *Nat'l Lead*, 352 U.S. at 431.

Intuit also objects in passing to the order's duration and compliance-monitoring provisions.  Br. 58-59.  But it raised no such objections below, *see* RAB.43-47, and may not do so now, *see Cotherman v. FTC*, 417 F.2d 587, 591-94 (5th Cir. 1969)—especially since its argument is undeveloped and lacks citation to relevant authority, *see United States v. Stalnaker*, 571 F.3d 428, 440-41 (5th Cir. 2009).

## 2.  The Order Is Clear and Precise

The order is "as specific as the circumstances will permit."  *Colgate-Palmolive*, 380 U.S. at 393.  Intuit objects (Br.61-62) to language requiring Intuit to disclose the terms of its free offers clearly and conspicuously "so as to leave no

reasonable probability that the terms of the offer might be misunderstood."
Order.§I.B.2. Specifically, Intuit claims the "reasonable probability" clause is
"impermissibly vague." Br.61-62.

Not so. The provision tracks verbatim the FTC's 50-year guidance on this
subject. 16 C.F.R. §251.1(c). It simply requires that disclosures be clear and
conspicuous enough to dispel any likely misimpressions, which is "a restatement
of well-established law." ID.227 (citing *Removatron*, 884 F.2d at 1497). As
discussed (pp.28-30), the FTC Act requires advertisers to disclose material
information and ensure that reasonable consumers do not take away a misleading
claim. The "reasonable probability" clause is a mainstay of FTC orders, and courts
have had no difficulty interpreting this language. Op.87-88 (collecting cases).

This case is unlike *LabMD, Inc. v. FTC*, 894 F.3d 1221 (11th Cir. 2018),
where the Commission did "not enjoin a specific act or practice" but mandated a
"complete overhaul" of a company's data-security program without sufficiently
stating "how this is to be accomplished." *Id.* at 1237. Here, the order enjoins
specific advertising claims and provides extensive guidance on how to make
proper disclosures.

### 3. The Order Comports with the First Amendment

Intuit claims it has a First Amendment right not to inform taxpayers that most of them are ineligible for its "free" TurboTax offers.  Br.64-67; Order.§I(B). That is incorrect.

Intuit has no constitutional right to engage in deceptive advertising.  *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 566-67 (1980). And Intuit has only "minimal" constitutional interest in "*not* providing any particular factual information in [its] advertising."  *Zauderer v. Off. of Disciplinary Couns.*, 471 U.S. 626, 651 (1985).  Here, the remedial order passes muster because the required disclosures are (1) "purely factual," (2) "uncontroversial," (3) "justified by a legitimate state interest," and (4) "not unduly burdensome."  *RJ Reynolds Tobacco Co. v. FDA*, 96 F.4th 863, 877 (5th Cir. 2024).

The disclosure requirements are triggered only if Intuit advertises a product as "free" that is not free to everyone.  Intuit does not contest that it is "purely factual" that most taxpayers are ineligible for free TurboTax.  Instead, Intuit asserts that disclosing this fact would be "controversial" and "misleading" because the "*relevant population*" consists of those who already "us[e] online-tax-preparation products[]."  Br.65.

There is nothing misleading about Intuit telling taxpayers that most of them do not qualify for its "free" offers.  For years, Intuit bombarded *all* taxpayers with

"free" advertising across national airwaves and the internet. ██████████

████████████████████████████████████████████████████████████

████████████  RX49 at 33, 35; GX396 at CC-7343.  Intuit cannot credibly

deny that all taxpayers were its relevant audience.

Intuit "does not agree with" the disclosure requirement (Br. 67), but a

disclosure is *not* "controversial" merely because the speaker "dislikes or disagrees

with" it. *Free Speech Coal., Inc. v. Paxton*, 95 F.4th 263, 281-82 (5th Cir. 2024).

A statement is "controversial" only "where the truth of the statement is not settled

or is overwhelmingly disproven or where the inherent nature of the subject raises a

live, contentious political dispute." *RJ Reynolds*, 96 F.4th at 881 & n.58.

The truth is settled here:  Intuit *admitted* that only about one-third of

taxpayers qualify for free TurboTax.  IDF¶36; Op.90-91.  No political dispute is

implicated; nothing here is controversial.

The disclosure also is "reasonably related" to the FTC's interest in

"preventing deception of consumers." *Zauderer*, 471 U.S. at 651.  To advance this

interest, the Commission may require advertisers to "correct[] [an] inaccurate

impression by adding prominent, unambiguous disclosures." *Kraft*, 970 F.2d at

325-26.  The disclosures here are "directly connected to the subject of the

advertisement," *Recht v. Morrisey*, 32 F.4th 398, 417 (4th Cir. 2022) (cleaned up),

and "no broader than reasonably necessary" to ensure that consumers can make

informed choices, *Nat'l Inst. of Fam. & Life Advocs. v. Becerra,* 585 U.S. 755, 776 (2018) (cleaned up).

Intuit does not claim the Commission could have achieved these goals with some alternative, less-intrusive disclosure. *Cf. Am. Beverage Ass'n. v. San Francisco*, 916 F.3d 749, 757 (9th Cir. 2019) (en banc) (invalidating 20% size requirement for disclosure where government's study showed 10% would suffice). Rather, Intuit insists its ads "already disclose" the products' qualifications. Br.66. But the Commission found "significant evidence that consumers do not notice, much less internalize" (*RJ Reynolds*, 96 F.4th at 884) Intuit's disclosures, so Intuit's attempt to relitigate that issue fails. *Supra* pp.19-25; Op.37-70, 81-84.

Nor is it unduly burdensome to require Intuit to provide a short (but clear and conspicuous) statement that most U.S. taxpayers do not qualify, or to declare the percent who qualify. Op.90. Before the Commission's order, Intuit's website already included the percent who qualify; the difference now is that Intuit must do so clearly, conspicuously, and consistently. *Id.*[14] This case is unlike *Public Citizen Inc. v. Louisiana Attorney Disciplinary Board*, where a regulation prevented lawyers from "employ[ing] short advertisements of any kind" as a remedy for

---

[14] The Commission stated that clearly and conspicuously disclosing the percentage would comport with §I.B.1 of the Order, Op.90, but did not bless Intuit's website.

"potentially misleading" speech. 632 F.3d 212, 219, 229 (5th Cir. 2011). Here, the order remedies Intuit's actually deceptive conduct while *preserving* Intuit's ability to run short ads, as Intuit may disclose full eligibility requirements on a landing page linked to by the advertisements. Order.§I.C.

### 4. Intuit's Policy Disagreements Are Baseless and Not Cognizable

Finally, Intuit argues that consumers have difficulty "process[ing] information" and would be "harm[ed]" by additional disclosures. Br.62-64, 66. Such policy-based objections are neither warranted nor cognizable. Courts "will not interfere" with an FTC order unless it (1) lacks a reasonable relationship to violations; (2) is unduly vague; or (3) is unconstitutional. *See Colgate-Palmolive*, 380 U.S. at 394-95; *Chicago Bridge*, 534 F.3d at 441. Intuit's objection fits none of these categories.

Regardless, the Commission reasonably explained why it was rejecting Intuit's objection. The order prevents Intuit from exploiting consumers Intuit portrays as unsophisticated, by giving them "accurate information" to "determine whether they qualify." Op.89. The Commission declined to "assume[] that consumers are unable to assess and analyze additional unambiguous, factual information." *Id.*

The Commission also properly rejected as "speculative" (Op.88-89) Intuit's assertions that the order will create "information overload" and lead consumers to

"incorrectly believe they do not qualify." Br.62-64.  *See Colgate-Palmolive*, 380

U.S. at 390 (finding it "inconceivable that the ingenious advertising world will be

unable, if it so desires, to conform to the Commission's insistence that the public

be not misinformed").  Contrary to Intuit's claims (Br.62), the Commission

addressed the expert report on which Intuit relied below, finding it rested on

"implausible assumption[s]" and "did not try to study the issue."  Op.89.

Similarly, the two experts Intuit invokes here (Br.63-64) discussed only the

"hypothetical *potential*" of disclosures overloading consumers; they did not

analyze the disclosures at issue.  ID.224; Op.89.  The "Disclosure Efficacy Study"

(Br.64) merely purported to test "flawed 'simple returns' … language," not

disclosures required by the order.  Op.61.

Besides, there is no "information overload" exception to the FTC Act:

advertisers may not mislead consumers because they doubt the public can handle

the truth.  The Act requires prominent and unambiguous disclosure of information

necessary to prevent ads from being misleading.  *Supra* pp.28-30.  If Intuit elects to

advertise TurboTax as "free," it must disclose the limitations on its offer.  The

"need for [qualification] is driven by the claims [Intuit has] chosen to make."

*POM*, 777 F.3d at 497 (quotation omitted).

III. **THE ADMINISTRATIVE PROCEEDINGS WERE CONSTITUTIONAL**

Precedent forecloses Intuit's constitutional challenges (Br.22-33). In *Illumina*, this Court rejected similar attacks on the FTC's adjudicative process, holding that (1) the FTC Act does not constitute an improper delegation of legislative power; (2) FTC Commissioners are not unconstitutionally insulated from removal; and (3) "the FTC's structure, which combines prosecutorial and adjudicative functions," does not violate due process. 88 F.4th at 1046-47.

Recognizing that these holdings bind the Court, Intuit raises a new array of constitutional arguments (Br.22-33) that likewise contravene precedent. Intuit also misrepresents remarks by Chair Khan in alleging that she prejudged the case.

A. **The Commission Did Not Display Unconstitutional Bias**

Because the Commission's structure is constitutional, to show a due-process violation, Intuit must present "evidence of actual bias." *Illumina*, 88 F.4th at 1047. Intuit has not done so. The Commission's supposed "win-loss record" (Br.23) is not enough. A "raw statistic cannot of itself show bias in a particular case." *Singh v. Garland*, 20 F.4th 1049, 1055 (5th Cir. 2021). Moreover, Intuit's statistics are inaccurate, failing to account for the Commission's merits dismissals of a substantial number of cases in recent decades. Op.73-74; *see also Meta Platforms, Inc. v. FTC*, No. 24-5054, 2024 WL 1549732, at *1 (D.C. Cir. Mar. 29, 2024) (rejecting same claim).

Intuit's bias claim fails because Intuit cannot show that Chair Khan "prejudged [the] case before all facts were known to [her]" such that her mind was "irrevocably closed." *United States v. Benitez-Villafuerte*, 186 F.3d 651, 660 (5th Cir. 1999) (cleaned up).  Prejudgment does not occur simply because a regulator has described a complaint, *FTC v. Cinderella Career & Finishing Sch., Inc.*, 404 F.2d 1308, 1314-15 (D.C. Cir. 1968) (*Cinderella I*), taken a policy position relevant to an adjudication, *Hasie v. Off. of Comptroller of Currency*, 633 F.3d 361, 368 (5th Cir. 2011), or opined that certain types of conduct are unlawful, *FTC v. Cement Inst.*, 333 U.S. 683, 702-03 (1948).  Showing prejudgment is a "high burden," *Hasie*, 633 F.3d at 367-68, because adjudicators are presumed "objective and capable of judging a particular controversy fairly on the basis of its own circumstances," *Menard v. FAA*, 548 F.3d 353, 360-61 (5th Cir. 2008) (cleaned up).[15]

Khan did not prejudge the case by retweeting, without commentary, a press release announcing the agency had filed the administrative complaint and action for preliminary injunction.  Br.24; RX102.  This Court has deemed it "frivolous" to argue prejudgment based on the announcement of an administrative complaint in a

---

[15] *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), held that a challenger must show a "serious, objective risk of actual bias" to warrant recusal, *id.* at 883-86, not merely that "doubts about impartiality exist," Br.24.

press release. *Bowman v. USDA*, 363 F.2d 81, 86 (5th Cir. 1966); *accord*

*Cinderella I*, 404 F.2d at 1314-15.

Nor did Khan show bias through conference Q&A remarks that the FTC

generally "need[ed] to act in a more timely manner" to prevent "law-breaking" by

"seeking preliminary injunctions." Br.24; RX103 at 6. Regarding Intuit, Khan

said only that the FTC had a pending lawsuit "***alleging*** that TurboTax had been

showing all these ads that are ***allegedly*** deceptive, and that it was really important

to get that relief ahead of Tax Day" because "that type of timely intervention and

timely filing of lawsuits is incredibly important." RX103 at 6. (emphasis added).

Intuit similarly mischaracterizes Khan as having "endorsed" a

congresswoman's statement that Intuit is an "evil actor." Br.1, 24. The full

exchange shows Khan did no such thing:

> REP. JAYAPAL. I just want to go to evil actors because there's one more I really want to talk about, and that is tax-preparation companies. For years, Intuit, the maker of TurboTax, flooded consumers with ads promising 'free free free' tax-filing services only to trick and trap them into paying, which is why taxpayers pay $250 on average each year just for the privilege of filing their taxes. So, state attorney generals have won taxpayers money from Intuit and the FTC has also taken action. Can you just speak about that?
>
> Ms. KHAN. Yeah, absolutely. So, last year the FTC brought a lawsuit against Intuit for those very types of deceptive practices that are ***laid out in our complaint. That is still pending***, but I couldn't agree more that, you know, claims of something being free but then ultimately not being so really hurts people.

Disqualification Order 4-5 (emphasis added).

54

When Khan said, "[y]eah, absolutely," she was responding to Jayapal's request to speak about the case, not agreeing that Intuit was an "evil actor" that "trick[ed]" consumers (Br.24). Intuit omits Khan's statement that the "complaint" "is still pending." Disqualification Order 4. Khan then offered a general observation that people are hurt when something advertised as free is not free. Nowhere did Khan declare that Intuit's conduct violated the law or caused harm.

Khan herself explained her remarks in declining to recuse (Khan Statement 2-3) as did the other Commissioners (Disqualification Order 4-6) and the ALJ (Bias Order 6-8) when rejecting Intuit's bias allegations. Intuit's cases (Br.25) are inapposite. In *American Cyanamid Co. v. FTC*, Chairman Dixon participated in an adjudication after personally investigating "the same facts and issues concerning the same parties" when he was a Senate staffer. 363 F.2d 757, 763-68 (6th Cir. 1966). Intuit alleges no similar involvement by Khan. In *Cinderella Career & Finishing Schools, Inc. v. FTC*, Dixon gave a speech chastising newspapers for their "ethics" for printing advertisements that Dixon was charged with evaluating as an adjudicator. 425 F.2d 583, 590 (D.C. Cir. 1970). Unlike Dixon, Khan did not "entrench[]" herself in a position, *id.*, but explicitly noted the Commission's complaint was still pending. Disqualification Order 5. This case likewise has nothing in common with *Pulse Network, LLC v. Visa, Inc.*, where the judge expressed "disdain" for "antitrust law and antitrust plaintiffs," declared that he did

not believe in "real monopolies," and asserted from the outset of the case that the challenged practices "did not harm competition." 30 F.4th 480, 496-97 (5th Cir. 2022).

Finally, Intuit's citation of a House committee report does not suggest prejudgment. *See* Br.26. The report (which was not in the record below) recounts anonymized anecdotes concerning Khan's alleged mismanagement, but does not reference any specific matters before the agency or allege that Khan prejudged any matters while serving as an adjudicator.

### B.    The ALJ's Involvement Did Not Taint the Proceedings

Even though the Commission affirmed the ALJ's ruling *de novo*, Intuit claims the ALJ's involvement contaminated the proceedings because he is removable only for good cause. Br.27-30. Intuit does not deny the ALJ was "properly *appointed*," which means "there is no reason to regard any of [his] actions … as void." *Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021). Intuit thus must "show not only that the removal restriction transgresses the Constitution's separation of powers but also that the unconstitutional provision caused … harm." *Collins v. Dep't of Treasury*, 83 F.4th 970, 982 (5th Cir. 2023) (cleaned up). Intuit shows neither.

The ALJ's removal restriction is consistent with Article II. FTC rules empower ALJs to preside over evidentiary hearings and render a decision reviewed

*de novo* by the Commission. 16 C.F.R. §§3.42, 3.51-3.54 (2015).[16] Like "many administrative law judges," FTC ALJs perform "adjudicative rather than enforcement or policymaking functions." *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 507 n.10 (2010). The Supreme Court has reaffirmed removal protections for inferior officers with "limited duties and no policymaking or administrative authority," *Seila Law LLC v. CFPB*, 591 U.S. 197, 218 (2020) (cleaned up), recognizing that adjudicators have a "unique need" for "freedom from Executive interference," *Collins*, 141 S. Ct. at 1783 n.18 (cleaned up).

The Supreme Court is reviewing this Court's ruling in *Jarkesy v. SEC* that SEC ALJs are unconstitutionally shielded from removal. 34 F.4th 446, 463-65 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (argued Nov. 29, 2023). If this Court becomes unbound from *Jarkesy*, it should adopt the approach in the dissenting opinions of Judge Davis, 34 F.4th at 475-79, and Judge Haynes, 51 F.4th 644, 646-47 (5th Cir. 2022) (denial of rehearing en banc). *See also Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1126, 1132-36 (9th Cir. 2021) (upholding ALJ removal protections); *Leachco, Inc. v. CPSC*, No. 22-7060, 2024 WL 2822147, at *11-12 (10th Cir. Jun. 4, 2024) (same).

---

[16] Before July 2023, FTC ALJs issued "initial" decisions appealable to the Commission. Since then, they issue "recommended" decisions automatically reviewed by the Commission. 88 Fed. Reg. 42872, 42873-42874 (Jul. 5, 2023).

Even if *Jarkesy* controls, the Commission's order remains valid. *Jarkesy* "d[id] not address whether vacating [an administrative decision] would be appropriate" based on an ALJ's removal protections. 34 F.4th at 463 n.17 & 466. Under binding precedent, Intuit must show that it suffered harm because (1) the President had a "substantiated desire" to remove the ALJ; (2) the President was unable to remove the ALJ due to the removal restrictions; and (3) a "nexus" exists between the President's desire to remove the ALJ and the case's outcome. *Cmty. Fin. Servs. Ass'n of Am. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022) (*CFSA*), *rev'd on other grounds*, 601 U.S. 416 (2024). In other words, Intuit must prove that "but for the removal restriction, [the President] would have removed [the ALJ] *and* that the [Commission] would have acted differently." *Collins*, 83 F.4th at 982-83 (cleaned up).

Intuit does not attempt this showing, and instead argues (Br.29-30) these requirements should not apply to adjudication—ignoring four circuits' holdings that they do. *K&R Contractors, LLC v. Keene*, 86 F.4th 135, 149 (4th Cir. 2023); *Calcutt v. FDIC*, 37 F.4th 293, 315-17 (6th Cir. 2022), *rev'd on other grounds*, 598 U.S. 623 (2023); *Kaufmann v. Kijakazi*, 32 F.4th 843, 849-50 (9th Cir. 2022); *Leachco*, 2024 WL 2822147, at *5-7. Intuit's cited cases are inapposite. *Weaver v. Massachusetts* involved structural constitutional errors—such as deprivation of the right to counsel—in a criminal case. 582 U.S. 286, 294-95 (2017). *Landry v.*

*FDIC* involved an ALJ who was invalidly *appointed*.  204 F.3d 1125, 1130-31

(D.C. Cir. 2000).[17]  These decisions have no bearing on an administrative case

before a duly-appointed ALJ who "lawfully possess[ed]" power to act.  *Collins*,

141 S. Ct. at 1788.

Nor is there merit to Intuit's claim (Br.28-29) that the Administrative

Procedure Act's good-cause removal provision for ALJs, 5 U.S.C. §7521, is not

severable from the section authorizing ALJ appointments, *id.* §3105, such that *all*

*ALJ proceedings are unconstitutional*.  Courts apply a "strong presumption of

severability."  *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2350

(2020) (plurality op.).  In the absence of a "nonseverability clause," courts will

sever an unconstitutional provision if "the remainder of the [statute] is capable of

functioning independently and thus would be fully operative as a law."  *Barr*, 140

S. Ct. at 2350-53.  In analogous challenges to removal restrictions, the Supreme

Court "use[d] a scalpel rather than a bulldozer" by severing the invalid provision

---

[17] *Axon Enterprise, Inc. v. FTC* held that a district court had jurisdiction to hear a challenge to the ALJ and did not address the merits.  598 U.S. 175, 180 (2023). *See Leachco*, 2024 WL 2822147, at *7-8.

while leaving the remainder intact. *Seila Law*, 591 U.S. at 235-37, *Free Enter.*, 561 U.S. at 508-09.[18]

Intuit does not dispute that (1) the APA is "capable of functioning" with ALJs removable at will, and (2) the relevant statutes lack a nonseverability clause. *Barr*, 140 S. Ct. at 2350-52. These facts are dispositive.

Intuit invokes *Butz v. Economou*, 438 U.S. 478, 513-14 (1978), which shows that Congress preferred ALJs with tenure protection, but "shed[s] little light on the critical question" whether Congress would have preferred "*no [ALJs] at all*" to ALJs removable at will. *Seila Law*, 591 U.S. at 236. As Intuit recognizes (Br.28), agency officials conducted hearings before the APA gave them removal protections. Intuit does not explain why Congress would have preferred *no* hearings over that status quo ante.

Indeed, *Butz* undercuts Intuit's nonseverability argument by recognizing that the APA protects the integrity of ALJ proceedings in ways distinct from tenure protection. For example, ALJs must base their decisions on the official record; must allow parties to present evidence and argument; may not perform investigative or prosecutorial functions; and may not engage in *ex parte*

---

[18] Intuit misleadingly suggests that *Free Enterprise* rejected a severability claim in connection with "ALJs." *See* Br.28. *Free Enterprise* held that the tenure protections for agency board members *were* severable from the statute, such that the board could continue with members removable at-will. 561 U.S. at 509.

communications.  438 U.S. at 513-14.  Those safeguards—along with judicial review—would remain in force even without the removal restrictions.  Keeping this framework intact promotes the will of "elected representatives" in adopting the APA.  *Regan v. Time, Inc.*, 468 U.S. 641, 652 (1984).

### C.    The Commission Did Not Improperly Adjudicate Private Rights

Although Congress has authorized the Commission to adjudicate cases administratively for 110 years, *AMG*, 593 U.S. at 72, Intuit claims that process implicates private rights and therefore has been unconstitutional all along.  Br.30-33.  The D.C. Circuit recently rejected this claim.  *Meta*, 2024 WL 1549732, at *3; *see also Meta Platforms, Inc. v. FTC*, No. 23-3562 (RDM), 2024 WL 1121424, at *17-19 (D.D.C. Mar. 14, 2024).

Intuit is not aided by *Jarkesy*'s ruling that the SEC cannot adjudicate a *civil-penalty action* involving rights that "arise 'at common law' under the Seventh Amendment."  34 F.4th at 453.  Here, the FTC imposed an injunctive remedy that was unavailable at common law and does not implicate the Seventh Amendment.

Before the FTC's creation in 1914, courts lacked "equitable jurisdiction" to "suppress the trade and business of all persons whose goods may deceive the public."  *Am. Washboard Co. v. Saginaw Mfg. Co.*, 103 F.281, 286 (6th Cir. 1900).  Common-law courts could only issue injunctions to protect "the property rights of [a] complainant," not to prevent "fraud … upon the public."  *Id.* at 285.  Public

harms "can only be righted through public prosecution … for which the legislature, and not the courts, must provide a remedy." *Id.*

Congress filled the gap by authorizing the FTC to restrain practices that "exploit consumers … who are unable to protect themselves," even if *not* "forbidden at common law." *FTC v. R.F. Keppel & Bro.*, 291 U.S. 304, 310-13 (1934). In 1938, Congress amended the FTC Act to confirm the Commission may "protect[] consumers" from deception under a "congressionally mandated standard." *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 (1972).

The FTC Act is thus the quintessential public-rights statute. "Congress created a new cause of action, and remedies therefor, unknown to the common law, because traditional rights and remedies were inadequate to cope with a manifest public problem." *Jarkesy*, 34 F.4th at 453-55 (cleaned up) (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 60 (1989)). The Commission acts "in its sovereign capacity to enforce public rights created by statutes within the power of Congress to enact." *Atlas Roofing Co. v. OSHRC*, 430 U.S. 442, 450 (1977). The FTC Act does not "withdraw from judicial cognizance" matters that were the subject of a common-law suit, *Stern v. Marshall*, 564 U.S. 462, 484 (2011) (cleaned up); it forbids practices that "were *not* actionable wrongs," *FTC v. Algoma Lumber Co.*, 291 U.S. 67, 79 (1934) (Cardozo, J.) (emphasis added).

Intuit's arguments concerning *Jarkesy* misstate this Court's holding (Br.31). *Jarkesy* asked (1) "*whether an action's claims arise at common law under the Seventh Amendment*"; and (2) if so, "whether the Supreme Court's public-rights cases nonetheless permit Congress to assign it to agency adjudication without a jury trial." 34 F.4th at 453 (emphasis added). Intuit's argument fails at stage one because FTC adjudication does not involve claims arising at common law under the Seventh Amendment, and Intuit does not claim any Seventh Amendment right to a jury trial in this case.

Indeed, Intuit's attempted analogy to *Jarkesy* further collapses because even if allowing "jury trials would not go far to dismantle the [SEC's] statutory scheme," 34 F.4th at 455-56 (cleaned up), eliminating administrative adjudication would largely "dismantle" the FTC Act's scheme. The FTC has had administrative-adjudication authority since its inception, and in many cases, the Commission must issue a cease-and-desist order before FTC staff can seek monetary consumer redress or civil penalties. *AMG*, 593 U.S. at 72, 77. These statutory remedies would be unavailable if the FTC could pursue only Article III adjudication.

Although Intuit claims the remedies here were available at common law (Br.31-32), Congress created the FTC precisely because they were not. *Supra* pp.61-62. Intuit asserts that the common law afforded remedies to "competitors"

whose sales were "diverted by the false marketing." Br.31. But those remedies required proof that sales "would have gone to the plaintiff rather than to other competitors in the market," *Mosler Safe Co. v. Ely-Norris Safe Co.*, 273 U.S. 132, 134 (1927), and thus were only available to "complete monopol[ists] of the goods involved," *Smith-Victor Corp. v. Sylvania Elec. Prods., Inc.*, 242 F. Supp. 302, 309 (N.D. Ill. 1965). The FTC Act protects the consuming *public*, and does not require scienter, reliance, or injury; the Commission may prohibit advertisements that are likely to deceive even before harm occurs. *Freecom,* 401 F.3d at 1204 n.7; *Meta*, 2024 WL 1121424, at *18-19 & n.6. Even if the FTC Act's deception standard were "closely *analogous*" to common-law claims, freedom from deceptive advertising would still be a public right. *Granfinanciera*, 492 U.S. at 52.

Finally, there is no merit to Intuit's claim (Br.30) that FTC adjudication implicates private rights because it could affect expressive and economic interests. Br.30. The same is true of labor disputes, *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 47 (1937); patent validity, *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 334-43 (2018); government permits, *Marine Shale Processors, Inc. v. EPA*, 81 F.3d 1371, 1376 (5th Cir. 1996); and orders banning the importation, sale, and advertising of products as remedies for "unfair trade practices in international commerce," *Akzo N.V. v. ITC*, 808 F.2d 1471, 1488

(Fed. Cir. 1986)—all of which courts have held involve public rights adjudicated by agencies.

"Long settled and established practice may have great weight in interpreting constitutional provisions about the operation of government." *CFSA*, 601 U.S. at 442 (Kagan, J., concurring) (cleaned up). The FTC's century-old practice of adjudicating deceptive-advertising claims is constitutional.

## CONCLUSION

The petition for review should be denied.

Respectfully submitted,

ANISHA S. DASGUPTA
   *General Counsel*

MARIEL GOETZ
   *Acting Deputy General*
   *Counsel*

June 14, 2024

/s/ Bradley Grossman
BRADLEY DAX GROSSMAN
ANUPAMA R. SAWKAR
   *Attorneys*

FEDERAL TRADE COMMISSION
Office of the General Counsel
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-2994
bgrossman@ftc.gov

Of Counsel:

LOIS C. GREISMAN
   *Associate Director*

WILLIAM MAXSON
   *Assistant Director*

ROBERTO ANGUIZOLA
REBECCA PLETT
JAMES EVANS
SARA TONNESEN
   *Attorneys*

FEDERAL TRADE COMMISSION
   Washington, D.C. 20580

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify that the foregoing brief complies with the volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 12,997 words, as created by Microsoft Word, excluding the items that may be excluded under Fed. R. App. P. 32(f).

June 14, 2024                          /s/ Bradley Grossman
                                       Bradley Dax Grossman
                                       Attorney
                                       Federal Trade Commission
                                       600 Pennsylvania Avenue, N.W.
                                       Washington, D.C. 20580